UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.

DR. DAVID S. MURANSKY, individually
and on behalf of all others similarly situated,

    Plaintiff,

v.

GODIVA CHOCOLATIER, INC.,
a New Jersey corporation,

    Defendant.

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE
FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA)**

Plaintiff DR. DAVID S. MURANSKY ("Plaintiff"), on behalf of himself and other similarly situated individuals, alleges the following, in relevant part, upon information and belief, and his own personal knowledge.

## I. NATURE OF THE CASE

1. This class action complaint is based upon Defendant's violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, as amended (the "FCRA"). Specifically, this action is based upon Section 1681c(g) of the FCRA, which states that, "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." Despite the clear language of the statute, Defendant willfully chose not to comply with the FCRA. As such, all consumers who purchased products from Defendant using a credit or debit card suffered violations of Section 1681c(g), have been uniformly burdened with an elevated risk of identity theft, and are entitled to an award of statutory damages.

## II. *JURISDICTION AND VENUE*

2. This Court has jurisdiction under 15 U.S.C. § 1681p, and 28 U.S.C. §§ 1331 and 1337 because the claims in this action arise under violation of a federal statute.

3. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here. Defendant does business in this District and its contacts here are sufficient to subject it to personal jurisdiction.

## III. *PARTIES*

4. Plaintiff DR. DAVID S. MURANSKY ("Plaintiff") is a natural person, who resides in the State of Florida, Broward County.

5. Defendant, GODIVA CHOCOLATIER, INC. ("Defendant" or "Godiva"), is a New Jersey corporation whose principal address is 333 West 34th Street, New York, New York 10001, and whose registered agent for service of process in the State of Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

6. Defendant is both a global manufacturer and worldwide retailer of premium chocolates and other confectionaries with locations in more than 80 countries. In 2013, then-CEO Jim Goldman reported that Godiva's annual revenue had topped $765 million dollars.[1]

## IV. *FACTUAL ALLEGATIONS*

### A. *Background*

7. In 2003, FACTA was enacted by Congress, and signed into law by President George W. Bush. One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections for consumers.

---

[1] Source: http://www.confectionerynews.com/Manufacturers/UPDATED-Yildiz-Holding-sells-20-stake-in-Uelker-as-Godiva-thrives (last visited: April 5, 2015).

8. One such FACTA provision was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

9. Codified at 15 U.S.C. § 1681c(g), this provision states the following:

*Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

(hereinafter, the "Receipt Provision").

10. After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

11. The requirement was widely publicized among retailers and the FTC.

12. For example, in response to earlier state legislation enacting similar truncation requirements, on March 6, 2003, the CEO of Visa USA, Carl Pascarella, explained that "Today, I am proud to announce an additional measure to combat identity theft and protect consumers. Our new receipt truncation policy will soon limit cardholder information on receipts to the last four digits of their accounts. The card's expiration date will be eliminated from receipts altogether. . . . The first phase of this new policy goes into effect July 1, 2003 for all new terminals. . . . ." "Visa USA Announces Account Truncation Initiative to Protect Consumers from ID Theft; Visa CEO Announces New Initiative at Press Conference With Sen. Dianne Feinstein," PR Newswire, March 6, 2003.

13. Within 24 hours, MasterCard and American Express announced they were imposing similar requirements.

14. The card issuing organizations proceeded to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date.

15. For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline.

16. Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed a law absolving all *past* violations of FACTA.  *See* The Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110-241, 122 Stat. 1565 (2008).

17. Importantly, the Clarification Act did not amend FACTA to allow publication of more than the last 5 digits of the card number. Instead, it simply provided amnesty for past violators up to June 3, 2008.

18. Card processing companies continued to alert merchants, including Defendant of FACTA's requirements. According to a Visa Best Practice Alert in 2010:

> Some countries already have laws mandating PAN truncation and the suppression of expiration dates on cardholder receipts. For example, the United States Fair and Accurate Credit Transactions Act (FACTA) of 2006 prohibits merchants from printing more than the last five digits of the PAN or the card expiration date on any cardholder receipt. (Please visit http://www.ftc.gov/os/statutes/fcrajump.shtm for more information on the FACTA.)
>
> To reinforce its commitment to protecting consumers, merchants, and the overall payment system, Visa is pursuing a global security objective that will enable merchants to eliminate the storage of full PAN and expiration date information from their payment systems when not needed for specific business reasons. To ensure consistency in PAN truncation methods, Visa

has developed a list of best practices to be used until any new global rules go into effect.

*See* Visa Alert attached hereto as <u>Exhibit A</u>.

19. Most of Defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement. Defendant could have readily done the same.

20. Not only was Defendant informed they could not print more than the last five numbers, it was contractually prohibited from doing so. Defendant accepts credit cards from all major issuers; these companies set forth requirements that merchants, including Defendant, must follow, including FACTA's redaction and truncation requirements.

21. As noted above, the processing companies have required that the credit card account number be redacted since 2003 and still require it. For example, American Express required:

> Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Card Members. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers.

*See* <u>Exhibit B</u>, attached hereto.

22. Similarly, MasterCard required in a section titled Primary Account Number (PAN) truncation and Expiration Date Omission:

> A Transaction receipt generated by an electronic POI Terminal, whether attended or unattended, must not include the Card expiration date. In addition, a Transaction receipt generated for a Cardholder by an electronic POI Terminal, whether attended or unattended, must reflect only the last four digits of the primary account number (PAN). All preceding digits of

the PAN must be replaced with fill characters, such as "X," "*," or "#," that are neither blank spaces nor numeric characters.

See Exhibit C, attached hereto.

23. According to data from the Federal Trade Commission's 2012 Consumer Sentinel Network report, Florida ranks No. 1 for identity theft among the 50 states, with 361.3 complaints per 100,000 people. That's 86 percent more than Georgia, which ranks a distant second. Also, nine of the top 10 metro areas for identity theft are in Florida, according to the report. First is the Miami area with 645.4 complaints per 100,000 people.[2]

24. So problematic is the crime of identity theft that the three main credit reporting agencies, Experian, Equifax, and Transunion, joined to set-up a free website (<http://www.annualcreditreport.com>) in order to comply with FACTA requirements and to provide the citizens of this country with a means of monitoring their credit reports for possible identity theft.

25. FACTA clearly prohibits the printing of more than the last 5 digits of the card number to protect persons from identity theft.

### B.  *Plaintiff's Factual Allegations*

26. On March 31, 2015, Plaintiff incurred a charge for $19.26 dollars for goods purchased at Defendant's retail store located at the Aventura Mall in Aventura, Florida.

27. Plaintiff paid for said goods using his personal VISA® credit card. Upon making the payment, he was provided with an electronically printed receipt bearing the GODIVA® logo, which also displayed the last four digits of his credit card *as well as the first six digits of his account number*.

---

[2] http://www.wptv.com/money/consumer/identity-theft-florida-ranks-no-1-in-nation-for-id-theft (last visited: April 5, 2015).

28.     Defendant operates more than 500 retail stores worldwide, more than 200 of which are located in the United States.

29.     Upon information and belief, the violations at issue have taken place at every single Godiva retail store in the United States, including but not limited to the Galleria Mall (Fort Lauderdale, Florida) and the Gardens Mall (Palm Beach Gardens, Florida), for approximately the past sixty (60) days, which includes the busy Easter shopping season.[3]

30.     Defendant undoubtedly had knowledge of the statute's requirements. In fact, in a 2007 Form 10-K Statement filed with the United States Securities and Exchange Commission, Jim Goldman (then-CEO of Godiva) was informed in his capacity as a director of another company, The Children's Place Retail Stores, Inc., that it was the subject of a virtually identical class action for violations of FACTA.[4]  The statement reads in part:

> On or about September 28, 2007, Meghan Ruggiero filed a complaint against the Company and its subsidiary, Hoop Retail Stores, LLC, in the United States District Court, Northern District of Ohio on behalf of herself and other similarly situated individuals. The lawsuit alleges violations of the Fair and Accurate Credit Transactions Act ("FACTA") and seeks class certification, an award of statutory and punitive damages, attorneys' fees and costs, and injunctive relief. The outcome of this litigation is uncertain; while we believe there are valid defenses to the claims and will defend ourselves vigorously, we cannot reasonably estimate the amount of loss or range of loss that might be incurred as a result of this matter.
>
> …
>
> *James Goldman* has served as a director of the Company since 2006 and is a member of the compensation committee. Mr. Goldman has served as President, Worldwide of Godiva Chocolatier, Inc., a wholly owned subsidiary of the Campbell Soup Company, Inc. since 2004. From 2001 to 2004, Mr. Goldman

---

[3] Easter accounts for more than one-third of seasonal chocolate sales, putting it ahead of Christmas, Valentine's Day, and Halloween.
Source: http://www.confectionerynews.com/Markets/Where-are-the-emerging-Easter-markets (last visited: April 5, 2015).

[4] Source: http://www.wikinvest.com/stock/Children's_Place_Retail_Stores_(PLCE)/Filing/10-K/2007/F2939541 (last visited: April 5, 2015).

7

served as President, North America Food and Beverage of Campbell Soup Company.

31. The above-referenced class action lawsuit, *Ruggiero v. The Children's Place Retail Stores, Inc.*, No. 07-cv-09966 (N.D. Ohio), alleged precisely the same violations as in the present matter – *i.e.*, the printing of more than the last 5 digits on a credit card receipt.

32. Further, in 2011, Jim Goldman also sat on the Board of Directors of Domino's Pizza, Inc., when it too was sued in a similar class action for violation of FACTA. *See Lipkis v. Domino's Pizza, Inc., et al.*, No. 11CH39816 (Ill. Cook Co. Cir. Ct. Nov. 17, 2011).

33. Upon information and belief, Mr. Goldman was informed of the Domino's Pizza, Inc. lawsuit in his capacity as a director of Domino's Pizza, Inc., and consequently, he was again made aware of FACTA's requirements.

34. The law is well settled that the knowledge of a corporation's directors may be imputed to the corporation. *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998).

### C. *Defendant's Misdeeds*

35. At all times relevant herein, Defendant was acting by and though their agents, servants and/or employees, each of which were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant.

36. At all times relevant herein, the conduct of the Defendant, as well as that of their agents, servants and/or employees, was in willful and reckless disregard for federal law and the rights of the Plaintiff.

37. It is Defendant's policy and procedure to issue an electronically printed receipt to individuals at the point of sale – *i.e.*, immediately upon receipt of credit card payment.

38. Consistent with Defendant's policy and procedure, Defendant knowingly and intentionally includes more than the last 5 digits of the card number on its electronically printed receipts.

39. The digits appearing on the receipt are not printed accidentally; the equipment and software used to print the receipts and electronically store an image of same must be programmed to display certain information, and likewise, programmed not to display certain information.

40. Notwithstanding the fact that it has had years to comply, Defendant continues to issue point of sale receipts, which contain more than the last 5 digits of the card number, in direct violation of the Receipt Provision of the FCRA.

41. Notwithstanding the Receipt Provision, Defendant continues to deliberately, willfully, intentionally, and/or recklessly violate FACTA by issuing receipts which to not comply with the FCRA.

42. Notwithstanding the fact that Defendant had years to comply with FACTA's requirements, Defendant continues to act in conscious disregard for the rights of others.

43. To paraphrase the words of Judge Richard Posner in *Redman v. RadioShack Corp.*, --- F.3d ----, 2014 WL 4654477 (7th Cir. Sept. 19, 2014), Defendant has been engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known…" *Id.* at *2.

## V.   *CLASS ACTION ALLEGATIONS*

44. This action is also brought as a Class Action under Fed. R. Civ. P. 23. Plaintiff proposes the following class, defined as follows, subject to modification by the Court as required:

> *(i) All persons in the United States (ii) who, when making payment for good or services at a Godiva retail store (iii) made such payment using a credit or debit card (iv) and were provided with a point of sale receipt (v) which displayed shall print more than the last 5 digits of said credit or debit card (vi) within the two (2) years prior to the filing of the complaint.*

44. The named Plaintiff falls within the class definition and is a member of the class. Excluded from the class are Defendant and any entities in which Defendant has a controlling interest, Defendant's agents and employees, Plaintiff's attorneys and their employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death, and/or emotional distress.

### A. *Certification Under Either Rule 23(b)(2) or (b)(3) is Proper.*

45. The members of the class are capable of being described without managerial or administrative problems. The members of the class are readily ascertainable from the information and records in the possession, custody or control of Defendant or third party credit card issuers.

46. Defendant operates retail stores throughout the United States. Therefore, it is reasonable to conclude that the class is sufficiently numerous such that individual joinder of all members is impractical. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The Class can be identified through Defendant's records or Defendant's agents' records.

47. There are common questions of law and fact that predominate over any questions affecting only the individual members of the class. The wrongs alleged against Defendant's are statutory in nature and common to each and every member of the putative class.

48.     This suit seeks only statutory damages and injunctive relief on behalf of the class and it expressly is not intended to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

49.     There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact to the class predominate over questions that may affect individual class members, including the following:

    a.  Whether, within the two years prior to the filing of this Complaint, Defendant and/or their agents accepted payment by credit or debit card from any consumer and subsequently gave that consumer a printed receipt upon which more than the last 5 digits of the card number was printed;

    b.  Whether Defendant's conduct was willful and reckless;

    c.  Whether Defendant is liable for damages, and the extent of statutory damages for each such violation; and

    d.  Whether Defendant should be enjoined from engaging in such conduct in the future.

50.     As a person that purchased goods from Defendant and received a receipt upon which more than the last 5 digits of the card number were printed, Plaintiff is asserting claims that are typical of the proposed class. Plaintiff will fairly and adequately represent and protect the interests of the class in that Plaintiff has no interests antagonistic to any member of the class.

51.     The principal question is whether the Defendant violated section 1681c(g) of the FCRA by providing class members with electronically printed receipts in violation of the Receipt Provision. The secondary question is whether it is Defendant's policy and practice to provide

such electronically printed receipts to consumers that make payment using a credit or debit card, despite the advice of one of the nation's largest law firms, and whether it was Defendant's policy and practice to print receipts bearing more than the last 5 digits of consumer credit cards in willful noncompliance of the FCRA.

52. Plaintiff and the members of the class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct. Absent a class action, the class will continue to face the potential for irreparable harm. In addition, these violations of law would be allowed to proceed without remedy and Defendant would undoubtedly continue such illegal conduct. Because of the size of the individual class members' claims, few class members could afford to seek legal redress for the wrongs complained of herein.

53. Defendant's defenses are and will be typical of and the same or identical for each of the members of the class and will be based on the same legal and factual theories. There are no unique defenses to any of the class members' claims.

54. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of class members in individually controlling the prosecution of separate claims against Defendant is small. The maximum statutory damages in an individual action for a violation of this statute are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

55. Defendant has acted on grounds generally applicable to the class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the class as a whole.

## *COUNT I – VIOLATIONS OF 15 U.S.C. § 1681(c)(g)*

56.  15 U.S.C. §1681c(g) states as follows:

*Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.*

57.  This section applies to any "device that electronically prints receipts" (hereafter "Devices") for point of sale transactions. 15 U.S.C. §1681c(g)(3).

58.  Defendant employs the use of said Devices for point of sale transactions at the various locations of Defendant.

59.  On or before the date on which this complaint was filed, Plaintiff and members of the class were provided receipt(s) by Defendant that failed to comply with the Receipt Provision.

60.  At all times relevant to this action, Defendant was aware, or should have been aware, of both the Receipt Provision as well as the need to comply with said provision.

61.  Notwithstanding the three year period to prepare for FACTA and its accompanying provisions, including but not limited to the Receipt Provision; knowledge of the Receipt Provision and FACTA as a whole; Defendant knowingly, willfully, intentionally, and/or recklessly violated and continues to violate the FCRA and the Receipt Provision.

62.  As a result of Defendant's willful violations of the FCRA, Plaintiff and members of the class continue to be exposed to an elevated risk of identity theft. Defendant is liable to Plaintiff and members of the class pursuant to 15 U.S.C. § 1681n for statutory damages, punitive damages, attorney's fees and costs.

**WHEREFORE**, Plaintiff DR. DAVID S. MURANSKY respectfully requests that this Court enter judgment in his favor and the class, and against Defendant GODIVA CHOCOLATIER, INC. for:

a. Statutory damages;

b. Punitive damages;

c. Injunctive relief;

d. Attorneys' fees, litigation expenses and costs of suit, and

e. Such other and further relief as the Court deems proper under the circumstances.

## JURY DEMAND

**Plaintiff demands a trial by jury on all counts.**

Dated: April 6, 2015

Respectfully submitted,

By: /s/ *Scott D. Owens*
Scott D. Owens, Esq.
Florida Bar No. 0597651
SCOTT D. OWENS, P.A.
3800 S. Ocean Dr., Ste. 235
Hollywood, FL 33019
Telephone: (954) 589-0588
Facsimile: (954) 337-0666
scott@scottdowens.com

Bret L. Lusskin, Jr., Esq.
Florida Bar No. 28069
BRET LUSSKIN, P.A.
20803 Biscayne Blvd., Ste. 302
Aventura, FL 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

*Attorneys for Plaintiff*

14