No. 0:15-cv-60716-WPD

---

# In the United States District Court
# For the Southern District of Florida

———————

DR. DAVID S. MURANSKY, on behalf of himself and others similarly situated,

*Plaintiff*,

v.

GODIVA CHOCOLATIER, INC.,

*Defendant.*

———————

## PLAINTIFF'S MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT

———————

Scott D. Owens, Esq.
SCOTT D. OWENS, P.A.
3800 S. Ocean Drive, Ste. 235
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com


BRET L. LUSSKIN, Esq.
20803 Biscayne Blvd., Suite 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

Michael S. Hilicki, Esq.
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3403 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
mhilicki@KeoghLaw.com
www.KeoghLaw.com

*Attorneys for Plaintiff*

January 22, 2016

---

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

I.     NATURE OF THE LITIGATION, MEDIATION AND SETTLEMENT ..................2

II.    SUMMARY OF THE PROPOSED SETTLEMENT....................................................4

    A.  Class Definition .........................................................................................4

    B.  Structure of the Settlement Amount .........................................................4

    C.  Individual Class Member Benefits.............................................................5

    D.  Additional Relief........................................................................................5

    E.  Compensation for the Class Representative ..............................................5

    F.  Payment of Attorneys' Fees.......................................................................5

    G.  Release .......................................................................................................5

III.   THE PROPOSED SETTLEMENT CLASS
     SHOULD BE CERTIFIED...........................................................................................6

    A.  The Numerosity Element Is Satisfied .......................................................7

    B.  The Commonality Element Is Satisfied .....................................................7

    C.  Plaintiff's Claims Are Typical of the Claims of the Class.......................8

    D.  The Adequate Representation Element Is Satisfied..................................9

    E.  The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)...........10

IV.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL ...........13

V.    THE PROPOSED SETTLEMENT
     WARRANTS PRELIMINARY APPROVAL.............................................................14

VI.   THE PROPOSED CLASS NOTICE SHOULD BE APPROVED...............................17

VII.  THE SELECTION OF A CY PRES RECIPIENT ......................................................18

VIII. THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING ........................19

IX.   DEFENDANT DOES NOT OBJECT TO THE RELIEF REQUESTED ..................19

X.    SUGGESTED SCHEDULE .......................................................................................19

XI.   CONCLUSION...........................................................................................................20

CERTIFICATE OF SERVICE ...........................................................................................22

## INTRODUCTION AND SUMMARY OF THE
## LITIGATION, MEDIATION AND SETTLEMENT

Plaintiff respectfully moves the Court for preliminary approval of the nationwide class action settlement ("Settlement") reached between Plaintiff, Dr. David Muransky, and Defendant Godiva Chocolatier, Inc. ("Godiva"). The proposed Settlement would resolve all claims in this action. Plaintiff alleges that Godiva retail stores printed transaction receipts that revealed more than the last five digits of purchasers debit and credit card numbers, in willful violation of the Fair and Accurate Credit Transaction Act, 15 U.S.C. §1681c(g)(1) (FACTA). Godiva vigorously denies these allegations.

FACTA aims to help reduce identity theft by requiring merchants to eliminate certain personal financial information from credit and debit card receipts. *Redman v. Radioshack Corp.,* 768 F.3d 622, 639 (7th Cir. 2014) ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.") To encourage private litigants to enforce FACTA's requirements, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA"), which entitles a successful plaintiff to statutory damages, costs and attorneys' fees for any "willful" violation of the law. *See Harris v. Mexican Specialty Foods, Inc.,* 564 F.3d 1301, 1306 1307 (11th Cir. 2009), *citing* 15 U.S.C. §1681n(a)(l)(A), and (2).

Consistent with this intent, Plaintiff brought this action to resolve Godiva's alleged violation of FACTA's prohibition against printing more than the last five digits of credit and debit cards on transaction receipts. Plaintiff filed a first amended complaint on June 9, 2015. (Dkt. 16). On June 23, 2015, Godiva filed a motion to dismiss. (Dkt. 21). The motion was fully briefed and, on September 2, 2015, the Court denied the motion. (Dkt. 26). Godiva filed its answer and affirmative defenses on September 16, 2015 (Dkt. 29).

1

Thereafter, Plaintiff served extensive discovery. In response, Godiva produced details about the scope of the putative class as well as information about the nature and cause of the alleged FACTA violations at issue. Because the FACTA claims at issue require Plaintiff and the class to prove that Godiva "willfully" violated the law, this information was critical to understanding the value of the case and the chance of success on the merits.

The Parties discussed the prospect of settling the case on several occasions after the denial of Godiva's motion to dismiss. Finally, after the production and analysis of facts concerning the class and how Godiva's alleged violation of FACTA occurred, the parties attended a full day mediation before a private, third-party mediator in Miami on November 3, 2015. The parties then spent the next several weeks in additional negotiations to come to a framework of settlement. Even after agreeing to the framework, the parties spent the next two months negotiating the terms of the settlement agreement. A true and accurate copy of the Settlement Agreement and Release ("Agreement") is attached hereto as *Appendix 1*.

Under the Agreement, Godiva will pay Six Million, Three-Hundred-Thousand Dollars ($6,300,000.00) to a Settlement Fund. The Settlement Fund will be divided *pro rata* among all class members who submit a timely claim, after payment of the costs of notice and administration and the approved fee and class representative incentive awards. There will be no reversion and no money will be returned to Godiva. If the Settlement is approved, Plaintiff's counsel estimates that each class member who submits a timely claim will receive approximately $235 cash.

All told, this settlement provides the class with a significant portion of the statutory damages available for a willful violation of FACTA. In addition, as a direct result of the lawsuit, Godiva has brought its credit and debit card transaction receipts into compliance with FACTA.

Given the hurdles facing the Class in this litigation and the difficulty of proving willfulness, the results achieved are outstanding. Indeed, counsel believes this is one of the largest settlements in a FACTA case.

Plaintiff therefore moves to: (a) conditionally certify the Settlement Class; (b) appoint Plaintiff as class representative; (c) appoint Scott D. Owens of Scott D. Owens, P.A., Bret L. Lusskin of Bret Lusskin, P.A., and Michael S. Hilicki of Keogh Law, Ltd. as class counsel, (d) enter an order granting preliminary approval of the Settlement and plan for giving notice of it to the class, and setting this matter for a fairness hearing; and (e) grant such additional relief as deemed just.

## II. SUMMARY OF THE PROPOSED SETTLEMENT

The key terms of the proposed settlement follow:

**A.**      **Class Definition.** The settlement class is defined as follows:

(i) All persons in the United States (ii) who, when making payment for goods or services at a Godiva retail store located in the United States, (iii) made such payment using a credit or debit card (iv) and were provided with a point-of-sale receipt (v) which displayed more than the last 5 digits of said credit or debit card number (vi) between April 6, 2013, and November 20, 2015.

Notwithstanding the foregoing, in compliance with 28 U.S.C. §455, this class specifically excludes persons in the following categories: (A) The district judge and magistrate judge presiding over this case and the judges of the United States Court of Appeals for the Eleventh Circuit; (B) the spouses of those in category (A); (C) any person within the third degree of relationship of those in categories (A) or (B); and (D) the spouses of those within category (C).

Based on the class information produced by Godiva in discovery, the Settlement Class contains approximately 342,000 members.

**B.**      **Structure of the Settlement Amount.** The Agreement provides, in §III.B., that Godiva shall pay Six Million, Three-Hundred Thousand Dollars ($6,300,000.00) for the benefit of the class.

**C.      Individual Class Member Benefits.** A Settlement Class Member who submits a timely claim form will receive a *pro rata* share of the net settlement proceeds after payment of the cost of sending notice of the settlement to the class, settlement administration expenses, the attorneys' fee and expense award, and any class representative incentive award.

**D.      Additional Relief.** In addition to the individual relief to the class provided above, Godiva has agreed to payment of the cost of preparing and sending notice of the Settlement to the class, including but not limited to establishment and maintenance of the settlement website, and the cost of handling and disbursing funds to class members, from the Settlement Fund.

**E.      Compensation for the Class Representative.** Subject to Court approval, Plaintiff Muransky shall apply for an incentive award not to exceed ten thousand dollars ($10,000).[1]

**F.      Payment of Attorneys' Fees and Expenses.** Under the Agreement, and subject to Court approval, the Parties have agreed that Plaintiff's counsel may apply to this Court for an award of attorneys' fees and expenses associated with the Action. Plaintiff's counsel will petition the Court for an award of attorneys' fees not to exceed one-third of the Settlement Fund, plus expenses, and the notice will inform the class of such.

**G.      Release.** In exchange for the relief described above, the release is applicable to all class members and releases any and all claims, as more fully set forth in the Settlement

---

[1] This is consistent with incentive awards in other cases. *See, e.g., Cooper v. NelNet, Inc.*, 14-cv-314-RBD-DAB, Dkt. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) ($25,000 incentive award); *Gevaerts v. TD Bank, N.A.*, No. 14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354 ta *25-*26 (S.D. Fla. Nov. 5, 2015) ($10,000 incentive awards), *citing Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff).

Agreement, related to or arising out of claims that were made or could have been made in this litigation regarding the disclosure, display, publication, provision or printing of credit or debit cardholder account information. The full scope of the release, and its exact terms, is fully set forth at §VI of the Settlement Agreement, attached hereto as *Appendix 1*.

### III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

Prior to granting preliminary approval of a class action settlement, the Court should confirm that the proposed settlement class is a proper class for settlement purposes. *See Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "A class may be certified solely for the purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1313-14 (S.D. Fla. 2005) (internal quotations omitted).

Class certification is appropriate if the proposed class meets the elements of Federal Rule of Civil Procedure 23(a), and one element of Federal Rule of Civil Procedure 23(b). *See Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 313 (S.D. Fla. 2001). The elements of Rule 23(a) are numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a)(1)-(4); *see also Fabricant*, 202 F.R.D. at 313. The element of Rule 23(b) at issue here requires that common questions of law or fact predominate, and that a class action is superior method of resolving the claims at issue. Fed. R. Civ. P. 23(b)(3); *see also Fabricant*, 202 F.R.D. at 313. However, because class certification is being proposed as part of a settlement, the Rule 23(b)(3) inquiry is relaxed as it relates to case manageability because the settlement obviates the need for a trial. *See Amchem*, 521 U.S. at 620.

One court in this District recently determined that a class materially identical to the proposed Settlement Class here satisfied all of the requirements for certification in a *contested*

5

class certification proceeding, thus demonstrating that the claims at issue in the instant case are appropriately resolved on a class basis. *See Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-CIV-JIC (S.D. Fla.) (June 10, 2015 Order) (FACTA case involving printing of credit and debit card transaction receipts that reveal card information that should not be disclosed), attached as *Appendix 2*. As shown below, the Settlement Class here likewise satisfies Rule 23 and thus, as in *Legg v. Spirit*, class resolution is proper.

### A.    The Numerosity Element Is Satisfied

The first Rule 23(a) element requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also Fabricant*, 202 F.R.D. at 313 (finding that Rule 23(a) requires that joinder be impracticable, not impossible). To meet this element, there is no "definite standard as to the size of a given class, and plaintiff's estimate need only be reasonable." *Id.* (*citing Kilgo v. Bowman Transp. Inc.*, 789 F.2d 859, 878 (11th Cir. 1986)). Generally, the numerosity requirement is satisfied if the class has 40 or more members. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986).

Here, the putative class is estimated to include no more than 342,000 members (subject to a final accounting). Obviously, it would be impracticable to join hundreds of thousands of class members as parties in one lawsuit. Accordingly, the class meets the numerosity element.

### B.    The Commonality Element Is Satisfied

The second Rule 23(a) element requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This element is met if there is "at least one issue affecting all or a significant number of proposed class members." *Fabricant*, 202 F.R.D. at 313; *see also Agan v. Kathzamn & Korr, P.A.*, 222 F.R.D. 692, 697 (S.D. Fla. 2004) (finding that the commonality requirement is "generally satisfied when a plaintiff alleges that defendants have

engaged in a standardized course of conduct that affects all class members") (internal quotation omitted).

This element is met because all class members share the common issues of (1) whether Godiva's computerized payment system at its retail stores violated FACTA by printing credit or debit card transaction receipts that revealed more than the last five digits of each class member's credit or debit card, and (2) whether this violation was willful. *See* 15 U.S.C. §1681c(g)(1) and 15 U.S.C. §1681n(a)(1)(A). Therefore, the commonality element is met.

**C.     Plaintiff's Claims Are Typical of the Claims of the Class**

The third Rule 23(a) element requires that the class representative's claims be typical of the claims of the putative class members. Fed. R. Civ. P. 23(a)(3). "[T]ypicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall,* 334 F.3d 1253, 1256 (11th Cir. 2003) (internal quotation omitted). A plaintiff's claim is typical of the class members' claims if they "arise from the same event or pattern or practice and are based on the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). In fact, the typicality requirement may be satisfied despite substantial factual differences when there is a strong similarity of legal theories. *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009); *see also Cooper v. S. Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (finding that named representative need only share the same "essential characteristics" of the larger class) (*overruled on other grounds by Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457, 126 S.Ct. 1195, 1189, 163 L.Ed.2d 1053 (2006)). Simply put, when the same unlawful course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *See Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Dr. Muransky's claim is typical of the class members' claims because they are based on the same facts and legal theory. He alleges that when he and each class member made a purchase at a Godiva store using a credit or debit card, Godiva electronically printed a transaction receipt that revealed more than the last five digits of the credit or debit card, and that this occurred because the computer payment system Godiva used at its retail stores was programmed to print receipts in this manner. In addition, if Dr. Muransky proves that Godiva willfully allowed its system to operate in this manner, both he and the class would be entitled to the same relief, namely, statutory damages. 15 U.S.C. §1681n(a). Accordingly, Dr. Muransky meets the typicality requirement.

## D.      The Adequate Representation Element Is Satisfied

The fourth and final Rule 23(a) element requires the class representative to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor mandates: (1) that the class representative possess no interests antagonistic to the settlement class, and (2) competent class counsel. *See Fabricant*, 202 F.R.D. at 314-15 (*citing Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987)).

Here, Plaintiff's and the class members' interests are aligned because they both stand to recover statutory damages if Plaintiff proves that Godiva willfully violated FACTA in the manner alleged. *See* Decl. of D. Muransky, attached as *Appendix 3*. Therefore, Dr. Muransky is adequate.

Plaintiff's counsel are adequate because they regularly engage in major complex litigation, and have extensive experience in consumer class action lawsuits. *See*, Decl. of Scott D. Owens, attached as *Appendix 4*; *See*, Decl. of Bret Lusskin, attached as *Appendix 5*; Decl. of Michael S. Hilicki, attached as *Appendix 6*; *see also Legg v. Voice Media Group, Inc.*, 2014 U.S.

Dist. LEXIS 61836 at *14 (S.D. Fla. May 5, 2014 (Dr. Muransky's counsel Scott D. Owens is a "seasoned [attorney] with the experience to pursue a consumer class action of the variety [the plaintiff] proposes."); *Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-CIV-JIC (S.D. Fla.) (June 10, 2015 Order) at p.8 (Dr. Muransky's "attorneys are experienced and capable, and have served as class counsel in similar consumer class actions before."), attached as *Appendix 2*, and *Legg v. E-Z Rent a Car, Inc.*, No. 14-cv-1716 (M.D. Fla. May 28, 2015 Order) at ¶8.d. (Scott D. Owens has "fairly and adequately represented and protected the interests of all of the Settlement Class Members."), attached as *Appendix 7*. Thus, the adequacy element is met.

### E.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

Once the four elements of subsection (a) are met, Rule 23 also requires that the case meet one of the three elements of subsection (b). This case satisfies Rule 23(b)(3). Rule 23(b)(3) provides that a class action can be maintained if the questions of law or fact common to class members predominate over any questions affecting only individuals, and if a class action is a superior method for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3).

The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700 (internal quotations omitted). Common questions squarely predominate here. Whether Godiva's computerized payment system printed transaction receipts that revealed more than the last five digits of the credit or debit card used in the transaction, whether this violation of FACTA was willful, and the statutory damages to be awarded it if it was, are all common questions that will both resolve liability and the appropriate recovery on a classwide basis. Thus, the common questions predominate. *See*, *e.g.*,

*Legg v. Spirit Airlines, Inc.*, No. 14-cv-61978-CIV-JIC (S.D. Fla.) (June 10, 2015 Order) at p.10

("The court agrees that these central issues predominate over any that would require individual

determination."), attached as *Appendix 2*; *see also In re Toys "R" Us – Delaware, Inc. – Fair

and Accurate Credit Trans. Act (FACTA) Litig.*, 300 F.R.D. 347, 376 (C.D. Cal. 2013) ("The

vast majority of courts outside this district have similarly found that common questions

predominate in FACTA class actions.")[2]

In addition, a class action is superior to any other method available to fairly and

efficiently adjudicate the class members' claims. *See Bush*, 2012 U.S. Dist. LEXIS 40450 at *33

("Courts routinely find class resolution superior in consumer protection actions, including those

brought pursuant to FACTA.") Absent a class action, members of the class could not feasibly

resolve their claims. Statutory damages per claim are limited to $100-$1,000 under 15 U.S.C.

§1681n(a)(1)(A), which is insufficient to motivate individual class members to personally

vindicate their rights. Thus, individual litigation is infeasible, and a class action is plainly a

superior method of adjudication. *See In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D.

672, 700 (S.D. Fla. 2004) ("a class action is particularly appropriate where . . . it is necessary to

permit the plaintiffs to pool claims which would be uneconomical to litigate individually.")

(internal citations omitted); *see also Amchem*, 521 U.S. at 615. Even if individual litigation was

---

[2] Examples of the numerous other decisions ruling that class certification is proper in FACTA
cases include *Bush v. Calloway Consol. Group River City, Inc.*, No. 10-cv-841, 2012 U.S. Dist.
LEXIS 40450 at *33 (M.D. Fla. Mar. 26, 2012); *Velasco v. Sogro, Inc.*, No. 08 C 244, 2014 U.S.
Dist. LEXIS 104047 at *11-*12 (E.D. Wisc. July 30, 2014); *Rogers v. Khatra Petro, Inc.*, 08-cv-
294, 2010 U.S. Dist. LEXIS 103599 at *2 (N.D. Ind. Sept. 29, 2010); *Miller-Huggins v. Mario's
Butcher Shop, Inc.*, No. 09-3774, 2010 U.S. Dist. LEXIS 16493 at *14 (N.D. Ill. Feb. 22, 2010);
*Shurland v. Bacci Café & Pizzeria on Ogden, Inc.*, 259 F.R.D. 151, 161 (N.D. Ill. 2009); *Harris
v. Best Buy Co., Inc.*, 254 F.R.D. 82, 90 (N.D. Ill. 2008) (overruled on separate grounds by
*Shlahtichman v. 1-800 Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010); *Redmon v. Uncle Julio's of
Illinois, Inc.*, 249 F.R.D. 290, 293 (N.D. Ill. 2008); *Meehan v. Buffalo Wild Wings, Inc.*, 249
F.R.D. 284, 288 (N.D. Ill. 2008); and *Matthews v. United Retail, Inc.*, 248 F.R.D. 210, 217 (N.D.
Ill. 2008).

feasible, however, a class action is still superior because it would be judicially inefficient to have multiple courts consider and adjudicate the same factual, liability and statutory damage issues this case presents. *See Agan*, 222 F.R.D. at 700 ("increased efficiency" can also render class action superior), *quoting Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1359 (11th Cir. 2002).

Although this case meets the superiority requirement as it is ordinarily applied, it must be noted that the superiority analysis is relaxed here because here class certification is being proposed as part of a settlement, and thus trial management considerations are not a factor. *See Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (citations omitted).

Finally, and in addition to the above considerations, the Supreme Court has specifically recognized that class actions under statutes like FACTA are appropriate. *See Shady Grove Orthopedic Associates, P.A., v. Allstate Ins. Co.*, 130 S. Ct. 1431 (2010). In *Shady Grove*, the Court considered whether a New York state law prohibiting class actions seeking penalties or statutory minimum damages precludes a federal court from considering Rule 23 class action status. *Id.* at 1436. The Court held a plaintiff may pursue a class action seeking statutory damages. *Id.* at 1448.

The portion of Justice Scalia's opinion joined by three other justices found it "obvious" that plaintiffs may aggregate multiple claims for statutory damages in a class action. *Id.* at 1443. Such Rules "neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed." *Id.* Thus, in responding to the defendant's argument that aggregation of statutory penalties improperly transforms a dispute over $500 into a suit for $5 million, Justice Scalia noted:

11

[A]ggregate liability, however, does not depend on whether the suit proceeds as a class action. Each of the 1,000-plus members of the putative class could (as [the defendant] acknowledges) bring a freestanding suit asserting his individual claim. It is undoubtedly true that some plaintiffs who would not bring individual suits for the relatively small sums involved will choose to join a class action. That has no bearing, however, on [the defendant's] or the plaintiffs' legal rights. The likelihood that some (even many) plaintiffs will be induced to sue by the availability of a class action is just the sort of "incidental effec[t]" we have long held does not violate §2072(b).

*Id*. Justice Stevens' concurrence provides a fifth vote for this holding. *Id*. at 1459, n.18.[3] In short, this case meets the requirements of Rule 23, and thus settlement as a class action is appropriate.

## IV. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv). As demonstrated above, Plaintiff's counsel have extensive experience in prosecuting class actions and other complex litigation of a similar nature, scope, and complexity, including cases under FACTA. *See*, Decl. of Scott D. Owens at ¶24, attached as *Appendix 4*; *See*, Decl. of Bret Lusskin, attached as *Appendix 5*; Decl. of Michael S. Hilicki at ¶2, attached as *Appendix 6*. In addition, proposed class counsel diligently investigated and prosecuted this case, dedicated substantial resources to the cause, and successfully negotiated the settlement of this matter to the benefit of the class. Accordingly, the

---

[3] Responding to Justice Ginsburg's argument that class certification would "transform a $500 case into a $5,000,000 award," Justice Stevens notes: "[C]lass certification would transform 10,000 $500 cases into one $5,000,000 case. It may be that without class certification, not all of the potential plaintiffs would bring their cases. But that is true of any procedural vehicle; without a lower filing fee, a conveniently located courthouse, easy-to-use federal procedural rules, or many other features of the federal courts, many plaintiffs would not sue." *Id*. at 1459 n.18.

Court should appoint Plaintiff's counsel to serve as class counsel for the class under Rule 23(g).

## V. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The procedure for review of a proposed class action settlement is a well-established two-step process. Newberg & Conte, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also* David F. Herr, *Annotated Manual for Complex Litigation,* § 21.632 (4th ed. 2004).

The first step is a preliminary, pre-notification determination whether the settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39 (*quoting Manual for Complex Litigation*, §30.41 (3rd Ed.)); *Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895 at *4 (S.D. Fla. May 14, 2007). This is not a fairness determination; its purpose, rather, is to ascertain whether there is grounds to notify the class members of the settlement and to proceed with a fairness hearing. *Newberg*, §11.25, at 38-39; *Fresco*, 2007 WL 2330895 at *4 ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, if there is probable cause to notify the class of the proposed settlement.") (internal quotations omitted).

The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling Parties. *See Manual for Complex Litigation,* § 21.632 (4th ed. 2004). If the court finds a settlement proposal "within the range of possible approval," it then proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39.

There is a strong judicial and public policy favoring the voluntary conciliation and

settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd,* 893 F. 2d 347 (11th Cir. 1998); *Access Now, Inc. v. Claires Stores, Inc.*, No. 00-14017-CIV, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although the approval of a class action settlement is a matter for the Court's discretion, proper consideration should be given to the consensual decision of the Parties. *See Greco v. Ginn Dev. Co., LLC*, 2015 U.S. App. LEXIS 20867 at *9 (11th Cir. Dec. 2, 2015) (unpublished) ("a district court may also rely upon the judgment of experienced counsel for the parties. Indeed, absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'"), *quoting Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Warren*, 693 F.Supp. at 1054 ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Ultimately, a class action settlement should be approved if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984); *Access Now,* 2002 WL 1162422 at *4. When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 (S.D. Fla. 2001).

In determining whether the proposed settlement is "fair, adequate, and reasonable," the following factors are often considered: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which settlement is

fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986; *see also In re Sunbeam*, 176 F. Supp. 2d at 1329. Finally, in considering the preliminary approval issue, courts need not "reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).

Here, the proposed settlement is fair, adequate, and reasonable and well "within the range of possible approval." This is demonstrated by the amount of monetary relief made available to the class, and the fact that the agreement was the result of hard fought arms' length negotiations by experienced counsel conducted through a seasoned third party mediator.

The monetary relief secured on behalf of the class is substantial. Each class member who submits a timely claim form will receive a pro rata share of the Settlement Fund in an amount estimated to be around $235. *Appendix 1* at Exhibit B, p.1 and Exhibit C, p.1. This compares to a potential range of statutory damages recovery of $100-$1000 against the inability to prove actual harm, meaning that even if the case went to trial and was successful, there is a good chance class members would not recover more than the minimum $100 statutory damage award. This settlement far exceeds other class settlements of FACTA claims.[4]

---

[4] *See*, *e.g.*, *Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223 at *2 (E.D.N.Y. Oct. 3, 2014) (FACTA class settlement that gives class members a choice to make a claim for $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364 at *14-*15 (W.D. Pa. Jan. 3, 2012) (FACTA class settlement that provides the class with admission tickets to defendant's amusement park); *Todd v. Retail Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126 at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA class settlement providing a $15 credit on class members' next purchase of $125 or more from the defendant); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087 at *9-*10 (W.D. Pa. Apr. 22, 2008) (FACTA class settlement providing vouchers worth an average of $4.38 each to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future).

The non-monetary benefit of this case is also substantial. In response to this lawsuit, Godiva reprogrammed its computerized payment system to stop printing more than the last five digits of its customers' credit and debit card account numbers on transaction receipts.

The Parties reached this settlement after substantial arms-length negotiations. Based on the information produced by Godiva in discovery and otherwise, Plaintiff's counsel is confident in the strength of the claims alleged in the complaint and Plaintiff's chance of success at the class certification stage and at trial. Nevertheless, litigation is inherently unpredictable, Godiva is represented by competent and formidable trial counsel, and the outcome is never guaranteed.[5]

Indeed, Plaintiff and the class members face significant risks. This includes the possibility that the Court may deny class certification, which is never guaranteed, and of course the possibility that the fact finder concludes that Godiva's alleged violation of FACTA here was not willful. Moreover, two cases are currently pending before Supreme Court that could affect Plaintiff's and the class members' Article III standing and the ability to certify a class. *See Spokeo, Inc. v Robins*, No. 13-1339 (addressing whether statutory damage class actions lack Article III standing, in which event case Plaintiff and the proposed Class would have to litigate the case from scratch in state court), and *Tyson Foods, Inc. v. Bouaphakeo*, No. 14-1146 (addressing class certification issues).

In the end, when the strengths of the case are weighed against the legal and factual obstacles present, and the complexity of class action practice, there should be no doubt that the proposed settlement is in the best interest of class members.[6] And, given the high value of this

---

[5] *See Appendix 4* (Decl. of Scott D. Owens) at ¶30; *Appendix 5* (Decl. of Bret Lusskin) at ¶12; and *Appendix 6* (Decl. of Michael S. Hilicki) at ¶7.

[6] *See Appendix 4* (Decl. of Scott D. Owens) at ¶30; *Appendix 5* (Decl. of Bret Lusskin) at ¶13; *Appendix 6* (Decl. of Michael S. Hilicki) at ¶10.

settlement – believed to be one of the largest cash FACTA settlements in history – Plaintiff expects no significant opposition to it by any class member. In its totality, this settlement is well within the range of approval and should be preliminarily approved by this Court.

## VI. THE PROPOSED CLASS NOTICE SHOULD BE APPROVED

The Agreement includes notice procedures designed to directly reach each member of the class as is practicable. *Appendix 1* at §IV.B. First, after entry of the Preliminary Settlement Approval Order, the Claims Administrator shall cause a notice (*Appendix 1* at Exhibit B) to be sent via regular mail to class members based on Godiva's billing name and address records, to advise them about the settlement and direct them to the Website where they can obtain additional information about it, including how to comment on the settlement or opt out of it, and how to make a claim. *Appendix 1* at §IV.B.1.

Second, the Claims Administrator will establish a settlement website that supplements the mail notice with comprehensive information about the settlement (*Appendix 1* at Exhibit C), a claim form class members can use to make a claim and a procedure for filing claims online (*Appendix 1* at Exhibit E), plus a copy of the Complaint, the Settlement Agreement, the Preliminary Settlement Approval Order for the class members to review. *Appendix 1* at §IV.B.2. The notice posted on the site provides settlement class members with a detailed explanation of their options, to enable them to make an informed decision. The Settlement Administrator will also establish and oversee a toll-free phone number for Settlement Class Members to contact to ask questions. *Appendix 1* at §IV.B.2 and Exhibit C, p.3. A mailed notice combined with a Website for further information is a commonly approved method for giving notice in class settlements. *See*, *e.g.*, *See Greco v. Ginn Dev. Co., LLC*, 2015 U.S. App. LEXIS 20867 at *15 (11th Cir. Dec. 2, 2015) (unpublished) ("all material facts were available to class members

17

because a full copy of the settlement agreement, and the release, were available on a website referenced in the Notice."); *Soto v. The Gallup Organization, Inc.*, No. 13-cv-61747-MGC (S.D. Fla. June 6, 2015) at ECF No. 79, ¶9; *Guarisma v. Adcahb Medical Coverages, Inc.*, No. 13-cv-21016-FAM (S.D. Fla. Mar. 2, 2015) at ECF No. 91, ¶11; *De Los Santos v. Millward Brown, Inc.*, No. 13-cv-80670-DPG (S.D. Fla. Feb. 10, 2015) at ECF No. 77, ¶ 11; *Curry v. AvMed, Inc.*, No. 10-cv-24513, 2014 U.S. Dist. LEXIS 48485 at *3 (S.D. Fla. Feb. 28, 2014); *Collins v. Erin Capital Management, LLC*, No. 12-cv-22839-CMA (S.D. Fla. Dec. 20, 2013) at ECF No. 133, ¶ 5; *Cooper v. Nelnet, Inc.*, 14-cv-00314-RBD (M.D. Fla. Feb. 26, 2015) at ECF No. 72, ¶10; and *Legg v. E-Z Rent A Car, Inc.*, No. 14-cv-01716-PGB (M.D. Fla. May 28, 2015) at ECF No. 64, ¶10.

Third, Godiva will serve upon the Attorneys General of each of the fifty United States and the Attorney General of the United States notice of the proposed settlement, pursuant to 28 U.S.C. § 1715, within ten (10) days after the proposed settlement is filed. *See Appendix 1* at §IV.B.5. In short, the notice plan here should be approved.

## VII. THE SELECTION OF A CY PRES RECIPIENT

The Settlement Agreement aims to distribute all proceeds available to pay claims to Settlement Class Members, either in response to claims made or as part of a second distribution of any funds remaining from settlement checks that are uncashed 120 days after the checks' expiration dates. However, if any funds still remain after the second distribution and/or the amount of funds remaining is too insubstantial to feasibly distribute to the Settlement Class Members, the Parties will jointly petition the Court for a cy pres distribution to a charity or charities, and each Party will recommend and advocate for a charity as a cy pres recipient. Dr. Muransky proposes the National Consumer Law Center, Inc., a not-for-profit organization, and

Godiva proposes Save the Children Federation, Inc., a Connecticut not-for-profit corporation. *Appendix 1* at §III.D.iii. The notice to the Settlement Class Members identify these charities.

## VIII. THE MATTER SHOULD BE SET FOR A FAIRNESS HEARING

After adequate notice is given to the Settlement Class and the government as required by 28 U.S.C. §1715, a fairness hearing should be held for the Court to confirm that the Settlement is fair, reasonable and adequate. *See*, *e.g.*, *Bennett*, 737 F.2d at 985; *Torres v. Bank of Am. (In re Checking Account)*, 830 F. Supp. 2d 1330, 1336 (S.D. Fla. 2011).

## IX. DEFENDANT DOES NOT OBJECT TO THE RELIEF REQUESTED

Godiva supports the relief requested by Plaintiff in this motion. Godiva agreed to the terms of the settlement and, although Godiva did not formally join this motion, Plaintiff provided Godiva with a draft before filing it, and Godiva did not object to it.

## X. SUGGESTED SCHEDULE

Based on the events that need to take place between the granting of preliminary approval and final approval that are described in the proposed preliminary approval order (Exhibit A to *Appendix 1*), Plaintiff proposes the following general scheduling outline for evaluating and concluding this settlement:

| _____, 2016 [45 days after the Preliminary Approval Date] | Deadline for notice to be provided to the Class members |
| --- | --- |
| _____, 2016 [105 days after the Preliminary Approval] | Deadline for Class members to file any objection, file any notice of their or their counsel's intent to appear at the fairness hearing and the bases therefor,  or to submit requests for exclusion (Opt-Out and Objection Deadline) |
| _____, 2016 [105 days after Preliminary Approval] | Deadline for Settlement Class Members to Submit a Claim Form (Claim Period) |
| _____, 2016 [30 days after deadline for | Deadline for Parties to file the following: (1)  List of persons who made timely and proper requests |

19

| | |
|---|---|
| claims/objections/opt outs but at least not less than 14 days before the Fairness Hearing] | for exclusion (under seal); <br> (2)  Proof of Class Notice; and <br> (3)  Motion and memorandum in support of final approval and related matter, including responses to any objections. |
| **_____, 2016 at _____ _.m.** <br> [No earlier than 149 days after the Preliminary Approval] | Fairness Hearing |

20

## XI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court (1) certify the proposed settlement class, (2) appoint Dr. Muransky as class representative, (3) appoint Dr. Muransky's attorneys as class counsel, (4) preliminarily approve the proposed settlement and notice plan, and set the matter for a fairness hearing, by entering the proposed order attached as Exhibit A to *Appendix 1*, and (5) grant such other and further relief as deemed just.

Respectfully Submitted,

*/s/ Scott D. Owens*                                        Michael S. Hilicki
SCOTT D. OWENS, Esq.                              Keogh Law, LTD.
3800 S. Ocean Drive, Ste. 235                    55 W. Monroe St., Ste. 3390
Hollywood, FL 33019                                 Chicago, Il 60603
Tel: 954-589-0588                                      312.374.3403 (Direct)
Fax: 954-337-0666                                      312.726.1092 (Main)
scott@scottdowens.com                             312.726.1093 (Fax)
                                                              mhilicki@KeoghLaw.com
BRET L. LUSSKIN, Esq.                             www.KeoghLaw.com
20803 Biscayne Blvd., Suite 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

*Attorneys for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that January 22, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Scott D. Owens*
        Scott D. Owens, Esq.