# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 0:15-CV-60716-WPD

Dr. David S. Muransky, individually and
on behalf of all others similarly situated,

Plaintiff,

v.

Godiva Chocolatier, Inc.,

Defendant.

---

## OBJECTION TO PROPOSED SETTLEMENT AND
## NOTICE OF INTENT TO APPEAR

### I.  NOTICE OF INTENT TO APPEAR AND ARGUE

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 21, 2016 at 2:00 p.m., or
as soon thereafter as the matter can be heard in Courtroom 205F of the
above-entitled court located at 299 East Broward Blvd., Ft. Lauderdale,
Florida  33301, class member Eric Alan Isaacson ("Isaacson" or "Objector"),

1

by and through his counsel,  intends to appear and offer argument at the final approval hearing.

## II. PROOF OF CLAIM

Objector Isaacson is a member of the Settlement Class as set forth in the Settlement Agreement at page 3, § I.   Isaacson timely submitted a claim form, a true and correct copy of which is filed herewith.  *See* Exhibit 1.  His assigned claim number is 10131847901.

## III.  INTRODUCTION

In approving a settlement, a "[d]istrict [c]ourt must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); see also Fed. R. Civ. P. 23(e)(2).   The Court must "undertake an analysis of the facts and the law relevant to the proposed compromise" and "support [its] conclusions by memorandum opinion or otherwise in the record."  *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  The burden of proving the fairness of a settlement rests squarely on its proponents.  *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983).  *See* Herbert B. Newberg & Alba Conte, 2 Newberg on Class Actions § 11.42 (3d ed. 1992); Moore's Federal Practice § 23.80 [4] (2d ed. 1987); *see also Williams v. Ryan*, 78 F.R.D. 364, 369 (1978).

## IV.  ARGUMENT

## A.    The Court Cannot Presently Approve the Contemplated Attorneys' Fees

Class counsel appears to be requesting one third of the $6,300,000 common fund.[1]  But counsel have yet to file papers setting forth the basis for the fee application.  By the Court's order, their motion for attorneys' fees is not due until September 7, 2016[2], which is fifteen days *after* the August 23, 2016 deadline for filing objections to the proposed settlement and fee application.

Requiring objections to be filed before the motions for final settlement and approval and attorneys' fees are due violates the notice provisions of Rule 23 and deprives class members of their fundamental right to due process of law.  *See* U.S. Const. amend. V (guaranteeing due process of law); Fed. R. Civ. P. 23(e), (h) (requiring reasonable notice be directed to class members before the court may approve a class-action settlement or attorneys' fee award).  Rule 23 specifically requires the district court, before approving a class-action settlement, to "'direct notice in a reasonable manner to all class members who would be bound by the

---

[1] Notice to Class Members at 3, ¶ 7
[2] Order Granting Preliminary Approval, Doc. 40 at 10, ¶ 13 ("At least two weeks before the Fairness Hearing, Class Counsel shall file with the Court: (i) any memoranda or other materials in support of final approval of the Agreement and Class Settlement; and (ii) any Fee Petition.")

proposal,'" such that "'[a]ny class member may object to the proposal if it requires court approval under this subdivision (e).'" *Juris v. Inamed Corp.,* 685 F. 3d 1294, 1307 n.10 (11th Cir. 2012); *see In re CP Ships Ltd. Securities Litigation,* 578 F. 3d 1306, 1317 (11th Cir. 2009) (same); *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 181 (3d Cir. 2013) (same); *Sullivan v. DB Investments, Inc.,* 667 F. 3d 273, 338 n.8 (3d Cir. 2011) (quoting Fed. R. Civ. P. 23(e)); *UAW v. General Motors Corp.,* 497 F. 3d 615, 629 (6th Cir. 2007) (same); *Guzman v. Consumer Law Group,* No. 1:2001-cv-00187-JRH, slip op. at pp. 1, 4 (S.D. Ga. May 11, 2016) (same).

Rule 23(h) similarly requires that "notice of motions requesting attorneys' fees for class counsel must be 'directed to class members in a reasonable manner.'" *In re Volkswagen and Audi Warranty Extension,* 692 F.3d 4, 10 n.5 (1st Cir. 2012) (quoting Fed. R. Civ. P. 23(h)); *see Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting Rule 23(h)); *In re Enron Corp. Securities,* 586 F. Supp. 2d 732, 744 (S.D. Tex. 2008) (same); *In re Excess Value Ins. Coverage Litig.,* 598 F. Supp. 2d 380, 391 (S.D.N.Y. 2005) (same).  Honoring these provisions is critical to realizing the due process of law that the Fifth Amendment protects.  *See Eisen v. Carlisle & Jacquelin,* 417 U. S. 156, 174-75 (1974) ("notice and an opportunity to be heard [are] fundamental requisites of the

constitutional guarantee of procedural due process"); *Hansberry v. Lee,* 311 US 32, 40 (1940) ("notice and opportunity to be heard are requisite to the due process which the Constitution prescribes").  Here, both Rule 23 and fundamental due process have been violated because objections must be submitted before the motions for settlement approval and attorneys' fees will be filed.

**B.     The Court Should Consider Counsel's Lodestar in Determining a Reasonable Fee**

The effect of the settlement as presently structured appears primarily to provide class counsel with greater compensation than if they had taken the case to trial and won.   This divergence in fee structure creates a moral hazard, for it makes plaintiffs' attorneys prefer settlement rather than trial in fee-shifting cases, and may lead them to settle valuable cases for a lower amount per plaintiff than if they tried the cases.  *See* Richard A. Posner, *Economic Analysis of Law* 627 (Aspen 5th ed. 1998) (stating that "[the lawyer for the class will be tempted to offer to settle with the defendant for a small judgment and a large legal fee, and such an offer will be attractive to the defendant, provided the sum of the two figures is less than the defendant's net expected loss from going to trial").

The Supreme Court's "common-fund" or "equitable-fund" cases have involved fees calculated and assessed in a variety of ways. The seminal common-fund decision, *Trustees v. Greenough*, 105 U.S. 527 (1882), awarded itemized attorneys' fees actually incurred and paid for specific tasks, without any kind of enhancement or multiplier. *See Greenough*, Transcript of Record at 711-23, 770-78 (original) 228-32, 247-56 (print). Two subsequent decisions, *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885), and *United States v. Equitable Trust Co.,* 283 U.S. 738, 746-47 (1931), involved percent-of-fund awards – with the Supreme Court in both cases slashing unreasonably high 10% fee awards to a more reasonable 5% of the recovered fund. In *Sprague v. Ticonic National Bank,* 307 U.S. 161 (1939), the common-fund award appears again to have been for fees actually incurred and paid for specific tasks just as in *Greenough*, for the record on remand in *Sprague* reveals that the petition in that case sought reimbursement only for fees actually billed by, and paid to, the lawyers. *See Sprague v. Ticonic Nat'l Bank,* 28 F.Supp. 229, 231 (D. Me. 1939), *aff'd in relevant part and rev'd in part on other grounds,* 110 F.2d 174, 178 (1st Cir. 1940) ("The decree of the District Court is affirmed insofar as it allows the original petition for reimbursement in the amount of $1,214.51."). Finally, in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478

6

(1980), the Supreme Court mandated a common-fund fee award, which the district court on remand honored the Supreme Court's mandate by employing the lodestar methodology to calculate fees. *See Van Gemert v. Boeing,* 516 F. Supp. 412, 414, 418 (S.D.N.Y. 1981) (employing lodestar methodology rather than percent-of-fund to calculate attorneys' fees: "'The starting point of every fee award . . . must be a calculation of the attorney[s'] services in terms of the time [they have] expended on the case.'") (quoting *City of Detroit v. Grinnell,* 495 F.2d 448, 470 (2d Cir. 1974)).

In light of the foregoing precedents, most circuits have concluded that district courts have discretion to choose between the lodestar methodology and percent-of-fund methodology in awarding attorneys' fees. *See, e.g., Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 44-45 (2d Cir. 2000); *In re WPPSS Litig.,* 19 F.3d 1291, 1295 (9th Cir. 1994); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991). Decisions of the Eleventh Circuit and the District of Columbia Circuit, on the other hand, appear to mandate percentage fee awards in all common-fund cases. *See Camden I Condominium Ass'n,* 946 F.2d 768, 773 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala,* 1 F. 3d 1261, 1265-71 (D.C. Cir. 1993).

Objector Isaacson respectfully submits that *Camden I* should no longer be deemed controlling law in light of the Supreme Court's intervening decision in *Perdue v. Kenny A. ex rel. Winn,* 130 S. Ct. 1662 (2010), which defines reasonable fee awards in terms of lodestar, and which repudiates the so-called "*Johnson* factors," *see id.* at 1672, that *Camden I* holds should be "used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I,* 946 F.3d at 775.

Alternatively, Objector Isaacson respectfully submits if this Court is to award a percent-of-fund fee award, the percentage awarded should be in line with the 5% fees approved by the Supreme Court in both *Pettus* and *Equitable Trust.* If ten percent fee awards were deemed excessive in those cases, then the 33⅓% fee award sought here surely is out of line with these controlling Supreme Court precedents on reasonable percentages for common-fund fee awards. In fact, economies of scale present in class actions such as this warrant a ***downward*** adjustment from the 5% fee deemed appropriate in *Pettus* and *Equitable Trust.*

Isaacson submits that awarding a percentage far below 33⅓% also may be necessary in order to avoid the moral hazard created when lawyers expect to be paid more to compromise claims for a fraction of their value than they could obtain had they actually won the case. That could happen if

a percentage fee award compensates plaintiffs' lawyers at what amounts to a higher hourly rate than they could receive under a fee shifting statute. Under a fee shifting statute such as FACTA,[3] class counsel could expect only to receive their reasonable hourly rates if they prevail at trial. *See Perdue,* 130 S. Ct. at 1675- 1677 .   When claims are subject to a fee-shifting statute, class counsel cannot seek additional compensation from the common fund created by a judgment against the defendants. *See Pierce v. Visteon Corp.,* 791 F.3d 782, 787 (7th Cir. 2015); *Haggart v. Woodley,* 809 F.3d 1336, 1354 -1359 (Fed. Cir. 2016).  Neither should they be permitted to recover more from the class, whose interests they are supposed to represent, when they have settled the claims.

The Third Circuit in *Brytus v. Spang & Co.,* 203 F.3d 238 (3d Cir. 2000), for example, rejected lawyers' contentions that they should receive a higher fee award from a common fund than the lodestar award that could be assessed against defendants actually found liable.  Observing that class counsel might seek to settle a matter in order to obtain higher fees than the lodestar award available under a fee-shifting statute, the court held that settlements and fee awards "must be carefully monitored to avoid conflicts of interest." *Id.* at 246.  Given "the possibility that in some cases counsel for a class of plaintiffs may receive a higher fee award upon settlement than

---

[3] 15 U.S.C. § 1681n(a)(3)

they would have received had the case proceeded to judgment," the Third Circuit "directed the district courts to subject all fee applications in class action settlements to 'thorough judicial review,'" under which any "disparity between fees resulting from application of the different methods of calculation will be minimized if the district courts cross-check the fee from the percentage of recovery method against that from the lodestar method to assure that the percentage awarded does not create an unreasonable hourly fee." *Id.* at 247 (citations omitted).

Class counsel who enter a settlement shifting attorneys' fees from potentially culpable defendants to clearly non-culpable class members should not be permitted to charge the class they purport to represent an even higher fee than could be assessed against defendants found to have violated the law.  "For the court to award plaintiffs' counsel a percentage of the settlement when he might only have been entitled to an hourly — and therefore possibly lower — fee had he obtained a favorable judgment, would raise the spectre of a significant conflict of interest between counsel and the absent class members in the negotiation of such a settlement." *Bowen v. Southtrust Bank of Alabama,* 760 F. Supp. 889, 896 (M.D. Ala. 1991).

Thus, any percentage fee award should be subjected to a strict lodestar cross-check, in order to eliminate any untoward incentives by

10

reducing the percentage awarded to a level that it does not significantly exceed the lodestar.

**C.      The Court Should Consider Whether Lead Plaintiff is an Adequate Class Representative**

From records readily available on the Internet, it appears that a Dr. David S. Muransky of Broward County, Florida, once pleaded guilty to several counts of Medicare fraud and was suspended for five years from participating in Medicare and Medicaid programs. [4]  If this happens by coincidence to be the same Dr. David S. Muransky who is acting as class representative in this matter, one must hope the conviction has been disclosed to the Court for its full consideration. For fraud and other crimes involving dishonesty are relevant in determining adequacy of representation under Rule 23.

---

[4]      Googling "Dr. David S. Muransky" produces links to Health & Human Services rulings indicating that on March 31, 1989, United States District Court for the Southern District of Florida entered a judgment recording that Florida chiropractor David S. Muransky, D.C. pleaded guilty to four counts of unlawfully devising a scheme and artifice to defraud and to obtain money from the Medicare program by means of false and fraudulent pretenses, representations, and promises.  The HHS rulings are available online:  *In the Case of David S. Muransky, D.C. v. The Inspector General,* No. C-229, Decision CR 95 (HHS Departmental Appeals Board, Civ. Rem. Div., Sept. 5, 1990) [online: http://www.hhs.gov/dab/decisions/civildecisions/1990/cr095.PDF (last visited Aug. 20, 2016)], *aff'd, David S. Muransky, D.C.,* DAB No. 1227 (HHS Departmental Appeals Board, App. Div., Feb. 13, 1991) [online: http://www.hhs.gov/dab/decisions/dab1227.html (last visited Aug. 20, 2016).

11

Courts often decline to appoint a class representative with a prior felony conviction for fraud or similar crimes of dishonesty. *E.g.*, *Schleicher v. Wendt*, No. 1:02-CV-1332-DFH-TAB, 2009 WL 761157, at *3 (S.D. Ind. Mar. 20, 2009), *aff'd*, 618 F.3d 679 (7th Cir. 2010) (collecting cases and concluding: "This court is not willing to appoint as a class representative a person with a criminal conviction for fraud."). The *Schleicher* district court rebuffed arguments that the conviction had been expunged: "That fact offers little comfort, at least without much more detail about the reasons for it. There is no indication here that it was a matter of actual innocence. This court will not force class members to rely on a representative who has admitted to fraud." *Id.*; *see also Xianglin Shi v. Sina Corp.*, No. 05 CIV. 2154 (NRB), 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005) (citing cases and concluding that "[c]onvictions of fraud or other forms of dishonesty undermine the qualifications of a potential class representative. For this reason, numerous courts have rejected the appointment of convicted felons as class representatives."); *In re Sonus Networks, Inc. Sec. Litig.*, 229 F.R.D. 339 (D. Mass. 2005) (decertifying class because plaintiff's counsel was aware of named plaintiff's criminal record but failed to disclose it).

There is no *per se* rule that criminal convictions must always disqualify a class representative, not if record evidence demonstrates that

the individual has been fully rehabilitated and can now be trusted to represent absent class members. *See Meyer v. Portfolio Recovery Associates, LLC,* 707 F.3d 1036, 1042 (9th Cir.2012) (affirming adequacy of class representative despite class representative's prior convictions for "offenses involving dishonesty" where convictions were more than ten years old and class representative "had since taken positive steps in his life, including [graduating] from the University of California").

Still, a would-be class representative's criminal conviction must be disclosed to the court overseeing a class action, so that the court may consider the conviction and any pertinent mitigating facts bearing on adequacy of representation. In *Hartsell v. Source Media*, No. CIV.A.98-CV-1980-M, 2003 WL 21245989, (N.D. Tex. Mar. 31, 2003), Judge Lynn of the Northern District of Texas explained that class counsel have a fiduciary duty to the class, and that

> recognition of that fiduciary duty to the class as a whole should compel recognition of a serious potential problem for the class, when a class representative, whose duties obviously require acting on behalf of absent persons, is convicted of a felony involving fraud. In this Court's view, the duty of candor to the Court mandates counsel to advise the Court that facts questioning the adequacy and typicality of a class representative previously appointed by the Court have come to counsel's attention.

*Hartsell*, 2003 WL 21245989 at *6.

13

Class counsel are not entitled to decide for themselves that the information concerning a past conviction is immaterial when a case settles, as "it is for the Court, and not counsel, to determine what impact [the representative's] role would have on final approval." *Id.* at *6.   As Judge Lynn emphasized in *Hartsell,* "the settlement is not consummated until the Court approves it.  The fact that a person convicted of mail fraud recommends it to the Court is certainly not persuasive." *Id.*

## D.   The Proposed "Incentive Award" is Excessive and Precluded by Binding Supreme Court Authority

In addition to an award of attorneys' fees, the plaintiff seeks a special individual award of $10,000.00.[5]   The so-called "Incentive Award" is to be deducted from the settlement fund, along with attorneys' fees, prior to calculation or distribution of awards to class members.[6]

"Since the decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885)," American courts, both state and federal, have consistently recognized "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

---

[5] Notice to Class Members at 3, ¶ 7
[6] Settlement Agreement § III(D), pp. 9-10

14

Though a class representative's reasonable attorneys' fees may thus be reimbursed, the common-fund doctrine of *Greenough* and *Pettus* flatly prohibits any award for services that the class representative itself renders: "The reasons which apply to his expenditures incurred in carrying on the suit, and reclaiming the property subject to the trust, do not apply to his personal services and private expenses." *Greenough,* 105 U.S. at 537. "'It would present,' said Mr. Justice Bradley, speaking for the court, 'too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interests of creditors, and that, perhaps, only to a small amount, if they could calculate upon the allowance of a salary for their time and having all their private expenses paid.'" *Pettus,* 113 U.S. at 122 (quoting *Greenough,* 105 U.S. at 537-38); *see Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1207-08 (6th Cir. 1992) (applying *Greenough's* distinction between litigation expenses on the one hand, and "personal services and private expenses," on the other); *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939) (under *Greenough* and *Pettus* claimants interested in the fund itself can receive "no compensation for personal services"); *Gortat v. Capala Bros.,* 949 F. Supp. 2d 374, 379-80 (E.D.N.Y. 2013) (following *Greenough).*

15

The incentive award also is proscribed by Rule 23 principles. "Generally, when a person 'join[s] in bringing [an] action as a class action . . . he has disclaimed any right to a preferred position in the settlement.'" *Staton v. Boeing Co.,* 327 F.3d 938, 976 (quoting *Officers for Justice v. Civil Service Commission of the City and County of San Francisco,* 688 F.2d 615, 632 (9th Cir.1982); *accord, e.g., Bailey v. Great Lakes Canning, Inc.,* 908 F.2d 38, 42 (6th Cir. 1990); *Kincade v. General Tire Rubber Co.,* 635 F.2d 501, 506 (5th Cir. 1981); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1175 (4th Cir. 1975). "Were that not the case, there would be considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Staton,* 327 F.3d at 976.

Where special side payments or incentive awards significantly exceed what absent class members can expect upon settlement approval they create "a patent divergence of interests between the named representatives and the class." *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 959 (9th Cir. 2009); *see also Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir. 2013). "Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may

be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard.'" *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp. 713, 720-21 (E.D.N.Y. 1989)).

Courts in this District have occasionally approved compensation paid to class representatives for services performed. *See, e.g., Pinto v. Princess Cruise Lines, Ltd.,* 513 F.Supp.2d 1334 (S.D. Fla. 2007); *see also, Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185 (S.D. Fla., 2006) (1.3% of settlement fund to be divided among class members). It is unlikely those courts realized such compensation might violate Supreme Court pronouncements. "To the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design." *Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 722 (6th Cir. 2013). Additionally, the compensation in this case is hardly modest; it is many times what absent class members would receive from the settlement. Thus, there is a "patent divergence of interests between the named representative and the class." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir.2013)

Beginning around 1990, "awards for representative plaintiffs began to find readier acceptance," and orders "approving incentive awards

proliferated" were within a decade thought "'routine'" in some district courts.  Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 U.C.L.A. L. REV. 1303,1310-11 & n.21 (2006).   The Seventh Circuit approved of them in *In re Continental Illinois Sec. Litig.*, 962 F2d 566, 571-72 (7th Cir. 1992) (dictum), overlooking the Supreme Court's "seemingly categorical rejection of recovery for the plaintiff's personal expenses." ALAN HIRSCH & DIANE SHEEHEY, AWARDING ATTORNEYS' FEES AND MANAGING FEE LITIGATION 80 (Federal Judicial Center, 2d ed. 2005). Other courts have joined the Seventh in endorsing such awards, none of them acknowledging the stark conflict with *Greenough* and *Pettus. See, e.g., Staton v. Boeing Co.*, 3  27 F.3d 938, 975-77 (9th Cir. 2003).

There is no statutory, procedural, or equitable basis to support plaintiff's request and plaintiff did not allege that he was seeking an incentive award in the First Amended Complaint.  But even if plaintiff were eligible for an "incentive" award in this case, he has not demonstrated that his "services" warrant a $10,000 payment.  Courts have required that plaintiffs "must justify an incentive award through 'evidence demonstrating the quality of plaintiff's representative service'..." *Billinghausen v. Tractor Supply Co.*, 306 F.D.R. 245, 266 (N.D. Cal. 2015); *see also Continental*

*Illinois Securities Litigation, Matter of*, 962 F.2d 566 (7th Cir. 1992).
Moreover, any award should not be significantly higher than the amount
recovered by the individual class members. *Willner v. Manpower, Inc.*,
2015 U.S. Dist. LEXIS 80967 *27-30 (E.D. Cal. 2015) (reducing a stipulated
service award in consideration of "the proportionality between the incentive
payment and the range of class members' settlement awards"); *see also*
*Golba v. Dick's Sporting Goods*, 238 Cal. App. 4th 1251, 1270-71 (2015)
(reducing a service award of $3,500 to $500 where class members were to
receive between $10 and $30 each).   Plaintiff's request for an incentive
award should be denied.


Date:  August 21, 2016                        Respectfully submitted,


                                        s/ John W. Davis
                                _____
                                        John W. Davis (FL Bar No. 193763)
                                        john@johnwdavis.com
                                        Law Office of John W. Davis
                                        501 W. Broadway, Suite 800
                                        San Diego, CA  92101
                                        Telephone:  (619) 400-4870
                                        Facsimile:  (619) 342-7170

## CERTIFICATE OF SERVICE

### CASE NO. 0:15-CV-60716-WPD

I hereby certify that on August 21, 2016, I filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

Date:  August 21, 2016

                                          s/ John W. Davis
                                          John W. Davis