## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| DR. DAVID MURANSKY, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 0:15-cv-60716-WPD |
| | ) | (Dimitrouleas/Snow) |
| GODIVA CHOCOLATIER, INC. | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

### OBJECTION OF JAMES H. PRICE

**NOW COMES** James H. Price ("Price")[1], by and through his undersigned counsel, and submits this objection to the proposed settlement, Class Counsel's request for attorney's fees, and the incentive award for the named Plaintiff:

W. Allen McDonald, Esq.
249 N. Peters Road
Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800

*Counsel for James H. Price*

---

[1]Price received a postcard notice from the claims administrator in July 2016.  [Exhibit 1]. Price is a citizen of the United States and a resident of the State of Tennessee.  His address is 249 North Peters Rd., Suite 101, Knoxville, TN  37923.  His telephone number is (865) 246-0800. Price timely submitted a claim on August 15, 2016 (Claim Confirmation No. 10231621101). [Exhibit 2].  Price is not a person or entity excluded from the Class.

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     LITIGATION HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.    THIS SETTLEMENT DEMANDS STRICTER SCRUTINY.. . . . . . . . . . . . . . . . . . . . 7

IV.     SPECIFIC OBJECTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

        A.    Notice Violated Procedural Due Process and Rule 23(h) By Failing To
              Provide Class Members Necessary Information Regarding Attorney's Fees
              To Permit Them to Assess Their Legal Options. . . . . . . . . . . . . . . . . . . . . . . . . 8

        B.    Class Counsel's Fee Request Is Unreasonable and Excessive.. . . . . . . . . . . . . . 12

              1.    The Work Performed by Class Counsel Does Not Warrant a
                    $2.1 Million Fee.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

              2.    The Court Should Apply the Lodestar Method to Arrive at
                    Class Counsel's Attorney's Fee. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        C.    As a Result of Class Counsel's Modest Efforts, This Court Lacks Sufficient
              Information to Properly Assess and Evaluate the Proposed Settlement.. . . . . . . 16

        D.    Due to His Limited Efforts, the Named Plaintiff Is Not Entitled to a $10,000
              Incentive Award.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V.      NOTICE OF APPEARANCE, INTENTION TO APPEAR, AND REQUEST
        TO BE HEARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## I.   PRELIMINARY STATEMENT

> *"[T]here is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own."*[2]

Plaintiff filed this case on April 6, 2015.  Less than six months later, before the first deposition was taken and before a single formal discovery document was produced, Plaintiff settled the case for himself and purportedly 342,000 others for $6.3 Million.  Meanwhile, Plaintiff's lawyers have made it known they intend to seek one-third of the Class's gross recovery ($2.1 Million) as their attorney's fees and a $10,000 incentive award for the named Plaintiff.  To clear their way to those substantial sums, Class Counsel made it impossible for Class members to meaningfully, much less sufficiently, assess their legal rights in this case.  By protecting their own interests, Plaintiff and Class Counsel abandoned their duty to adequately represent Class members.

On its face, the proposed settlement – totaling $6.3 million and offering each Class member an estimated $235 in benefits – appeared to hold promise for Class members.  The hope for a worthwhile settlement ended, however, when Class members perused the postcard notice they received in the mail and ultimately learned that Class Counsel did little work in the case, settled quickly without adequate information to evaluate the legal claims, and produced a settlement not only rich for themselves, but disproportionately benefitting the named Plaintiff, who did little more than sign a declaration supporting his $10,000 award.  The proposed settlement, Class Counsel's outlandish fee request, and the similarly excessive request for a $10,000 incentive award for the named Plaintiff should all be rejected.

---

[2]*In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013).

-1-

*First*, what Class members found when they read the postcard notice was that Class Counsel would be seeking $2.1 Million, fully one-third of the gross settlement fund,  and they would do so without permitting Class members to assess the reasonableness or propriety of their request before the mandatory August 23, 2016 deadline for exclusions and objections.  In fact, Class members discovered that Class Counsel had inexplicably manipulated the settlement schedule to insure their fee petition would not even be due until fifteen (15) days after that deadline had passed.

This process not only violates Federal Rule of Civil Procedure 23(h)[3] but also denies Class members procedural due process.  After all, the Eleventh Circuit has interpreted Rule 23 "to require that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action.'"  *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).  Here, Class members are handicapped by not knowing the factual or legal rationales to be offered in support of Class Counsel's fee request.[4]  As demonstrated below, no fewer than three Circuit Courts of Appeal, the

---

[3]The relevant portions of Rule 23(h) provide:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets.  Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

> (2) A class member, or a party from whom payment is sought, may object to the motion.

*See also* Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion").

[4]*See also* 5 *Moore's Federal Practice* § 23.124[4] (3d ed. 2009) ("[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to

-2-

Third, Seventh, and the Ninth Circuits, have concluded that the process created here by Class Counsel and adopted by the Court violates Rule 23(h), depriving Class members of reasonable information with which they might assess their legal rights.

To be certain, the Rule 23(e) objection process seriously malfunctioned in this case, and that is reason enough to reject the settlement. Class members should have adequate information to properly consider whether an objection is warranted. Simply providing Class members, as Class Counsel did here, with an expected fee request expressed in percentage terms without any concrete information concerning the time and effort expended by counsel, as well as other information pertinent to Class members' ability to analyze the fee request, deprives Class members of "reasonable notice" under Rule 23(h) and requires that the proposed settlement be rejected.

*Second*, initially, the $2.1 million fee request did not appear – standing alone – to be exorbitant, as innumerable common fund cases have resulted in percentage-of-the-fund awards in that range. However, once the Court's docket was examined, it was evident that the case was not aggressively litigated by Class Counsel. Moreover, Class Counsel did very little work to warrant such a fee, settling the case less than six months after filing it, failing to depose a single witness or to engage in any formal or even informal or confirmatory discovery, failing to engage in any class certification or summary judgment proceedings, or even discovery motion practice, with almost as many docket entries related to the issue of settlement as to any other matter. In the end, the settlement disproportionately benefits Class Counsel, who request fees at a Bentley rate, not a Cadillac rate. The result is that the fee to be requested by Class Counsel is terrifically excessive in view of the trifling amount of actual work completed.

---

review all of the materials that may have been submitted in support of the motion . . . .")

Of course, it cannot be disputed that a lawyer who recovers a common fund for a class he or she represents is entitled to reasonable attorney's fees and expenses prior to the distribution of the balance to the class. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). However, an award of $2.1 million to Class Counsel here would vastly over-compensate them, much to the detriment of the Class members whose interests they purport to represent. Accordingly, if the Court determines to award Class Counsel a percentage-of-the-fund, a fee not exceeding 25% would satisfactorily compensate Class Counsel for their efforts in this case. Indeed, empirical studies support such an award. Even then, however, the Court should perform a lodestar cross-check to appropriately assess a percentage award.

Moreover, because the case was brought under the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), the Supreme Court mandates that the Court consider the attributes of the lodestar over a percentage-of-the-fund calculation. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). This method, as opposed to the percentage-of-the-fund approach, would more likely provide adequate compensation to Class Counsel in this case. Even if, arguendo, the Court considers and then rejects the lodestar method, the circumstances of this case nevertheless merit a lodestar cross-check. *See Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (acknowledging use of lodestar method as a cross-check of the percentage-of-the-fund approach). Regardless, if the settlement is approved, Class Counsel's fee should be significantly reduced.

*Third*, there is nothing before this Court – other than numerous self-serving conclusory observations by Class Counsel in their respective declarations – to support Class Counsel's claim that they had sufficient information available to them to sufficiently assess the value of Class

members' claims.  Not only is the record devoid of any indication that the parties engaged in any formal discovery, but nothing in the record indicates that Class Counsel obtained confirmatory discovery in order to assess the settlement.  Thus, the proposed settlement should be rejected for this reason as well.

*Fourth*, while Class Counsel seek a $10,000 incentive award for the named Plaintiff, there is no evidence before the Court that Dr. Muransky was an unwilling participant in this case or that he needed to be incentivized to file suit.  Nor is there any evidence suggesting that Dr. Muransky faced any risks or burdens in undertaking the litigation.  To the contrary, his contribution to the litigation appears to have been extremely limited, *i.e.*, he did not have to respond to discovery, was not deposed, did not have to execute affidavits or declarations for class certification or summary judgment purposes,[5] and did not have to testify.  For these reasons, the Court should ensure that the $10,000 is not, in fact, merely a bounty, and require Class Counsel to provide specific documentation – in the manner of attorney time sheets – of the time actually spent on the case by Dr. Muransky.[6] Under the existing circumstances, however, an incentive award of $1,000 to Dr. Muransky is more than reasonable.

## II.    LITIGATION HISTORY

Plaintiff Muransky filed the first complaint in this litigation on April 6, 2015.  [Doc. 1]. Muransky's 14-page Complaint alleged that Godiva Chocolatier, Inc. ("Godiva") violated FACTA.

---

[5]Dr. Muransky did, however, submit a declaration in support of his adequacy as a class representative.  [Doc. 39-3].

[6]Otherwise, there is no basis to know whether the award is in fact a bounty, that is, "a disincentive for the [named] class members to care about the adequacy of relief afforded unnamed class members[.]"  *Shane Grp., Inc. v. Blue Cross Blue Shield*, 2016 U.S. App. LEXIS 10264, at *21 (6th Cir. Mich. 2016).

Specifically, Muransky alleged that he had made a purchase with his Visa credit card and was then "provided with an electronically printed receipt bearing the GODIVA® logo, which also displayed the last four digits of his credit card *as well as the first six digits of his account number*."  [Doc. 1, at ¶ 27].  Because FACTA prohibited Godiva from printing more than "the last 5 digits of the card number to protect persons from identity theft," and Godiva had allegedly done so knowingly and intentionally, Muransky alleged Godiva had violated FACTA.  [Doc. 1, at ¶¶ 29-30; 38].  Muransky further alleged that Godiva had FACTA violations such as he alleged had occurred at all 200 Godiva stores in the United States over the preceding 60-day period [Doc. 1, at ¶¶ 28-29] and sought certification of a proposed nationwide class of Godiva customers.  [Doc. 1, at ¶ 43].

In May 2015, Godiva moved to dismiss Muransky's complaint [Doc. 12].  In response, Muransky amended his complaint [Doc. 16], mooting Godiva's motion to dismiss.  [Doc. 18].  In June 2015, Godiva moved for dismissal of the amended complaint.  [Doc. 21].  The parties briefed Godiva's motion [Docs. 24 and 25], and in September 2015, the Court issued an order denying the motion.  [Doc. 26].   Godiva answered the amended complaint in September 2015 [Doc. 29].

The following month, the parties notified the Court that they had scheduled mediation for November 3, 2015 and successfully sought to extend deadlines to November 23, 2015, to permit them to "focus on the mediation."  [Docs. 30 and 31].  On November 20, 2015, the parties notified the Court that they had reached "a settlement in principle to settle this case on a class-wide basis." [Doc. 32].[7]  The settlement proposed that Godiva would pay $6.3 million [Doc. 39-1, at ¶ III.B] into a settlement fund, from which notice costs, claims administration costs, administrative costs, any incentive award to the named Plaintiff, and Class Counsel's attorney's fees and expenses would be

---

[7]The parties reached a settlement after a one-day mediation session.  [Doc. 40, at p. 2].

deducted. The remaining amount would used to pay the claims of as many as 342,000 class members. [Doc. 39-1, at § I]; Doc. 39-1, at § III.B]. Three days after Muransky filed his motion, the Court entered an order granting preliminary approval, directing notice to the class, and setting a hearing for final approval. [Doc. 40].

Within the 6-page notice, Class members were provided information about the proposed settlement. They were advised that Class Counsel would be seeking attorney's fees in the amount of $2.1 Million, as well as a $10,000 incentive award for the named Plaintiff. Class members had until August 23, 2016 to exclude themselves from the proposed settlement or object. However, the Preliminary Approval Order provided that Class Counsel did not even have to file their fee petition until fifteen (15) days later, on September 7, 2016. [Doc. 40, at ¶ 13].

## III.     THIS SETTLEMENT DEMANDS STRICTER SCRUTINY

When, as in this case, the Court is asked to certify a class and approve its settlement in a single proceeding, the requirements of Rule 23(a), which are intended to protect the rights of absent class members, "demand undiluted, even heightened, attention." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 259 (2d Cir. 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). The role of the district courts in evaluating proposed settlements is akin "to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002).

## IV.     SPECIFIC OBJECTIONS

Objectors serve as counterweights to a process that heavily favors settlement approval and its participants – none of whom have any interest in an adversarial debate after a settlement. It is, therefore, crucial that objectors – who monitor class counsel's conduct – have a full and fair

opportunity to participate in the settlement process.  *See e.g.*, Deborah R. Hensler, et al., *Class Action Dilemmas – Pursuing Public Goals for Private Gain,* 491-96 (Rand 2000).  And despite Class Counsel's all-too predictable disdain for Class members who "smelled a rat" when they read the postcard notice, Class members have a fundamental right to object.  *See Devlin v. Scardelletti*, 536 U.S. 1, 8-9 (2002).

### A. Notice Violated Procedural Due Process and Rule 23(h) By Failing To Provide Class Members Necessary Information Regarding Attorney's Fees To Permit Them to Assess Their Legal Options.

The standard for the adequacy of a settlement notice in a class action is measured by reasonableness.  *See* Fed. R. Civ. P. 23(e).  To satisfy due process requirements, the notice must be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  The Eleventh Circuit has interpreted Rule 23 to require that class members be given "'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action.'"  *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).

Notice to the class of its rights and responsibilities, after all, is a keystone of due process: the "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002).  As the Sixth Class recently made clear, class members cannot participate

meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record. *Shane Grp., Inc. v. Blue Cross Blue Shield*, 2016 U.S. App. LEXIS 10264, at *21 (6th Cir. 2016).

With respect to attorney's fees, Rule 23(h) allows a court to award reasonable attorneys' fees and costs in a certified class action subject to certain requirements. Under the Rule, a fee petition must be made by motion served on all parties and, when the motion is made by class counsel, notice must be "directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). Class members may then object and the court may hold a hearing. Fed. R. Civ. P. 23(h)(2)-(3). Due process and Rule 23(h) thus require that Class members have access to the factual and legal basis for Class Counsel's fee request before their Court-imposed deadline to object.

Here, Class members' deadline for objecting was August 23, 2016.[8]  Class Counsel's fee petition is not due until 15 days later, September 7, 2016. Yet, the only fee-related information made available to Class members is this snippet in the notice: "Class Counsel will ask the Court to approve payment of up to one third of the $6,300,000 Settlement Fund, which is $2,100,000, to them for attorneys' fees, plus reasonable expenses."  Thus, the entire Class of 342,000 consumers was deprived of the opportunity to learn how much time and effort Class Counsel expended in litigating the case and Class Counsel's factual and legal bases for seeking the award.  It would be an abuse of discretion to punish objectors for this process that undeniably failed to comport with Rule 23.

Exactly how Class members are supposed to meaningfully assess a not-yet filed motion – or the request – without a scintilla of information concerning the motion's factual or legal basis is

---

[8] Rule 23(h)'s plain language rightly requires that Class members be given an opportunity to object to the "motion" itself, not merely to the notice that such a motion will be filed.

addressed nowhere: not in the notice, not in the settlement agreement, not in Plaintiff's preliminary approval submissions, not in the preliminary approval order, and not on the settlement website. Simply put, every Class member was entitled to know precisely why Class Counsel believe they have earned a fee of this nature ***before*** their deadline for exercising their legal rights. Having been deprived of such information, Class members lacked a full and fair opportunity to contest the motion.

At least three Circuits have addressed the situation and would find fault with the process, including a violation of Rule 23(h). In the Seventh and Ninth Circuits, district courts had denied class members the opportunity to object to the particulars of counsel's fee request because, as is the case here, counsel were not required to file a fee petition until after the deadline for class members to object expired. By the time they were served with notice of the fee petition, it was too late for them to object. The Seventh Circuit, in *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014), *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429, 191 L. Ed. 2d 366 (2015), and the Ninth Circuit, in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010), concluded that the district courts had violated Rule 23(h). Lastly, earlier this year, the Third Circuit observed that it had "little trouble agreeing that Rule 23(h) is violated in those circumstances." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 446 (3d Cir. 2016).[9]

According to the Seventh Circuit, class members who are forced to base their objection solely on what is contained within the preliminary notice may be "handicapped by not knowing the rationale that would be offered [in counsel's motion] for the fee request." *Redman v. RadioShack*

---

[9]*And see also In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, 2015 U.S. Dist. LEXIS 154602, at *43 (D. N.H. Nov. 16, 2015) ("class counsel did not comply with Rule 23(h) simply because class members were on notice in June that counsel would seek attorneys' fees," concluding that class counsel "did not provide adequate notice of their fee motion to class members.")

*Corp.*, 768 F.3d 622, 638 (7th Cir. 2014). The Ninth Circuit explained further,

> "[a]llowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members. It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee."

*Mercury Interactive,* 618 F.3d at 994. The Court explained that its reasoning is both logical and sound, for during the fee motion stage of the proceedings,

> Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *Id.* As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is." *Id.* Included in that fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests.

*Mercury Interactive,* 618 F.3d at 994-95.[10]

In this case, the deadline for objections passed before Class Counsel filed the motion for attorney's fees. Under the notice procedure approved by the Court, Class Counsel is permitted to withhold from Class members any information about their work until September 7, 2016, 15 days after the August 23, 2016 deadline for objecting to the fee request had passed. Class members knew

---

[10]The Advisory Committee Notes to the 2003 amendments to Rule 23(h) support this reading of the rule, *see* Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion"), and further advise that, where appropriate, the court will permit an "objector discovery relevant to the objections." *Id. See also* 5 *Moore's Federal Practice* § 23.124[4] (3d ed. 2009) ("[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request").

only that a $6.3 Million settlement had been achieved, and that Class Counsel would seek a fee of one-third of the common fund. This flawed process, proposed by Class Counsel and endorsed by the Court, failed to provide Class members with key information in order to evaluate a fee request that would cost the Class millions of dollars of its recovery.

For all of this, the process afforded was unfair and failed to provide all 342,000 Class members a meaningful opportunity to object.[11] Accordingly, the Court should reject the settlement on this ground alone. Alternatively, the Court should continue the fairness hearing and, at a minimum, provide Class members with sufficient time to object to Class Counsel's fee request.

### B. Class Counsel's Fee Request Is Unreasonable and Excessive.

No one should dispute that a lawyer who recovers a common fund for a class is entitled to reasonable attorneys' fees and expenses. *See Boeing*, 444 U.S. at 478. However, the size of the award requested here would vastly over-compensate Class Counsel. What is evident, at least from a public view, is that Class Counsel did little work in this case, in an abbreviated time-span, yet plan to walk away with $2.1 Million. This sum is excessive and improperly disproportional to the benefits purportedly earmarked for Class members.

### 1. The Work Performed by Class Counsel Does Not Warrant a $2.1 Million Fee.

The Eleventh Circuit has concluded that the proper manner to calculate attorneys' fees is to identify the fund created for the benefit of the class and to award Class Counsel a reasonable percentage of that fund as an attorneys' fee. "[I]n this circuit, attorneys' fees awarded from a

---

[11]To the extent Class Counsel might suggest that Class members could weigh-in on the attorney's fees issue after the fee petition is filed and before the fairness hearing, Class members were required to act by August 23, 2016, not by the fairness hearing.

common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).

Class Counsel's fee request is excessive. Granting Class Counsel a fee of one-third of the gross settlement fund would result in a substantial windfall, for what has been a demonstrably lightly-litigated case. Indeed, empirical studies confirm that the percentage requested is substantially above the norm for class action settlements approximating $6.3 Million. In fact, such studies reveal that fees for settlements in the range of the one at bar range from 22.8% to 25%, not one-third. *See* Theodore Eisenberg & Geoffrey P. Miller, "*Attorney Fees and Expenses in Class Action Settlements: 1993-2008*," 7 J. Empirical Legal Stud. 248, 265 (2010) (finding that between 1993 and 2008, in settlements between $5.3 million and $8.7 million, the median attorney fee was 22.1% and the mean was 22.8%, while in settlements between $22.8 million and $38.3 million, the median attorney fee was 24.9% and the mean was 22.1%); Brian T. Fitzpatrick, "*An Empirical Study of Class Action Settlements and Their Fee Awards*," 7 J. Empirical Legal Stud. 811, 839 (2010) (finding that for settlements ranging from $4.45 million to $7 million, the median attorney fee was 29.7% and the mean was 27.4%).

Moreover, neither the risk encountered nor the work performed by Class Counsel warrants one-third of the gross settlement fund. Class Counsel dubiously imply that their work in this case entitles them to a fee of $2.1 Million. The claim is incredulous, as they filed the case just a week after Dr. Muransky allegedly received the receipt from Godiva that purportedly violated FACTA and settled it less than six months later, having taken no depositions, engaged in no formal or informal discovery, and engaged in no class certification or summary judgment proceedings, while at least half of their work appears to have come after the parties reached a settlement. All of this, easily

-13-

distilled from the Court's docket, strongly suggests the impropriety of Class Counsel's settlement assessment, their decision to settle at such an early stage, and certainly, their fee request.[12]

Without an opportunity to review the actual fee motion, much less the time records which Class Counsel should have maintained contemporaneously, no Class member can fully assess the reasonableness of the fee. However, given the paucity of motion practice, the lack of discovery, the lack of class certification or summary judgment proceedings, the limited number of hearings and substantive motions briefed, that no trial occurred, and considering the record fact that the second most litigated issue in the litigation was settlement approval, $2.1 Million is excessive.

This conclusion is further reinforced by the fact that Class Counsel vouch for their experience in cases of this nature. [Doc. 39-4, at ¶ 20 (Owens, touting his "vast experience in the area of consumer-protection litigation"); 39-5, at ¶ 10 (Lusskin, proclaiming that "[m]y peers generally regard me as an authority in the State of Florida with respect to the consumer matters"); 39-6, at ¶ 3 (Hillicki, referring to his "personal consumer and class action litigation experience" as "extensive"). This experience should necessarily translate into some economies of scale. Here, obviously, it did not.

A fair assessment of the fee request makes clear that the proposed allocation between Class Counsel and Class members is an extraordinary result for the former, but a dismal one for the latter.[13]

---

[12]Class Counsel should be required to submit their detailed contemporaneous hours spent in this case for the purpose of conducting a lodestar cross-check against the reasonableness of any proposed percentage fee.

[13]To put the requested fee in proper perspective, $2.1 Million represents more than two attorneys working a minimum of forty (40) hours per week for twenty-six (26) weeks exclusively on this case and another attorney working twenty-seven (27) hours per week for 26 weeks on this case, all without holidays or vacations and at an hourly rate of $750.

2.      **The Court Should Apply the Lodestar Method to Arrive**
        **at Class Counsel's Attorney's Fee.**

Here, as in many class action settlements, the person with the most at stake financially is

Class Counsel.  The task of this Court – if it eventually grants approval – is to set Class Counsel's

fee at a level that will approximate what the market would set.  Here, because of the unique

circumstances presented, this task should be accomplished through use of the lodestar method, or

at least through a lodestar cross-check, to insure that Class Counsel are not overcompensated.

It is beyond dispute that even if the Court chooses to award a percentage, it is nevertheless

required to consider the attributes of the lodestar method as compared to a percentage calculation

in computing a reasonable attorneys' fee award under a fee-shifting statute.  In *Perdue v. Kenny A.*,

559 U.S. 542, 552 (2010), the Supreme Court explained that the "lodestar" method has "become the

guiding light of our fee-shifting jurisprudence." *Id*. at 553.  Under federal fee-shifting statutes, there

is a strong presumption that the lodestar is sufficient to achieve the objective of a "reasonable fee."

*Id*.  The Court further held that factors subsumed in the lodestar calculation cannot be used as a

ground for increasing an award above the lodestar, and that a party seeking fees has the burden of

identifying a factor that the lodestar does not adequately take into account and proving with

specificity that an enhanced fee is justified.

Similarly, this case is based on a federal statute with a fee-shifting remedy, *i.e.*, FACTA, 15

U.S.C. § 1681(c)(g)(1).  Furthermore, if the case was tried and Plaintiff prevailed, Class Counsel's

fees would be determined under *Perdue, i.e.,* there would have been a "strong presumption" to limit

that Class Counsel to their lodestar.  Class Counsel should not be permitted to sidestep *Perdue*

simply by negotiating a common fund settlement.  Such a result not only severely places form over

-15-

substance, but places a premium on Class Counsel settling a case instead of proceeding to trial. Accordingly, the Court should adopt the lodestar method to set Class Counsel's fee. Alternatively, if the Court declines to apply the lodestar method to award Class Counsel's attorney's fee, the Court should use the lodestar method as a cross-check of the percentage-of-the-fund approach. *See Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001); *Ressler v. Jacobson*, 149 F.R.D. 651, 653, n. 4 (M.D. Fla. 1992).

For all of this, final approval should be denied, and fees, if awarded, should be limited to 25%, or set by the lodestar method.

**C.    As a Result of Class Counsel's Modest Efforts, This Court Lacks Sufficient Information to Properly Assess and Evaluate the Proposed Settlement.**

The Eleventh Circuit has instructed that, in examining the fairness, adequacy, and reasonableness of a settlement, a district court should examine several factors, including: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). "Thus, the issues that bear upon whether or not to grant final approval here are: a) whether the settlement was procured by collusion among the parties or was the result of

-16-

arms-length and informed bargaining; and b) whether the proposed final settlement is fair, adequate and reasonable, applying the six *Bennett* factors." *Lipuma v. American Express Co.*, 406 F. Supp.2d 1298, 1315 (S.D. Fla. 2005).

Here, what is known is that there were only 32 docket entries before the parties mediated and settled the case. Of those, only three substantive documents were filed by Class Counsel. [Doc. 1, Complaint], [Doc. 16, Amended Complaint], and [Doc. 24, response to motion to dismiss]. There is nothing currently in the record indicating that Godiva produced a single piece of paper or a single file as confirmatory discovery for settlement purposes. Before reaching a settlement, the parties (1) did not engage in formal or informal discovery or confirmatory discovery, much less significant formal discovery; (2) did not engage in any substantive motion practice beyond a motion to dismiss, much less extensive motion practice; and (3) engaged in only a one-day mediation session. Yet, Class Counsel are adamant to declare that they were sufficiently informed to assess and evaluate Godiva's settlement offer. *See* Declaration of Scott D. Owens [Doc. 39-4] (Class Counsel were "fully informed"); Declaration of Bret L. Lusskin [Doc. 39-5] ("Class Counsel has ample foundation upon which to evaluate the proposed settlement"); Declaration of Michael S. Hilicki [Doc. 39-6, ¶ 9] ("reached after tough negotiations and careful deliberation in a full mediation session, as well as substantial additional negotiations after the session").

These self-serving conclusory declarations are insufficient to demonstrate that Class Counsel provided this Court with sufficient information with which to evaluate the Plaintiff's claims and assess their value.

-17-

**D.      Due to His Limited Efforts, the Named Plaintiff Is Not Entitled to a $10,000 Incentive Award.**

Class Counsel intends to seek a $10,000 incentive award for Dr. Muransky.  Whether to approve such an award and, if so, the appropriate amount thereof is reserved to the discretion of the Court.  *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).  Factors bearing on the decision include the actions taken by the named plaintiff to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort the named plaintiff expended on the litigation.  *Id.*  A key additional consideration is whether an incentive award was necessary "to induce an individual to participate in the suit."  *Fouks v. Red Wing Hotel Corp.*, No. 12-2160, 2013 U.S. Dist. LEXIS 165588, at *2 (D. Minn. Nov. 21, 2013) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

To be sure, $10,000 is a substantial award in a case as abbreviated as this one.  Therefore, there are concerns about a bounty here.  *See Shane Grp., Inc. v. Blue Cross Blue Shield*, 2016 U.S. App. LEXIS 10264, at *21 (6th Cir. Mich. 2016).  Nothing presented to Class members or to this Court – at least at this juncture – indicates the basis for such a large award.  There is no evidence before the Court that Dr. Muransky was an unwilling participant in this case or that he needed to be incentivized to file suit.  *Fouks*, at *2.  Nor is there evidence suggesting Dr. Muransky "faced any risks or burdens in undertaking this litigation."  *Id*. at *3.  Rather, it appears that Dr. Muransky's contribution to the litigation was limited, *i.e.*, he did not have to respond to discovery, was not deposed, and other than a self-serving declaration submitted to support his $10,000 settlement award, did not have to execute affidavits or declarations, and did not have to testify.

-18-

Accordingly, to ensure that these amounts are not in fact a bounty, the Court should require Class Counsel to provide specific documentation – in the manner of attorney time sheets – of the time actually spent on the case by Dr. Muransky.  Otherwise, the Court has no basis for knowing whether the award are in fact "a disincentive for the [named] class member[] to care about the adequacy of relief afforded unnamed class members[.]"  *See Shane Group*, at *26.[14]

## V.     NOTICE OF APPEARANCE, INTENTION TO APPEAR, AND REQUEST TO BE HEARD

**NOTICE** is hereby given that the undersigned counsel is appearing on behalf of Price in the above-styled action.  Counsel respectfully requests that he be allowed to be heard *via telephone* at the Fairness Hearing on September 21, 2016.

## VI.    CONCLUSION

For all of these reasons, this Court should (1) reject the proposed settlement, (2) deny Class Counsel's motion for attorney's fees, or alternatively, apply the lodestar method to set Class Counsel's fee; (3) award Class Counsel a substantially lesser amount than they seek, *i.e.*, 25%, (4) deny the request to award a $10,000 incentive fee to Dr. Muransky, and (5) award such other relief as is just and necessary in this matter consistent with the foregoing.

---

[14]This, however, does not suggest that the Court should necessarily approve the $10,000 award if Class Counsel provides such documentation.  An award of $1,000 is more than satisfactory for Dr. Muransky's efforts in this case.

-19-

Respectfully submitted, this 23rd day of August, 2016.

/s/ W. Allen McDonald
W. Allen McDonald, Esq.
249 N. Peters Road, Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800

*Counsel for James H. Price*

**CERTIFICATE OF SERVICE**

I do hereby certify that on August 23, 2016, a copy of the foregoing was submitted electronically through the Court's Electronic Filing System ("ECF").  Notice of this filing will be sent by operation of the Court's ECF to all parties indicated on the electronic filing receipt, including;

Michael S. Hilicki, Esq.
KEOGH LAW, LTD.
55 West Monroe Street
Ste. 3390
Chicago, IL 60603

Brian Melendez
DYKEMA GOSSETT, PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3903

This 23rd day of August, 2016.

*/s/ W. Allen McDonald*
W. Allen McDonald

-21-