**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 15-cv-60716-WPD

Dr. David Muransky, individually and on
behalf of all others similarly situated

                Plaintiff,

v.

Godiva Chocolatier, Inc.

                Defendant.
_____/

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES AND EXPENSES

**TABLE OF CONTENTS**

I.      **INTRODUCTION**.................................................................................... 1

II.     **SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT**.................. 3

III.    **SETTLEMENT TERMS**..................................................................................6
      A.    Notice and Settlement Administration....................................................6
      B.    Incentive Payment..................................................................................6
      C.    Payment of Attorneys' Fees and Expenses ............................................7
      D.    Release ...................................................................................................7

IV.    **THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT**............................. 7

V.     **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS IT MERITS FINAL APPROVAL**................................................ 10
      A.    The Agreement Is the Result of Arm's Length Negotiations between the Parties with the Assistance of an Experienced Mediator.................................... 11
      B.    The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors ............... 11
           1.    Likelihood of Success at Trial ................................................. 12
           2.    Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate .................................. 13
           3.    The Complexity and Expense of Further Litigation ................................. 14
           4.    Substance and Amount of Opposition to Agreement................................ 15
           5.    Stage of Proceedings at which Settlement Achieved ................................ 16

VI.    **THE ATTORNEYS' FEES AND EXPENSES REQUESTED ARE REASONABLE**.................................................................................. 16
      A.    The Fee Amount Is Reasonable as a Percentage of the Total Settlement............. 17
      B.    The Fee and Expense Amount Is Also Reasonable Under the *Johnson/Camden I* Factors.................................................................................20
           1.    The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims was High............................. 20
           2.    Class Counsel Achieved an Excellent Result for the Settlement Class..................................................................22
           3.    The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount..............23
           4.    The Requested Fee is Consistent with Other Consumer Class Settlements ................................................................24
           5.    This Case Required a High Level of Skill .................................24

VII.   **SELECTION OF A CY PRES RECIPIENT AND RESOLVING REQUESTS FOR REIMBURSEMENT BY THIRD PARTIES FOR SUBPOENAS.** .................................................................................. 25

VIII.  **CONCLUSION** ........................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,

    00-cv-14017, 2002 WL 1162422 (S.D. Fla. May 7, 2002)..........................................3, 16

*Agne v. Papa John's International Inc. et al*,

    2:10-cv-01139 (D. Wa.)...................................................................................................... 1

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,

    No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ..................... 12, 21

*Allapattah Servs., Inc. v. Exxon Corp.*,

    No. 91-cv-0986, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ............................. 15, 18, 22

*Atkinson v. Wal-Mart Stores, Inc.*,

    2011 WL 6846747 (M.D. Fla. Dec. 29, 2011)................................................................. 24

*Behrens v. Wometco Enters., Inc.*,

    118 F.R.D. 543 (S.D. Fla. 1988)..................................................................................... 14

*Bennett v. Behring Corp.*,

    737 F.2d 982 (11th Cir. 1984)................................................................................ *passim*

*Boeing Co. v. Van Gemert*,

    444 U.S. 472 (1980)................................................................................................ 17, 19

*Camden I Condo Ass'n v. Dunkle*,

    946 F.2d 768 (11th Cir. 1991) ............................................................................... *passim*

*Cohn v. Nelson*,

    375 F. Supp. 2d 844 (E.D. Mo. 2005).......................................................................... 17

*Cooper v. NelNet, Inc.*,

    14-cv-314-RBD-DAB, Dkt. 85 (M.D. Fla. Aug. 4, 2015)................................................ 7

*Cotton v. Hinton*,

    559 F.2d 1326 (5th Cir. 1977) .................................................................................. 3, 16

*Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*,

    655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009) ................................................................ 3

*Faught v. Am. Home Shield Corp.*,

    668 F.3d 1233 (11th Cir. 2011)................................................................................. 8, 18

iii

*Figueroa v. Sharper Image Co.*,

    517 F. Supp.2d 1292 (S.D. Fla. 2007) ........................................................... 13

*Francisco v. Numismatic Guar. Corp.*,

    No. 06-61677, 2007 U.S. Dist. LEXIS (S.D. Fla. Jan. 31, 2007) ..................................... 22

*Gevaerts v. TD Bank, N.A.*,

    2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015)...................................... 6, 13, 18

*Greco v. Ginn Dev. Co.*,

    635 F. App'x 628, 632 (11th Cir. Dec. 2, 2015) ................................................... 3

*Guarisma v. ADCAHB Medical Coverages, Inc., et al.*,

    1:13-cv-21016, ECF 95 (S.D.FL. June 24, 2015) ............................................... 24

*Gutter v. E.I. DuPont De Nemours & Co.*,

    No. 1:95–cv–02152–ASG, ECF 626 (S.D. Fla. May 30, 2003) ............................... 18, 24

*Hamilton v. SunTrust Mortg., Inc.*,

    2014 U.S. Dist. LEXIS 154762 (S.D. Fla. Oct. 24, 2014)......................................... 17, 19

*Hanlon v. Palace Entm't Holdings*, LLC,

    2012 U.S. Dist. LEXIS 364 (W.D. Pa. Jan. 3, 2012)......................................... 14

*Harris v. Mexican Specialty Foods, Inc.*,

    564 F.3d 1301 (11th Cir. 2009) ................................................................... 3,4

*Hensley v. Eckerhart*,

    461 U.S. 424  (1983)......................................................................... 17

*In re Checking Account Overdraft Litig.*,

    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ........................................... 11, 18, 20, 22

*In re CP Ships Ltd. Sec. Litig.*,

    578 F. 3d 1306 (11th Cir. 2009)............................................................... 8

*In re Domestic Air Transport. Antitrust Litig.*,

    148 F.R.D. 297 (N.D. Ga. 1993) ............................................................... 10

*In re Mexico Money Transfer Litig.*,

    164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) ................................................. 15

*In re Shell Oil Refinery*,

    155 F.R.D. 552 (E.D.La.1993)............................................................... 15

iv

*In re Southwest Airlines Voucher Litig.*,
    No. 11 C 8176, 2013 U.S. Dist. LEXIS 120735 (N.D. Ill. Dec. 6, 2013) ....................... 24

*In re Sturm, Ruger & Co., Inc.*,
    No. 09cv1293, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012)....................... 2

*In re Sunbeam Sec. Litig.*,
    176 F.Supp.2d 1323 (S.D. Fla. 2001) ................................................................. *passim*

*In re Terazosin Hydrochloride Antitrust Litig.*,
    No. 1:99–md–01317–PAS, ECF 1557 (S.D. Fla. Apr. 19, 2005)........................ 17, 18, 24

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ......................................................................... 10

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001)...................................................................... 11

*Ira Holtzman, C.P.A., & Associates Ltd. v. Turza*,
    728 F.3d 682 (7th Cir. 2013) ............................................................................7

*Isby v. Bayh*,
    75 F.3d 1191 (7th Cir. 1996) ..........................................................................23

*Johnson v. Georgia Highway Expr., Inc.*,
    488 F.2d 714 (5th Cir. 1974) .......................................................................... 20

*Katz v. ABP Corp.*,
    2014 U.S. Dist. LEXIS 141223 (E.D.N.Y. Oct. 3, 2014)................................... 14

*Legg v. Laboratory Corp. of America*,
    14-cv-61543-RLR, Dkt. 227 (S.D. Fla. Feb. 18, 2016) ........................... 1, 6, 24

*Legg v. Lab. Corp. of America*,
    14-cv-61543-RLR, Dkt. 218-1, p.5 (S.D. Fla. Feb. 1, 2016)........................... 13

*Legg v. Spirit Airlines*,
    14-cv-61978-JIC, Dkt. 151 (S.D. Fla.  Aug. 2, 2016) ................................. 6, 24

*Legg v. Spirit Airlines*,
    14-cv-61978-JIC, Dkt. 146 (S.D. Fla.  July 11, 2016)................................. 13, 22

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*
    540 F.2d 102 (3d Cir. 1976)........................................................................... 22

*Lipuma v. Am. Express Co.*,

    406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005) ........................................................... *passim*

*Long v. Joseph-Beth Grp., Inc.*,

    No. 07-cv-00443 (W.D. Pa. May 5, 2007)....................................................... 14

*Lumas v. Sw. Airlines Co.*,

    No. 3:13-cv-01429-CRB (S.D. Cal. 2013) ................................................. 1, 14

*Morrison v. Nat'l Australia Bank Ltd.*,

    561 U.S. 247 (2010)......................................................................................... 8

*Mullane v. Cent. Hanover Bank & Trust Co.*,

    339 U.S. 306 (1950)......................................................................................... 8

*Newman v. Sun Capital Corp.*,

    No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012) ................... 12

*North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.*,

    1:13-cv-06897 (N.D. Ill.) ................................................................................. 1

*North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.*,

    1:13-cv-03105 (N.D. Ill.) ................................................................................. 1

*Palamara v. Kings Family Restaurants*,

    2008 U.S. Dist. LEXIS 33087 (W.D. Pa. Apr. 22, 2008)............................... 14

*Pinto v. Princess Cruise Lines, Ltd.*,

    513 F. Supp. 2d 1334 (S.D. Fla. 2007) .................................................... 21, 22

*Perez v. Asurion Co.*,

    501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) ................................. 11, 14, 15, 16

*Phillips Petroleum Co. v. Shutts*,

    472 U.S. 797, 812 (1985)................................................................................ 9

*Phillips Randolph Enters., LLC v. Rice Fields*,

    No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007)...................... 13, 21

*Poertner v. Gillette Co.*,

    618 F. App'x 624, 631 (11th Cir. 2015)......................................................... 18

*Redman v. Radioshack Corp.*,

    768 F.3d 622 (7th Cir. 2014) ...................................................................... 3, 4

*Spicer v. Chi. Bd. of Options Exchange, Inc.*,

    844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) ................................................... 7

*Spillman v. RPM Pizza, LLC*,

    No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ............................ 1

*Stalcup v. Schlage Lock Co.*,

    505 F.Supp.2d 704 (D. Colo. 2007) ................................................... 23

*Todd v. Retail Concepts Inc.*,

    2008 U.S. Dist. LEXIS 117126 (M.D. Tenn. Aug. 22, 2008) ......................... 14

*U.S. v. Alabama*,

    271 F. App'x 896 (11th Cir. 2008) ................................................... 7

*Warren v. City of Tampa*,

    693 F.Supp. 1051 (M.D. Fla. 1988)........................................... 3, 10

*Waters v. Int'l Precious Metals Corp.*,

    190 F.3d 1291 (11th Cir.1999) ................................................... 18

*Wolff v. Cash 4 Titles*,

    No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ..................... 17

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*,

    1:12-cv-00780, (N.D. Ill) ................................................... 1

*Yates v. Mobile Cnty. Pers. Bd.*,

    719 F.2d 1530 (11th Cir. 1983)........................................... 23

## Other Authorities

Bureau of Justice Statistics, U.S. Dep't of Justice,

    *Victims of Identity Theft, 2014*, at 1 (Sept. 2015) ......................... 4

Congressional Record, Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) ............... 3

Javelin Strategy & Research, 2015 Identity Fraud: Protecting Vulnerable Populations ............... 4

McLaughlin on Class Actions

    §6:10 (10th ed.)................................................... 15

NEWBERG ON CLASS ACTIONS ................................................... 7, 19

Presidential Signing Statement,

    Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003)........................... 4

The Role of Opt-Outs and Objectors in Class Action Litigation

    57 VAND. L. REV. 1529, 1550 (2004)................................................................................2

I.    **INTRODUCTION**

Plaintiff, Dr. David Muransky, individually and as representative of the Settlement Class, submits this motion and memorandum in support of final approval of the class action settlement with Defendant, Godiva Chocolatier, Inc. ("Godiva"), as to the claims asserted under the Fair and Accurate Credit Transaction Act (FACTA), which the Court preliminarily approved on January 26, 2016. [ECF 40]. A true and correct copy of the Settlement Agreement and Release ("Agreement") is attached as *Appendix 1*.

The Agreement provides the third largest all cash settlement in the history of FACTA, and equals or exceeds the first and second largest all cash settlements on a per class member basis.[1] Godiva will pay six million, three hundred thousand dollars ($6,300,000.00). The class members were sent notice inviting them to submit a claim for a portion of the settlement fund and, to date, at least 47,445 valid claims have been filed. *See Appendix 2* (Declaration of Claims Administrator) at ¶20.[2] That is approximately 15% of the people sent direct mail notice of the settlement, a terrific result. The claim rate here is much higher than the rate in many other consumer statutory damage cases that have been granted final approval,[3] and thus is a strong endorsement of the settlement by the class. None of the settlement funds will revert back to Godiva.

The Court set August 23, 2016 as the date to submit exclusions and file objections. [ECF 53, p. 1]. Out of the more than 318,000 class members to whom notice was mailed, only 15 class members requested exclusion, or .0047%. *Appendix 2* at ¶18.

---

[1] At the time this settlement was negotiated, the largest all cash FACTA settlement that was approved was *Lumas v. Sw. Airlines Co.*, No. 3:13-cv-01429-CRB (S.D. Cal. 2013). In that case, Southwest estimated that the class total was between 880,000 and 2,200,000 transactions and the entire settlement was for $1.8 million. The largest all cash settlement was for $11,000,000. *Legg v. Lab. Corp. of America*, 14-cv-61543-RLR, Dkt. 227 (S.D. Fla. Feb. 18, 2016). ("*Lab*"). The second largest all cash settlement was for $7,500,000. *Legg v. Spirit Airlines*, 14-cv-61978-JIC, Dkt. 151 (S.D. Fla.  Aug. 2, 2016) ("*Spirit*"). The difference among the settlements in *Lab*, *Spirit* and *Godiva* mostly stems from the fact that *Lab* and *Spirit* had larger classes. Regardless all three settlements are terrific results.

[2] The Claims Administrator is still evaluating the claims to eliminate claims made by non-class members and/or deficient claims, with 17,106 claims remaining to be evaluated. *Id.* However, even if all of these claims were excluded (which is unlikely), the resulting claim rate would be about 15%, and thus still exceptional. See fn. 3, below.

[3] *See, e.g., Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780, (N.D. Ill) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharma. (USA) Inc.*, 13-cv-3105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.*, 13-cv-6897 (N.D. Ill.) (.53% of the class made claims); *Agne v. Papa John's Int'l, Inc.*, 10-cv-1139 (D. Wash.) (1.52% of the class made claims); *Spillman v. RPM Pizza, LLC*, 10-cv-349 (M.D. La.) (.07% of the class made claims).

Likewise, only four filed objections. [ECF 58-61]. The first objection is directed only at the lawsuit, not the settlement, and is based on a misunderstanding of what the lawsuit is about. [ECF 58]. A second objection, filed by an attorney proceeding *pro se*, does not attack any term of the settlement. Instead, the attorney questions the sufficiency of available information even though he never contacted class counsel to ask for additional information during the 60-day period he admits he had to act in response to the notice. [ECF 60]. The other two objections were filed by professional objectors, *i.e.*, lawyers who routinely object to class action settlements to try to extract a payoff. [ECF 59, 61].[4] Significantly, each objector filed a claim to receive a share of the proceeds from this "objectionable" settlement. *Appendix 2* at ¶19).

Finally, no governmental entity objected to the settlement after receiving the required CAFA notice. [ECF 43]. In short, given the class size, there is almost no opposition to the settlement. Such an extraordinarily "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005).[5]

As shown below, the settlement easily meets the standards for final approval. In granting preliminary approval, the Court preliminarily found the Agreement was within the range of reasonableness, and thus that the class should be given notice. [ECF 40, ¶1]. Nothing has changed to alter that finding. To the contrary, as demonstrated by the strong claim rate and lack of objections, the class has indicated overwhelming support for the settlement.[6]

The Agreement is the result of arm's length negotiations between Godiva and experienced Class Counsel, and was only reached after discovery, motion practice and a mediation with Rodney Max, Esq., "a highly respected mediator …. probably one of the top mediators in the country." *Lee v. Ocwen Loan Serv., LLC*, 2015 U.S. Dist. LEXIS 121998 at *33 (S.D. Fla. Sept. 14, 2015). As a result, the Agreement is presumptively fair, reasonable and adequate. *Id., citing Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla.

---

[4] All of the objections will be addressed in detail in the separate brief Plaintiff is filing in response to the objections.

[5] In a settlement of this magnitude, the Court should expect to receive around 30 objections (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery). *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1550 (2004).

[6] Subsequent events have also reinforced the correctness of the Court's decision to grant class certification, including the determination of Class Counsel's adequacy, which has been enhanced by their successful resolution of the *Lab* and *Spirit* cases, the largest and second-largest all cash FACTA settlements in history. *See* fn. 1, above.

2

2014); *see also In re Sturm, Ruger & Co., Inc.*, 2012 U.S. Dist. LEXIS 116930 at *12 (D. Conn. Aug. 20, 2012) ("the settlement was reached by experienced, fully-informed counsel after arm's length negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption that the settlement was fair, reasonable and adequate.")

Likewise, although the approval of a class action settlement is a matter for the Court's discretion, proper consideration should be given to the consensual decision of the parties. *See Greco v. Ginn Dev. Co.*, 635 F. App'x 628, 632 (11th Cir. Dec. 2, 2015) (unpub.) ("a district court may also rely upon the judgment of experienced counsel for the parties. . . . Indeed, absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'"), quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988) *aff'd*, 893 F.2d 347 (11th Cir. 1989) ("The Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"). Ultimately, a class action settlement should be approved if it is fair, reasonable and adequate, and not the product of collusion. *Bennett v. Behring*, 737 F.2d 982, 986 (11th Cir. 1984); *Access Now, Inc. v. Claire's Stores, Inc.*, 2002 WL 1162422 at *4 (S.D. Fla. May 7, 2002). When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F.Supp.2d 1323, 1329 (S.D. Fla. 2001). As shown below, this settlement easily merits final approval.

## II.   SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT

FACTA "is aimed at protecting consumers from identity theft." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). Congress determined a credit or debit card number is the "single most crucial piece of information a criminal would need to perpetrate account fraud." Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) (Rep. Mahoney). Congress also determined the inclusion of excess account information on a transaction receipt enables anyone who sees the receipt to use it to discover more information about the consumer. *See Redman v. Radioshack Corp.*, 768 F.3d 622, 626 and 639 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information"). In signing FACTA into law, President Bush likewise remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." *Creative Hosp. Ventures, Inc. v.*

3

*U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009), *rev'd on other grounds*, 444 F. App'x 370 (11th Cir. 2011), citing Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

At that time, identity theft had "reached almost epidemic proportions." H.R. Rep. No. 108-263 at 25 (2003). Over 27 million Americans had been victims of identity theft in the past five years, and the estimated cost to consumers and the economy was over fifty billion dollars annually. *See* Federal Trade Commission, *Identity Theft Survey Report* (2003).[7] Every year, identity theft results in billions of dollars of loss, which has a significant effect on consumers and the economy. *See* 2015 Identity Fraud Report, *infra* fn.7, at pp.7, 14.[8] Furthermore, the costs of financial fraud, identity theft, and even the fear of identity theft, have a powerful psychological effect on consumers, as "36% of identity theft victims reported moderate or severe emotional distress as a result of the incident." Bureau of Justice Statistics, U.S. Dep't of Justice, *Victims of Identity Theft, 2014*, at 1 (Sept. 2015).

To help address this problem, Congress decided to "require the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information," and "limit the number of opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166, at pp. 3 and 13 (2003). Accordingly, Congress created FACTA. *See Redman*, 768 F.3d at 639 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.").

Moreover, to encourage private litigants to enforce FACTA's requirements, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.* ("FCRA"), which entitles a successful plaintiff to statutory damages, costs and attorneys' fees for any "willful" violation of the law. *See Harris, Inc.,* 564 F.3d at 1306-7, *citing* 15 U.S.C. §1681n(a)(l)(A), and (2). Consistent with this intent, Plaintiff brought this action to resolve Godiva's alleged systematic violation of FACTA's prohibition against printing more than the last

---

[7] In 2014 and 2013, respectively, about 12.7 million and 13.1 million consumers suffered identity theft. See Javelin Strategy & Research, 2015 Identity Fraud: Protecting Vulnerable Populations, available at https://www.javelinstrategy.com/press-release/16-billion-stolen-127-million-identity-fraud-victims-2014-according-javelin-strategy. [2015 Identity Fraud Report]. In 2010, about 7% of households had at least one member who experienced one or more types of identity theft. Bureau of Justice Statistics, U.S. Dep't of Justice, Identity Theft Reported by Households, 2005-2010, at 1 (Nov. 2011).

[8] In addition, according to a 2012 FTC report, Florida ranks No. 1 for identity theft among the 50 states, with 361.3 complaints per 100,000 people. That's 86 percent more than Georgia, which ranks a distant second. Also, nine of the top 10 metro areas for identity theft are in Florida, according to the report. First is the Miami area with 645.4 complaints per 100,000 people.http://www.wptv.com/money/consumer/identity-theft-florida-ranks-no-1-in-nation-for-id-theft (Last accessed: August 28, 2014).

five digits of credit and debit cards on transaction receipts. Plaintiff filed a first amended complaint on June 9, 2015. (ECF 16). On June 23, 2015, Godiva filed a motion to dismiss. (ECF 21). The motion was fully briefed and, on September 2, 2015, the Court denied the motion. (ECF 26). Godiva filed its answer and affirmative defenses on September 16, 2015 (ECF 29).

Thereafter, Plaintiff served extensive discovery. In response, Godiva produced details about the scope of the putative class as well as information about the nature and cause of the alleged FACTA violations at issue. Because the FACTA claims at issue require Plaintiff and the class to prove that Godiva "willfully" violated the law, this information was critical to understanding the value of the case and the chance of success on the merits.

The Southern District of Florida encourages early mediation. *See* Local Rule 16.2. The parties discussed the prospect of settling the case on several occasions, but did not agree to do so until after the denial of Godiva's motion to dismiss and after the production and analysis of facts concerning the class and how Godiva's alleged violation of FACTA occurred. The parties attended a full-day mediation before a private, third-party mediator in Miami on November 3, 2015.[9] The case did not settle at the mediation. The parties then spent the next several weeks in additional negotiations to come to a framework of settlement. Even after agreeing to the framework, the parties spent the next two months negotiating the terms of the settlement agreement. A copy of the settlement agreement is attached as *Appendix 1*.

On January 26, 2016, the Court granted the settlement preliminary approval and directed that notice be sent to the class members. However, because Godiva only had transaction information for the class members, *i.e.*, no name or contact information for the purchasers in the transactions, Class Counsel had to embark on an extensive campaign to identify and locate the class members. This required more than thirty subpoenas to a variety of companies, including American Express ("Amex"), Discover, the credit card processor that processed the transactions for class members who used Visa and MasterCard cards, and finally Bank of America, Citibank, Chase, Wells Fargo and numerous other banks that issued those cards. *Appendix 3* (Hilicki Decl.)

---

[9] Rodney Max, Esq., has practiced since 1975 and represented plaintiffs and defendants in breach of contract, fraud, commercial products liability, lender liability, mass and class actions and other statutory remedies. He is a Florida Supreme Court Certified Circuit Mediator, a Neutral Panelist for the U.S. District Courts of Alabama, and he has been selected and/or court appointed as a third party neutral or mediator in a number of significant state and federal mass and class actions. He is also a noted speaker on mediation and alternative dispute resolution topics, delivering his message to organizations throughout the country, including national and state bar associations and sections on both sides of the trial aisle, as well as neutral groups.

at ¶ 9. The campaign also required extensive analysis, communications and negotiations with the subpoenaed entities and their counsel, many of whom initially resisted complying or professed to have difficulty complying, as well as motion practice to protect the confidentiality of the credit and debit card transaction data, facilitate compliance with the subpoenas, and extend time to issue the class notice to accommodate the subpoenaed parties. [ECF 41, 45, 47, 48, 52, 54, 56]. As a result of counsel working through the numerous obstacles to identify the class, notices were mailed to 318,453 class members.[10] *Appendix 2*, ¶14.

## III.   SETTLEMENT TERMS

The Agreement provides that Godiva shall pay 6.3 million dollars ($6,300,000.00). *Appendix 1*, §III.B. Due to the substantial claim rate, a Settlement Class Member who properly and timely made a claim will receive a pro rata share of the net settlement fund, approximately $60. Also, this amount may increase (but not decrease) as the Claims Administrator is still evaluating claims to determine how many valid claims were actually filed, and sending letters to persons who submitted deficient claims to given them an opportunity to cure the deficiency. *Appendix 2*, ¶20.[11] In addition to the payments to class members, Godiva also agreed to the following:

**A.   Notice and Settlement Administration.** Godiva agreed its settlement payment shall cover the cost of the Notice Plan, including the cost of setting up and maintaining a settlement website to give class members additional information about the settlement and a convenient means to submit a claim, as well as the cost of postage for mailing the notice and settlement payments to class members. The final notice and administration costs are estimated to be $414,000. *Appendix 2* at ¶21.

**B.   Incentive Payment.** Subject to court approval, Godiva agreed to a payment of an Incentive Award to Plaintiff for his service to the class in an amount not to exceed ten thousand dollars ($10,000.00), in addition to any recovery he is entitled to as a Settlement Class Member. This same amount was approved in the two recent FACTA class action cases granted final approval in this District, and is well within the range of reasonableness. *See Legg v. Lab. Corp. of America*, 14-cv-61543-RLR, Dkt. 227, ¶14 (S.D. Fla. Feb. 18, 2016); *Legg v. Spirit Airlines*,

---

[10] Of these mailed notices, 6,344 were returned as undeliverable and no alternative address could be found. *See Appendix 2*, ¶15.

[11] The Claims Administrator still needs to evaluate 17,106 claims. *Id.*, ¶20. If for example, half of those claims remained deficient, the per-person recovery would increase to more than $67 per claimant.

14-cv-61978-JIC, Dkt. 151, ¶16 (S.D. Fla.  Aug. 2, 2016); *see also Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 at *25-*26 (S.D. Fla. Nov. 5, 2015) ($10,000 incentive award each to two sets of Plaintiff), citing *Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff); *see also Cooper v. NelNet, Inc.*, 14-cv-314-RBD-DAB, Dkt. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) ($25,000 incentive award).[12]

**C.    Payment of Attorneys' Fees and Expenses.** Subject to Court approval, Godiva agreed that Class Counsel may apply for an award of attorneys' fees in an amount of one third of the settlement fund, or two million, one-hundred thousand dollars ($2,100,000), plus the expenses they incurred. The mailed notice, website and posted long form notice all informed class members of both the exact dollar amount and percentage that Class Counsel is requesting for fees. Only two of the four objectors directly challenge the proposed attorney fee or incentive awards, and their arguments are factually and legally deficient as explained in the separate response to objections Plaintiff is filing.

**D.    Release.** In exchange for the above relief, the release is limited to claims related to or arising out of the claims that were made or could have been made in this Litigation. *Appendix 1* at §II ¶O and §VI.

**IV.    THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT.**

Federal Rule 23 requires a court to direct to class members "the best notice that is practicable under the circumstances" describing, among other things, the action, the class certified, and class members' right to exclude themselves. Fed. R. Civ. P. 23(c)(2)(B). Further, before granting final approval to a proposed class settlement, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Finally, the Due Process Clause also guarantees unnamed class members the right to notice of a class settlement. *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008).

To satisfy these requirements, the notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own

---

[12] The Seventh Circuit was critical of a $7,500 incentive award as being too small. *Ira Holtzman, C.P.A., & Associates Ltd. v. Turza*, 728 F.3d 682, 690 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1318 (2014) (describing the award as a "disincentive" award); *see also See also* Conte and Newberg, 4 NEWBERG ON CLASS ACTIONS, §11.38 (4th ed.) Indeed, "since without the named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' non-legal but essential case specific expenses."

determination regarding whether the settlement serves their interests." *Id.* at 901; *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1317 (11th Cir. 2009), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"), *quoting Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted). Moreover, neither Rule 23 nor due process requires that all class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). Instead, to determine whether the notice is sufficient, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901, *quoting Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007).

The plan approved by the Court here provided exceptional notice that exceeds Rule 23 and due process requirements. In granting preliminary approval to the notice plan, this Court found: "The Court has considered the Class Notice, attached as Exhibits 2 and 3 to the Agreement, including the proposed forms of notice, Summary Notice, Full Notice, and Settlement Claim Form, and finds that the forms, content, and manner of notice proposed by the Parties and approved herein meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice." [ECF 40, ¶4]. These conclusions remain correct as evidenced by the terrific claim rate.

In fact, Class Counsel essentially engaged in a second litigation to ensure broad notice distribution, spending months subpoenaing class member transaction, identifying and contact information from banks and credit card issuing and processing companies, who were at best reluctant to turn over any information, and at worst uncooperative. *See Appendix 3* (Hilicki Decl.) at ¶9. In addition, in response to the subpoenas Class Counsel sent Amex and TCF Bank to identify class members, for which Amex produced data for more than one-hundred thousand transactions, Amex and TCF sent letters to affected customers advising them about the subpoena, which resulted in Class Counsel's office being inundated with calls by potential class members before the actual class notice was even sent. *Id.* at ¶11. The result of these efforts are seen in the

exceptional claim rate.

The Claims Administrator followed the Court-approved notice and claims procedures.[13] It sent notice to every identified class member for which an address was located. *Appendix 2*, at ¶14. It also set up the settlement website as well as the toll-free number for class members to call with any questions. *Id* at ¶¶16-17. The website enabled class members to review the settlement agreement and exhibits, the preliminary approval order, the long form notice and FAQs, and file a claim or request that a claim form be mailed to them. *Id.* at ¶17.  The long form notice provided:

| 22.  How do I get more information? |
| --- |

This notice is only a summary of the proposed settlement. You can get a complete copy of the settlement agreement by visiting the Settlement Website, www.GodivaFACTASettlement.com, or you can write to the address below or call the Toll-Free Settlement Hotline, 1-844-830-5222. **You can also call class counsel with any questions at 866.726.1092.** (emphasis added).

This information was repeated in the FAQs.

As of September 7, 2016, the website had been visited by 27,205 unique visitors. *Appendix 2* at ¶17. As of September 7, 2016, the Claims Administrator's toll-free Voice Response Unit has handled a total of 1,771 phone calls from persons seeking information about the case. *Appendix 2* at ¶16. In addition, the CAFA notice of the settlement was sent the U.S., state and other attorneys' general as required. [ECF 43]. Moreover, Class Counsel received numerous calls from class members about the settlement in addition to the extensive calls and emails Class Counsel received as result of the Amex and TCF Bank sending class members a letter about the subpoenas.

Class members had until August 23, 2016, to request exclusion, object, or submit a claim. [ECF 53, pp.1-2]. As noted above, out of 318,453 class members to which notice was mailed, 47,445 valid claims have been filed to date, only 15 requested exclusion, only four filed objections, and of those four only two directly challenge the settlement (and these were filed by professional objectors). *Appendix 2* at ¶10, ¶12-¶14. No governmental entity objected in response to the CAFA notice. In short, the notice complies with the court-approved plan, exceeds Rule 23 and Due Process, and fully apprised the class of all material terms, how to obtain additional

---

[13] Direct mail notice to potential class members, standing alone, is generally sufficient. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' [that] satisfies due process.")

information and how to exercise their rights. By all accounts, the notice plan was not just adequate; it was a resounding success.

## V.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THUS IT MERITS FINAL APPROVAL

Judicial and public policy favor the voluntary settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren*, 693 F. Supp. at 1054. ("[S]ettlements are highly favored in the law."). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Although approval of a settlement is a matter within the Court's discretion, some deference should be given to the consensual decision of the Parties. *See Warren*, 693 F.Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Ultimately, the Court should approve a class action settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett*, 737 F.2d at 986 (11th Cir. 1984).

When conducting this analysis, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001). In determining whether a settlement is "fair, adequate, and reasonable," the following factors (the *Bennett* factors) are generally considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986. In addition, the Court makes an inquiry into "whether the settlement was procured by collusion among the parties or was the result of arms–length and informed bargaining." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1315 (S.D. Fla. 2005); *see also In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d at 1329 ("In determining whether to approve a proposed settlement, the cardinal rule is that the District Court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties.")

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In*

10

*re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted).

Here, the Agreement easily passes both tests, having been the product of arm's length, informed negotiations between the parties with the assistance of a neutral mediator, and satisfying each of the Eleventh Circuit's *Bennett* factors.

### A.   The Agreement Is the Result of Arm's Length Negotiations between the Parties with the Assistance of an Experienced Mediator.

The context in which the Agreement was reached confirms that it was the result of arms-length and informed negotiations among the parties, and not collusion.

To start, the Agreement only came about after Plaintiff defeated Godiva's motion to dismiss, discovery, extensive negotiations and a mediation presided over by a highly-qualified third-party mediator. The pre-suit investigation, discovery and negotiations gave experienced counsel ample information about the facts and the chance of success, to enable them to evaluate the terms of any proposed agreement, and thus ensure a fair compromise. *See Appendix 3* Hilicki Decl. at ¶7; *Appendix 4* Owens Decl., ¶ 32; and *Appendix 5* Lusskin Decl. at ¶ 18. The fact that the parties were only able to reach a deal after an in-person mediation session by well-experienced neutral, Rodney Max, further demonstrates there was no collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011) (no collusion where settlement reached by capable and experienced counsel and with the assistance of a well-qualified and experienced mediator).

As such, it is clear the Agreement is the result of arms' length and informed negotiations between the parties, not collusion, and thus the Court should not hesitate to approve it.

### B.   The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors.

In addition to being the product of arm's length negotiations, the Agreement also satisfies each of the *Bennett* factors. It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* Here, as explained below, each of the *Bennett* factors weighs in favor of granting final approval.

11

1.        **Likelihood of Success at Trial.**

The first *Bennett* factor to consider in determining whether a settlement is fair, reasonable, and adequate is the likelihood of success at trial. "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp.2d at 1319. Where success at trial is not certain for a plaintiff, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 at *30 (M.D. Fla. Aug. 28, 2012).

Godiva had a written policy not to print receipts that violated FACTA, it was previously compliant, but became noncompliant as a result of the installation of a new system. While Plaintiff alleged facts sufficient to avoid a motion to dismiss, Class Counsel is not aware of any plaintiff obtaining a judgment on the merits in favor of a class under FACTA. As such, Plaintiff's and the class members' ultimate success at trial is far from guaranteed. While Class Counsel is confident in the strength of the claims alleged, litigation is inherently unpredictable and the outcome of a trial is unpredictable.

Indeed, Plaintiff and the class members face significant risks in proceeding toward trial, including the possibility that class certification may be denied or reversed in connection with a Rule 23(f) petition, or that the case may be defeated at the summary judgment stage. If the case made it to trial, Plaintiff and the class face the possibility that the jury concludes that Godiva's alleged violation of FACTA was not willful. Godiva is represented by competent and formidable trial counsel. Also, at the time the settlement was reached, Plaintiff and the class faced considerable uncertainty with regard to the Supreme Court's anticipated decision in *Spokeo, Inc. v. Robins* which, depending on the outcome, could have resulted in the case's dismissal for failure to present an injury in fact.

In addition, even if Plaintiff were to get and keep the class certified, defeat summary judgment, avoid a *Spokeo* problem and prove liability, he may have been unable to achieve a large award of statutory damages for the class. Some courts view awards of aggregate, statutory damages with skepticism and would reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.*, No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation—would not violate Defendant's due process

12

rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.")[14] Finally, Plaintiff recognizes the expense, duration, and complexity of continued litigation would be substantial and possibly require further briefing on numerous substantive issues, extensive trial preparation, and appeal. *See Appendix 3* Hilicki Decl. at ¶¶12-13; *Appendix 4* Owens Decl. at ¶30; and *Appendix 5* Lusskin Decl. at ¶13.

Against the inherent uncertainty raised by these issues is the substantial and concrete cash relief the class members will receive under the Agreement, which compares favorably to two other recent FACTA settlements granted final approval in this District that involved larger classes. *See Legg v. Lab. Corp. of America*, 14-cv-61543-RLR, Dkt. 218-1, p.5 (S.D. Fla. Feb. 1, 2016); *Legg v. Spirit Airlines*, 14-cv-61978-JIC, Dkt. 146, p.9 (S.D. Fla.  July 11, 2016); *see also Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 at *38  (S.D. Fla. Nov. 5, 2015) ("Rather than facing more years of costly and uncertain litigation, [the] Settlement Class Members will receive an immediate cash benefit…") (brackets added). Given the high value of this settlement – believed to be the third largest cash FACTA settlement in history – Plaintiff expected no significant opposition to it and in fact, Plaintiff was correct. In the end, when the strengths of the claims are weighed against the legal and factual obstacles they face, and the complexity of class action practice, there should be no doubt that this settlement is in the class members' best interests.[15] As such, the first *Bennett* factor weighs in favor of approving it.

### 2.    Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined.  *In re Sunbeam*, 176 F. Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F. Supp.2d 1292, 1326 (S.D. Fla. 2007), *quoting Lipuma*, 406 F. Supp.2d at 1322. However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp.2d at 1326.

---

[14] *But see Phillips Randolph Enters., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027 at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

[15] *See Appendix 3* Hilicki Decl. at ¶16; *Appendix 4* Owens Decl. at ¶33; Appendix 5 Lusskin Decl. at ¶16.

The monetary relief secured on behalf of the class is substantial. It is believed to be the third largest aggregate recovery for a class action alleging FACTA violations. Each class member who submitted a valid claim will receive approximately $60 in cash, possibly more. This is plainly fair, reasonable and adequate, as the relief here easily surpasses the potential per-class-member benefit conferred in many other FACTA class settlements that received final approval. *See*, *e.g.*, *Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223 at *2 (E.D.N.Y. Oct. 3, 2014) (FACTA class settlement that gives class members a choice to make a claim for $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364 at *14-*15 (W.D. Pa. Jan. 3, 2012) (FACTA class settlement that provides the class with admission tickets to defendant's amusement park); *Todd v. Retail Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126 at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA class settlement providing a $15 credit on class members' next purchase of $125 or more); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087 at *9-*10 (W.D. Pa. Apr. 22, 2008) (FACTA class settlement providing vouchers worth an average of $4.38 each to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future); *Long v. Joseph-Beth Grp., Inc.,* No. 07-cv-00443 (W.D. Pa. May 5, 2007) (class of 400,000 members could claim a $5 voucher.)[16] Once again, this settlement is on par with the *Lab* and *Spirit* FACTA settlements, which were also brought by Plaintiff's counsel. They had larger classes and substantially similar recovery per class member.  Further this settlement provides a far greater recovery than the next largest settlement from *Lumas v. Sw. Airlines Co.* ($1.8 million to settle between 880,000 and 2,200,000 transactions).

As such, the settlement exceeds the range of what is fair, reasonable and adequate. The second and third *Bennett* factors are met.

### 3.   The Complexity and Expense of Further Litigation

The next factor is the complexity and expense of further litigation. In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of

---

[16] Although FACTA provides a potential recovery of $100 to $1,000 *if* the violation is willful, this does not take into consideration the risk of losing on the merits, the risk of losing a due process challenge to the aggregate statutory damages award or the risk of losing class certification. Factoring in these risks necessitates a discounted recovery.

long, complex, and expensive litigation." *Perez*, 501 F. Supp.2d at 1381, *quoting Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1988).

   This factor favors approval of the Agreement because the expense and complexity of further litigation would be substantial. Further litigation would include class certification proceedings, cross motions for summary judgment, additional pretrial motion practice, preparing the final pretrial order, conducting the final pretrial conference, and conducting a trial. Given the stakes, an appeal is likely regardless of which party wins. Moreover, continued litigation delays the case's resolution, imposes additional substantial expense on both sides, and consumes substantial additional judicial resources. When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323, *quoting In re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.") In sum, the complexity, expense, and duration of remaining litigation favors the approval of the Agreement.

### 4.   Substance and Amount of Opposition to Agreement

   The next *Bennett* factor is the substance and amount of opposition to the Agreement. Here, out of about 318,000 class members, only four filed objections, two raise no direct challenge to the settlement's terms, two were filed by professional objectors, and none raise issues that warrant denial of final approval. These facts, combined with the high claim rate by the rest of the class, shows that this factor weighs fully in support of granting final approval. *See Lipuma*, 406 F.Supp.2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair."); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1021 (N.D. Ill. 2000) (fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement"), *aff'd.*, 267 F.3d 743 (7th Cir. 2001)); 2 McLaughlin on Class Actions §6:10 (10th ed.) ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement,' so that the absence of objectors or receipt of a relatively small number of objections and opt-outs supports the conclusion that the settlement

15

is adequate.") (citation omitted).

### 5.    Stage of Proceedings at which Settlement Achieved

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the Plaintiff have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp.2d at 1383; *see also Access Now, Inc. v. Claire's Stores, Inc.*, No. 00-cv-14017, 2002 U.S. Dist. LEXIS 28975 at *21 (S.D. Fla. May 7, 2002) ("Because the parties have expended much effort in analyzing the issues, this Court should find that the parties are at a proper juncture with sufficient information to settle this action."); *In re Sunbeam*, 176 F. Supp.2d at 1332 ("Obviously, the case had progressed to a point where each side was well aware of the other side's position and the merits thereof.  This factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable.")

Here, the Agreement was not reached until after the denial of a motion to dismiss, sufficient discovery about the merits and the class, and a day-long mediation before a professional neutral.[17] In *Lab* and *Spirit*, Class Counsel had just secured two large FACTA settlements after substantial litigation of the same issues presented in this case. The fact that Class Counsel was able to achieve the substantially same record result should leave no doubt that they had sufficient information about the facts, the class, and the range of the class's potential damages.[18] Hence, Class Counsel was well-informed, had sufficient information to evaluate the strength of the class claims and weigh the benefits of the Agreement against continued litigation. In sum, the *Bennett* factors weigh in favor of final approval.

### VI.    THE ATTORNEYS' FEES AND EXPENSES REQUESTED ARE REASONABLE

In the Eleventh Circuit, "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained."  *In re Checking Acct. Overdraft Litig.*, 830 F. Supp.2d at 1358,

---

[17] Although the discovery obtained from Godiva in lead up to the negotiations was sufficient, it must be noted that extensive formal discovery is not required. *See Lee*, 2015 U.S. Dist. LEXIS 121998 at *75-*76 ("we are not compelled to hold that formal discovery was a necessary ticket to the bargaining table. … informality in the discovery of information is desired."), *quoting In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) and *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977).

[18] The fact that Plaintiff's Counsel was able to use their experience and skill to achieve the same result in less time should not be held against them. If anything, it should be rewarded as it preserved judicial resources without sacrificing the relief to the class.

*citing Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Like the relief to be provided to the class, the parties' subsequent agreement on the attorneys' fee and expense award stems from the mediation with Mr. Max. While it is within the Court's discretion to determine the reasonableness of the proposed award, negotiated attorneys' fee and expense awards in class action settlements are strongly encouraged. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *see also Cohn v. Nelson*, 375 F.Supp.2d 844, 861 (E.D. Mo. 2005) ("where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.")

The reasonableness of the fee sought is confirmed by examining it both as a percentage of the total settlement, as well as the various factors established for evaluating attorney fee requests (including the "Johnson" or "Camden I" factors). *Camden I Condo. Ass'n*, 946 F.2d at 774-775.

### A.      The Fee Amount Is Reasonable as a Percentage of the Total Settlement

"[U]sing the 'percentage of recovery' method [to determine the attorneys' fee award] … is consistent with the dictates of the Eleventh Circuit." *Encarnacion v. J.W. Lee, Inc.*, 15-CIV-61173-DIMITROULEAS, 2015 U.S. Dist. LEXIS 144858 at *14 (S.D. Fla. Oct. 22, 2015), citing *Camden I Condo*, 946 F.2d at 771 (bracketed text added); *see also Hamilton v. SunTrust Mortg., Inc.*, 2014 U.S. Dist. LEXIS 154762 at *20-*21 (S.D. Fla. Oct. 24, 2014) ("In the Eleventh Circuit, 'attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'"), *quoting Camden I Condo*, 946 F.2d at 774.

Moreover, as this Court has found, a fee award in excess of 25% of the fund "is also consistent with the trend in this Circuit." *Encarnacion*, 15-CIV-61173-DIMITROULEAS, 2015 U.S. Dist. LEXIS 144858 at *15, citing, *inter alia*, *Wolff v. Cash 4 Titles, Inc.*, 2012 WL 5290155 at *4 (S.D. Fla. Sept. 26, 2016) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278 at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee... which is one-third of the settlement fund... is fair and reasonable…"); *In re Terazosin Hydrochloride Anitrust Litig.*, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005 (awarding class counsel 33.3% of the settlement fund in part because

they prosecuted the action on a wholly contingent basis); *see also Camden I*, 946 F.2d at 774-775 ("an upper limit is 50%"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir.1999) (affirmed award of 33.3%); and *e.g. Gevaerts* 2015 U.S. Dist. LEXIS 150354 at *29 (discussing the range of reasonableness for fee requests).[19]

The mediated fee and expense award here easily falls within the range of reasonableness. The mailed notice, long form notice and Settlement website all specifically set out both the amount and corresponding percentage of the attorney fees that were to be requested, which are "not to exceed one third of the fund, which is $2,100,000, plus expenses." *Appendix 1*, at *Exhibits 2, 3*. The notice also advised that counsel would seek reimbursement of their expenses, and here Class Counsel seeks $5547.70 in out-of-pocket expenses incurred in prosecuting this case, which largely consist of mediation, filing and related fees. *See Appendix 3* Hilicki Decl. at ¶17 and *Appendix 4* Owens Decl. at ¶34. None of the expenses for which reimbursement is sought are for overhead-type items such as copying, legal research, telephone calls, meals, etc.

The requested fee and expense amount is reasonable given the substantial monetary recovery alone, but the reasonableness of the request is further enhanced by the non-monetary benefits this case conferred upon the class. *See Faught*, 668 F.3d at 1244-1245 (fee and cost award reasonable in part because "the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class.") Specifically, in direct response to these lawsuits, Godiva reprogrammed its system nationwide to stop printing more than the last five digits of credit and debit card account numbers on transaction receipts.

Indeed, the Eleventh Circuit affirmed the approval of a $5.68 million attorneys' fee award when the class only claimed $344,850 and there was nonmonetary relief. *Poertner v. Gillette Co.*, 618 Fed. App'x 624, 631 (11th Cir. 2015) (unpub.). The Eleventh Circuit looked at the amount made available, the value of all of the factors and held:

> While no published opinion of ours extends Camden I's percentage-of-recovery rule to

---

[19] *See Checking Account Overdraft Litig.* 830 F. Supp.2d 1330, 1365 (S.D. Fla. 2011)("Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent. See *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. April 19, 2005) (awarding fees of 33 1/3 % of settlement of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 U.S. Dist. LEXIS 27228, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of $77.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million); see also Decl. of Hon. Thomas E. Scott [DE # 1885-10], ¶ 25.")

claims-made settlements, no principled reason counsels against doing so. For, as one learned treatise aptly illustrates, properly understood "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant"; indeed, the two types of settlements are "fully synonymous." 4 Rubenstein, *Newberg on Class Actions* § 13:7.

*Id.* at 628 fn. 2. The Eleventh's Circuit's decision in *Poertner* is in accord with *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In *Boeing*, the Supreme Court rejected the notion that the fee award should be limited to the amount of funds claimed by the class members.[20] Instead, the Supreme Court held that fees should be based on the amount made available:

> Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery Since the benefits of the class recovery have been "traced with some accuracy" and the costs of recovery have been "shifted with some exactitude to those benefiting."

*Id* at 480-81. This Court has echoed this principle. *Hamilton*, No. 13-60749-CIV-COHN, 2014 U.S. Dist. LEXIS 154762 at *19 ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims.").

In this case, not a penny goes back to Godiva. In other words, the entire net settlement fund will be distributed to class members who make claims, and so regardless of the number of claims (which in this case, were quite high), counsel's fees are a percentage of the true amount being paid out. As such, Plaintiff's fee and expense request is reasonable, especially in light of the fact that Plaintiff is not also seeking a percentage of the value nonmonetary relief, even though the Eleventh Circuit would allow it.

Finally, and perhaps most significantly, only the professional objectors objected to counsel's fee and expense request-a common theme of professional objectors. As shown in Plaintiff's separate response to the "objections," there were only four objectors, only two of them specifically challenge the fee request, and those two objections were filed by professional objectors who oppose any fee request as a matter of course. As a percentage of the settlement,

---

[20] "Boeing appealed only one provision of the judgment. It claimed that attorney's fees could not be awarded from the unclaimed portion of the judgment fund for at least two reasons. First, the equitable doctrine that allows the assessment of attorney's fees against a common fund created by the lawyers' efforts was inapposite because the money in the judgment fund would not benefit those class members who failed to claim it." *Id* at 480.

the fee and expense request is reasonable.

**B.     The Fee and Expense Amount Is Also Reasonable Under the *Johnson/Camden I* Factors.**

In cases in which the fees sought exceed 25% of the settlement, the Eleventh Circuit endorses using the factors articulated *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974), to confirm the reasonableness of fee request. *See Camden I Condo. Ass'n*, 946 F.2d at 775. The *Johnson/Camden I* factors are (1) the time and labor required;[21] (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772, n.3. These factors confirm the reasonableness of counsel's fee and expense request.

**1.     The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.**

The second, sixth, and tenth *Johnson/Camden I* factors—the novelty and difficulty of the issues, whether the fee is contingent, and the "undesirability" of the case, respectively—are interrelated and support the requested cost and fee award.

This case is novel and difficult on several levels. First, it is an open issue as to what evidence it takes to prove that Godiva "willfully" violated the law. Although the Court denied Godiva's motion to dismiss, Godiva cited ample case law in which other courts reached the opposite conclusion. [ECF 21].

Second, although Plaintiff escaped dismissal at the pleading stage, other cases alleging willful FACTA violations based on facts similar to this case ended in summary judgment for the defense. *See Keller v. Macon County Greyhound Park, Inc.,* 2011 U.S. Dist. LEXIS 45608, *13 (M.D. Ala. Apr. 25, 2011), *aff'd,* 464 F. App'x 824 (11th Cir. 2011) (summary judgment for merchant even though its system printed receipts violating FACTA because violation caused by vendor who fixed the software after system crash); *Najarian v. Charlotte Russe, Inc.,* 2007 U.S. Dist. LEXIS 95606, at *5-6 (C.D. Cal. Aug. 16, 2007) ("while the evidence may, at best, show

---

[21] The Eleventh Circuit made clear in *Camden I* that percentage of the fund is the exclusive method for awarding fees in common fund class actions ... "[and] [t]he lodestar approach should not be imposed through the back door via a 'cross-check.'"  *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362.

that Defendant was careless in failing to ensure that the correct POS modification was implemented, it fails to show that Defendant knew about FACTA's expiration provision and consciously chose to ignore it.") As in *Keller* and *Najarian*, here a third party hired to install point-of-sale system software at Godiva stores is the one that caused them to start printing point-of-sale receipts that included information prohibited by FACTA. Plaintiff is not aware of any case in which a plaintiff won summary judgment or at trial on similar facts.

Third, assuming Plaintiff prevailed and proved a "willful" violation, the resulting damage award itself presents a novel issue. As noted above, at least some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano,* 2011 U.S. Dist. LEXIS 48323, at *13 ("Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.")[22]

Fourth, beyond the risks imposed by FACTA itself, Plaintiff and the Class faced the uncertainties caused by the Supreme Court's then-anticipated decision in *Spokeo, Inc. v. Robins*. Since the granting of *certiorari* in that case, industry had touted *Spokeo* as the potential end of consumer class action cases because industry aimed to use that case to convince the Supreme Court that there was no standing to be in federal court without actual damages. Had *Spokeo* reached that conclusion, this case would have been dismissed. The Settlement reflects this concern. *Appendix 1* at §VII(W).

In addition to these myriad challenges, the ability to recover fees and expenses here has always been contingent on a successful outcome. Counsel had to advance the fees and expenses, and risked receiving nothing in return. This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d at 1364, *quoting In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1335; *see also, e.g.*, *Encarnacion*, 2015 U.S. Dist. LEXIS 144858 at *16 ("The attorneys' fees requested were

---

[22] *But see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06 C 4968, 2007 U.S. Dist. LEXIS 3027, at *7-8 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

entirely contingent upon success in this litigation."). Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007), *citing Pinto,* 513 F. Supp.2d at 1339.

The case's novelty, difficulty and contingent nature also demonstrate its undesirability. Prior FACTA class cases required substantial litigation activity to reach settlements comparable to this case. *See Legg v. Lab. Corp. of America*, 14-cv-61543-RLR, ECF 218, pp. 4-5 (S.D. Fla. Feb. 18, 2016) (eighteen depositions, including experts, two mediations and did not settle until after hearing on summary judgment, class certification and dueling *Daubert* motions); *Legg v. Spirit Airlines*, 14-cv-61978-JIC, ECF 146. pp. 4-6 (S.D. Fla.  July 11, 2016) (175,000 pages of documents, depositions (including one out of country) and class certification over the defendant's objection). Few lawyers will take a case that consumes significant attorney time, involves uncertain questions, and requires them to potentially advance substantial amounts of attorney time and out-of-pocket expenses and risk getting nothing, especially given the track record for losing on summary judgment, the inherent possibility of failing to certify the class, and the fact that prior class settlements under FACTA (at the start of this case) provided very little incentive to take these cases.

Finally, although Class Counsel achieved an excellent result, that was anything but certain when they took the case. Thus, these factors all weigh in favor of approving the proposed fee and expense amount. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("'Undesirability' and relevant risks must be evaluated from the standpoint of Plaintiff's counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight"), citing *Lindy Bros. Bldrs. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976).

## 2.  Class Counsel Achieved an Excellent Result for the Settlement Class.

The eighth *Johnson/Camden I* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by class counsel.  *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1202 (S.D. Fla. 2006).

Here, the parties' mediated Agreement provides a Settlement Fund of $6,300,000, and the class has about 318,000 members. Once again, each class member who submitted a valid claim will receive approximately $60 or more which, as noted above, is far greater than the recoveries in many FACTA settlements that were granted final approval. While most FACTA settlements

involve coupons or gift cards, this settlement provides cash. Indeed, it is the third largest all cash FACTA settlement, and almost the largest per person given its class size. This factor thus weighs strongly in favor of approving the fee and expense amount.

### 3. The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount.

The first, fourth, and seventh *Johnson/Camden I* factors – the time and labor, preclusion of other employment, and time limitations imposed, respectively – are also interrelated inquires and each support the reasonableness of the request. Class Counsel engaged in litigation against a well-heeled defendant and sophisticated defense counsel, defeated Godiva's motion to dismiss, negotiated, mediated and eventually reached the Settlement, and designed and executed an extensive a third-party subpoena campaign to identify and locate the more than 300,000 members of the class. All of the work necessitated by this case diverted the time and resources from other matters. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (The expenditure of time necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.")

Although Class Counsel was able to reach this Settlement more efficiently than some other cases, this reflects Class Counsel's experience in handling large FACTA cases. Class Counsel knew the work that achieving a comparable outcome would take based on their success in the *Lab* and *Spirit* cases discussed above, what that work would yield, the issues they faced at every stage, the potential recovery to be had, and the chance of achieving it. This experience enabled Class Counsel to convince Godiva not only that Class Counsel were adequate to the task and willing to do what it took to achieve an excellent result, but that they genuinely understood what the case was worth given the law, facts and risks (for both sides).

Significantly, and perhaps most tellingly, out of more than three-hundred thousand class members, only two (of four objectors) challenge the proposed fee award, even though the notice explicitly told the class of both the percentage and the fee amount sought. Two professional objectors' complaints cannot justify upending a fee and expense request that no other class member objected to, and that the more than 47,000 persons who submitted a valid claim support. *See, e.g., Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996) (affirming final approval where 13% of the class submitted written objections); *In re Southwest Airlines Voucher Litig.*, No. 11 C

23

8176, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement").

### 4. The Requested Fee is Consistent with Other Consumer Class Settlements.

The fifth and twelfth *Johnson/Camden I* factors, the customary fee and awards in similar cases supports approval. There are plenty consumer class actions, including two recent FACTA cases in this District, that have awarded one third of the settlement amount for fees, and most were more desirable than this case because the plaintiff did not have to prove willfulness to recover. *See Legg v. Spirit Airlines*, 14-cv-61978-JIC, ECF. 151, ¶15 (S.D. Fla. Aug. 2, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, ECF 227, p.7 (S.D. Fla. Feb. 18, 2016) (same); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-01317-PAS, ECF 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding "33 1/3% of the gross Settlement Fund (plus interest thereon), arising out of the Settlement, before deduction of any costs, expenses, or incentive awards, as their fee award."); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-cv-02152-ASG, ECF 626 at 7 (S.D. Fla. May 30, 2003) (approving fees of one-third of gross amount of the settlement fund, plus $1.2 million in expenses); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747 at *6 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of gross amount of the common fund); *Guarisma v. ADCAHB Medical Coverages, Inc., et al.*, 13-cv-21016, ECF 95 (S.D. Fla. June 24, 2015) (awarding one third of the fund, plus costs). Accordingly, this factor also favors the proposed fee and expense award.

### 5. This Case Required a High Level of Skill.

The remaining *Johnson/Camden I* factors – the skill required to perform the legal services properly, and the experience, reputation, and ability of the attorneys, all confirm that the fees and expenses sought are reasonable. As shown, Class Counsel achieved a settlement that confers substantial monetary and non-monetary benefits on class despite hard fought litigation against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.*, 176 F.Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the Plaintiffs' attorneys faced.")

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope and complexity. Class Counsel were able to steer this case to outcome on par with the largest all-cash FACTA settlements ever achieved, while avoiding

exposing the Class's recovery to the risks (such as contested class certification and summary judgment proceedings) faced in those cases. Class Counsel regularly engage in complex litigation involving consumer issues, and they have been appointed class counsel in numerous cases. *See Appendix 3* Hilicki Decl. at ¶3; *Appendix 4* Owens Decl. at ¶¶18-26; Appendix 5 Lusskin Decl. at ¶11. Thus, the *Johnson/Camden I* factors confirm the mediated attorneys' fee and expense award is reasonable. Pursuant to Fed. R. Civ. P. 23(h), 52(a) and 54(d)(2), it should be approved.

## VII. SELECTION OF A CY PRES RECIPIENT AND RESOLVING REQUESTS FOR REIMBURSEMENT BY THIRD PARTIES FOR SUBPOENAS.

The Agreement calls for the distribution of the entire net settlement fund to the Settlement Class Members but, if any payments remain uncashed after 90 days and the total amount of these unclaimed payments is too small to feasibly redistribute to the rest of the class, the Agreement provides that this remainder should be paid to a *cy pres* recipient on behalf of the class. *Appendix 1*, §III.D.i-iii. The parties each proposed a *cy pres* recipient, with Plaintiff proposing the National Consumer Law Center and Defendant proposing the Save the Children Foundation. *Id.* In the event the any funds remain unclaimed under the conditions above, the parties will jointly petition Court for a distribution to their proposed recipients, and present argument on the point.

Finally, an issue that arose in connection with subpoenaing more than thirty banks and credit card processing companies to identify and locate class members is that some of them have asked to be reimbursed for the expense they claim to have incurred in connection with responding to the subpoenas. The list of entities requesting a payment, and the amount requested, is as follows:

| Entity | Hours Billed | Rate Billed | Other Charges | Total Demand |
|--------|--------------|-------------|---------------|--------------|
| AMEX | 788.87 | 22/hr. | $7099.70 | 24,454.84 |
| Capital Bank | 2.00 | 25/hr. | NA | $50.00 |
| Chase Bank | 0.96 | 22/hr. | NA | $21.12 |
| Citizens Bank | 1.00 | 25/hr. | $50.00 | $75.00 |
| Comerica Bank | 3.00 | 30/hr. | NA | $90.00 |
| Fifth Third Bank | 36.25 | 10/hr. | $7.66 | $370.16 |
| Regions Bank | 30.00 | 30/hr. | NA | $900.00 |
| SunTrust Bank | NA | NA | NA | $100.00 |
| TCF Bank | 25.00 | 30/hr. | NA | $750.00 |

Because these charges (if allowed) represent additional settlement administration costs

that affect the funds available for distribution, Class Counsel hereby submits them for the Court's review. Also, Class Counsel recommends they be approved, except as follows:

1.     American Express's request is excessive. The number of hours billed (totaling almost 800) are way out of line with what other entities incurred to respond to their subpoenas. For example, Chase Bank billed less than an hour of the time it spent preparing its response to essentially the same subpoena, and it produced approximately 120,000 records (slightly more than American Express). Second, as the invoices in *Appendix 6* appear to show, American Express billed for services that Class Counsel's subpoena did not require it to perform, including data conversion. Class Counsel's subpoena only directed American Express to produce the name and contact information of each person who used their Amex card to make a purchase at Godiva during the class period, as well as information about their transactions. Finally, American Express's invoices included more than $7,000 in additional charges, without providing any hour or rate information, and without explaining the basis for the charges.

2.     The requests by Fifth Third, Regions and TCF are comparatively excessive because they billed 36.25, 30 and 25 hours respectively, to respond to the same subpoena for which Chase billed less than an hour. In addition, as noted, Chase produced approximately 120,000 records, whereas Fifth Third, Regions and TCF only produced about 1600, 2600, and 670 records, respectively.

Class Counsel notified American Express, Fifth Third, Regions and TCF that their requests were being put before the Court, that Class Counsel do not support them, and the date and time of the Final Approval Hearing in this matter.

## VIII.   CONCLUSION

This Agreement provides substantial and immediate cash benefits for the Class, it is the result of arm's length, informed negotiations with the assistance of an experienced mediator, it satisfies each of the six *Bennett* factors, and class counsel's fee and expense is both a reasonable percentage of the Settlement and satisfies the *Johnson/Camden I* factors. The settlement, proposed incentive award and counsel's fee and expense request are fair, reasonable and adequate under Rule 23, and thus Plaintiff respectfully requests that this Court enter an order granting them final approval. A draft Final Approval Order is attached as *Appendix 7.*

Dated: September 7, 2016.

26

Respectfully Submitted

*/s/ Scott D. Owens*
SCOTT D. OWENS, Esq.
3800 S. Ocean Drive, Ste. 235.
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Bret Leon Lusskin , Jr.
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Ste. 302
Aventura, FL 33180
954−454−5841
Fax: 954−454−5844
blusskin@lusskinlaw.com

Michael S. Hilicki (*pro hac vice*)
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3402 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
MHilicki@KeoghLaw.com
www.KeoghLaw.com

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that September 7, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this September 7, 2016, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *<u>/s/ Scott D. Owens</u>*
        Scott D. Owens, Esq.

28