**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 15-cv-60716-WPD

Dr. David Muransky, individually and on
behalf of all others similarly situated

               Plaintiff,

v.

Godiva Chocolatier, Inc.

               Defendant.

_____/

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## **TABLE OF CONTENTS**

I.      **INTRODUCTION** ................................................................................................ 1

II.     **SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT** .................. 2

III.    **THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT** ........................3

IV.     **THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE** ...................... 4
        A.  The Agreement Is the Result of Arm's Length Negotiations. ............................... 5
        B.  The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors ................ 6
            1.  Likelihood of Success at Trial .................................................................. 6
            2.  Range of Possible Recovery and the Point at which the Agreement
                Is Fair, Reasonable, and Adequate ........................................................... 7
            3.  The Complexity and Expense of Further Litigation ................................... 8
            4.  Substance and Amount of Opposition to Agreement.................................. 8
            5.  Stage of Proceedings at which Settlement Achieved ................................. 9

V.      **THE OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED** .......... 9
        A.  Cindy Hager's Objection Is Directed At the Lawsuit, Not the Settlement...........9
        B.  Attorney Feldman's Objection Does Not Identify Any Issue with the
            Settlement ....................................................................................................10
        C.  The Professional Objectors Should Be Overruled...........................................11
            1.  Objections by Professional/Serial Objectors Should be Given
                LittleWeight ...........................................................................................11
            2.  James Price, W. Allen McDonald, John W. Davis, and Eric A.
                Isaacson....................................................................................................12
        D.  The Notice Approved by the Court is More than Sufficient................................13
        E.  There Is No Need For A Lodestar Analysis..............................................…...14
        F.  The Proposed Fee Award Is Reasonable and Proper .......................................17
        G.  Dr. Muransky Remains an Adequate Representative.......................................18
        H.  The Proposed Incentive Award Is Reasonable and Proper...........................19

VII.    **CY PRES RECIPIENT AND EXPENSES TO THIRD PARTIES** ........................... 20

VIII.   **CONCLUSION** ............................................................................................. 20

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Southern Farm Bureau Life Ins. Co.*,

    493 F.3d 1276 (11th Cir. 2007) ...................................................................... 3

*Agne v. Papa John's International Inc. et al*,

    2:10-cv-01139 (D. Wa.) ............................................................................ 1

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*,

    No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ........................ 6,11

*Allapattah Servs., Inc. v. Exxon Corp.*,

    No. 91-cv-0986, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ............................................ 8

*Aventura Chiropractic Ctr., Inc. v. Med Waste Mgmt. LLC*,

    No. 12-21695-CIV, 2013 WL 3463489 (S.D. Fla. July 3, 2013) ...................................19

*Barnes v. FleetBoston Fin. Corp.*,

    No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) .................11

*Bailey v. Great Lakes Canning*,

    908 F.2d 38 (6th Cir. 1990) ...........................................................................20

*Behrens v. Wometco Enters., Inc.*,

    118 F.R.D. 543 (S.D. Fla. 1988) ...................................................................... 8

*Bennett v. Behring Corp.*,

    737 F.2d 982 (11th Cir. 1984) ................................................................... *passim*

*Boeing Co. v. Van Gemert*,

    444 U.S. 472 (1980) .................................................................................. 15

*Brytus v. Spang & Co.*,

    203 F.3d 238 (3d Cir. 2000) ...........................................................................17

*Camden I Condo Ass'n v. Dunkle*,

    946 F.2d 768 (11th Cir. 1991) ................................................................... *passim*

*Cassese v. Williams*,

    503 Fed. Appx. 55, 57 (2d Cir. 2012) .............................................................14

*Central Railroad Banking Co. v. Pettus*,

    113 U.S. 11 (1885) ....................................................................................18

*Chieftan Royalty Co. v. SM Energy Co.*,

　　11-cv-177 (W.D. Okla.) (Nov. 3, 2015) ....................................................12, 13

*Cooper v. NelNet, Inc.*,

　　14-cv-314-RBD-DAB, Dkt. 85 (M.D. Fla. Aug. 4, 2015).................................. 7

*Cotton v. Hinton*,

　　559 F.2d 1326 (5th Cir. 1977) ........................................................................ 9

*Crutcher v. Logan*,

　　102 F.2d 612 (5th Cir. 1939) .........................................................................20

*Dennis v. Kellogg Co.*,

　　No. 09-cv-1786, 2013 U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14, 2013)...................11

*Domonoske v. Bank of Am., N.A.*,

　　790 F.Supp.2d 466 (W.D. Va. 2011) ..............................................................10

*EEOC v. West Customer Mgmt. Group, LLC*,

　　2015 U.S. Dist. LEXIS 76943(N.D. Fla. June 15, 2015). ………………………………15

*Fabricant v. Sears, Roebuck & Co.*,

　　202 F.R.D. 310 (S.D. Fla. 2001).....................................................................18

*Faught v. Am. Home Shield Corp.*,

　　668 F.3d 1233 (11th Cir. 2011)................................................................... 3, 13

*Figueroa v. Sharper Image Co.*,

　　517 F. Supp.2d 1292 (S.D. Fla. 2007) ............................................................ 7

*Flinn v. FMC Corp.*,

　　528 F.2d 1169 (4th Cir. 1975)………………………………………………………..20

*Florida League of Prof'l Lobbyists, Inc. v. Meggs*,

　　87 F.3d 457 (11th Cir. 1996) .........................................................................17

*German by German v. Federal Home Loan Mortg. Corp.*,

　　168 F.R.D. 145 (S.D.N.Y. 1996) ....................................................................19

*Gevaerts v. TD Bank, N.A.*,

　　2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015)............................. 7, 19

*Gortat v. Capala Bros.*,

　　949 F. Supp. 2d 374 (E.D.N.Y. 2013) ............................................................19

*Granada Invest., Inc. v. DWG Corp.*,

    962 F.2d 1203 (6th Cir. 1992) ...............................................................................19, 20

*Haggert v. Woodley*,

    809 F.3d 1336 (Fed. Cir. 2016).........................................................................16

*Hanlon v. Palace Entm't Holdings*, LLC,

    2012 U.S. Dist. LEXIS 364 (W.D. Pa. Jan. 3, 2012)........................................ 7

*Harris v. Mexican Specialty Foods, Inc.*,

    564 F.3d 1301 (11th Cir. 2009) ......................................................................... 2

*Juris v. Inamed Corp.*,

    685 F.3d 1294 (11th Cir.2012) ...........................................................................13

*In re Bioscrip, Inc. Sec. Litig.*,

    13-cv-6922 (S.D.N.Y.), Dkt. 113………………………………….…………...1

*In re Checking Account Overdraft Litig.*,

    830 F. Supp. 2d 1330 (S.D. Fla. 2011) ....................................................5, 6, 15

*In re CP Ships Ltd. Sec. Litig.*,

    578 F. 3d 1306 (11th Cir. 2009)......................................................................... 3

*In re Domestic Air Transport. Antitrust Litig.*,

    148 F.R.D. 297 (N.D. Ga. 1993) ....................................................................... 5

*In re Enfamil Lipil Mktg. & Sales Practices Litig.*,

    No. 11-MD-02222-JIC, 2012 U.S. Dist. LEXIS 49254 (S.D. Fla. Apr. 9, 2012)……….12

*In re Facebook Privacy Litig.*,

    2016 U.S. Dist. LEXIS 119293 (N.D. Cal. June 28, 2016)…………………………18, 19

*In re Law Office of Jonathan E. Fortman, LLC*,

    No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903 (E.D. Mo. Feb. 1, 2013)……......…..12

*In re Mercury Interactve Corp.*,

    F.3d 988 (9th Cir. 2010) ………………………………….……………………..…..14

*In re Mexico Money Transfer Litig.*,

    164 F. Supp. 2d 1002 (N.D. Ill. 2000)……........................................................ 9

*In re Morton*, 2015 Bankr. LEXIS 3309

    (E.D. Bankr. Tenn. Sept. 30, 2015) ..................................................................12

*In re: Pub. Offering Sec. Litig.,*

    727 F. Supp. 2d 289 (S.D.N.Y. 2010)..............................................................12

*In re Shell Oil Refinery,*

    155 F.R.D. 552 (E.D.La.1993)...................................................................... 8

*In re Sunbeam Sec. Litig.,*

    176 F.Supp.2d 1323 (S.D. Fla. 2001) .....................................................*passim*

*In re U.S. Oil & Gas Litig.,*

    967 F.2d 489 (11th Cir. 1992)....................................................................... 4

*In re Visa Check/MasterMoney Antitrust Litig.,*

    No. 96-5238, ECF 1051 (E.D.N.Y. Apr. 27, 2004)........................................13

*Ingram v. The Coca-Cola Co.,*

    200 F.R.D. 685 (N.D. Ga. 2001)................................................................... 6

*Kirkpatrick v. J.C. Bradford & Co.,*

    827 F.2d 718 (11th Cir. 1987) ......................................................................18

*Katz v. ABP Corp.,*

    2014 U.S. Dist. LEXIS 141223 (E.D.N.Y. Oct. 3, 2014)................................. 7

*Kincade v. General Tire Rubber Co.,*

    635 F.2d 501 (5th Cir. 1981) .......................................................................20

*Lee v. Ocwen Loan Serv., LLC,*

    2015 U.S. Dist. LEXIS 121998 (S.D. Fla. Sept. 14, 2015) .............................2

*Legg v. Laboratory Corp. of America,*

    14-cv-61543-RLR, Dkt. 227 (S.D. Fla. Feb. 18, 2016) .................................. 1

*Legg v. Spirit Airlines,*

    14-cv-61978-JIC, Dkt. 151 (S.D. Fla.  Aug. 2, 2016) ..................................... 1

*Lipuma v. Am. Express Co.,*

    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...................................................*passim*

*Long v. Joseph-Beth Grp., Inc.,*

    No. 07-cv-00443 (W.D. Pa. May 5, 2007).................................................... 8

*Lumas v. Sw. Airlines Co.,*

    No. 3:13-cv-01429-CRB (S.D. Cal. 2013) ................................................... 8

*McCue v. MB Fin., Inc.,* No. 15 CV 988, 2015 WL 4522564

(N.D. Ill. July 23, 2015) ………………………………………………..…………15, 16

*McDonough v. Toys R' Us, Inc.*,

    80 F.Supp.2d 626 (E.D. Pa. 2015) ...................................................................12

*Morrison v. Nat'l Australia Bank Ltd.*,

    561 U.S. 247 (2010).......................................................................................... 3

*Nelson v. Mead Johnson & Johnson Co.*,

    484 Fed. Appx. 429 (11th Cir. July 20, 2012) .................................................12

*Newman v. Sun Capital Corp.*,

    No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 (M.D. Fla. Aug. 28, 2012) .....................6

*North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.*,

    1:13-cv-06897 (N.D. Ill.) .............................................................................. 1

*North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.*,

    1:13-cv-03105 (N.D. Ill.) .............................................................................. 1

*Palamara v. Kings Family Restaurants*,

    2008 U.S. Dist. LEXIS 33087 (W.D. Pa. Apr. 22, 2008) ................................. 7

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010)………………………………………………………..……… 17
*Perez v. Asurion Co.*,

    501 F. Supp.2d 1360 (S.D. Fla. 2007) .................................................... 6, 8, 9

*Pierce v. Visteon Corp.*,

    791 F.3d 782 (7th Cir. 2015) ....................................................................15, 16

*Phillips Petroleum Co. v. Shutts*,

    472 U.S. 797 (1985)…….................................................................................4

*Poertner v. Gillette Co.*,

    618 F. App'x 624 (11th Cir. 2015) ........................................................... 14, 15

*Redman v. Radioshack Corp.*,

    768 F.3d 622 (7th Cir. 2014) ...................................................................... 14

*Saccoccio v. JP Morgan Chase Bank, N.A.*,

    297 F.R.D. 683 (S.D. Fla. 2014)...................................................................14

*Shane Grp., Inc. v. Blue Cross Blue Shield*,

    2016 U.S. App. LEXIS 10264 (6th Cir. 2016) ...............................................16

*Spicer v. Chi. Bd. of Options Exchange, Inc.*,
    844 F.Supp. 1226 (N.D. Ill. 1993) ................................................................ 19

*Spillman v. RPM Pizza, LLC*,
    No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ............................ 1

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................ 20

*Todd v. Retail Concepts Inc.*,
    2008 U.S. Dist. LEXIS 117126 (M.D. Tenn. Aug. 22, 2008) ........................................... 7

*Trustees v. Greenough*,
    105 U.S. 527 (1882)..................................................................................19

*U.S. v. Alabama*,
    271 F. App'x 896 (11th Cir. 2008) ................................................................. 3

*United States v. Equitable Trust Co.*,
    283 U.S. 738 (1931)..................................................................................18

*Vollmer v. Selden*,
    350 F.3d 656 (7th Cir. 2003) ........................................................................11

*Warren v. City of Tampa*,
    693 F.Supp. 1051 (M.D. Fla. 1988)................................................................. 5

*Waters v. Int'l Precious Metals Corp.*,
    190 F.3d 1291 (11th Cir.1999) ................................................................ 17, 18

*Will v. Gen. Dynamics Corp.*,
    2010 U.S. Dist. LEXIS 123349 (S.D. Ill. Nov. 22, 2010) .................................................16

*Wolff v. Cash 4 Titles*,
    No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) .................................... 17

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*,
    1:12-cv-00780, (N.D. Ill) ............................................................................ 1

## Other Authorities

McLaughlin on Class Actions
    §6:10 (10th ed.)......................................................................................... 9

NEWBERG ON CLASS ACTIONS ................................................................ 11, 19

*The Role of Opt-Outs and Objectors in Class Action Litigation*

    57 VAND. L. REV. 1529 (2004) ......................................................................................1

CLASS ACTION OBJECTORS,

    2003 U. CHI. LEGAL F. 403, 409 (2003) ....................................................................11

THE FAIRNESS HEARING: ADVERSARIAL AND REGULATORY APPROACHES,

    53 UCLA L.REV. 1435, 1459 (2006) ...........................................................................11

## I.    INTRODUCTION

Plaintiff, Dr. David Muransky, on behalf of the Settlement Class, submits this memorandum in support of approval of the class action settlement with Defendant, Godiva Chocolatier, Inc. ("Godiva"), as to their Fair and Accurate Credit Transaction Act (FACTA) claims, which the Court preliminarily approved on January 26, 2016. [ECF 40]. A true and correct copy of the Settlement Agreement and Release ("Agreement") is attached as *Appendix 1*.

The Agreement is the third largest all cash non-revisionary settlement in the history of FACTA.[1] Godiva will pay six million, three hundred thousand dollars ($6,300,000.00).

The class members were sent notice to submit a claim and, to date, at least 47,445 valid claims have been filed. *See Appendix 2* (Declaration of Claims Administrator) at ¶20.[2] That is approximately 15% of the people sent notice of the settlement, a terrific result. The claim rate here is much higher than the rate in many other consumer statutory damage cases that have been granted final approval,[3] and thus is a strong endorsement of the settlement by the class.

Conversely, only 15 class members sought exclusion (.0047%). *Appendix 2* at ¶18. Likewise, only four objected. [ECF 58-61]. Such an extraordinarily "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005).[4] Significantly, each objector filed a claim to receive a share of the proceeds from this "objectionable" settlement. *Appendix 2* at ¶19). Finally, no governmental entity objected to the settlement after

---

[1] At the time this settlement was negotiated, the largest approved all cash FACTA settlement was *Lumas v. Sw. Airlines Co.*, No. 3:13-cv-01429-CRB (S.D. Cal. 2013). In that case, the class total was between 880,000 and 2,200,000 transactions and the entire settlement was for $1.8 million. The largest all cash settlement was for $11,000,000. *Legg v. Lab. Corp. of America*, 14-cv-61543-RLR, Dkt. 227 (S.D. Fla. Feb. 18, 2016). ("*Lab*"). The second largest all cash settlement was for $7,500,000. *Legg v. Spirit Airlines*, 14-cv-61978-JIC, Dkt. 151 (S.D. Fla. Aug. 2, 2016) ("*Spirit*"). The difference among the settlements in *Lab*, *Spirit* and *Godiva* mostly stems from the fact that *Lab* and *Spirit* had larger classes, but the per class member recovery is virtually the same, which illustrates the strength of this settlement.

[2] The Claims Administrator is evaluating the claims to eliminate claims made by non-class members and/or deficient claims, with 17,106 claims remaining to be evaluated. *Id.* However, even if all of these claims were excluded (which is unlikely), the resulting claim rate would be about 15%, and thus still exceptional. See fn. 3, below.

[3] *See, e.g., Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780, (N.D. Ill) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharma. (USA) Inc.*, 13-cv-3105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.*, 13-cv-6897 (N.D. Ill.) (.53% of the class made claims); *Agne v. Papa John's Int'l, Inc.*, 10-cv-1139 (D. Wash.) (1.52% of the class made claims); *Spillman v. RPM Pizza, LLC*, 10-cv-349 (M.D. La.) (.07% of the class made claims).

[4] In a class this size, the Court should expect to receive around 30 objections (extrapolating from the average of 4.7 objectors per $1 million in consumer recovery). *See* Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1550 (2004).

receiving the required CAFA notice. [ECF 43]. Given the class size, there is almost no opposition to the settlement.

In granting preliminary approval, the Court found the Agreement was within the range of reasonableness, and thus that the class should be given notice. [ECF 40, ¶1]. Nothing has changed to alter that finding. To the contrary, as demonstrated by the strong claim rate and paucity of objections, the class has indicated overwhelming support for the settlement.

## II.   SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT

FACTA "is aimed at protecting consumers from identity theft." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). To encourage private litigants to enforce FACTA, a successful plaintiff may get statutory damages for any "willful" violation. *See Harris, Inc.,* 564 F.3d at 1306-7, *citing* 15 U.S.C. §1681n(a)(l)(A), and (2). Consistent with this intent, Plaintiff brought this action to resolve Godiva's alleged systematic violation of FACTA's requirements. On June 9, 2015, Plaintiff filed a first amended complaint. [ECF 16]. On June 23, 2015, Godiva moved to dismiss. [ECF 21]. After briefing, the Court denied the motion. [ECF 26]. On September 16, 2015, Godiva filed its answer and defenses [ECF 29].

Thereafter, Plaintiff served extensive discovery. In response, Godiva produced details about the scope of the putative class as well as information about the nature and cause of the alleged FACTA violations at issue. Because the FACTA claims at issue require Plaintiff and the class to prove that Godiva "willfully" violated the law, this information was critical to understanding the value of the case and the chance of success on the merits.

This district encourages early mediation. *See* Local Rule 16.2. The parties discussed the prospect of settling the case on several occasions, but did not agree to do so until after the denial of Godiva's motion to dismiss, and the production and analysis of facts concerning the class and how Godiva's alleged violation of FACTA occurred. The parties attended a full-day mediation before a private, third-party mediator, Rodney Max, Esq., in Miami on November 3, 2015.[5] The case did not settle at the mediation, and the parties then spent the next several months in additional negotiations to come to a settlement. The settlement agreement is attached as *Appendix 1*.

On January 26, 2016, the Court granted preliminary approval. Because Godiva did not

---

[5] Rodney Max, Esq., is "probably one of the top mediators in the country." *Lee v. Ocwen Loan Serv., LLC*, 2015 U.S. Dist. LEXIS 121998 at *33 (S.D. Fla. Sept. 14, 2015).

have the class members' names or contact information, Class Counsel had to embark on an extensive campaign to identify and locate the class members. This required subpoenas to credit card processors and issuers, including American Express, Discover, Bank of America, Citibank, Chase, Wells Fargo and others. *Appendix 3* (Hilicki Decl.) at ¶ 9. The campaign also required extensive analysis, communications and negotiations with the subpoenaed entities, as well as motion practice to protect the confidentiality of the credit and debit card transaction data, facilitate compliance with the subpoenas, and extend time to issue the class notice to accommodate the subpoenaed parties. [ECF 41, 45, 47, 48, 52, 54, 56]. As a result of counsel working through the numerous obstacles to identify the class, notices were mailed to 318,453 class members.[6] *Appendix 2*, ¶14.

## III.   THE NOTICE PROVIDED WAS MORE THAN SUFFICIENT.

To satisfy Rule 23, the notice must be calculated to "apprise class members of the terms of the settlement agreement in a manner that allows class members to make their own determination regarding whether the settlement serves their interests." *U.S. v. Alabama*, 271 F. App'x 896, 901 (11th Cir. 2008); *see also In re CP Ships Ltd. Sec. Litig.*, 578 F.3d 1306, 1317 (11th Cir. 2009), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) ("Notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'")

However, the notice "need not include every material fact or be overly detailed." *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (internal quotations omitted). Moreover, neither Rule 23 nor due process requires that all class members receive actual notice. *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). Instead, to determine whether the notice is sufficient, courts "look solely to the language of the notices and the manner of their distribution." *Alabama*, 271 F. App'x at 901, *quoting Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1286 (11th Cir. 2007).

The plan approved by the Court provided exceptional notice that exceeds Rule 23 and due process requirements. This Court found:

> The Court has considered the Class Notice, attached as Exhibits 2 and 3 to the Agreement, including the proposed forms of notice, Summary Notice, Full Notice, and Settlement Claim Form, and finds that the forms, content, and manner

---

[6] 6,344 mailed notices were returned as undeliverable and no alternative address could be found. *See Appendix 2*, ¶15.

of notice proposed by the Parties and approved herein meet the requirements of due process and Fed. R. Civ. P. 23(c) and (e), are the best notice practicable under the circumstances, constitute sufficient notice to all persons entitled to notice, and satisfy the Constitutional requirements of notice.

[ECF 40 at ¶4]. These conclusions remain correct as evidenced by the terrific claim rate.

In fact, Class Counsel essentially engaged in a second litigation to ensure broad notice distribution, spending months subpoenaing class member transaction, identifying and contact information from banks and credit card issuing and processing companies. *See Appendix 3* (Hilicki Decl.) at ¶9. In addition, in response to the subpoenas Class Counsel sent Amex and TCF Bank, for which Amex produced data for more than one-hundred thousand transactions, Amex and TCF sent letters to affected customers advising them about the subpoena, which resulted in Class Counsel's office being inundated with calls by potential class members before the actual class notice was even sent. *Id.* at ¶11. The results of these efforts are seen in the exceptional claim rate.

The Claims Administrator sent notice to every identified class member for which an address was located. *Appendix 2*, at ¶14.[7] It also set up the settlement website as well as the toll-free number for class members to call with any questions. *Id* at ¶¶16-17. The website enabled class members to review the settlement agreement and exhibits, the preliminary approval order, the long form notice and FAQs, and file a claim or request that a claim form be mailed to them. *Id.* at ¶17. It also provided a toll-free number to reach class counsel. *Id.* at p. 19 ("**You can also call class counsel with any questions at 866.726.1092.**") This was repeated in the FAQs.[8]

The notice complies with the court-approved plan, exceeds Rule 23 and Due Process, and fully apprised the class of all material terms and their rights.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Judicial and public policy favor the voluntary settlement of complex class action litigation. *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the

---

[7] Direct mail notice to potential class members, standing alone, is generally sufficient. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("where a fully descriptive notice is sent first-class mail to each class member, with an explanation of the right to 'opt out,' [that] satisfies due process.")

[8] As of September 7, 2016, the website had been visited by 27,205 unique visitors. *Appendix 2* at ¶17. As of September 7, 2016, the Claims Administrator's toll-free Voice Response Unit has handled a total of 1,771 phone calls from persons seeking information about the case. *Appendix 2* at ¶16. In addition, the CAFA notice of the settlement was sent the U.S., state and other attorneys' general as required. [ECF 43]. Moreover, Class Counsel received numerous calls from class members about the settlement in addition to the extensive calls and emails Class Counsel received as result of the Amex and TCF Bank letters.

pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F.Supp. 1051 (M.D. Fla. 1988) ("[S]ettlements are highly favored in the law."). With a settlement, the class members are ensured a benefit as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Transport. Antitrust Litig.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993).

Ultimately, the Court should approve a settlement if it is fair, adequate, and reasonable, and not the product of collusion. *Bennett*, 737 F.2d at 986 (11th Cir. 1984). In determining this, some deference should be given to the decision of the Parties. *See Warren*, 693 F.Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation."). Also, the Court "should always review the proposed settlement in light of the strong judicial policy that favors settlements." *In re Sunbeam Sec. Litig.*, 176 F. Supp.2d 1323, 1329 (S.D. Fla. 2001). In determining whether a settlement is "fair, adequate, and reasonable," the following factors (the *Bennett* factors) are generally considered:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Bennett*, 737 F.2d at 986.

Ultimately, "[a] settlement is fair, reasonable and adequate when 'the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued.'" *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1344 (S.D. Fla. 2011) (citation omitted). That is the case here, as the Agreement is the result of arm's length, informed negotiations between the parties with the assistance of a neutral mediator, and satisfies each of the *Bennett* factors.

**A.     The Agreement Is the Result of Arm's Length Negotiations.**

The context in which the Agreement was reached confirms that it was the result of arms' length and informed negotiations among the parties, and not collusion. To start, the Agreement only came about after: Plaintiff defeated Godiva's motion to dismiss, discovery, and extensive negotiations and a mediation presided over by a highly-qualified third-party mediator. The pre-suit investigation, discovery and negotiations gave experienced counsel ample information about the facts and the chance of success, and enabled them to evaluate the terms of any proposed agreement and ensured a fair compromise. *See Appendix 3* Hilicki Decl. at ¶7; *Appendix 4* Owens Decl., ¶ 32; and *Appendix 5* Lusskin Decl. at ¶ 18. The fact that the parties were only able

5

to reach a deal after an in-person mediation session by well-experienced neutral further demonstrates there was no collusion. *See Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) ("The fact that the entire mediation was conducted under the auspices of …. a highly experienced mediator, lends further support to the absence of collusion."); *see also In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1340 (S.D. Fla. 2011) (no collusion where settlement reached by capable and experienced counsel and with the assistance of a well-qualified and experienced mediator). As such, it is clear the Agreement is the result of arms' length and informed negotiations between the parties, not collusion, and thus the Court should not hesitate to approve it.

> **B.     The Settlement Meets Each of the Eleventh Circuit's *Bennett* Factors.**

In addition to being the product of arm's length negotiations, the Agreement also meets each of the *Bennett* factors. It is important to keep in mind that "[i]n evaluating these considerations, the district court should not try the case on the merits." *Perez v. Asurion Co.*, 501 F. Supp.2d 1360, 1380 (S.D. Fla. 2007) (citation omitted). "Rather, the court 'must rely upon the judgment of experienced counsel and, absent fraud, 'should be hesitant to substitute its own judgment for that of counsel.'" *Id.* Here, each factor weighs in favor of granting final approval.

> **1.     Likelihood of Success at Trial.**

The first *Bennett* factor is the likelihood of success at trial. "The likelihood of success on the merits is weighed against the amount and form of relief contained in the settlement." *Lipuma*, 406 F. Supp.2d at 1319. Where success at trial is not certain, this factor weighs in favor of approving the settlement. *See Newman v. Sun Capital Corp.*, No. 09-cv-445, 2012 U.S. Dist. LEXIS 121843 at *30 (M.D. Fla. Aug. 28, 2012).

Godiva previously complied with FACTA, but became noncompliant as a result of the installation of a new system. If the case made it to trial, the class risks the jury concluding Godiva's alleged violation of FACTA was not willful since a third party triggered Godiva's non-compliance. Class Counsel is not aware of any plaintiff obtaining a favorable class judgment under FACTA, particularly on these facts. Also, at the time the settlement was reached, Plaintiff and the class faced considerable uncertainty with regard to the Supreme Court's anticipated decision in *Spokeo, Inc. v. Robins* which, depending on the outcome, could have resulted in the case's dismissal for failure to present an injury in fact.

In addition, even if Plaintiff prevails any substantial award can be thrown out on due

process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* No. 09 C 910, 2011 U.S. Dist. LEXIS 48323, at *13 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation—would not violate Defendant's due process rights . . . . Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.") Against the inherent uncertainty of a trial where no other plaintiff has succeeded, is the substantial cash relief the class members will receive here. *See Lab. Corp. and Spirit Airlines supra; see also Gevaerts v. TD Bank, N.A.,* 2015 U.S. Dist. LEXIS 150354 at *38  (S.D. Fla. Nov. 5, 2015) ("Rather than facing more years of costly and uncertain litigation, [the] Settlement Class Members will receive an immediate cash benefit…") (brackets added). When the strengths of the claims are weighed against the legal and factual obstacles they face, and the complexity of class action practice, there should be no doubt that this settlement is in the class members' best interests.[9] The first *Bennett* factor weighs in favor of approving it.

### 2.  Range of Possible Recovery and the Point at which the Agreement Is Fair, Reasonable, and Adequate

Analysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined. *In re Sunbeam*, 176 F. Supp.2d at 1331. As in most litigation, "[t]he range of potential recovery 'spans from a finding of non-liability through varying levels of injunctive relief,' in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Co.*, 517 F. Supp.2d 1292, 1326 (S.D. Fla. 2007), *quoting Lipuma*, 406 F. Supp.2d at 1322. However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp.2d at 1326.

The monetary relief secured on behalf of the class is substantial. It is believed to be the third largest aggregate recovery for a class action alleging FACTA violations. Each class member who submitted a valid claim will receive approximately $60 in cash, possibly more. This is plainly fair, reasonable and adequate, as the relief easily surpasses the potential per-class-member benefit conferred in many other FACTA class settlements that received final approval.[10]

---

[9] *See Appendix 3* Hilicki Decl. at ¶16; *Appendix 4* Owens Decl. at ¶33; Appendix 5 Lusskin Decl. at ¶16.

[10] *See, e.g., Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223, *2 (E.D.N.Y. Oct. 3, 2014) (FACTA settlement that gives class members a choice to make a claim for $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364 at *14-*15 (W.D. Pa. Jan. 3, 2012) (FACTA settlement providing admission tickets to defendant's business); *Todd v. Retail Concepts Inc.*, 2008 U.S.

This settlement provides a far greater recovery than the next largest settlement from *Lumas v. Sw. Airlines Co.* ($1.8 million to settle between 880,000 and 2,200,000 transactions).

### 3.      The Complexity and Expense of Further Litigation

The next factor is the complexity and expense of further litigation. In evaluating this factor, courts "should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *Lipuma*, 406 F. Supp.2d at 1323 (citation omitted). "The law favors compromises in large part because they are often a speedy and efficient resolution of long, complex, and expensive litigation." *Perez*, 501 F. Supp.2d at 1381, *quoting Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 543, 543 (S.D. Fla. 1988).

This factor favors approval of the Agreement because the expense and complexity of further litigation would be substantial and require further briefing on numerous substantive issues, extensive trial preparation, and appeal. *See Appendix 3* Hilicki Decl. at ¶¶12-13; *Appendix 4* Owens Decl. at ¶30; and *Appendix 5* Lusskin Decl. at ¶13.

Moreover, continued litigation delays the case's resolution, imposes additional substantial expense on both sides, and consumes substantial judicial resources. When, as here, additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma*, 406 F. Supp.2d at 1323, *quoting In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D. La. 1993); *see also Perez*, 501 F.Supp.2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.")

### 4.      Substance and Amount of Opposition to Agreement

The next *Bennett* factor is the substance and amount of opposition to the Agreement. Here, out of about 318,000 class members, only four filed objections. These facts, combined with the high claim rate by the rest of the class, shows this factor weighs fully in support of granting final approval. *See Lipuma*, 406 F.Supp.2d at 1324 ("a low percentage of objections points to the

---

Dist. LEXIS 117126 at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA settlement providing a $15 credit on class members' next purchase of $125 or more); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087 at *9-*10 (W.D. Pa. Apr. 22, 2008) (FACTA settlement providing vouchers worth an average of $4.38 each to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future); *Long v. Joseph-Beth Grp., Inc.,* No. 07-cv-00443 (W.D. Pa. May 5, 2007) (class of 400,000 members could claim a $5 voucher.)

reasonableness of a proposed settlement and supports its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-986, 2006 U.S. Dist. LEXIS 88347 at *44 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair.").[11]

### 5.    Stage of Proceedings at which Settlement Achieved

The final *Bennett* factor looks to the stage of proceedings at which the settlement was achieved. This factor is used "to ensure that the Plaintiff have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *Perez*, 501 F. Supp.2d at 1383.

Here, the Agreement was not reached until after the denial of a motion to dismiss, discovery about the merits and the class, and a day-long mediation before a professional neutral.[12] In *Lab* and *Spirit*, Class Counsel had just secured two large FACTA settlements after substantial litigation of the same issues this case presents. The fact that Class Counsel was able to achieve substantially the same recovery here should leave no doubt that they had sufficient information about the facts, the class, and the range of the class's potential damages.[13] Hence, Class Counsel was well-informed, had sufficient information to evaluate the strength of the class claims and weigh the benefits of the Agreement against continued litigation.

## V.    THE OBJECTIONS TO THE SETTLEMENT SHOULD BE OVERRULED.

The $6,300,000 non-reversionary settlement is a great result, particularly in light of the litigation risks, and the fact that it is one of the largest all cash settlements under FACTA. Of the approximately 318,000 class members, 47,445 filed claims in clear support of the settlement [ECF 66 at 9] and only four (0.00126%) filed objections.

### A.    Cindy Hager's Objection Is Directed at the Lawsuit, Not the Settlement

Ms. Hager does not challenge the settlement. Instead, she claims the entire lawsuit is

---

[11] *In re Mex. Money Trans. Litig.*, 164 F.Supp.2d 1002, 1021 (N.D. Ill. 2000) (fact that more than "99.9% of class members have neither opted out nor filed objections . . . is strong circumstantial evidence in favor of the settlement"), *aff'd*, 267 F.3d 743 (7th Cir.); 2 McLaughlin on Class Actions §6:10 (10th ed.) ("the absence of objectors or receipt of a relatively small number of objections and opt-outs supports the conclusion that the settlement is adequate.")

[12] Although the discovery obtained from Godiva in lead up to the negotiations was sufficient, it must be noted that extensive formal discovery is not required. *See Lee*, 2015 U.S. Dist. LEXIS 121998 at *75-*76 ("we are not compelled to hold that formal discovery was a necessary ticket to the bargaining table. … informality in the discovery of information is desired."), *quoting In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) and *Cotton v. Hinton*, 559 F.2d 1326, 1332 (5th Cir. 1977).

[13] Class Counsel's ability to use their experience to achieve the same result in less time should not be held against them. If anything, it should be rewarded for conserving judicial resources without sacrificing the relief to the class.

"ridiculous" because anyone "dim enough" to decline their receipt deserves the consequences of their "stupidity" if the information on it gets stolen. [ECF 58 at 1]. Ms. Hager's opinion seems to stem from a misunderstanding of FACTA, which does not bar the printing of a receipt altogether. *Id.* ("I object to this lawsuit based on the fact that credit card receipts are needed.")

Regardless, general disapproval of the case and similar "philosophical" objections are inevitable in class actions, and thus they "do not impugn the adequacy of the settlement itself."[14] *Domonoske v. Bank of Am., N.A.*, 790 F.Supp.2d 466, 474 (W.D. Va. 2011).

### B. Attorney Feldman's Objection Does Not Identify Any Issue with the Settlement

Similar to Ms. Hager, *pro se* bankruptcy attorney Jonathan Feldman does not identify any issue with the settlement itself. Instead, he opposes the settlement because he claims he did not have sufficient information to determine whether the settlement meets the test for approval.

There is no requirement that class members (most of whom are lay persons) be given a memorandum of law during the notice period that demonstrates to their satisfaction that the settlement satisfies Rule 23. That is an issue for the Court's discretion *after* the notice period because the determination is made in part based on the results of the notice campaign and the class members' response to the settlement (which, here, was overwhelmingly positive). In granting preliminary approval, the Court found that the notice advising class members about the settlement satisfied Due Process. [ECF 40 at ¶4]. Mr. Feldman does not challenge that finding. Accordingly, the Court correctly directed Class Counsel to file their motion in support of final approval *after* the notice campaign. [ECF 53].

Second, Mr. Feldman's inability to satisfy himself that the settlement is fair, reasonable and adequate is more likely explained by his failure to avail himself of the resources available to him. He admits that any money to him is a windfall and he received the notice "months ago." [ECF 60 at 1]. The notice directs him to the Settlement website for further information, including settlement documents, FAQs about the case and a toll-free telephone number he could use to call Class Counsel. Class Counsel received numerous calls from class members who asked questions about the Settlement. None of them objected. Over forty-five thousand filed claims and raised no issue about the sufficiency of the information provided. Mr. Feldman himself filed a claim to receive a share of the proceeds, but never called Class Counsel despite having months to do so.

Finally, similar to Ms. Hager, Mr. Feldman misunderstands the case. He claims it is

---

[14] Likewise, the anonymous "Letter from St. Louis" [ECF 64] also should be rejected as a philosophical objection.

10

worth "billions," but that is incorrect. The class has about 318,000 people, and statutory damages are limited to $100-$1000. A jury might view printing transaction receipts due to a mistake by a vendor to be a relatively minor offense, or take Ms. Hager's view (blame the victims), and find no liability or only award the minimum. In any event, the potential value must be discounted to account for the risks the class must overcome as discussed above. *See* p.6, *supra*.

### C.   The Professional Objectors Should Be Overruled

#### 1.   Objections by Professional/Serial Objectors Should Be Given Little Weight

An objector can sometimes provide assistance to the parties, the class and the Court by identifying a genuine problem in a proposed settlement. However, "serial" or "professional" objectors and/or their counsel file meritless objections just to try to extract payments for themselves by threatening years of delay and expense on appeal:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost.

*Barnes v. FleetBoston Fin. Corp.*, No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, *3-4 (D. Mass. Aug. 22, 2006); *see also Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003) (improper to file objection to "cause expensive delay in the hope of getting paid to go away").

Accordingly, "when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *Dennis v. Kellogg Co.,* No. 09-cv-1786, 2013 U.S. Dist. LEXIS 163118, at *11 n.2 (S.D. Cal. Nov. 14, 2013); *In re Law Office of Jonathan E. Fortman, LLC*, No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903, at *3 (E.D. Mo. Feb. 1, 2013) (same). [15]

---

[15] The respected authors of Newberg on Class Actions observe that filing objections to class settlements has become a "big business." ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS 11:55 (4th Ed. 2008); *see also* § 15:37 (entitled Abusive Conduct by Counsel Objecting to Class Action Settlements). UCLA law professor William Rubenstein has written that "[t]his part of the profession has arguably attracted lawyers more interested in coercing a fee than in correcting a wrong." WILLIAM B. RUBENSTEIN, THE FAIRNESS HEARING: ADVERSARIAL AND REGULATORY APPROACHES, 53 UCLA L.REV. 1435, 1459 (2006) (citations omitted). Professor Ed Brunet bluntly characterizes professional objectors as "warts on the class action process" and "bottom feeders." EDWARD BRUNET, CLASS ACTION OBJECTORS: EXTORTIONIST FREE RIDERS OR FAIRNESS GUARANTORS, 2003 U. CHI. LEGAL F. 403, 409 (2003).

2.      **James Price, W. Allen McDonald, John W. Davis, and Eric A. Isaacson.**

Neither Price nor McDonald have sought leave to appear despite filing an objection, apparently to avoid disclosing their relationship and track record. This includes the fact that they are part of the same firm, and the fact that Judge Cohn required them to post a bond to appeal a class settlement due to their serial objector history. *See In re Enfamil Lipil Mktg. & Sales Practices Litig.*, No. 11-MD-02222-JIC, 2012 U.S. Dist. LEXIS 49254, *16 (S.D. Fla. Apr. 9, 2012) ("the representation of three previous objectors by [Price and McDonald's] firm weighs in favor of requiring an appeal bond in this case."), citing *In re: Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) ("professional objectors undermine the administration of justice"). In that same case, they took an appeal and tried to extract a payoff by "offer[ing] to withdraw [the] appeal in exchange for a payment of $150,000." *In re Enfamil* at *15. The Eleventh Circuit expressly noted their misconduct. *Nelson v. Mead Johnson & Johnson Co.*, 484 Fed. Appx. 429, 433-34 (11th Cir. July 20, 2012) ("Pack's counsel offered to withdraw her appeal for $150,000.00, suggesting that her 'objections are tied to her ability to garner a windfall for herself rather than ensuring an adequate settlement for the class.'") Subsequently, Price and McDonald tried to claim a fee in a case they objected to even though they could not explain how their objection benefitted the class. *See McDonough v. Toys R' Us, Inc.*, 80 F.Supp. 3d 626, 664 (E.D. Pa. 2015). Finally, Mr. Price was recently sanctioned for ethics violations. *In re Morton*, 2015 Bankr. LEXIS 3309 at *3 (E.D. Bankr. Tenn. 2015) ("the Court will require Mr. Price … to self-report their conduct in this case and this Court's Memorandum Opinion to the Tennessee Board of Professional Responsibility").

Mr. Davis is an even more prolific objector.[16] His conduct in class cases has been called into question on several occasions. *See, e.g., Davis v. Apple Computer, Inc.*, 2005 Cal. App. Unpub. LEXIS 7190 at *4 (Cal. App. Aug. 12, 2005) ("The court also found that Helfand and Davis had in the past 'confidentially settled or attempted to confidentially settle putative class actions in return for payment of fees and other consideration directly to them.'"); *Faught v. Am.*

---

[16] One court noted that "[b]ased on the Court's ECF review, Mr. Davis appears as an attorney in 12 cases in this District. In 11 of these cases (including this one), Mr. Davis represented an objector (in one case, himself)." *Alexander v. FedEx Ground Package Sys.*, 2016 U.S. Dist. LEXIS 49201 at *14, fn.9 (N.D. Cal. Apr. 12, 2016). Furthermore, class counsel in a different case remarked that they were "able to promptly identify at least twenty-eight (28) class action lawsuits across the country in which it appears that Mr. Davis has represented an objector to a class action settlement." Opposition to Davis Motion to Appear *Pro Hac Vice*, Dkt. 128 at p.9, *Chieftan Royalty Co. v. SM Energy Co.*, 11-cv-177 (W.D. Okla.) (Nov. 3, 2015). In that case Mr. Davis represented the father of his co-counsel here, Mr. Nutley, who also is a repeat objector. *Id.*

*Home Shield Corp.*, 444 Fed. Appx. 445, 446 (11th Cir. 2011) (unpub) (affirming denial of fees to Mr. Davis and others because "the objectors' claims were based on speculation that is unsupported by the record"); *In re Visa Check/MasterMoney Antitrust Litig.*, No. 96-5238, ECF 1051 at 21-24 (E.D.N.Y. Apr. 27, 2004) (Davis and co-counsel's demand for $193,084.73 found "excessive and unreasonable" where the two attorneys purported to bill 254.2 hours to write a 14-page brief and attend a fairness hearing at which "only Mr. Davis spoke.")). Indeed, in response to contentions that "Messrs. Davis and Nutley are part of a cartel of professional objectors who file vexatious and frivolous objections to stall class settlements in exchange for payoffs," one court took the unusual step of "direct[ing] that all papers submitted by counsel shall be signed by both [local counsel] as well as Messrs. Davis and Nutley." *Chieftain Royalty Co. v. SM Energy Co.*, 2015 U.S. Dist. LEXIS 159218 at *2 (W.D. Okla. Nov. 25, 2015).

Mr. Davis's client, Mr. Isaacson, himself a class action lawyer since 1989 who just opened a solo practice in 2016, is already heavily involved in objecting to class action settlements.[17] Consistent with the professional objector *modus operandi* of objecting and then soliciting money to go away, here Davis, Isaacson, and their new co-counsel Mr. Nutley sent Class Counsel a proposed stipulation to govern their hoped-for payoff in this case. (ECF 72-1 at 29).

**D.    The Notice Approved by the Court Is More than Sufficient**

The Court already evaluated the notice and found that both its content and method of distribution is sufficient. [ECF 40 at ¶4]. The Professional Objectors question the Court's determination because they think the notice does not give class members "the basis for" the proposed attorneys' fee award before the deadline for filing objections to the settlement. That is incorrect because fees are awarded as a percentage of the settlement fund in this Circuit, and the notice explicitly tells class members everything they need to know about the request, *i.e.*, that it is on a percentage-of-the-fund basis, what the percentage sought is, and the exact dollar amount:

> Plaintiff will petition for … Class Counsel's fees not to exceed one-third of the fund, which is $2,100,000, plus reasonable expenses.

[ECF 39-1 at 44 (in the box next to the heading, "**What does the Settlement provide?**")]. On

---

[17] In addition to this case, Mr. Isaacson is objector's counsel in the following recent cases: *In re Bioscrip, Inc. Sec. Litig.*, 13-cv-6922 (S.D.N.Y.), Dkt. 113 (Objection of Class Member Isaacson/Weaver Family Trust to Proposed Attorneys' Fee Award, filed May 23, 2016 by Isaacson); *Chieftain Royalty v. Enervest Energy Inst'l Fund XIII-A LP*, No. 16-6022 (10th Cir.) Doc. 1019627432 (Appellants Opening Brief, filed May 25, 2016 by Isaacson, Davis and Nutley); and *Chambers v. Whirlpool Corp.*, 11-cv-1733 (C.D. Cal) Dkt. 227 (Objection to Proposed Settlement filed May 27, 2016 by Isaacson, Davis and Nutley).

top of that, the notice directs class members to the long-form notice posted on the settlement website, which buttresses the information in the mail notice: "Class Counsel will ask the Court to approve payment of up to one third of the $6,300,000 Settlement Fund, which is $2,100,000, to them for attorneys' fees, plus reasonable expenses." [ECF 39-1 at 52, ¶7; *accord* ¶8].

The Professional Objectors argue the Court should have ordered counsel to file their fee motion before the 60-day objection deadline based on *In re Mercury Interactve Corp.*, 618 F.3d 988 (9th Cir. 2010), but "the rule [in that case] has been rejected by at least one other Circuit. *See Cassese v. Williams*, 503 Fed. Appx. 55, 57 (2d Cir. 2012)." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 699 (S.D. Fla. 2014).[18] In fact, several objectors made this argument in *Poertner v. Gillette Co.*, and it was expressly rejected. *Poertner*, 2014 U.S. Dist. LEXIS 116616 (M.D. Fla. Aug. 21, 2014) ("this would not, by itself, require the rejection of the Settlement Agreement…"), *aff'd* 618 Fed. Appx. 624 (11th Cir. Jul. 16, 2015) (unpub).

Price and McDonald claim it is "impossible" for the class to evaluate the fee request without seeing Class Counsel's written request for fees sooner. But they contradict this assertion by doing exactly what they claim to be impossible – critiquing the proposed fee award, and claiming the proper evaluation is "easily distilled from the Court's docket." [ECF 61 at 12-14]. Also, the additional information they claim they need – a "lodestar" analysis of counsel's "time records" – is unnecessary under Eleventh Circuit law, as explained below.[19] Finally, it must be noted that if the Professional Objectors actually needed additional information to address Class Counsel's fee request, they could have called Class Counsel.

### E.     There Is No Need for a Lodestar Analysis

As discussed in more detail in the fee petition, Class Counsel are entitled to seek a fee award based on a percentage of the $6,300,000 fund they recovered for the class. *In re Checking Acct. Overdraft Litig.*, 830 F.Supp.2d 1330, 1358 (S.D. Fla. 2011) ("It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained."), *citing Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); and *see Boeing Co. v. Van Gemert*, 444 U.S. 472,

---

[18] Price and McDonald also cite *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014) and *NFL Players Concussion Injury Litig.*, 821 F.3d 410, 446 (3d Cir. 2016), but *Redman* relies on *Mercury,* and *NFL Players* questions both. *Id.* at 446 (*Mercury* and *Redman* "are not, however, as helpful as objectors might think.").

[19] Price and McDonald also claim the class members have been denied critical information based on *Shane Grp., Inc. v. Blue Cross Blue Shield*, 2016 U.S. App. LEXIS 10264 (6th Cir. 2016). This argument is baseless because that *court* barred access to critical parts of the record by sealing them (*Id.* at *21), and here the Court did no such thing.

478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). Indeed, Davis and Isaacson concede that "[d]ecisions of the Eleventh Circuit … appear to mandate percentage fee awards in all common-fund cases." [ECF 59 at 7].

Despite this concession, the Professional Objectors claim the fee award should be based on the "lodestar method," which would require the Court to take evidence and determine the reasonable hours billed by Class Counsel and the reasonable hourly rates for their work. *See*, *e.g.*, *EEOC v. West Customer Mgmt. Group, LLC*, 2015 U.S. Dist. LEXIS 76943 at *2-*3 (N.D. Fla. June 15, 2015). Indeed, Davis and Isaacson claim the lodestar method should be the exclusive method in fee shifting cases. Yet, the Eleventh Circuit has not carved out any such exception. Instead, in a recent fee shifting case pursuant to Florida Deceptive and Unfair Trade Practices Act, the Eleventh Circuit affirmed the approval of a $5.68 million attorneys' fee award when the class only claimed $344,850 and there was nonmonetary relief. *Poertner supra* at 625.

The main case objectors cite to suggest the lodestar method be used to determine fees in cases involving a statute that has a fee-shifting provision, *Pierce v. Visteon Corp.*, 791 F.3d 782 (7th Cir. 2015), "does not lend support to counsel's request." *Bickel v. Sheriff of Whitley Cty. (in his official capacity)*, No. 1:08-CV-102-TLS, 2016 WL 29612, at *7 (N.D. Ind. Jan. 4, 2016) (discussing *Pierce*). Even in the Seventh Circuit, *Pierce* did not alter the rule that class counsel are entitled to seek a percentage of a common fund they obtain in fee-shifting cases. *Id.* ("common fund principles properly control a case that has been initiated under a statute with a fee-shifting provision, and then settled with the creation of a common fund."); *see also McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015) (despite *Pierce*, "Class Counsel should be awarded a portion of the common fund that Class Counsels' work created.")

*Pierce* reached the unremarkable conclusion that the attorney in that case was not allowed to receive two fee awards, *i.e.*, one based on lodestar under a fee-shifting statute *plus* an additional award from the settlement fund. *McCue* at *7 ("*Pierce's* holding is limited to cases where an attorney obtains a judgment for the class, the attorney is awarded a fee based on the lodestar method that the court deems reasonable, and the attorney seeks an additional, second recovery.") *Pierce* does not apply here as Class Counsel only requests a single award based on a percentage of the fund their efforts created. So. *See*, *e.g.*, *Bickel* 2016 WL 29612, at *7 ("Here,

15

Class Counsel was not compensated under a fee-shifting statute, but was paid out of the common fund.")[20]

The Professional Objectors go on to argue that even if fees are awarded as a percentage of the fund, the Court should still conduct a lodestar analysis to "cross check" the award. This would be a pointless exercise because Class Counsel do not seek fees on a lodestar basis, and courts in the Eleventh Circuit use the percentage method in part to eliminate the need to conduct that analysis. *See Checking Acct. Overdraft Litig.*, 830 F.Supp.2d at 1363 ("Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all."); *see also Will v. Gen. Dynamics Corp.,* 2010 U.S. Dist. LEXIS 123349, at *10 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive.")[21]

The Professional Objectors raise policy arguments against the percentage method, but the Eleventh Circuit already confronted and rejected the polices behind the lodestar method arguments in deciding that the percentage approach is the better method. *See Camden I*, 946 F.3d at 771-774.[22] The Professional Objectors also misstate the law. For example, they claim the percentage method enables counsel to obtain a larger fee than if they took the case to judgment, because allegedly the lodestar method "must" be used to determine a post-judgment fee award in a case arising under a statute with a fee-shifting provision. But the case they cite for this argument, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010), says no such thing. It did not address whether the percentage method can be used to award fees from a fund post-judgment because in that case *there was no fund*. The plaintiffs only sought injunctive and declaratory

---

[20] Isaacson and Davis also cite *Haggert v. Woodley*, 809 F.3d 1336 (Fed. Cir. 2016), but that case relies on *Pierce* which, as shown, does not support their argument. Indeed, like *Pierce*, the plaintiff's counsel in *Haggert* negotiated a fee award under the fee-shifting statute and then *also* sought to recover a percentage of the fund. *Id.* at 1355-56 ("According to the Government, because '[f]ederal fee-shifting statutes, including the URA, . . . provide for defendants to pay 'reasonable' fees[,] [a]n *additional* fee *is* by definition unreasonable when a reasonable statutory fee *has already been awarded*.' *Id.* at 41. Accordingly, the Government contends '[t]here is no basis in equity for awarding common-fund fees *as well as* the URA fees.'" *Id.*

[21] Price and McDonald cite a few local cases that considered a lodestar cross check, but none held it is required, and one expressly noted that the "cross-check is not to be used as a backdoor avenue of using the lodestar method instead of the percentage of the fund method." *In re Sunbeam Sec. Litig.,* 176 F.Supp.2d 1323, 1336 (S.D. Fla. 2001).

[22] For example, Davis and Isaacson claim the percentage method creates an incentive to settle early for "suboptimal value." But the lodestar method encourages overbilling and perpetuating cases to justify a larger fee, creating more risk for the class and a greater burden on the courts.

relief. *Id.* at 547.[23] In short, the Professional Objectors' arguments ask this Court to disregard Eleventh Circuit law.

### F.    The Proposed Fee Award Is Reasonable and Proper

The fee sought is one third of the fund, which is both common and well within the range of reasonableness in the Eleventh Circuit. *See Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir. 1999) (affirming class attorneys' award of 33.3%)*; see also Wolff v. Cash 4 Titles*, No. 03-cv-22778, 2012 WL 5290155, at *6 (S.D. Fla. Sept. 26, 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions). The Professional Objectors suggest this is excessive for no reason other than that Class Counsel was able to successfully achieve the settlement comparatively early, without taking the case to trial, and thus without exposing the class members' claims to the risk of defeat at the class certification, summary judgment or later. However, this actually supports the proposed award because prompt settlements and minimizing the risk to the class are supposed to be encouraged.

Davis and Isaacson claim that *Perdue* repudiated the *Johnson*/*Camden I*. However, *Perdue* does not mention *Camden I* or discuss percentage-of-the-fund awards. Again, there was no fund in *Perdue* because the plaintiffs only sought injunctive and declaratory relief. *Perdue*, 559 U.S. at 547. *Perdue*'s first sentence makes clear that it only pertains to lodestar-based awards: "This case presents the question whether the calculation of an attorney's fee, under federal fee-shifting statutes, based on the 'lodestar,' … may be increased due to superior performance and results." *Id.* at 544. There is no such issue here. Accordingly, Davis and Isaacson's invitation to overrule binding authority should be rejected.[24]

Price and McDonald suggest that counsel's fee award should be no more than 25% because that is a common percentage fee award. However, the Eleventh Circuit uses 25% as a benchmark, not an arbitrary ceiling. *Camden I*, 946 F.2d at 775 (11th Cir. 1991). The Eleventh Circuit recognizes that as much as 50% is allowed in appropriate circumstances and that a

---

[23] Davis and Isaacson also cite *Brytus v. Spang & Co.,* 203 F.3d 238 (3d Cir. 2000) but, in addition to being non-binding, it does not support their argument. Like *Pierce*, discussed above, in *Brytus* the attorney improperly sought two fee awards. *Id.* at 245 ("the Court finds that Counsels' argument [that they were entitled to recover both statutory and common fund fees] is logically flawed.'") (brackets in original). There is no such issue here because again, Class Counsel only seek a single award based on a percentage of the fund, and do not seek a lodestar-based award.

[24] The Eleventh Circuit has made it clear that is the final authority unless directly overruled. *Florida League of Prof'l Lobbyists, Inc. v. Meggs*, 87 F.3d 457, 462 (11th Cir. 1996) ("[W]e are not at liberty to disregard binding case law that is so closely on point and has been only weakened, rather than directly overruled, by the Supreme Court.").

33.33% recovery is common. *See Id.*; *see also Waters*, 190 F.3d at 1295 (11th Cir. 1999).

Davis and Isaacson propose a radical departure from the benchmark, suggesting counsel only receive 5% of the fund because that amount was allowed in two Supreme Court that pre-date the existence of Rule 23.[25] However, neither of the cited cases involved a class action, and thus neither remotely justify that draconian limit.

### G.   Dr. Muransky Remains an Adequate Representative

A class representative is adequate under Federal Rule 23(a)(4) if he "has no interests antagonistic to the class." *Fabricant v. Sears, Roebuck & Co.*, 202 F.R.D. 310, 314-15 (S.D. Fla. 2001), citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726-28 (11th Cir. 1987). Dr. Muransky meets this test because he has the exact same claim as the other members of the class, and no interests antagonistic to those of the class members. [ECF 39-3]. Accordingly, the Court found Dr. Muransky to be an adequate representative. [ECF 40, p.4].

Davis and Isaacson speculate that his adequacy *might* be subject to question because nearly 30 years ago he was charged with Medicare "fraud" concerning $245.78 in disputed charges. However, Davis and Isaacson fail to explain how this ancient history has any bearing on whether Dr. Muransky meets the test for adequacy. Indeed, they admit that no rule disqualifies a class representative for having a conviction and even cite authority finding that the class representative was adequate despite a criminal conviction. [ECF 59, p.13]

A conviction can only create an adequacy issue if it so debilitates the representative's credibility before the jury that it materially affects the case. *See In re Facebook Privacy Litig.*, 2016 U.S. Dist. LEXIS 119293 at *17 (N.D. Cal. June 28, 2016) ("To render a putative class representative inadequate, a credibility attack must be 'so sharp as to jeopardize the interests of absent class members.' *Id.* 'This standard is difficult to satisfy.'") (citations omitted); *German by German v. Fed. Home Loan Mortg. Corp.*, 168 F.R.D. 145, 155 (S.D.N.Y. 1996) ("According to the leading commentator on class actions, most courts have rejected challenges to adequacy based on allegations that plaintiffs backgrounds were alleged to include 'unrelated unsavory,

---

[25] *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885) was a form of involuntary bankruptcy/insolvency proceeding pre-dating the Bankruptcy Act of 1898. The reduction of the 10% award to 5% in that case stems from the fact that the appellees *agreed* to receive 5% from some beneficiaries, and the Court decided all beneficiaries should be treated equally. *Id.* at 128. The basis for the original 10% award is not stated. The case of *United States v. Equitable Trust Co.*, 283 U.S. 738 (1931) was a proceeding on behalf of a single incompetent plaintiff incapable of hiring his own counsel, whose attorneys were chosen by his appointed guardian, and who in turn were assisted by the U.S. Attorney General's office to help undo a transaction. *Id.* at 746.

unethical, or even illegal conduct.'"), quoting 1 H. Newberg & A. Conte, *Newberg on Class Actions*, §3.36 (3d ed. 1992). There is no such concern here because: (a) Federal Rule of Evidence 609 bars conviction evidence that is than 10 years old, (b) there is no jury because this case settled, and (c) Dr. Muransky's credibility is not critical because this case turns on Godiva's conduct and transaction data. *See, e.g., Facebook Privacy Litig.*, 2016 U.S. Dist. LEXIS 119293 at *18 ("There is no similar issue of credibility that relates to Ms. Marfeo's class claims; as plaintiffs point out, the vast majority of the evidence in this case comes from Facebook's own data, rather than the testimony of Ms. Marfeo.")[26]

### H. The Proposed Incentive Award Is Reasonable and Proper

The settlement does not require any particular incentive award. Instead, it simply allows Plaintiff to ask the Court for an incentive award of up to $10,000. (ECF 40 at §II.E). The proposed $10,000 award is well within the range of reasonableness. *See Gevaerts v. TD Bank, N.A.*, 2015 U.S. Dist. LEXIS 150354 at *25-*26 (S.D. Fla. Nov. 5, 2015) ($10,000 incentive award each to two sets of plaintiffs), *citing Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff); *see also Cooper v. NelNet, Inc.*, 14-cv-314, Dkt. 85, p.5, ¶11 (M.D. Fla. Aug. 4, 2015) ($25,000 incentive award). Indeed, two comparable FACTA class settlements recently approved in this District granted the exact same award requested here. *Lab. Corp. supra; Spirit Airlines, supra.*

Davis and Isaacson claim that two Supreme Court cases from the 1800s "flatly prohibit" incentive awards to class representatives.[27] But neither case even discusses class actions – they predate Federal Rule 23 by more than fifty years. Davis and Isaacson also claim that incentive awards are "contrary to Rule 23 principles," but the main case they cite contradicts their claim. It states that "*named plaintiffs*, as opposed to designated class members who are not named

---

[26] Dr. Muransky has already been found adequate representative despite his distant past. In *Aventura Chiropractic Ctr., Inc. v. Med Waste Mgmt. LLC*, No. 12-21695-CIV, 2013 WL 3463489, at *4 (S.D. Fla. July 3, 2013), Judge Altonaga found his practice (of which he is sole owner) adequate to represent a class after being apprised of the matter.

[27] They cite *Trustees v. Greenough*, 105 U.S. 527 (1882) and *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885). *Greenough* was an action to preserve a trust, and *Central Railroad Banking* was a form of common law involuntary bankruptcy proceeding (the Bankruptcy Act of 1898 did not yet exist either). Also, *Greenough* seemed to be concerned with the plaintiff recovering his "personal expenses," and there is no such issue here. Davis and Isaacson also cite *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203 (6th Cir. 1992), *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374 (E.D.N.Y. 2013) and *Crutcher v. Logan*, 102 F.2d 612 (5th Cir. 1939), but *Granada affirmed* the award to the plaintiff, *Gortat* only rejected the awards proposed in that case – it did not say they are "prohibited," and *Crutcher* was a bankruptcy case.

plaintiffs, *are eligible* for reasonable incentive payments." *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (italics added). The other cases they cite do not discuss incentive awards.[28]

Next, Davis and Isaacson claim "excessive" incentive awards are problematic because they can motivate class representatives to take a cheap settlement for the class. There is no such concern here because again, the settlement does not guarantee Plaintiff any particular incentive award (leaving the matter to the Court's discretion). Moreover, none of the Professional Objectors dispute that the $6.3 million all cash, non-reversionary settlement fund achieved here is reasonable (if not exceptional). This case is in no way comparable the worst-case settlements cited by the Professional Objectors that *required* special payments to the class representative as a condition of settlement, or that created a conflict of interest by expressly *conditioning* the plaintiff's receipt of an incentive award on their supporting the settlement.

**VI.     CY PRES RECIPIENT AND EXPENSES TO THIRD PARTIES.**

In the event the any funds remain from uncashed checks and it's not feasible to redistribute, the parties will jointly petition Court for a distribution to their proposed recipients and present argument on the point, as stated in the motion for preliminary approval. (ECF 39 at 18).

Finally, an issue arose in connection with subpoenaing the banks and credit card processing companies in that some of them have asked to be reimbursed for the expenses they claim to have incurred in connection with responding to the subpoenas. A list of the entities requesting payment and explanation is attached as *Appendix 6*.

**VII.    CONCLUSION**

This Settlement provides substantial and immediate cash benefits for the Class, it is among the largest all-cash FACTA settlements in history, it is the result of arm's length, informed negotiations with the assistance of an experienced mediator, and it satisfies each of the six *Bennett* factors. The settlement is fair, reasonable and adequate under Rule 23, and thus Plaintiff respectfully requests that this Court enter an order granting them final approval. A draft Final Approval Order is attached as *Appendix 7*.

Dated: September 12, 2016.

---

[28] *Bailey v. Great Lakes Canning*, 908 F.2d 38 (6th Cir. 1990); *Kincade v. General Tire Rubber Co.*, 635 F.2d 501 (5th Cir. 1981); *Flinn v. FMC Corp.*, 528 F.2d 1169, 1175 (4th Cir. 1975).

Respectfully Submitted

*/s/ Scott D. Owens*
SCOTT D. OWENS, Esq.
3800 S. Ocean Drive, Ste. 235.
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Bret Leon Lusskin , Jr.
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Ste. 302
Aventura, FL 33180
954−454−5841
Fax: 954−454−5844
blusskin@lusskinlaw.com

Michael S. Hilicki (*pro hac vice*)
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3402 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
MHilicki@KeoghLaw.com
www.KeoghLaw.com

21

<u>**CERTIFICATE OF SERVICE**</u>

    **I HEREBY CERTIFY** that September 12, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this September 12, 2016, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        By: *<u>/s/ Scott D. Owens</u>*
            Scott D. Owens, Esq.

22