# APPENDIX 2
## Declaration of Claims Administrator

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| DR. DAVID S. MURANSKY, individually and on behalf of all others similarly situated, | ) | Case No. 0:15-cv-60716-WPD |
| | ) | |
| Plaintiff, | ) | **DECLARATION OF JAY GERACI** |
| | ) | **RE: NOTICE PROCEDURES** |
| v. | ) | |
| | ) | |
| GODIVA CHOCOLATIER, INC., | ) | |
| A New Jersey corporation, | ) | |
| | ) | |
| Defendant. | ) | |

I, **JAY GERACI** declare:

      1.     I am Project Manager at Kurtzman Carson Consultants LLC ("KCC"), located at 3301 Kerner Boulevard, San Rafael, California. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

      2.     KCC is a class action administrator that specializes in providing comprehensive class action services including, but not limited to, pre-settlement consulting, email and mailing campaign implementation, website design, claims administration, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, class member data management, legal notification, call center support, claims administration, and other related services critical to the effective administration of class actions. KCC has developed efficient, secure and cost-effective methods to properly handle the

1  voluminous data and mailings associated with the noticing, claims processing and disbursement

2  requirements of settlements to ensure the orderly and fair treatment of class members and all parties of

3  interest.

4       3.      KCC's business is national in scope. Since 2000, KCC (along with Rosenthal &

5  Company, which was acquired by KCC in 2010, and Gilardi & Company, which was acquired by KCC

6  in 2015) has been retained to administer more than 6,000 class action matters. As part of these class

7  actions, KCC has provided noticing solutions in cases with class members that range in numbers from

8  22 to over 36 million, and has distributed settlement payments totaling well over two billion dollars in

9  the aggregate.

10      4.      The purpose of this declaration is to provide the Parties and the Court with a summary

11 and the results of the work performed by KCC related to the Notice Procedures for the Muransky v.

12 Godiva Chocolatier, Inc., settlement following the Preliminary Approval.

13      5.      KCC was retained to, among other tasks, mail the Summary Notice Postcard with

14 detachable Claim Form (the "Notice Packet"), receive and process Claim Forms, respond to Class

15 Member inquiries; to establish and maintain a Settlement website where Class Members have access to

16 pertinent Court documents and the Long Form Notice, and perform other duties as specified in the

17 Settlement Agreement preliminary approved by this Court on January 26, 2016 (as amended on March

18 23, 2016 and May 12, 2016). Copies of the Summary Notice Postcard with detachable Claim Form,

19 Website Claim Form, and Long Form Notice are attached hereto as Exhibits A, B and C respectively.

20      6.      **Compiling the Class List.** The Class is defined to include all persons in the United

21 States (ii) who, when making payment at a Godiva retail store located in the United States, (iii) made

22 such payment using a credit or debit card (iv) and for whom Godiva printed a point-of-sale receipt (v)

23 which displayed more than the last 5 digits of the credit or debit card (vi) between April 6, 2013, and

24 November 20, 2015. KCC was informed that Defendant did not have a discrete list of the names and

25 addresses of these people, so with Class Counsel's and Defendant's assistance, KCC undertook to

26 compile such a list based on data from the affected credit and debit card transactions, data from

27 Godiva's customer loyalty program, data identifying the Godiva stores at which the software that caused

28 the receipts at issue to be printed had been installed and the time period in which that software had been

1   installed, and data Class Counsel subpoenaed from American Express, Discover, Bank of America

2   Merchant Services ("BAMS", which is the company that processed Visa and MasterCard transactions

3   for Godiva), as well as various banks that issued the Visa and MasterCard cards used in those

4   transactions.

5       7.      On or around February 4, 2016, KCC received from the Defendant a computerized list of

6   146,970 names and addresses of members of Defendant's customer loyalty program. Also received from

7   Defendant were two additional files, "the BAM Conversion Merchant Numbers" and "the Xstore

8   Installations through April 11, 2015". The BAM Conversion Merchant Numbers list contained the

9   BAMS identification number associated with each Godiva store for which BAMS processed Visa and

10  MasterCard transactions. The Xstore Installations list identified each Godiva store in the U.S. at which

11  the software allegedly responsible for causing Godiva's systems to print the transaction receipts at issue

12  had been installed, as well as the date of installation. According to the Xstore Installations list, the first

13  installation took place on October 20, 2014. Moreover, it is KCC's understanding that the alleged issue

14  with the software was corrected on or about April 12, 2015.

15      8.      On or around March 18, 2016, KCC received from Defendant a computerized list of

16  336,586 credit and debit card transactions that took place at U.S. Godiva stores during the relevant time

17  period that contained the date, amount, store location, authorization code, last-four digits of the

18  credit/debit card used, and type of card used (Visa, MasterCard, etc.) for each transaction listed.

19      9.      On or around March 22, 2016, KCC received from Class Counsel a computerized list of

20  2,597,562 data records from BAMS that purported to contain all transactions for all US Godiva stores

21  for the time period of October 10, 2014 to April 12, 2015. KCC was directed to extract the relevant

22  transaction data for transactions that took place at a Godiva store on the Xstore installations list (a list of

23  "problem" stores) between the "install date" for that store and April 12, 2015.

24      10.     On or around March 23, 2016, KCC was instructed to create individual store transaction

25  sets, removing transactions for any store not on the "Xstore installations" list (*i.e.* to eliminate all

26  Godiva stores that did not generate any of the receipts at issue), then eliminate those transactions for any

27  store on the list that did not occur between the install date for that store and April 12, 2015 (*i.e.* to

28  eliminate any transactions that did not generate any of the receipts at issue). KCC then sorted the

1  relevant transactions by issuing bank. On April 7, 2016, KCC provided Class Counsel with this list,

2  along with the credit/debit card number associated with each transaction, which covered more than 30

3  banks and 218,040 unique transactions. It was my understanding that Class Counsel would then use this

4  list to subpoena the card-issuing entities to identify and locate the class members.

5        11.     From April 14, 2016 through June 6, 2016, KCC received computerized lists of 454,181

6  names, addresses, and transactions from the following banks: Discover, American Express, Chase Bank,

7  USAA, Barclays Bank, Metabank, Fiserv Solutions, Inc., TD Bank, Huntington National Bank, TCF

8  National Bank, Base24 Platform Card Records, EPOC CM2 Platform Card Records, Legacy EPOC

9  Platform Card Records, Navy Federal Credit Union, Citizens Bank, Bankcorp Bank, Sovereign Bank,

10  Regions Bank, Boeing Employee's Credit Union, Branch Banking & Trust Co, PNC Bank, Fifth Third

11  Bank, US Bank, Wells Fargo, Capital One, Suntrust Bank, Synchrony Bank, Fidelity Information

12  Services, Comerica Bank, Bank of America, FIA Card Services, and Citibank.

13        12.     On or before June 23, 2016, KCC caused the addresses in the Class Member List to be

14  updated using the National Change of Address system, which updates addresses for all people who had

15  moved during the previous four years and filed a change of address with the U.S. Postal Service.  New

16  addresses were found for 17,600 class members.  The Class Member List was updated with these new

17  addresses.

18        13.     On or around June 23, 2016, KCC found 84,335 duplicate records and 45,116 incomplete

19  records (*i.e.* records missing names and addresses) within the Class Member List. At Class Counsel's

20  direction, the duplicate records were removed and, because there was no practicable way to find the

21  missing name and address information, the incomplete records were also removed. Also, an additional

22  6,256 records were removed at Class Counsel's direction because they contained foreign addresses,

23  which are not part of the Class because the class definition only includes persons in the U.S.  This

24  resulted in 318,452 names and addresses remaining on the Class Member List.

25        14.    **Mailed Notice.** On June 23, 2016, KCC mailed the Notice to the 318,452 persons on the

26  Class Member List.

27        15.    As of the date of the declaration, KCC has received a total of 4,914 Notice Packages

28  returned by the U.S. Postal Service with forwarding addresses. KCC caused the Class Member list to be

1  updated with the new addresses and Notice Packages to be promptly re-mailed to the updated addresses.

2  As of September 6, 2016, KCC has received a total of 13,441 Notice Packages returned by the U.S.

3  Postal Service without forwarding address information.  KCC conducted address searches using credit

4  and other public source databases to attempt to locate new addresses for 12,197 of these Class Members.

5  As of September 6, 2016, these searches have resulted in 7,097 updated addresses. KCC promptly re-

6  mailed Notice Packages to the updated addresses.

7     16. **Toll Free Number**. On or before June 23, 2016, KCC caused an Interactive Voice

8  Response (the "IVR") system to be established (844-830-5222) to provide information about the

9  settlement and to record requests for Notice Packets. As of the date of this declaration, the toll free

10  number has received 1,771 calls.

11     17. **Website.** On or before June 23, 2016, KCC caused a website to be established a website

12  (http://www.GodivafactaSettlement.com/) dedicated to this settlement to provide additional information

13  to the Class Members and to answer frequently asked questions. Visitors of the website were able to

14  download a Notice, Claim Form, and Court Documents. Visitors could also submit claims online. As of

15  the date of this declaration, the website received 27,205 unique visitors.

16     18. **Request for Exclusion**. As of the date of this declaration, KCC has received 14 timely

17  requests for Exclusion, as well as one late request from a class member whose KCC claim identification

18  number is 10267662801 that was postmarked August 24, 2016.  A list of the individuals requesting

19  exclusion (including their KCC claim identification numbers), and copies of the exclusion requests, are

20  attached hereto as Exhibit D.

21     19. **Objections to the Settlement.** As of the date of this declaration, KCC had been made

22  aware of four Objections to the Settlement.  A copy of the objections is attached hereto as Exhibit E.

23  According to KCC's records, each of the Objectors filed a claim for a share of the proceeds.

24     20. **Claim Forms**. As of the date of this declaration, 70,217 Claim Forms were filed. Of

25  these 70,217 filed claims, 47,445 have been identified as valid claims, 484 were identified as duplicate

26  claims, 5,153 were determined to be invalid, and 17,106 were identified as deficient. Reasons for a

27  claim being invalid include filing the claim late (there have been 197 late claims to date), concurrent

28  submission of a request for exclusion, and/or the claimant's purchase date or purchase location being

1   outside the scope of the class. KCC will be mailing out 17,106 deficiency letters to each claimant whose

2   claim form was deemed deficient and requires additional information. These 17,106 claimants will be

3   given 30 days in order to cure their deficiency status.

4        21.    **Administrative Costs**. KCC estimates the total administrative costs for this settlement

5   will be approximately $414,000.00.

6

7   I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true

8   and correct to the best of my knowledge and that this declaration was executed this 7th day of September

9   2016 at Novato, California.

10

11   _____

12   JAY GERACI

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit A

*Muransky v. Godiva Chocolatier* **Claims Administrator**
P.O. Box 43403
Providence, RI 02940-3403

«Barcode»
Postal Service: Please do not mark barcode

Claim#: GMY-«ClaimID»-«MailRec»
«First1» «Last1»
«CO»
«Addr2»
«Addr1»
«City», «St» «Zip»
«Country»

GMY

........................................................................................................................................

Carefully separate at perforation
*Muransky v. Godiva Chocolatier, Inc.***, Case No. 15-cv-60716-WPD, U.S.D.C. Southern District of Florida**
**CLAIM FORM**
**TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE ALL OF THE INFORMATION BELOW
AND YOU MUST SIGN THIS CLAIM FORM. IF THIS CLAIM FORM IS SUBMITTED
ONLINE, CLICKING "SUBMIT" WILL COUNT AS YOUR ELECTRONIC SIGNATURE.**
**If mailed, mail this form to:** *Muransky v. Godiva Chocolatier* Claims Administrator, P.O. Box 43403, Providence, RI 02940-3403
**YOUR CLAIM FORM MUST BE SUBMITTED ELECTRONICALLY OR POSTMARKED ON OR BEFORE AUGUST 23, 2016.**

**1.   CLAIMANT INFORMATION:**

TELEPHONE NUMBER (optional)

E-MAIL ADDRESS (if available)

Name/Address Changes (if any):
First Name: _____
Last Name: _____
Address: _____
City: _____ State: _____ ZIP: _____

**2.   AFFIRMATION:**

By signing below, I swear or attest that the information above is true and accurate. If I am not the above-named person, I swear or attest that I am acting on that person's behalf and have authority to act on his or her behalf. This Claim Form may be researched and verified by the Claims Administrator.

Signature: _____

Name (please print): _____

Date (mm/dd/yyyy): _____

**QUESTIONS? VISIT www.GodivaFACTASettlement.com OR CALL 1-844-830-5222 or Class Counsel at 1-866-726-1092.**

«ClaimID»   GMYCRD1

**NOTICE OF CLASS ACTION LAWSUIT AND PROPOSED SETTLEMENT**

THE COURT AUTHORIZED THIS NOTICE. THIS IS NOT A SOLICITATION FROM A LAWYER.

YOU MAY BE ENTITLED TO RECEIVE MONETARY COMPENSATION.

**What is this?** This is notice of a proposed settlement in a class action lawsuit.

**What is this lawsuit about?** The settlement would resolve a lawsuit brought on behalf of a class of individuals for whom, between April 6, 2013, and November 20, 2015, a Godiva Chocolatier ("Godiva") retail store located in the United States printed a point-of-sale credit or debit card transaction receipt that included more than the last 5 digits of the card number for the card used in the transaction. Godiva denies any wrongdoing. The Court has not ruled on the merits of Plaintiff's claims or Godiva's defenses.

**Why am I getting this notice?** You were identified as someone for whom Godiva may have printed such a receipt during such period at such a retail store according to Godiva's records.

**What does the Settlement provide?** Godiva has agreed to pay a total of $6,300,000 into a Settlement Fund, which will pay for the cost of notice and administration of the settlement, Settlement Class members' claims, attorneys' fees and expenses incurred by counsel for Plaintiff and the Settlement Class ("Class Counsel") and service award for Plaintiff, if approved by the Court. Class Counsel estimate that a Settlement Class member who submits a valid claim form ("Claim Form") may receive a payment of around $235 subject to pro rata distribution. Plaintiff will petition for a service award not to exceed $10,000 for his work in representing the Class, and for Class Counsel's fees not to exceed one-third of the fund, which is $2,100,000, plus reasonable expenses. All unclaimed funds shall be paid to a charity or charities as a cy pres award on behalf of the Class. Plaintiff proposes the National Consumer Law Center, Inc., and Godiva proposes Save the Children Federation, Inc. Based on the Parties' input, the Court may order the Remaining Funds to be distributed to a charity or charities, and may allocate the funds to more than one charity, including each of the charities recommended by the Parties.

**How can I receive a payment from the Settlement?** To receive payment, you must complete and submit a valid Claim Form by August 23, 2016. You can obtain and submit a Claim Form online at www.GodivaFACTASettlement.com. You can also obtain a mail-in Claim Form by calling 1-844-830-5222. Mail-in Claim Forms must be sent to the Settlement Administrator at the address below and must be post-marked no later than August 23, 2016.

**Do I have to be included in the Settlement?** If you don't want monetary compensation from this settlement and you want to keep the right to sue or continue to sue Godiva on your own, then you must exclude yourself from the settlement by sending a letter requesting exclusion to the Settlement Administrator postmarked or received no later than August 23, 2016 at the address below that contains the specific information set forth in the Settlement Website.

**If I don't like something about the Settlement, how do I tell the Court?** If you don't exclude yourself from the settlement, you can object to any part of the settlement. You must file your written objection with the Court by August 23, 2016, and you must also mail it to both Class Counsel and Godiva's Counsel by August 23, 2016, and it must contain the specific information set forth in the Settlement Website.

**What if I do nothing?** If you do nothing, you will not be eligible for a payment. But you will still be a Settlement Class member and bound by the settlement, and you will release Godiva from all liability associated with the actions giving rise to this case.

**How do I get more information about the Settlement?** This notice contains limited information about the settlement. For more information, to view additional settlement documents, and to review information regarding your opt-out and objection rights and the final approval hearing, visit www.GodivaFACTASettlement.com. You can also obtain additional information, a more detailed notice describing the settlement, or a Claim Form, by calling 1-844-830-5222.

GMY



PLACE

STAMP

HERE

MURANSKY V. GODIVA CHOCOLATIER CLAIMS ADMINISTRATOR
PO BOX 43403
PROVIDENCE RI 02940-3403

# Exhibit B

*Muransky v. Godiva Chocolatier* **Claims Administrator**
**P.O. Box 43403**
**Providence, RI 02940-3403**

*Muransky v. Godiva Chocolatier, Inc*

## GMY

U.S.D.C. SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-60716-WPD

**Must Be Postmarked**
**No Later Than**
**August 23, 2016**

**«Barcode»**

Postal Service: Please do not mark barcode

## Claim Form

Claim#: GMY-«ClaimID»-«MailRec»
«First1» «Last1»
«CO»
«Addr1» «Addr2»
«City», «St»  «Zip»
«Country»

*Muransky v. Godiva Chocolatier, Inc.*, **Case No. 15-cv-60716-WPD**
**U.S.D.C. Southern District of Florida**

**CLAIM FORM**

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE
ALL OF THE INFORMATION BELOW AND YOU MUST SIGN THIS CLAIM FORM.

IF THIS CLAIM FORM IS SUBMITTED ONLINE, CLICKING "SUBMIT" WILL COUNT AS YOUR ELECTRONIC SIGNATURE.

If mailed, mail this form to: *Muransky v. Godiva Chocolatier* Claims Administrator, P.O. Box 43403, Providence, RI 02940-3403

YOUR CLAIM FORM MUST BE SUBMITTED ELECTRONICALLY OR POSTMARKED ON OR BEFORE AUGUST 23, 2016.

1. **CLAIMANT INFORMATION:**

First Name          M.I.   Last Name

Primary Address

Primary Address Continued

City          State   Zip Code

Telephone Number (optional)

Email Address (if available)

2. **CLAIM INFORMATION**

To support your claim, you must state the Date or Dates on which a Godiva store located in the United States printed a transaction receipt that contained more than five digits of your credit or debit card number OR the City and State in which the store was located, on the line below:

3. **AFFIRMATION:**

By signing below, I swear or attest that the information above is true and accurate. If I am not the above-named person, I swear or attest that I am acting on that person's behalf and have authority to act on his or her behalf. This Claim Form may be researched and verified by the Claims Administrator.

Signature: _____   Dated: _____

Print Name: _____

**QUESTIONS? VISIT www.GodivaFACTASettlement.com OR CALL 1-844-830-5222 or Class Counsel at 1-866-726-1092.**



| FOR CLAIMS PROCESSING ONLY | OB | | CB | | ○ DOC ○ LC ○ REV | ○ RED ○ A ○ B |

# Exhibit C

*Dr. David S. Muransky v. Godiva Chocolatier, Inc.*

## United States District Court for the Southern District of Florida

### Case No. 0:15-cv-60716-WPD

# If you made a purchase at a Godiva store in the United States using a credit card or debit card between April 6, 2013 and November 20, 2015, you may be entitled to benefits under a class action settlement.

*A federal Court authorized this Notice.  This is not a solicitation from a lawyer.*

- Plaintiff alleges that willfully printing credit and debit card transaction receipts that include more than the last 5 digits of the card number violates the Fair and Accurate Credit Transactions Act, 15 U.S.C. §1681c(g)(1), et seq. ("FACTA"). Plaintiff sued Godiva for allegedly willfully violating FACTA in the lawsuit identified above. Godiva denies Plaintiff's allegations and denies any wrongdoing whatsoever. The Court has not ruled on the merits of Plaintiff's claims or Godiva's defenses. By entering into the settlement, Godiva has not conceded the truth or validity of any of the claims against it.

- A proposed settlement will provide a total of $6,300,000 (the "Settlement Fund") to fully settle and release claims of persons for whom Godiva printed, at one of its retail stores located in the United States, a point-of-sale credit card or debit card transaction receipt that included more than the last 5 digits of the card number at any time during the time period set forth above (the "Settlement Class").

- The Settlement Fund shall be used to pay all amounts related to the settlement, including awards to Settlement Class members who submit a valid and timely claim form to receive payment ("Claim Form"), attorneys' fees and expenses to attorneys representing Plaintiff and the Settlement Class ("Class Counsel"), any service award for Plaintiff and the costs of notice and administering the settlement. Class Counsel estimate that Settlement Class members who timely submit a valid Claim Form will receive around $235.

- Your rights and options, and the deadlines to exercise them, are explained in this Notice. Your legal rights are affected whether you act or don't act. Read this Notice carefully.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| SUBMIT A CLAIM FORM | If you submit a valid Claim Form by August 23, 2016, you will receive a payment and will give up your rights to sue Godiva and/or any other released parties on a released claim. Claim Forms may be submitted by mail to *Muransky v. Godiva Chocolatier* Claims Administrator, P.O. Box 43403, Providence, RI 02940-3403 or through the settlement website by clicking www.GodivaFACTASettlement.com. |
| EXCLUDE YOURSELF OR "OPT-OUT" OF THE SETTLEMENT | If you ask to be excluded, you will not receive a payment.  This is the only option that allows you to pursue your own claims against Godiva and/or other released parties in the future. The deadline for excluding yourself is August 23, 2016. |
| OBJECT TO THE SETTLEMENT | Write to the Court about why you believe the settlement is unfair in any respect. The deadline for this is August 23, 2016. To obtain a benefit from this settlement, you must still submit a Claim Form. If you only submit an objection, you will not receive any benefit from the settlement and you will give up your right to sue Godiva and/or any other released parties on a released claim. |
| DO NOTHING | If you do nothing, you will not receive any monetary award and you will give up your rights to sue Godiva and/or any other released parties on a released claim. |
| GO TO THE FINAL APPROVAL HEARING | Ask to speak in Court about the fairness of the settlement if you object to the settlement. To speak at the Final Approval Hearing, you must file a document including your name, address, telephone number and your signature with the Court stating your intention to appear, by no later than August 23, 2016. |

## BASIC INFORMATION

### 1.  What is the purpose of this Notice?

The purpose of this Notice is to inform you that a proposed Settlement has been reached in the class action lawsuit entitled *Muransky v. Godiva Chocolatier, Inc.*, Case No. 15-cv-60716-WPD (S.D. Fla.). Because your rights will be affected by this settlement, it is extremely important that you read this Notice carefully. This Notice summarizes the settlement and your rights under it.

### 2.  What does it mean if I received an email or postcard about this settlement?

If you received an email or postcard describing this settlement, it is because Godiva's records indicate that you may be a member of the Settlement Class in this action. You are a member of the Settlement Class if a Godiva retail store located in the United States printed a point-of-sale credit card or debit card transaction receipt for you that included more than the last 5 digits of the card number, at any time between April 6, 2013, and November 20, 2015.

### 3.  What is this class action lawsuit about?

In a class action, one or more people called a Class Representatives (here, Plaintiff) sue on behalf of people who allegedly have similar claims. This group is called a class and the persons included are called class members. One court resolves the issues for all of the class members, except for those who exclude themselves from the class.

Here, Plaintiff claims that Godiva willfully violated FACTA by printing credit card and debit card transaction receipts at certain of its stores in the United States that included more than the last 5 digits of the credit or debit card number, between April 6, 2013, and November 20, 2015. Godiva denies these allegations and denies any wrongdoing. The Court has conditionally certified a class action for settlement purposes only.  The Honorable William P. Dimitrouleas is the judge in charge of the lawsuit.

**4. Why is there a settlement?**

The Court did not decide in favor of Plaintiff or Godiva. Instead, both sides agreed to this settlement. That way, they avoid the risk and cost of a trial, and the Settlement Class members will receive compensation. Plaintiff and Class Counsel think the settlement is best for all persons in the Settlement Class.

## WHO IS IN THE SETTLEMENT CLASS?

**5. How do I know if I am a part of the settlement class?**

The Court has certified this case as a class action for settlement purposes. The Settlement Class is defined as:

> (i) All persons in the United States (ii) who, when making payment at a Godiva retail store located in the United States, (iii) made such payment using a credit or debit card (iv) and for whom Godiva printed a point-of-sale receipt (v) which displayed more than the last 5 digits of the credit or debit card (vi) between April 6, 2013, and November 20, 2015.

> Notwithstanding the foregoing, in compliance with 28 U.S.C. § 455, this class specifically excludes (A) The district judge and magistrate judge presiding over this case and the judges of the United States Court of Appeals for the Eleventh Circuit; (B) the spouses of those in category (A); (C) any person within the third degree of relationship of those in categories (A) or (B); and (D) the spouses of those within category (C).

"Settlement Class Member" is defined as any person in the Settlement Class who is not validly excluded from the Settlement Class. If you are still not sure whether you are included, you can visit other sections of the Settlement Website, www.GodivaFACTASettlement.com, you may write to the claims administrator at *Muransky v. Godiva Chocolatier* Claims Administrator, P.O. Box 43403, Providence, RI 02940-3403, or you may call the Toll-Free Settlement Hotline, 1-844-830-5222, for more information.

## THE LAWYERS REPRESENTING YOU

**6. Do I have lawyers in this case?**

The Court has appointed lawyers from the law firms of Scott D. Owens, P.A., Keogh Law, Ltd., and Bret Lusskin, P.A. as Class Counsel to represent you and the other persons in the Settlement Class. You will not be personally charged by these lawyers.

**7. How will Class Counsel be paid?**

Class Counsel will ask the Court to approve payment of up to one third of the $6,300,000 Settlement Fund, which is $2,100,000, to them for attorneys' fees, plus reasonable expenses. Class Counsel also will ask the Court to approve payment of up to $10,000 to Plaintiff for his service as Class Representative. The Court may award less than these amounts.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

**8. What does the settlement provide?**

**Settlement Fund**. Godiva will pay the total amount of $6,300,000 into a fund (the "Settlement Fund"), which will cover: (1) cash payments to Settlement Class Members who submit timely and valid Claim Forms; (2) an award of attorneys' fees to Class Counsel, in an amount not to exceed one-third, which is $2,100,000, plus reasonable expenses, as approved by the Court; (3) service award to Plaintiff, in an amount not to exceed $10,000, as approved by the Court; and (4) the costs of notice and administration of the Settlement.

**Cash Payments**.  All Settlement Class Members are eligible to submit a Claim Form and receive a cash payment. To submit a Claim Form, follow the procedures described under Question 11 below.

**No Portion of the Settlement Fund Will Return to Godiva.**  All money in the Settlement Fund beyond the funds the Court authorizes to be paid for the costs of notice and administration of the settlement, attorneys' fees and costs to Class Counsel and any service award to Plaintiff, will be divided and paid pro rata to the Settlement Class Members who submitted valid and timely Claim Forms. All unclaimed funds shall be paid to a charity or charities as a cy pres award on behalf of the Class. Plaintiff proposes the National Consumer Law Center, Inc.,

and Godiva proposes Save the Children Federation, Inc. Based on the Parties' input, the Court may order the unclaimed funds to be distributed to a charity or charities, and may allocate the funds to more than one charity. No portion of the Settlement Fund will return to Godiva.

## 9.  How much will my payment be?

Your share of the Settlement Fund will depend on the number of valid Claim Forms that Settlement Class Members submit.  Class Counsel estimate that the amount of the cash award (while dependent upon the number of claims) may be around $235.  **This is an estimate only.  The final cash payment amount may be higher or lower than $235 and will depend on the total number of valid and timely claims submitted by Settlement Class Members.**

## 10.  What am I giving up to stay in the Settlement Class?

Unless you exclude yourself from the settlement, you will be part of the Settlement Class and will be bound by the release of claims in the settlement. This means that if the settlement is approved, you cannot rely on any released claim to sue or continue to sue Godiva or any other released parties, whether on your own or as part of any other lawsuit, as explained in the settlement agreement. It also means that all of the Court's orders will apply to you and legally bind you. Unless you exclude yourself from the settlement, you will agree to release Godiva and any other released parties, as defined in the settlement agreement, from any and all claims that arise from printing a credit or debit card transaction receipt that included more than the last 5 digits of the credit or debit card number.

In summary, the Release includes, without limitation, all claims that arise, could arise, were asserted or could have been asserted based on the printing of Godiva credit and debit card transaction receipts at retail stores that include more than 5 digits of the card number or other credit or debit card information, including, but not limited to, claims under FACTA, the Fair Credit Reporting Act, or any other statute or the common law, for any form of relief.

If you have any questions about the Release or what it means, you can speak to Class Counsel, listed under Question 6, for free, or you can, at your own expense, talk to your own lawyer.  The Release does not apply to persons in the Settlement Class who timely exclude themselves.

## HOW TO OBTAIN A PAYMENT

## 11.  How can I get a payment?

To receive a payment, you must submit a Claim Form by the deadline stated below. You may get a Claim Form on the Settlement Website, www.GodivaFACTASettlement.com, or by calling the Toll-Free Settlement Hotline, 1-844-830-5222.  **Read the instructions carefully, fill out the form completely and accurately, sign it and submit it on a timely basis**.  To be valid, the Claim Form must be completed fully and accurately, signed and submitted timely.  A Claim Form may be submitted by mail to the claims administrator at: *Muransky v. Godiva Chocolatier* Claims Administrator, P.O. Box 43403, Providence, RI 02940-3403, or via the Settlement Website www.GodivaFACTASettlement.com.

If you are submitting your claim via the Settlement Website, it must be submitted no later than August 23, 2016. If you are mailing your Claim Form to the claims administrator, it must be postmarked by that date.

## WHEN WILL I RECEIVE MY SETTLEMENT PAYMENT?

## 12.  When would I receive a settlement payment?

The Court will hold a hearing September 21, 2016 at 2:00 p.m. to decide whether to approve the settlement. If the Court approves the settlement, after that, there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Everyone who sends in a Claim Form will be informed of the progress of the settlement through information posted on the Settlement Website at www.GodivaFACTASettlement.com. Please be patient.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

**13. How do I get out of the settlement?**

If you want to keep the right to sue or continue to sue Godiva or a released party, as defined in the settlement agreement, then you must take steps to get out of the Settlement Class. This is called excluding yourself from, or opting-out of, the Settlement Class.

To exclude yourself from the settlement, you must send an exclusion request to the claims administrator. To be valid, an exclusion request must:  (i) be signed by the person in the Settlement Class who is requesting exclusion; (ii) include the full name, address, and phone number(s) of the person in the Settlement Class requesting exclusion; and (iii) include the following statement: "I, the undersigned individual, hereby request to be excluded from the settlement in Muransky v. Godiva, and I understand that I will consequently not be entitled to receive any proceeds of the class Settlement Fund." No request for exclusion will be valid unless all of the information described above is included. No person in the Settlement Class, or any person acting on behalf of or in concert or participation with that person in the Settlement Class, may exclude any other person in the Settlement Class from the Settlement Class.

**To be valid, you must mail your exclusion request postmarked no later than August 23, 2016 to the claims administrator at *Muransky v. Godiva Chocolatier* Claims Administrator, P.O. Box 43403, Providence, RI 02940-3403.**

**14. If I do not exclude myself, can I sue Godiva for the same thing later?**

No. If you do not exclude yourself, you give up any right to sue (or continue to sue) Godiva or any released parties for the claims that this settlement resolves.

**15. If I exclude myself, can I get a benefit from this settlement?**

No. If you ask to be excluded, you will not be able to submit a Claim Form for a settlement payment and you cannot object to the settlement.

## OBJECTING TO THE SETTLEMENT

**16. How do I tell the Court that I do not think the settlement is fair?**

If you are in the Settlement Class, you can object to the settlement or any part of the settlement that you think the Court should reject, and the Court will consider your views. If you do not provide a written objection in the manner described below, you shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the settlement or the award of any attorneys' fees and expenses and/or service award.

To object, you must make your objection in writing, stating that you object to the settlement in *Muransky v. Godiva Chocolatier, Inc.*, Case No. 15-cv-60716-WPD (S.D. Fla.). To be considered by the Court, the written objection must: (i) attach documents establishing, or provide information sufficient to allow the parties to confirm that the objector is a Settlement Class Member; (ii) include a statement of the specific objections; and (iii) state the grounds for objection, as well as identify any documents which the objector desires the Court to consider.

**To be considered, you must file your objections with the Court and mail your objections to the addresses below no later than August 23, 2016.**

For Plaintiff:

Michael S. Hilicki, Esq.
Keogh Law, Ltd.
55 West Monroe Street
Ste. 3390
Chicago, IL 60603

For Godiva:

Brian Melendez
Dykema Gossett, PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3903

**Even if you timely and properly object, to obtain a benefit from this settlement, you must submit a Claim Form. If you object but fail to submit a Claim Form, you will not receive any monetary award.**

**17.  What is the difference between objecting and excluding yourself?**

Objecting is telling the Court that you oppose something about the settlement. You can object only if you stay in the Settlement Class. Excluding yourself means that you do not want to be part of the Settlement Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## IF YOU DO NOTHING

**18.  What happens if I do nothing at all?**

If you do nothing, you will not receive any monetary award and you will give up your rights to sue Godiva and/or any other released parties on a released claim. For information relating to what rights you are giving up, see Question 10.

## THE FINAL APPROVAL HEARING

**19.  When and where will the Court decide whether to approve the settlement?**

The Court will hold a Final Approval Hearing at 2:00 p.m. on September 21, 2016 at the United States District Court for the Southern District of Florida, U.S. Federal Building and Courthouse, 299 East Broward Boulevard, Courtroom 205F, Fort Lauderdale, Florida 33301. At this hearing, the Court will consider whether the settlement is fair, reasonable and adequate. If there are valid objections that comply with the requirements in Question 16 above, the Court will also consider them and will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay to Class Counsel and Plaintiff.

The Final Approval Hearing may be moved to a different date or time without additional notice, so it is a good idea to check the Settlement Website for updates.

**20.  Do I have to come to the hearing?**

No. Class Counsel will appear on behalf of the Settlement Class. But, you are welcome to come, or have your own lawyer appear, at your own expense.

**21.  May I speak at the hearing?**

You may ask the Court for permission to speak at the Final Approval Hearing, but only in connection with an objection that you have timely submitted to the Court according to the procedure set forth in Question 16 above. To speak at the Final Approval Hearing, you must also file a document with the Court stating your intention to appear. For this document to be considered, it must include your name, address, telephone number and your signature. The document must be filed with the Court no later than August 23, 2016. You cannot speak at the hearing if you exclude yourself from the settlement.

## GETTING MORE INFORMATION

**22.  How do I get more information?**

This Notice is only a summary of the proposed settlement. You can get a complete copy of the settlement agreement by visiting the Settlement Website, www.GodivaFACTASettlement.com, or you can write to the address below or call the Toll-Free Settlement Hotline, 1-844-830-5222.  You can also call class counsel with any questions at 1-866-726-1092.

**DO NOT CALL OR WRITE TO THE COURT, THE CLERK OF THE COURT,
GODIVA OR GODIVA'S COUNSEL ABOUT THE SETTLEMENT.
ALSO, TELEPHONE REPRESENTATIVES WHO ANSWER CALLS
MADE TO THE TOLL-FREE NUMBER ARE NOT AUTHORIZED TO
CHANGE THE TERMS OF THE SETTLEMENT OR THIS NOTICE.**

# EXHIBIT D

Filed under seal per [ECF No. 46]

Exhibit E

Cindy L. Hager
P.O. Box 27641
San Diego, CA 92198-1641
(858) 485 - 0469
July 19, 2016

United States District Court
for the Southern District of Florida
U.S. Federal Building and Courthouse
Courtroom 205F
299 East Broward Boulevard
Fort Lauderdale, FL 33301

Re:   Objection to Muransky v Godiva Chocolatier, Inc.
      Case #15-cv-60716-WPD (S.D. Fla)

Dear US District Court Judge,

I object to this lawsuit based on the fact that credit card receipts are needed.  It is so hard this day and time to get a receipt let alone a receipt with the credit card's last four digits on it.  It doesn't matter if they gave receipts with more than the last four digits on them because a receipt needs to show a person what credit card they used for the transaction.  If someone is dim enough to not want a receipt and doesn't take the receipt, it is their own stupidity that allows the credit card number to be out there and get stolen.

It is very hard to remember after a day or two, which credit card was used at a particular business and that information **must** be put on the receipt so that the customer can figure out their credit card bills.

I specifically request that this lawsuit be settled for 0 dollars and that Godiva receives reimbursement for its expenses.  The grounds for objection are listed above.

Yes, I have submitted a claim form but only because if you make the mistake of giving the plaintiff any settlement at all, I want to receive what you are forcing Godiva to give out.  If that happens, I will do with my

Muransky v. Godiva Chocolatier, Inc.                                                  Hager page 2

portion of the funds as I please, as opposed to it going to a charity of your choice.

Thank you, in advance, for considering NOT to give the plaintiffs, including myself, any funds for this ridiculous lawsuit.

Sincerely,


Cindy Hager

Attachments:          Proof of Member  -   Lawsuit Notice to myself
                                         -   Submitted Claim Form receipt


Cc:    Michael S. Hilicki, Esq.
       Keogh Law, Ltd.
       55 West Monroe Street
       Suite 3390
       Chicago, IL 60603

Cc:    Brian Melendez
       Dykema Gossett, PLLC
       4000 Wells Fargo Center
       90 South Seventh Street
       Minneapolis, MN 55402-3903

*Muransky v. Godiva Chocolatier* **Claims Administrator**
P.O. Box 43403
Providence, RI 02940-3403

```
PRESORTED
FIRST CLASS MAIL
U.S. POSTAGE
PAID
SANTA ANA, CA
PERMIT NO. 626
```

Postal Service: Please do not mark barcode
P0002-S0076-B0001*******AUTO**5-DIGIT 92128
Claim#: GMY-10112545801-109965
Cindy L Hager
PO Box 27641
San Diego, CA 92198-1641

## GMY



Carefully separate at perforation

*Muransky v. Godiva Chocolatier, Inc.*, Case No. 15-cv-60716-WPD, U.S.D.C. Southern District of Florida

### CLAIM FORM

TO RECEIVE BENEFITS FROM THIS SETTLEMENT, YOU MUST PROVIDE <u>ALL</u> OF THE INFORMATION BELOW
AND YOU <u>MUST</u> SIGN THIS CLAIM FORM. IF THIS CLAIM FORM IS SUBMITTED
ONLINE, CLICKING "SUBMIT" WILL COUNT AS YOUR ELECTRONIC SIGNATURE.

If mailed, mail this form to: *Muransky v. Godiva Chocolatier* Claims Administrator, P.O. Box 43403, Providence, RI 02940-3403

YOUR CLAIM FORM MUST BE <u>SUBMITTED ELECTRONICALLY OR POSTMARKED ON OR BEFORE</u> AUGUST 23, 2016.

1.  <u>CLAIMANT INFORMATION:</u>

    _____

    TELEPHONE NUMBER (optional)

    _____

    E-MAIL ADDRESS (if available)

    | Name/Address Changes (if any): |
    | --- |
    | First Name: _____ |
    | Last Name: _____ |
    | Address: _____ |
    | City: _____ State: _____ ZIP: _____ |

2.  <u>AFFIRMATION:</u>

By signing below, I swear or attest that the information above is true and accurate. If I am not the above-named person, I swear or attest that I am acting on that person's behalf and have authority to act on his or her behalf. This Claim Form may be researched and verified by the Claims Administrator.

Signature: _____

Name (please print): _____

Date (mm/dd/yyyy): _____

**QUESTIONS? VISIT www.GodivaFACTASettlement.com OR CALL 1-844-830-5222 or Class Counsel at 1-866-726-1092.**

 10112545801    GMYCRD1 

# Claim Form Receipt

> Thank You. Your claim form has been submitted. Please print this page as your receipt.

Your Claim Number is 10112545801. Please retain this number for your records.

**Print**

Case Code:            **GMY**

Date:                     **July 19, 2016** .

## CLAIMANT INFORMATION

> **CINDY L HAGER**
> PO BOX 27641
> SAN DIEGO, CA 92198-1641

Contact phone number:   **(858) 485-7830**

Email Address:          **cindylhager@yahoo.com**

## CLAIM INFORMATION

Certification           **I swear or attest that the information above is true and accurate. If I am not the above-named person, I swear or attest that I am acting on that person's behalf and have authority to act on his or her behalf. This Claim Form may be researched and verified by the Claims Administrator.**

Please print this page and retain it for your records.

For more information about the settlement and the claims filing process, please review the Class Notice.

 KCC                                        **www.kccllc.com**

Home    File a Claim    Class Notice    Court Documents    Frequently Asked Questions

**Kurtzman Carson Consultants**    Terms of Use    Privacy Policy

SAN DIEGO CA 920

20 JUL 2016  PM 2 L

Michael S. Hilicki, Esq.
Keogh Law, Ltd.
55 West Monroe Street
Suite 3390
Chicago, IL 60603

60603-5O2440

Cindy L. Hager
P.O. Box 27641
San Diego, CA 92198

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| DR. DAVID MURANSKY, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 0:15-cv-60716-WPD (Dimitrouleas/Snow) |
| GODIVA CHOCOLATIER, INC. | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## OBJECTION OF JAMES H. PRICE

**NOW COMES** James H. Price ("Price")[1], by and through his undersigned counsel, and submits this objection to the proposed settlement, Class Counsel's request for attorney's fees, and the incentive award for the named Plaintiff:

W. Allen McDonald, Esq.
249 N. Peters Road
Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800

*Counsel for James H. Price*

---

[1]Price received a postcard notice from the claims administrator in July 2016.  [Exhibit 1]. Price is a citizen of the United States and a resident of the State of Tennessee.  His address is 249 North Peters Rd., Suite 101, Knoxville, TN  37923.  His telephone number is (865) 246-0800. Price timely submitted a claim on August 15, 2016 (Claim Confirmation No. 10231621101). [Exhibit 2].  Price is not a person or entity excluded from the Class.

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    LITIGATION HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.   THIS SETTLEMENT DEMANDS STRICTER SCRUTINY.. . . . . . . . . . . . . . . . . . . . . 7

IV.    SPECIFIC OBJECTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

       A.     Notice Violated Procedural Due Process and Rule 23(h) By Failing To
              Provide Class Members Necessary Information Regarding Attorney's Fees
              To Permit Them to Assess Their Legal Options. . . . . . . . . . . . . . . . . . . . . . . . 8

       B.     Class Counsel's Fee Request Is Unreasonable and Excessive.. . . . . . . . . . . . . . 12

              1.     The Work Performed by Class Counsel Does Not Warrant a
                     $2.1 Million Fee.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

              2.     The Court Should Apply the Lodestar Method to Arrive at
                     Class Counsel's Attorney's Fee.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

       C.     As a Result of Class Counsel's Modest Efforts, This Court Lacks Sufficient
              Information to Properly Assess and Evaluate the Proposed Settlement.. . . . . . . . 16

       D.     Due to His Limited Efforts, the Named Plaintiff Is Not Entitled to a $10,000
              Incentive Award.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V.     NOTICE OF APPEARANCE, INTENTION TO APPEAR, AND REQUEST
       TO BE HEARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

VI.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

-ii-

## I.    PRELIMINARY STATEMENT

> *"[T]here is always the danger that the parties and counsel will bargain away the interests of unnamed class members in order to maximize their own."* [2]

Plaintiff filed this case on April 6, 2015.  Less than six months later, before the first deposition was taken and before a single formal discovery document was produced, Plaintiff settled the case for himself and purportedly 342,000 others for $6.3 Million.  Meanwhile, Plaintiff's lawyers have made it known they intend to seek one-third of the Class's gross recovery ($2.1 Million) as their attorney's fees and a $10,000 incentive award for the named Plaintiff.  To clear their way to those substantial sums, Class Counsel made it impossible for Class members to meaningfully, much less sufficiently, assess their legal rights in this case.  By protecting their own interests, Plaintiff and Class Counsel abandoned their duty to adequately represent Class members.

On its face, the proposed settlement – totaling $6.3 million and offering each Class member an estimated $235 in benefits – appeared to hold promise for Class members.  The hope for a worthwhile settlement ended, however, when Class members perused the postcard notice they received in the mail and ultimately learned that Class Counsel did little work in the case, settled quickly without adequate information to evaluate the legal claims, and produced a settlement not only rich for themselves, but disproportionately benefitting the named Plaintiff, who did little more than sign a declaration supporting his $10,000 award.  The proposed settlement, Class Counsel's outlandish fee request, and the similarly excessive request for a $10,000 incentive award for the named Plaintiff should all be rejected.

---

[2]*In re Dry Max Pampers Litig.*, 724 F.3d 713, 715 (6th Cir. 2013).

*First*, what Class members found when they read the postcard notice was that Class Counsel would be seeking $2.1 Million, fully one-third of the gross settlement fund, and they would do so without permitting Class members to assess the reasonableness or propriety of their request before the mandatory August 23, 2016 deadline for exclusions and objections. In fact, Class members discovered that Class Counsel had inexplicably manipulated the settlement schedule to insure their fee petition would not even be due until fifteen (15) days after that deadline had passed.

This process not only violates Federal Rule of Civil Procedure 23(h)[3] but also denies Class members procedural due process. After all, the Eleventh Circuit has interpreted Rule 23 "to require that class members be given 'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action.'" *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011). Here, Class members are handicapped by not knowing the factual or legal rationales to be offered in support of Class Counsel's fee request.[4] As demonstrated below, no fewer than three Circuit Courts of Appeal, the

---

[3]The relevant portions of Rule 23(h) provide:

> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

> (2) A class member, or a party from whom payment is sought, may object to the motion.

*See also* Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion").

[4]*See also* 5 *Moore's Federal Practice* § 23.124[4] (3d ed. 2009) ("[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to

-2-

Third, Seventh, and the Ninth Circuits, have concluded that the process created here by Class Counsel and adopted by the Court violates Rule 23(h), depriving Class members of reasonable information with which they might assess their legal rights.

To be certain, the Rule 23(e) objection process seriously malfunctioned in this case, and that is reason enough to reject the settlement.  Class members should have adequate information to properly consider whether an objection is warranted.  Simply providing Class members, as Class Counsel did here, with an expected fee request expressed in percentage terms without any concrete information concerning the time and effort expended by counsel, as well as other information pertinent to Class members' ability to analyze the fee request, deprives Class members of "reasonable notice" under Rule 23(h) and requires that the proposed settlement be rejected.

*Second*, initially, the $2.1 million fee request did not appear – standing alone – to be exorbitant, as innumerable common fund cases have resulted in percentage-of-the-fund awards in that range.  However, once the Court's docket was examined, it was evident that the case was not aggressively litigated by Class Counsel.  Moreover, Class Counsel did very little work to warrant such a fee, settling the case less than six months after filing it, failing to depose a single witness or to engage in any formal or even informal or confirmatory discovery, failing to engage in any class certification or summary judgment proceedings, or even discovery motion practice, with almost as many docket entries related to the issue of settlement as to any other matter.  In the end, the settlement disproportionately benefits Class Counsel, who request fees at a Bentley rate, not a Cadillac rate.  The result is that the fee to be requested by Class Counsel is terrifically excessive in view of the trifling amount of actual work completed.

---

review all of the materials that may have been submitted in support of the motion . . . .")

Of course, it cannot be disputed that a lawyer who recovers a common fund for a class he or she represents is entitled to reasonable attorney's fees and expenses prior to the distribution of the balance to the class. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). However, an award of $2.1 million to Class Counsel here would vastly over-compensate them, much to the detriment of the Class members whose interests they purport to represent. Accordingly, if the Court determines to award Class Counsel a percentage-of-the-fund, a fee not exceeding 25% would satisfactorily compensate Class Counsel for their efforts in this case. Indeed, empirical studies support such an award. Even then, however, the Court should perform a lodestar cross-check to appropriately assess a percentage award.

Moreover, because the case was brought under the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), the Supreme Court mandates that the Court consider the attributes of the lodestar over a percentage-of-the-fund calculation. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). This method, as opposed to the percentage-of-the-fund approach, would more likely provide adequate compensation to Class Counsel in this case. Even if, arguendo, the Court considers and then rejects the lodestar method, the circumstances of this case nevertheless merit a lodestar cross-check. *See Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (acknowledging use of lodestar method as a cross-check of the percentage-of-the-fund approach). Regardless, if the settlement is approved, Class Counsel's fee should be significantly reduced.

*Third*, there is nothing before this Court – other than numerous self-serving conclusory observations by Class Counsel in their respective declarations – to support Class Counsel's claim that they had sufficient information available to them to sufficiently assess the value of Class

members' claims.  Not only is the record devoid of any indication that the parties engaged in any formal discovery, but nothing in the record indicates that Class Counsel obtained confirmatory discovery in order to assess the settlement.  Thus, the proposed settlement should be rejected for this reason as well.

*Fourth*, while Class Counsel seek a $10,000 incentive award for the named Plaintiff, there is no evidence before the Court that Dr. Muransky was an unwilling participant in this case or that he needed to be incentivized to file suit.  Nor is there any evidence suggesting that Dr. Muransky faced any risks or burdens in undertaking the litigation.  To the contrary, his contribution to the litigation appears to have been extremely limited, *i.e.*, he did not have to respond to discovery, was not deposed, did not have to execute affidavits or declarations for class certification or summary judgment purposes,[5] and did not have to testify.  For these reasons, the Court should ensure that the $10,000 is not, in fact, merely a bounty, and require Class Counsel to provide specific documentation – in the manner of attorney time sheets – of the time actually spent on the case by Dr. Muransky.[6] Under the existing circumstances, however, an incentive award of $1,000 to Dr. Muransky is more than reasonable.

## II.    LITIGATION HISTORY

Plaintiff Muransky filed the first complaint in this litigation on April 6, 2015.  [Doc. 1]. Muransky's 14-page Complaint alleged that Godiva Chocolatier, Inc. ("Godiva") violated FACTA.

---

[5]Dr. Muransky did, however, submit a declaration in support of his adequacy as a class representative.  [Doc. 39-3].

[6]Otherwise, there is no basis to know whether the award is in fact a bounty, that is, "a disincentive for the [named] class members to care about the adequacy of relief afforded unnamed class members[.]"  *Shane Grp., Inc. v. Blue Cross Blue Shield*, 2016 U.S. App. LEXIS 10264, at *21 (6th Cir. Mich. 2016).

Specifically, Muransky alleged that he had made a purchase with his Visa credit card and was then "provided with an electronically printed receipt bearing the GODIVA® logo, which also displayed the last four digits of his credit card *as well as the first six digits of his account number*." [Doc. 1, at ¶ 27]. Because FACTA prohibited Godiva from printing more than "the last 5 digits of the card number to protect persons from identity theft," and Godiva had allegedly done so knowingly and intentionally, Muransky alleged Godiva had violated FACTA. [Doc. 1, at ¶¶ 29-30; 38]. Muransky further alleged that Godiva had FACTA violations such as he alleged had occurred at all 200 Godiva stores in the United States over the preceding 60-day period [Doc. 1, at ¶¶ 28-29] and sought certification of a proposed nationwide class of Godiva customers. [Doc. 1, at ¶ 43].

In May 2015, Godiva moved to dismiss Muransky's complaint [Doc. 12]. In response, Muransky amended his complaint [Doc. 16], mooting Godiva's motion to dismiss. [Doc. 18]. In June 2015, Godiva moved for dismissal of the amended complaint. [Doc. 21]. The parties briefed Godiva's motion [Docs. 24 and 25], and in September 2015, the Court issued an order denying the motion. [Doc. 26]. Godiva answered the amended complaint in September 2015 [Doc. 29].

The following month, the parties notified the Court that they had scheduled mediation for November 3, 2015 and successfully sought to extend deadlines to November 23, 2015, to permit them to "focus on the mediation." [Docs. 30 and 31]. On November 20, 2015, the parties notified the Court that they had reached "a settlement in principle to settle this case on a class-wide basis." [Doc. 32].[7] The settlement proposed that Godiva would pay $6.3 million [Doc. 39-1, at ¶ III.B] into a settlement fund, from which notice costs, claims administration costs, administrative costs, any incentive award to the named Plaintiff, and Class Counsel's attorney's fees and expenses would be

---

[7]The parties reached a settlement after a one-day mediation session. [Doc. 40, at p. 2].

deducted. The remaining amount would used to pay the claims of as many as 342,000 class members. [Doc. 39-1, at § I]; Doc. 39-1, at § III.B]. Three days after Muransky filed his motion, the Court entered an order granting preliminary approval, directing notice to the class, and setting a hearing for final approval. [Doc. 40].

Within the 6-page notice, Class members were provided information about the proposed settlement. They were advised that Class Counsel would be seeking attorney's fees in the amount of $2.1 Million, as well as a $10,000 incentive award for the named Plaintiff. Class members had until August 23, 2016 to exclude themselves from the proposed settlement or object. However, the Preliminary Approval Order provided that Class Counsel did not even have to file their fee petition until fifteen (15) days later, on September 7, 2016. [Doc. 40, at ¶ 13].

## III.   THIS SETTLEMENT DEMANDS STRICTER SCRUTINY

When, as in this case, the Court is asked to certify a class and approve its settlement in a single proceeding, the requirements of Rule 23(a), which are intended to protect the rights of absent class members, "demand undiluted, even heightened, attention." *Literary Works in Elec. Databases Copyright Litig. v. Thomson Corp.*, 654 F.3d 242, 259 (2d Cir. 2011) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). The role of the district courts in evaluating proposed settlements is akin "to the high duty of care that the law requires of fiduciaries." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002).

## IV.   SPECIFIC OBJECTIONS

Objectors serve as counterweights to a process that heavily favors settlement approval and its participants – none of whom have any interest in an adversarial debate after a settlement. It is, therefore, crucial that objectors – who monitor class counsel's conduct – have a full and fair

opportunity to participate in the settlement process. *See e.g.*, Deborah R. Hensler, et al., *Class Action Dilemmas – Pursuing Public Goals for Private Gain,* 491-96 (Rand 2000). And despite Class Counsel's all-too predictable disdain for Class members who "smelled a rat" when they read the postcard notice, Class members have a fundamental right to object. *See Devlin v. Scardelletti*, 536 U.S. 1, 8-9 (2002).

> **A.   Notice Violated Procedural Due Process and Rule 23(h) By Failing To Provide Class Members Necessary Information Regarding Attorney's Fees To Permit Them to Assess Their Legal Options.**

The standard for the adequacy of a settlement notice in a class action is measured by reasonableness. *See* Fed. R. Civ. P. 23(e). To satisfy due process requirements, the notice must be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The Eleventh Circuit has interpreted Rule 23 to require that class members be given "'information reasonably necessary to make a decision [whether] to remain a class member and be bound by the final judgment or opt out of the action.'" *Faught v. American Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011).

Notice to the class of its rights and responsibilities, after all, is a keystone of due process: the "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002). As the Sixth Class recently made clear, class members cannot participate

meaningfully in the process contemplated by Federal Rule of Civil Procedure 23(e) unless they can review the bases of the proposed settlement and the other documents in the court record. *Shane Grp., Inc. v. Blue Cross Blue Shield*, 2016 U.S. App. LEXIS 10264, at *21 (6th Cir. 2016).

With respect to attorney's fees, Rule 23(h) allows a court to award reasonable attorneys' fees and costs in a certified class action subject to certain requirements. Under the Rule, a fee petition must be made by motion served on all parties and, when the motion is made by class counsel, notice must be "directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). Class members may then object and the court may hold a hearing. Fed. R. Civ. P. 23(h)(2)-(3). Due process and Rule 23(h) thus require that Class members have access to the factual and legal basis for Class Counsel's fee request before their Court-imposed deadline to object.

Here, Class members' deadline for objecting was August 23, 2016.[8] Class Counsel's fee petition is not due until 15 days later, September 7, 2016. Yet, the only fee-related information made available to Class members is this snippet in the notice: "Class Counsel will ask the Court to approve payment of up to one third of the $6,300,000 Settlement Fund, which is $2,100,000, to them for attorneys' fees, plus reasonable expenses." Thus, the entire Class of 342,000 consumers was deprived of the opportunity to learn how much time and effort Class Counsel expended in litigating the case and Class Counsel's factual and legal bases for seeking the award. It would be an abuse of discretion to punish objectors for this process that undeniably failed to comport with Rule 23.

Exactly how Class members are supposed to meaningfully assess a not-yet filed motion – or the request – without a scintilla of information concerning the motion's factual or legal basis is

---

[8]Rule 23(h)'s plain language rightly requires that Class members be given an opportunity to object to the "motion" itself, not merely to the notice that such a motion will be filed.

addressed nowhere: not in the notice, not in the settlement agreement, not in Plaintiff's preliminary approval submissions, not in the preliminary approval order, and not on the settlement website. Simply put, every Class member was entitled to know precisely why Class Counsel believe they have earned a fee of this nature *before* their deadline for exercising their legal rights.  Having been deprived of such information, Class members lacked a full and fair opportunity to contest the motion.

At least three Circuits have addressed the situation and would find fault with the process, including a violation of Rule 23(h).  In the Seventh and Ninth Circuits, district courts had denied class members the opportunity to object to the particulars of counsel's fee request because, as is the case here, counsel were not required to file a fee petition until after the deadline for class members to object expired.  By the time they were served with notice of the fee petition, it was too late for them to object.  The Seventh Circuit, in *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014), *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429, 191 L. Ed. 2d 366 (2015), and the Ninth Circuit, in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010), concluded that the district courts had violated Rule 23(h).  Lastly, earlier this year, the Third Circuit observed that it had "little trouble agreeing that Rule 23(h) is violated in those circumstances."  *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 446 (3d Cir. 2016).[9]

According to the Seventh Circuit, class members who are forced to base their objection solely on what is contained within the preliminary notice may be "handicapped by not knowing the rationale that would be offered [in counsel's motion] for the fee request."  *Redman v. RadioShack*

---

[9]*And see also In re Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales Practices Litig.*, 2015 U.S. Dist. LEXIS 154602, at *43 (D. N.H. Nov. 16, 2015) ("class counsel did not comply with Rule 23(h) simply because class members were on notice in June that counsel would seek attorneys' fees," concluding that class counsel "did not provide adequate notice of their fee motion to class members.")

*Corp.*, 768 F.3d 622, 638 (7th Cir. 2014).  The Ninth Circuit explained further,

> "[a]llowing class members an opportunity thoroughly to examine counsel's fee motion, inquire into the bases for various charges and ensure that they are adequately documented and supported is essential for the protection of the rights of class members.  It also ensures that the district court, acting as a fiduciary for the class, is presented with adequate, and adequately-tested, information to evaluate the reasonableness of a proposed fee."

*Mercury Interactive,* 618 F.3d at 994.  The Court explained that its reasoning is both logical and

sound, for during the fee motion stage of the proceedings,

> Because "the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs."  *Id.*  As a fiduciary for the class, the district court must "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is."  *Id*.  Included in that fiduciary obligation is the duty to ensure that the class is afforded the opportunity to represent its own best interests.

*Mercury Interactive,* 618 F.3d at 994-95.[10]

In this case, the deadline for objections passed before Class Counsel filed the motion for

attorney's fees.  Under the notice procedure approved by the Court, Class Counsel is permitted to

withhold from Class members any information about their work until September 7, 2016, 15 days

after the August 23, 2016 deadline for objecting to the fee request had passed.  Class members knew

---

[10]The Advisory Committee Notes to the 2003 amendments to Rule 23(h) support this reading of the rule, *see* Fed. R. Civ. P. 23, 2003 Advisory Committee Notes ("[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion"), and further advise that, where appropriate, the court will permit an "objector discovery relevant to the objections."  *Id.  See also* 5 *Moore's Federal Practice* § 23.124[4] (3d ed. 2009) ("[a]ny objection deadline set by the court should provide the eligible parties with an adequate opportunity to review all of the materials that may have been submitted in support of the motion and, in an appropriate case, conduct discovery concerning the fees request").

only that a $6.3 Million settlement had been achieved, and that Class Counsel would seek a fee of one-third of the common fund.  This flawed process, proposed by Class Counsel and endorsed by the Court, failed to provide Class members with key information in order to evaluate a fee request that would cost the Class millions of dollars of its recovery.

For all of this, the process afforded was unfair and failed to provide all 342,000 Class members a meaningful opportunity to object.[11]  Accordingly, the Court should reject the settlement on this ground alone.  Alternatively, the Court should continue the fairness hearing and, at a minimum, provide Class members with sufficient time to object to Class Counsel's fee request.

**B.     Class Counsel's Fee Request Is Unreasonable and Excessive.**

No one should dispute that a lawyer who recovers a common fund for a class is entitled to reasonable attorneys' fees and expenses.  *See Boeing*, 444 U.S. at 478.  However, the size of the award requested here would vastly over-compensate Class Counsel.  What is evident, at least from a public view, is that Class Counsel did little work in this case, in an abbreviated time-span, yet plan to walk away with $2.1 Million.  This sum is excessive and improperly disproportional to the benefits purportedly earmarked for Class members.

**1.     The Work Performed by Class Counsel Does Not Warrant a $2.1 Million Fee.**

The Eleventh Circuit has concluded that the proper manner to calculate attorneys' fees is to identify the fund created for the benefit of the class and to award Class Counsel a reasonable percentage of that fund as an attorneys' fee.  "[I]n this circuit, attorneys' fees awarded from a

---

[11]To the extent Class Counsel might suggest that Class members could weigh-in on the attorney's fees issue after the fee petition is filed and before the fairness hearing, Class members were required to act by August 23, 2016, not by the fairness hearing.

common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991).

Class Counsel's fee request is excessive.  Granting Class Counsel a fee of one-third of the gross settlement fund would result in a substantial windfall, for what has been a demonstrably lightly-litigated case.  Indeed, empirical studies confirm that the percentage requested is substantially above the norm for class action settlements approximating $6.3 Million.  In fact, such studies reveal that fees for settlements in the range of the one at bar range from 22.8% to 25%, not one-third.  *See* Theodore Eisenberg & Geoffrey P. Miller, "*Attorney Fees and Expenses in Class Action Settlements: 1993-2008*," 7 J. Empirical Legal Stud. 248, 265 (2010) (finding that between 1993 and 2008, in settlements between $5.3 million and $8.7 million, the median attorney fee was 22.1% and the mean was 22.8%, while in settlements between $22.8 million and $38.3 million, the median attorney fee was 24.9% and the mean was 22.1%); Brian T. Fitzpatrick, "*An Empirical Study of Class Action Settlements and Their Fee Awards*," 7 J. Empirical Legal Stud. 811, 839 (2010) (finding that for settlements ranging from $4.45 million to $7 million, the median attorney fee was 29.7% and the mean was 27.4%).

Moreover, neither the risk encountered nor the work performed by Class Counsel warrants one-third of the gross settlement fund.  Class Counsel dubiously imply that their work in this case entitles them to a fee of $2.1 Million.  The claim is incredulous, as they filed the case just a week after Dr. Muransky allegedly received the receipt from Godiva that purportedly violated FACTA and settled it less than six months later, having taken no depositions, engaged in no formal or informal discovery, and engaged in no class certification or summary judgment proceedings, while at least half of their work appears to have come after the parties reached a settlement.  All of this, easily

-13-

distilled from the Court's docket, strongly suggests the impropriety of Class Counsel's settlement assessment, their decision to settle at such an early stage, and certainly, their fee request.[12]

Without an opportunity to review the actual fee motion, much less the time records which Class Counsel should have maintained contemporaneously, no Class member can fully assess the reasonableness of the fee. However, given the paucity of motion practice, the lack of discovery, the lack of class certification or summary judgment proceedings, the limited number of hearings and substantive motions briefed, that no trial occurred, and considering the record fact that the second most litigated issue in the litigation was settlement approval, $2.1 Million is excessive.

This conclusion is further reinforced by the fact that Class Counsel vouch for their experience in cases of this nature. [Doc. 39-4, at ¶ 20 (Owens, touting his "vast experience in the area of consumer-protection litigation"); 39-5, at ¶ 10 (Lusskin, proclaiming that "[m]y peers generally regard me as an authority in the State of Florida with respect to the consumer matters"); 39-6, at ¶ 3 (Hillicki, referring to his "personal consumer and class action litigation experience" as "extensive"). This experience should necessarily translate into some economies of scale. Here, obviously, it did not.

A fair assessment of the fee request makes clear that the proposed allocation between Class Counsel and Class members is an extraordinary result for the former, but a dismal one for the latter.[13]

_____

[12]Class Counsel should be required to submit their detailed contemporaneous hours spent in this case for the purpose of conducting a lodestar cross-check against the reasonableness of any proposed percentage fee.

[13]To put the requested fee in proper perspective, $2.1 Million represents more than two attorneys working a minimum of forty (40) hours per week for twenty-six (26) weeks exclusively on this case and another attorney working twenty-seven (27) hours per week for 26 weeks on this case, all without holidays or vacations and at an hourly rate of $750.

2.      **The Court Should Apply the Lodestar Method to Arrive at Class Counsel's Attorney's Fee.**

Here, as in many class action settlements, the person with the most at stake financially is Class Counsel.  The task of this Court – if it eventually grants approval – is to set Class Counsel's fee at a level that will approximate what the market would set.  Here, because of the unique circumstances presented, this task should be accomplished through use of the lodestar method, or at least through a lodestar cross-check, to insure that Class Counsel are not overcompensated.

It is beyond dispute that even if the Court chooses to award a percentage, it is nevertheless required to consider the attributes of the lodestar method as compared to a percentage calculation in computing a reasonable attorneys' fee award under a fee-shifting statute.  In *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010), the Supreme Court explained that the "lodestar" method has "become the guiding light of our fee-shifting jurisprudence." *Id*. at 553.  Under federal fee-shifting statutes, there is a strong presumption that the lodestar is sufficient to achieve the objective of a "reasonable fee." *Id*.  The Court further held that factors subsumed in the lodestar calculation cannot be used as a ground for increasing an award above the lodestar, and that a party seeking fees has the burden of identifying a factor that the lodestar does not adequately take into account and proving with specificity that an enhanced fee is justified.

Similarly, this case is based on a federal statute with a fee-shifting remedy, *i.e.*, FACTA, 15 U.S.C. § 1681(c)(g)(1).  Furthermore, if the case was tried and Plaintiff prevailed, Class Counsel's fees would be determined under *Perdue, i.e.,* there would have been a "strong presumption" to limit that Class Counsel to their lodestar.  Class Counsel should not be permitted to sidestep *Perdue* simply by negotiating a common fund settlement.  Such a result not only severely places form over

-15-

substance, but places a premium on Class Counsel settling a case instead of proceeding to trial. Accordingly, the Court should adopt the lodestar method to set Class Counsel's fee. Alternatively, if the Court declines to apply the lodestar method to award Class Counsel's attorney's fee, the Court should use the lodestar method as a cross-check of the percentage-of-the-fund approach. *See Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001); *Ressler v. Jacobson*, 149 F.R.D. 651, 653, n. 4 (M.D. Fla. 1992).

For all of this, final approval should be denied, and fees, if awarded, should be limited to 25%, or set by the lodestar method.

**C.    As a Result of Class Counsel's Modest Efforts, This Court Lacks Sufficient Information to Properly Assess and Evaluate the Proposed Settlement.**

The Eleventh Circuit has instructed that, in examining the fairness, adequacy, and reasonableness of a settlement, a district court should examine several factors, including: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009) (quoting *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)). "Thus, the issues that bear upon whether or not to grant final approval here are: a) whether the settlement was procured by collusion among the parties or was the result of

arms-length and informed bargaining; and b) whether the proposed final settlement is fair, adequate and reasonable, applying the six *Bennett* factors." *Lipuma v. American Express Co.*, 406 F. Supp.2d 1298, 1315 (S.D. Fla. 2005).

Here, what is known is that there were only 32 docket entries before the parties mediated and settled the case. Of those, only three substantive documents were filed by Class Counsel. [Doc. 1, Complaint], [Doc. 16, Amended Complaint], and [Doc. 24, response to motion to dismiss]. There is nothing currently in the record indicating that Godiva produced a single piece of paper or a single file as confirmatory discovery for settlement purposes. Before reaching a settlement, the parties (1) did not engage in formal or informal discovery or confirmatory discovery, much less significant formal discovery; (2) did not engage in any substantive motion practice beyond a motion to dismiss, much less extensive motion practice; and (3) engaged in only a one-day mediation session. Yet, Class Counsel are adamant to declare that they were sufficiently informed to assess and evaluate Godiva's settlement offer. *See* Declaration of Scott D. Owens [Doc. 39-4] (Class Counsel were "fully informed"); Declaration of Bret L. Lusskin [Doc. 39-5] ("Class Counsel has ample foundation upon which to evaluate the proposed settlement"); Declaration of Michael S. Hilicki [Doc. 39-6, ¶ 9] ("reached after tough negotiations and careful deliberation in a full mediation session, as well as substantial additional negotiations after the session").

These self-serving conclusory declarations are insufficient to demonstrate that Class Counsel provided this Court with sufficient information with which to evaluate the Plaintiff's claims and assess their value.

-17-

**D.      Due to His Limited Efforts, the Named Plaintiff Is Not Entitled to a $10,000 Incentive Award.**

Class Counsel intends to seek a $10,000 incentive award for Dr. Muransky.  Whether to approve such an award and, if so, the appropriate amount thereof is reserved to the discretion of the Court.  *See In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).  Factors bearing on the decision include the actions taken by the named plaintiff to protect the class's interests, the degree to which the class has benefitted from those actions, and the amount of time and effort the named plaintiff expended on the litigation.  *Id*.  A key additional consideration is whether an incentive award was necessary "to induce an individual to participate in the suit."  *Fouks v. Red Wing Hotel Corp.*, No. 12-2160, 2013 U.S. Dist. LEXIS 165588, at *2 (D. Minn. Nov. 21, 2013) (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

To be sure, $10,000 is a substantial award in a case as abbreviated as this one.  Therefore, there are concerns about a bounty here.  *See Shane Grp., Inc. v. Blue Cross Blue Shield*, 2016 U.S. App. LEXIS 10264, at *21 (6th Cir. Mich. 2016).  Nothing presented to Class members or to this Court – at least at this juncture – indicates the basis for such a large award.  There is no evidence before the Court that Dr. Muransky was an unwilling participant in this case or that he needed to be incentivized to file suit.  *Fouks*, at *2. Nor is there evidence suggesting Dr. Muransky "faced any risks or burdens in undertaking this litigation."  *Id*. at *3.  Rather, it appears that Dr. Muransky's contribution to the litigation was limited, *i.e.*, he did not have to respond to discovery, was not deposed, and other than a self-serving declaration submitted to support his $10,000 settlement award, did not have to execute affidavits or declarations, and did not have to testify.

-18-

Accordingly, to ensure that these amounts are not in fact a bounty, the Court should require Class Counsel to provide specific documentation – in the manner of attorney time sheets – of the time actually spent on the case by Dr. Muransky.  Otherwise, the Court has no basis for knowing whether the award are in fact "a disincentive for the [named] class member[] to care about the adequacy of relief afforded unnamed class members[.]"  *See Shane Group*, at *26.[14]

## V.   NOTICE OF APPEARANCE, INTENTION TO APPEAR, AND REQUEST TO BE HEARD

**NOTICE** is hereby given that the undersigned counsel is appearing on behalf of Price in the above-styled action.  Counsel respectfully requests that he be allowed to be heard *via telephone* at the Fairness Hearing on September 21, 2016.

## VI.   CONCLUSION

For all of these reasons, this Court should (1) reject the proposed settlement, (2) deny Class Counsel's motion for attorney's fees, or alternatively, apply the lodestar method to set Class Counsel's fee; (3) award Class Counsel a substantially lesser amount than they seek, *i.e.*, 25%, (4) deny the request to award a $10,000 incentive fee to Dr. Muransky, and (5) award such other relief as is just and necessary in this matter consistent with the foregoing.

---

[14]This, however, does not suggest that the Court should necessarily approve the $10,000 award if Class Counsel provides such documentation.  An award of $1,000 is more than satisfactory for Dr. Muransky's efforts in this case.

Respectfully submitted, this 23rd day of August, 2016.


*/s/ W. Allen McDonald*
W. Allen McDonald, Esq.
249 N. Peters Road, Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800

*Counsel for James H. Price*

-20-

**CERTIFICATE OF SERVICE**

I do hereby certify that on August 23, 2016, a copy of the foregoing was submitted electronically through the Court's Electronic Filing System ("ECF").  Notice of this filing will be sent by operation of the Court's ECF to all parties indicated on the electronic filing receipt, including;

Michael S. Hilicki, Esq.
KEOGH LAW, LTD.
55 West Monroe Street
Ste. 3390
Chicago, IL 60603

Brian Melendez
DYKEMA GOSSETT, PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3903

This 23rd day of August, 2016.

*/s/ W. Allen McDonald*
W. Allen McDonald

-21-

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-cv-60716-WPD

Dr. David Muransky, individually and on
behalf of all others similarly situated
Plaintiff,
v.

Godiva Chocolatier, Inc.
Defendant.
_____/

## OBJECTION TO CLASS ACTION SETTLEMENT

Jonathan Feldman, *pro se*, objects to the proposed class action settlement that is currently filed with the Court. In support, I state the following:

### Statement of Intentions

I intend to appear at the fairness hearing set for September 21, 2016 and argue the issues set forth below.

### Objection

A few months ago, I received a notice in the mail that I was a member of a class for a lawsuit against Godiva Chocolatier, Inc. Curious about my newfound windfall, I reviewed the underlying complaint along with the proposed settlement. A copy of my filed claim is attached as Exhibit 1.

As a bankruptcy lawyer, I'm quite familiar with the notion of settling contested matters. The common standard in bankruptcy for settlement is whether the proposed settlement is above the lowest point in the range of reasonableness. In establishing this standard, it is axiomatic that all interested parties be provided sufficient information to determine whether such standard is satisfied. This includes information about the

complexity of the case, collectability of the settling party, likelihood of success on the merits and whether the settlement is in the best interests of creditors (the usual recipients of any settlement proceeds). In some instances, *e.g.*, when settling a significant claim against a collectable defendant, a robust discussion of these issues is necessary; in other instances, *e.g.*, settlement of a small preferential transfer claim, it is not.

I do not feign to know the intricacies of the law regarding class actions. However, under *Fed. R. Civ. P.* 23(e)(2), it seems that a settlement can only be approved if it is "fair, reasonable and adequate." Here, based on the public filings, it is not possible to determine whether this standard is satisfied.

The amended complaint accuses Godiva of being a horrible corporate citizen: Godiva willfully violated one or more federal statutes; Godiva willfully breached its contracts; Godiva willfully ignored software manuals; and most important, Godiva went out of its way to risk my financial security and that of others. Although admittedly these are allegations, they are serious: federal law apparently allows for a statutory penalty of $100 to $1,000 for each violation. And these allegations were sufficient to overcome a robust motion to dismiss filed by Godiva.

Nonetheless, after plaintiff and counsel were given the chance to move forward with this case and engage in significant discovery to prove up a potential massive damage model and presumably send a message to corporate America that it shouldn't be so lax with customers' personal information, a notice of settlement was filed. This notice was filed less than three months after the Court denied Godiva's motion to dismiss.

The proposed settlement does not go into any specific detail to address why a $6.3 million settlement of a claim that potentially is worth billions of dollars against a

collectable defendant is now appropriate. The settlement asserts that members of the class will receive an estimated $235 for their claim and that this award is significant relative to other cases, but it seems this estimated recovery on a claimant basis is simply a function of most people not filing claims to begin with. That's hardly something to tout. It also does not explain what discovery revealed to undermine the serious allegations set forth in the amended complaint. And it does not explain why the attorney's fee award for this supposed remarkable result on the class' behalf is justified. Bottom line, the proposed settlement does not lay out the requisite information necessary to determine whether the settlement is indeed "fair, reasonable and adequate." Considering the settlement seeks to settle a serious and sizeable claim against a collectable defendant, a more robust and thorough discussion of these issues must be presented.

WHEREFORE, I request the Court enter an Order (1) denying the settlement as proposed, or alternatively, (2) requiring the Plaintiff to file a supplement to the proposed settlement that further details how the proposed settlement meets the requisite legal standard and (3) granting such further relief the Court deems just and proper.

/s/ Jonathan S. Feldman
*Pro se*

## CERTIFICATE OF SERVICE

CASE NO. 0:15-CV-60716-WPD

I hereby certify that on August 21, 2016, I filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day by Notice of Electronic Filing generated by CM/ECF on all counsel of record entitled to receive service.

/s/ Jonathan S. Feldman

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO. 0:15-CV-60716-WPD

Dr. David S. Muransky, individually and
on behalf of all others similarly situated,

                Plaintiff,

    v.

Godiva Chocolatier, Inc.,

                Defendant.

# OBJECTION TO PROPOSED SETTLEMENT AND
# NOTICE OF INTENT TO APPEAR

## I. NOTICE OF INTENT TO APPEAR AND ARGUE

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on September 21, 2016 at 2:00 p.m., or
as soon thereafter as the matter can be heard in Courtroom 205F of the
above-entitled court located at 299 East Broward Blvd., Ft. Lauderdale,
Florida  33301, class member Eric Alan Isaacson ("Isaacson" or "Objector"),

1

by and through his counsel,  intends to appear and offer argument at the final approval hearing.

## II. PROOF OF CLAIM

Objector Isaacson is a member of the Settlement Class as set forth in the Settlement Agreement at page 3, § I.   Isaacson timely submitted a claim form, a true and correct copy of which is filed herewith.  *See* Exhibit 1.  His assigned claim number is 10131847901.

## III.  INTRODUCTION

In approving a settlement, a "[d]istrict [c]ourt must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984); see also Fed. R. Civ. P. 23(e)(2).   The Court must "undertake an analysis of the facts and the law relevant to the proposed compromise" and "support [its] conclusions by memorandum opinion or otherwise in the record." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).  The burden of proving the fairness of a settlement rests squarely on its proponents.  *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1147 (11th Cir. 1983).  *See* Herbert B. Newberg & Alba Conte, 2 Newberg on Class Actions § 11.42 (3d ed. 1992); Moore's Federal Practice § 23.80 [4] (2d ed. 1987); *see also Williams v. Ryan*, 78 F.R.D. 364, 369 (1978).

2

## IV.  ARGUMENT

## A.    The Court Cannot Presently Approve the Contemplated Attorneys' Fees

Class counsel appears to be requesting one third of the $6,300,000 common fund.[1]  But counsel have yet to file papers setting forth the basis for the fee application.  By the Court's order, their motion for attorneys' fees is not due until September 7, 2016[2], which is fifteen days *after* the August 23, 2016 deadline for filing objections to the proposed settlement and fee application.

Requiring objections to be filed before the motions for final settlement and approval and attorneys' fees are due violates the notice provisions of Rule 23 and deprives class members of their fundamental right to due process of law.  *See* U.S. Const. amend. V (guaranteeing due process of law); Fed. R. Civ. P. 23(e), (h) (requiring reasonable notice be directed to class members before the court may approve a class-action settlement or attorneys' fee award).  Rule 23 specifically requires the district court, before approving a class-action settlement, to "'direct notice in a reasonable manner to all class members who would be bound by the

---

[1] Notice to Class Members at 3, ¶ 7
[2] Order Granting Preliminary Approval, Doc. 40 at 10, ¶ 13 ("At least two weeks before the Fairness Hearing, Class Counsel shall file with the Court: (i) any memoranda or other materials in support of final approval of the Agreement and Class Settlement; and (ii) any Fee Petition.")

3

proposal,'" such that "'[a]ny class member may object to the proposal if it requires court approval under this subdivision (e).'" *Juris v. Inamed Corp.,* 685 F. 3d 1294, 1307 n.10 (11th Cir. 2012); *see In re CP Ships Ltd. Securities Litigation,* 578 F. 3d 1306, 1317 (11th Cir. 2009) (same); *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 181 (3d Cir. 2013) (same); *Sullivan v. DB Investments, Inc.,* 667 F. 3d 273, 338 n.8 (3d Cir. 2011) (quoting Fed. R. Civ. P. 23(e)); *UAW v. General Motors Corp.,* 497 F. 3d 615, 629 (6th Cir. 2007) (same); *Guzman v. Consumer Law Group,* No. 1:2001-cv-00187-JRH, slip op. at pp. 1, 4 (S.D. Ga. May 11, 2016) (same).

Rule 23(h) similarly requires that "notice of motions requesting attorneys' fees for class counsel must be 'directed to class members in a reasonable manner.'" *In re Volkswagen and Audi Warranty Extension,* 692 F.3d 4, 10 n.5 (1st Cir. 2012) (quoting Fed. R. Civ. P. 23(h)); *see Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (quoting Rule 23(h)); *In re Enron Corp. Securities,* 586 F. Supp. 2d 732, 744 (S.D. Tex. 2008) (same); *In re Excess Value Ins. Coverage Litig.,* 598 F. Supp. 2d 380, 391 (S.D.N.Y. 2005) (same).  Honoring these provisions is critical to realizing the due process of law that the Fifth Amendment protects.  *See Eisen v. Carlisle & Jacquelin,* 417 U. S. 156, 174-75 (1974) ("notice and an opportunity to be heard [are] fundamental requisites of the

4

constitutional guarantee of procedural due process"); *Hansberry v. Lee,* 311 US 32, 40 (1940) ("notice and opportunity to be heard are requisite to the due process which the Constitution prescribes"). Here, both Rule 23 and fundamental due process have been violated because objections must be submitted before the motions for settlement approval and attorneys' fees will be filed.

**B.     The Court Should Consider Counsel's Lodestar in Determining a Reasonable Fee**

The effect of the settlement as presently structured appears primarily to provide class counsel with greater compensation than if they had taken the case to trial and won. This divergence in fee structure creates a moral hazard, for it makes plaintiffs' attorneys prefer settlement rather than trial in fee-shifting cases, and may lead them to settle valuable cases for a lower amount per plaintiff than if they tried the cases. *See* Richard A. Posner, *Economic Analysis of Law* 627 (Aspen 5th ed. 1998) (stating that "[the lawyer for the class will be tempted to offer to settle with the defendant for a small judgment and a large legal fee, and such an offer will be attractive to the defendant, provided the sum of the two figures is less than the defendant's net expected loss from going to trial").

The Supreme Court's "common-fund" or "equitable-fund" cases have involved fees calculated and assessed in a variety of ways. The seminal common-fund decision, *Trustees v. Greenough*, 105 U.S. 527 (1882), awarded itemized attorneys' fees actually incurred and paid for specific tasks, without any kind of enhancement or multiplier. *See Greenough*, Transcript of Record at 711-23, 770-78 (original) 228-32, 247-56 (print). Two subsequent decisions, *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885), and *United States v. Equitable Trust Co.,* 283 U.S. 738, 746-47 (1931), involved percent-of-fund awards – with the Supreme Court in both cases slashing unreasonably high 10% fee awards to a more reasonable 5% of the recovered fund. In *Sprague v. Ticonic National Bank,* 307 U.S. 161 (1939), the common-fund award appears again to have been for fees actually incurred and paid for specific tasks just as in *Greenough*, for the record on remand in *Sprague* reveals that the petition in that case sought reimbursement only for fees actually billed by, and paid to, the lawyers. *See Sprague v. Ticonic Nat'l Bank,* 28 F.Supp. 229, 231 (D. Me. 1939), *aff'd in relevant part and rev'd in part on other grounds,* 110 F.2d 174, 178 (1st Cir. 1940) ("The decree of the District Court is affirmed insofar as it allows the original petition for reimbursement in the amount of $1,214.51."). Finally, in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478

6

(1980), the Supreme Court mandated a common-fund fee award, which the district court on remand honored the Supreme Court's mandate by employing the lodestar methodology to calculate fees. *See Van Gemert v. Boeing,* 516 F. Supp. 412, 414, 418 (S.D.N.Y. 1981) (employing lodestar methodology rather than percent-of-fund to calculate attorneys' fees: "'The starting point of every fee award . . . must be a calculation of the attorney[s'] services in terms of the time [they have] expended on the case.'") (quoting *City of Detroit v. Grinnell,* 495 F.2d 448, 470 (2d Cir. 1974)).

In light of the foregoing precedents, most circuits have concluded that district courts have discretion to choose between the lodestar methodology and percent-of-fund methodology in awarding attorneys' fees. *See, e.g., Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 44-45 (2d Cir. 2000); *In re WPPSS Litig.,* 19 F.3d 1291, 1295 (9th Cir. 1994); *Harman v. Lyphomed, Inc.,* 945 F.2d 969, 974 (7th Cir. 1991). Decisions of the Eleventh Circuit and the District of Columbia Circuit, on the other hand, appear to mandate percentage fee awards in all common-fund cases. *See Camden I Condominium Ass'n,* 946 F.2d 768, 773 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala,* 1 F. 3d 1261, 1265-71 (D.C. Cir. 1993).

Objector Isaacson respectfully submits that *Camden I* should no longer be deemed controlling law in light of the Supreme Court's intervening decision in *Perdue v. Kenny A. ex rel. Winn,* 130 S. Ct. 1662 (2010), which defines reasonable fee awards in terms of lodestar, and which repudiates the so-called "*Johnson* factors," *see id.* at 1672, that *Camden I* holds should be "used in evaluating, setting, and reviewing percentage fee awards in common fund cases." *Camden I,* 946 F.3d at 775.

Alternatively, Objector Isaacson respectfully submits if this Court is to award a percent-of-fund fee award, the percentage awarded should be in line with the 5% fees approved by the Supreme Court in both *Pettus* and *Equitable Trust.* If ten percent fee awards were deemed excessive in those cases, then the 33⅓% fee award sought here surely is out of line with these controlling Supreme Court precedents on reasonable percentages for common-fund fee awards. In fact, economies of scale present in class actions such as this warrant a ***downward*** adjustment from the 5% fee deemed appropriate in *Pettus* and *Equitable Trust.*

Isaacson submits that awarding a percentage far below 33⅓% also may be necessary in order to avoid the moral hazard created when lawyers expect to be paid more to compromise claims for a fraction of their value than they could obtain had they actually won the case. That could happen if

a percentage fee award compensates plaintiffs' lawyers at what amounts to

a higher hourly rate than they could receive under a fee shifting statute.

Under a fee shifting statute such as FACTA,[3] class counsel could expect only

to receive their reasonable hourly rates if they prevail at trial.  *See Perdue,*

130 S. Ct. at 1675- 1677 .   When claims are subject to a fee-shifting statute,

class counsel cannot seek additional compensation from the common fund

created by a judgment against the defendants.  *See Pierce v. Visteon Corp.,*

791 F.3d 782, 787 (7th Cir. 2015); *Haggart v. Woodley,* 809 F.3d 1336,

1354 -1359 (Fed. Cir. 2016).  Neither should they be permitted to recover

more from the class, whose interests they are supposed to represent, when

they have settled the claims.

The Third Circuit in *Brytus v. Spang & Co.,* 203 F.3d 238 (3d Cir.

2000), for example, rejected lawyers' contentions that they should receive a

higher fee award from a common fund than the lodestar award that could

be assessed against defendants actually found liable.  Observing that class

counsel might seek to settle a matter in order to obtain higher fees than the

lodestar award available under a fee-shifting statute, the court held that

settlements and fee awards "must be carefully monitored to avoid conflicts

of interest." *Id.* at 246.  Given "the possibility that in some cases counsel for

a class of plaintiffs may receive a higher fee award upon settlement than

---

[3] 15 U.S.C. § 1681n(a)(3)

they would have received had the case proceeded to judgment," the Third

Circuit "directed the district courts to subject all fee applications in class

action settlements to 'thorough judicial review,'" under which any

"disparity between fees resulting from application of the different methods

of calculation will be minimized if the district courts cross-check the fee

from the percentage of recovery method against that from the lodestar

method to assure that the percentage awarded does not create an

unreasonable hourly fee." *Id.* at 247 (citations omitted).

Class counsel who enter a settlement shifting attorneys' fees from

potentially culpable defendants to clearly non-culpable class members

should not be permitted to charge the class they purport to represent an

even higher fee than could be assessed against defendants found to have

violated the law.  "For the court to award plaintiffs' counsel a percentage of

the settlement when he might only have been entitled to an hourly — and

therefore possibly lower — fee had he obtained a favorable judgment, would

raise the spectre of a significant conflict of interest between counsel and the

absent class members in the negotiation of such a settlement." *Bowen v.*

*Southtrust Bank of Alabama,* 760 F. Supp. 889, 896 (M.D. Ala. 1991).

Thus, any percentage fee award should be subjected to a strict

lodestar cross-check, in order to eliminate any untoward incentives by

10

reducing the percentage awarded to a level that it does not significantly exceed the lodestar.

## C.   The Court Should Consider Whether Lead Plaintiff is an Adequate Class Representative

From records readily available on the Internet, it appears that a Dr. David S. Muransky of Broward County, Florida, once pleaded guilty to several counts of Medicare fraud and was suspended for five years from participating in Medicare and Medicaid programs. [4]  If this happens by coincidence to be the same Dr. David S. Muransky who is acting as class representative in this matter, one must hope the conviction has been disclosed to the Court for its full consideration. For fraud and other crimes involving dishonesty are relevant in determining adequacy of representation under Rule 23.

---

[4]      Googling "Dr. David S. Muransky" produces links to Health & Human Services rulings indicating that on March 31, 1989, United States District Court for the Southern District of Florida entered a judgment recording that Florida chiropractor David S. Muransky, D.C. pleaded guilty to four counts of unlawfully devising a scheme and artifice to defraud and to obtain money from the Medicare program by means of false and fraudulent pretenses, representations, and promises.  The HHS rulings are available online:  *In the Case of David S. Muransky, D.C. v. The Inspector General,* No. C-229, Decision CR 95 (HHS Departmental Appeals Board, Civ. Rem. Div., Sept. 5, 1990) [online: http://www.hhs.gov/dab/decisions/civildecisions/1990/cr095.PDF (last visited Aug. 20, 2016)], *aff'd, David S. Muransky, D.C.,* DAB No. 1227 (HHS Departmental Appeals Board, App. Div., Feb. 13, 1991) [online: http://www.hhs.gov/dab/decisions/dab1227.html (last visited Aug. 20, 2016).

Courts often decline to appoint a class representative with a prior
felony conviction for fraud or similar crimes of dishonesty. *E.g.*, *Schleicher
v. Wendt*, No. 1:02-CV-1332-DFH-TAB, 2009 WL 761157, at *3 (S.D. Ind.
Mar. 20, 2009), *aff'd*, 618 F.3d 679 (7th Cir. 2010) (collecting cases and
concluding: "This court is not willing to appoint as a class representative a
person with a criminal conviction for fraud."). The *Schleicher* district court
rebuffed arguments that the conviction had been expunged: "That fact
offers little comfort, at least without much more detail about the reasons for
it. There is no indication here that it was a matter of actual innocence. This
court will not force class members to rely on a representative who has
admitted to fraud." *Id.*; *see also Xianglin Shi v. Sina Corp.*, No. 05 CIV.
2154 (NRB), 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005) (citing cases
and concluding that "[c]onvictions of fraud or other forms of dishonesty
undermine the qualifications of a potential class representative. For this
reason, numerous courts have rejected the appointment of convicted felons
as class representatives."); *In re Sonus Networks, Inc. Sec. Litig.*, 229
F.R.D. 339 (D. Mass. 2005) (decertifying class because plaintiff's counsel
was aware of named plaintiff's criminal record but failed to disclose it).

There is no *per se* rule that criminal convictions must always
disqualify a class representative, not if record evidence demonstrates that

12

the individual has been fully rehabilitated and can now be trusted to represent absent class members. *See Meyer v. Portfolio Recovery Associates, LLC,* 707 F.3d 1036, 1042 (9th Cir.2012) (affirming adequacy of class representative despite class representative's prior convictions for "offenses involving dishonesty" where convictions were more than ten years old and class representative "had since taken positive steps in his life, including [graduating] from the University of California").

Still, a would-be class representative's criminal conviction must be disclosed to the court overseeing a class action, so that the court may consider the conviction and any pertinent mitigating facts bearing on adequacy of representation. In *Hartsell v. Source Media*, No. CIV.A.98-CV-1980-M, 2003 WL 21245989, (N.D. Tex. Mar. 31, 2003), Judge Lynn of the Northern District of Texas explained that class counsel have a fiduciary duty to the class, and that

> recognition of that fiduciary duty to the class as a whole should compel recognition of a serious potential problem for the class, when a class representative, whose duties obviously require acting on behalf of absent persons, is convicted of a felony involving fraud. In this Court's view, the duty of candor to the Court mandates counsel to advise the Court that facts questioning the adequacy and typicality of a class representative previously appointed by the Court have come to counsel's attention.

*Hartsell*, 2003 WL 21245989 at *6.

13

Class counsel are not entitled to decide for themselves that the information concerning a past conviction is immaterial when a case settles, as "it is for the Court, and not counsel, to determine what impact [the representative's] role would have on final approval." *Id.* at *6.   As Judge Lynn emphasized in *Hartsell,* "the settlement is not consummated until the Court approves it.  The fact that a person convicted of mail fraud recommends it to the Court is certainly not persuasive." *Id.*

**D.     The Proposed "Incentive Award" is Excessive and Precluded by Binding Supreme Court Authority**

In addition to an award of attorneys' fees, the plaintiff seeks a special individual award of $10,000.00.[5]   The so-called "Incentive Award" is to be deducted from the settlement fund, along with attorneys' fees, prior to calculation or distribution of awards to class members.[6]

"Since the decisions in *Trustees v. Greenough*, 105 U.S. 527 (1882), and *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885)," American courts, both state and federal, have consistently recognized "that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

---

[5] Notice to Class Members at 3, ¶ 7
[6] Settlement Agreement § III(D), pp. 9-10

14

Though a class representative's reasonable attorneys' fees may thus be reimbursed, the common-fund doctrine of *Greenough* and *Pettus* flatly prohibits any award for services that the class representative itself renders: "The reasons which apply to his expenditures incurred in carrying on the suit, and reclaiming the property subject to the trust, do not apply to his personal services and private expenses." *Greenough,* 105 U.S. at 537. "'It would present,' said Mr. Justice Bradley, speaking for the court, 'too great a temptation to parties to intermeddle in the management of valuable property or funds in which they have only the interests of creditors, and that, perhaps, only to a small amount, if they could calculate upon the allowance of a salary for their time and having all their private expenses paid.'" *Pettus,* 113 U.S. at 122 (quoting *Greenough,* 105 U.S. at 537-38); *see Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1207-08 (6th Cir. 1992) (applying *Greenough's* distinction between litigation expenses on the one hand, and "personal services and private expenses," on the other); *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939) (under *Greenough* and *Pettus* claimants interested in the fund itself can receive "no compensation for personal services"); *Gortat v. Capala Bros.,* 949 F. Supp. 2d 374, 379-80 (E.D.N.Y. 2013) (following *Greenough).*

15

The incentive award also is proscribed by Rule 23 principles. "Generally, when a person 'join[s] in bringing [an] action as a class action . . . he has disclaimed any right to a preferred position in the settlement.'" *Staton v. Boeing Co.,* 327 F.3d 938, 976 (quoting *Officers for Justice v. Civil Service Commission of the City and County of San Francisco,* 688 F.2d 615, 632 (9th Cir.1982); *accord, e.g., Bailey v. Great Lakes Canning, Inc.,* 908 F.2d 38, 42 (6th Cir. 1990); *Kincade v. General Tire Rubber Co.,* 635 F.2d 501, 506 (5th Cir. 1981); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1175 (4th Cir. 1975). "Were that not the case, there would be considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Staton,* 327 F.3d at 976.

Where special side payments or incentive awards significantly exceed what absent class members can expect upon settlement approval they create "a patent divergence of interests between the named representatives and the class." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 959 (9th Cir. 2009); *see also Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir. 2013). "Indeed, '[i]f class representatives expect routinely to receive special awards in addition to their share of the recovery, they may

16

be tempted to accept suboptimal settlements at the expense of the class members whose interests they are appointed to guard.'" *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) (quoting *Weseley v. Spear, Leeds & Kellogg*, 711 F.Supp. 713, 720-21 (E.D.N.Y. 1989)).

Courts in this District have occasionally approved compensation paid to class representatives for services performed. *See, e.g., Pinto v. Princess Cruise Lines, Ltd.*, 513 F.Supp.2d 1334 (S.D. Fla. 2007); *see also, Allapattah Services, Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185 (S.D. Fla., 2006) (1.3% of settlement fund to be divided among class members). It is unlikely those courts realized such compensation might violate Supreme Court pronouncements. "To the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design." *Greenberg v. Procter & Gamble Co. (In re Dry Max Pampers Litig.)*, 724 F.3d 713, 722 (6th Cir. 2013). Additionally, the compensation in this case is hardly modest; it is many times what absent class members would receive from the settlement. Thus, there is a "patent divergence of interests between the named representative and the class." *Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157, 1161 (9th Cir.2013)

Beginning around 1990, "awards for representative plaintiffs began to find readier acceptance," and orders "approving incentive awards

17

proliferated" were within a decade thought "'routine'" in some district courts. Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study,* 53 U.C.L.A. L. REV. 1303,1310-11 & n.21 (2006).   The Seventh Circuit approved of them in *In re Continental Illinois Sec. Litig.*, 962 F2d 566, 571-72 (7th Cir. 1992) (dictum), overlooking the Supreme Court's "seemingly categorical rejection of recovery for the plaintiff's personal expenses." ALAN HIRSCH & DIANE SHEEHEY, AWARDING ATTORNEYS' FEES AND MANAGING FEE LITIGATION 80 (Federal Judicial Center, 2d ed. 2005). Other courts have joined the Seventh in endorsing such awards, none of them acknowledging the stark conflict with *Greenough* and *Pettus. See, e.g., Staton v. Boeing Co.*, 3  27 F.3d 938, 975-77 (9th Cir. 2003).

There is no statutory, procedural, or equitable basis to support plaintiff's request and plaintiff did not allege that he was seeking an incentive award in the First Amended Complaint.  But even if plaintiff were eligible for an "incentive" award in this case, he has not demonstrated that his "services" warrant a $10,000 payment.  Courts have required that plaintiffs "must justify an incentive award through 'evidence demonstrating the quality of plaintiff's representative service'…" *Billinghausen v. Tractor Supply Co.*, 306 F.D.R. 245, 266 (N.D. Cal. 2015); *see also Continental*

*Illinois Securities Litigation, Matter of*, 962 F.2d 566 (7th Cir. 1992).

Moreover, any award should not be significantly higher than the amount recovered by the individual class members.  *Willner v. Manpower, Inc.*, 2015 U.S. Dist. LEXIS 80967 *27-30 (E.D. Cal. 2015) (reducing a stipulated service award in consideration of "the proportionality between the incentive payment and the range of class members' settlement awards"); *see also Golba v. Dick's Sporting Goods*, 238 Cal. App. 4th 1251, 1270-71 (2015) (reducing a service award of $3,500 to $500 where class members were to receive between $10 and $30 each).   Plaintiff's request for an incentive award should be denied.

Date:  August 21, 2016                    Respectfully submitted,


                                                    s/ John W. Davis
                                          _____
                                          John W. Davis (FL Bar No. 193763)
                                          john@johnwdavis.com
                                          Law Office of John W. Davis
                                          501 W. Broadway, Suite 800
                                          San Diego, CA  92101
                                          Telephone:  (619) 400-4870
                                          Facsimile:  (619) 342-7170

## CERTIFICATE OF SERVICE

### CASE NO. 0:15-CV-60716-WPD

I hereby certify that on August 21, 2016, I filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

Date:  August 21, 2016

_____ s/ John W. Davis _____
John W. Davis