**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 15-cv-60716-WPD**

Dr. David Muransky, individually and on
behalf of all others similarly situated

 Plaintiff,

v.

Godiva Chocolatier, Inc.

 Defendant.
_____/

## **PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**

**TABLE OF CONTENTS**

I.      **INTRODUCTION**..................................................................................... 1

II.    **SUMMARY OF THE LITIGATION, MEDIATION & SETTLEMENT**.................. 1

III.   **THE PROPOSED FEE AND EXPENSE AWARD IS REASONABLE** ..................... 4

      A.    The Fee Amount Is Reasonable as a Percentage of the Total Settlement.............. 5

      B.    The Proposed Fee Award Is Also Reasonable Under *Johnson/Camden I*...............7

            1.    The Case Involved Difficult Issues; the Risk of Nonpayment
                and Not Prevailing on the Claims was High........................................... 7

            2.    Class Counsel Achieved an Excellent Result for the
                Settlement Class..................................................................................10

            3.    The Time and Labor Required, Preclusion from Other Employment
                 and the Time Limits Imposed Justify the Cost and Fee Amount..............10

            4.    The Requested Fee is Consistent with Other Consumer
                Class Settlements ................................................................................11

            5.    This Case Required a High Level of Skill .................................................12

IV.   **THE OBJECTIONS TO THE PROPSED AWARD SHOULD BE
        REJECTED** ........................................................................................................ 12

      A.    The Track Records of James Price, W. Allen McDonald, John W. Davis, and Eric
           A. Isaacson Speak for Themselves ......................................................14

      B.    There Is No Need For a Lodestar Anaylsis................................................ 16

      C.    The Professional Objectors' Remaining Arguments Are Meritless ......................19

V.     **CONCLUSION** ....................................................................................................21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agne v. Papa John's International Inc. et al,*
  2:10-cv-01139 (D. Wa.) .................................................. 4

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.,*
  No. 09 C 910, 2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ............................ 8

*Allapattah Servs., Inc. v. Exxon Corp.,*
  No. 91-cv-0986, 2006 WL 1132371 (S.D. Fla. Apr. 7, 2006) ................................... 6, 10

*Atkinson v. Wal-Mart Stores, Inc.,*
  2011 WL 6846747 (M.D. Fla. Dec. 29, 2011) ................................................... 12

*Barnes v. FleetBoston Fin. Corp.,*
  No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072 (D. Mass. Aug. 22, 2006) ................. 13

*Bickel v. Sheriff of Whitley Cnty.,*
  2016 U.S. Dist. LEXIS 350 at *19-*20 (N.D. Ind. Jan. 4, 2016) ................................ 17

*Boeing Co. v. Van Gemert,*
  444 U.S. 472 (1980) ........................................................................ 4, 6, 16

*Brytus v. Spang & Co.,*
  203 F.3d 238 (3d Cir. 2000) .................................................................. 19

*Camden I Condo Ass'n v. Dunkle,*
  946 F.2d 768 (11th Cir. 1991) ........................................................... *passim*

*Central Railroad Banking Co. v. Pettus,*
  113 U.S. 11 (1885) ............................................................................ 20

*Chieftan Royalty Co. v. SM Energy Co.,*
  11-cv-177 (W.D. Okla.) (Nov. 3, 2015) ....................................................... 15

*Cohn v. Nelson,*
  375 F.Supp.2d 844, 861 (E.D. Mo. 2005) ..................................................... 5

*Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.,*
  655 F. Supp. 2d 1316 (S.D. Fla. 2009) ........................................................ 2

*Davis v. Apple Computer, Inc.,*
  2005 Cal. App. Unpub. LEXIS 7190 (Cal. App. Aug. 12, 2005) .............................. 15

*Dennis v. Kellogg Co.,*
    No. 09-cv-1786, 2013 U.S. Dist. LEXIS 163118 (S.D. Cal. Nov. 14, 2013)................... 14

*EEOC v. West Customer Mgmt. Group, LLC,*
    2015 U.S. Dist. LEXIS 76943(N.D. Fla. June 15, 2015)  .................................16

*Encarnacion v. J.W. Lee, Inc.,*
    15-CIV-61173, 2015 U.S. Dist. LEXIS 144858 (S.D. Fla. Oct. 22, 2015) .....................5,9

*Faught v. Am. Home Shield Corp.,*
    668 F.3d 1233 (11th Cir. 2011)............................................................ 6

*Faught v. Am. Home Shield Corp.,*
    444 Fed. Appx. 445 (11th Cir. 2011)............................................................15

*Francisco v. Numismatic Guar. Corp.,*
    No. 06-61677, 2007 U.S. Dist. LEXIS 96618 (S.D. Fla. Jan. 30, 2007) ............................9

*Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.,*
    344 F.3d 1288 (11th Cir. 2003) ............................................................20

*Gaskill v. Gordon,*
    942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd* 160 F.3d 361 (7th Cir. 1998) ....................18

*Gevaerts v. TD Bank, N.A.,*
    2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015)........................................... 5

*Guarisma v. ADCAHB Medical Coverages, Inc., et al.,*
    13-cv-21016, ECF 95 (S.D. Fla. June 24, 2015) ............................................................12

*Gutter v. E.I. DuPont De Nemours & Co.,*
    No. 95-cv-02152-ASG, ECF 626 at 7 (S.D. Fla. May 30, 2003) .................................6,12

*Haggert v. Woodley,*
    809 F.3d 1336 (Fed. Cir. 2016)............................................................17

*Hanlon v. Palace Entm't Holdings,* LLC,
    2012 U.S. Dist. LEXIS 364 (W.D. Pa. Jan. 3, 2012)........................................... 10

*Hamilton v. SunTrust Mortg., Inc.,*
    2014 U.S. Dist. LEXIS 154762 at *20-*21 (S.D. Fla. Oct. 24, 2014)............................5,7

*Harris v. Mexican Specialty Foods, Inc.,*
    564 F.3d 1301 (11th Cir. 2009) ............................................................ 1,2

*Hensley v. Eckerhart,*

461 U.S. 424, 437 (1983) ..................................................................................................5

*In re Bioscrip, Inc. Sec. Litig.*,
13-cv-6922 (S.D.N.Y.), Dkt. 113 ...................................................................................15

*In re Checking Account Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................. *passim*

*In re Crocs, Inc. Sec. Litig.*,
2014 U.S. Dist. LEXIS 134396 (D. Colo. Sept. 18, 2014) ..............................................21

*In re Enfamil Lipil Mktg. & Sales Practices Litig.*,
No. 11-MD-02222-JIC, 2012 U.S. Dist. LEXIS 49254 (S.D. Fla. Apr. 9, 2012) .............14

*In re Fuqi Int'l, Inc. Sec. Litig.*,
2016 U.S. Dist. 20514 at *14 (S.D.N.Y. Feb. 16, 2016) ......................................................21

*In re Hi-Crush Partners, L.P. Sec. Litig.*,
2014 U.S. Dist. LEXIS 177175 at *31 (S.D.N.Y. Dec. 10, 2014) ...................................21

*In re Law Office of Jonathan E. Fortman, LLC*,
No. 4:13MC00042, 2013 U.S. Dist. LEXIS 13903 (E.D. Mo. Feb. 1, 2013)...................14

*In re: Managed Care Litig. v. Aetna*,
MDL No. 1334, 2003 U.S. Dist. LEXIS 27228, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) ................................................................................................................................6

*In re Morton*,
2015 Bankr. LEXIS 3309 (E.D. Bankr. Tenn. Sept. 30, 2015) .......................................14

*In re Oppenheimer Rochester Funds Group Secs. Litig.*,
2014 U.S. Dist. LEXIS 142673 (D. Colo. July 31, 2014) ...............................................21

*In re: Pub. Offering Sec. Litig.*,
727 F. Supp. 2d 289 (S.D.N.Y. 2010) ............................................................................14

*In re Sunbeam Sec. Litig.*,
176 F.Supp.2d 1323 (S.D. Fla. 2001) ................................................................... *passim*

*In re Terazosin Hydrochloride Anitrust Litig.*,
2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005) ........................................5, 6, 12

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F.Supp. 160, 170 (S.D.N.Y. 1989)............................................................................18

*In re Visa Check/MasterMoney Antitrust Litig.*,

No. 96-5238, ECF 1051 (E.D.N.Y. Apr. 27, 2004) .........................................................15

*Johnson v. Georgia Highway Expr., Inc.,*

    488 F.2d 714 (5th Cir. 1974) ...............................................................................7

*Katz v. ABP Corp.,*

    2014 U.S. Dist. LEXIS 141223 (E.D.N.Y. Oct. 3, 2014)................................... 10

*Keller v. Macon County Greyhound Park, Inc.,*

    2011 U.S. Dist. LEXIS 45608,  (M.D. Ala. Apr. 25, 2011) ................................8

*Lee v. Ocwen Loan Serv., LLC,*

    2015 U.S. Dist. LEXIS 121998 (S.D. Fla. Sept. 14, 2015) ................................2

*Legg v. Laboratory Corp. of America,*

    14-cv-61543-RLR, Dkt. 227 (S.D. Fla. Feb. 18, 2016) ........................... *passim*

*Legg v. Spirit Airlines,*

    14-cv-61978-JIC, Dkt. 151 (S.D. Fla.  Aug. 2, 2016) ................................. 11, 18

*Lindy Bros. Bldrs. v. Am. Radiator & Standard Sanitary Corp.*

    540 F.2d 102, 112 (3d Cir. 1976)........................................................................10

*Lipuma v. Am. Express Co.,*

    406 F. Supp. 2d 1298 (S.D. Fla. 2005) ............................................................ 4

*Local 703, I.B. of T. Grocery and Food Employees Wel. Fund v. Regions Fin. Corp.,*

    2015 U.S. Dist. LEXIS 130542 (N.D. Ala. Sept. 14, 2015) .............................21

*Long v. Joseph-Beth Grp., Inc.,*

    No. 07-cv-00443 (W.D. Pa. May 5, 2007)....................................................... 10

*Lumas v. Sw. Airlines Co.,*

    No. 3:13-cv-01429-CRB (S.D. Cal. 2013) ....................................................... 1

*McCue v. MB Fin., Inc.,*

    No. 15 CV 988, 2015 WL 4522564 (N.D. Ill. July 23, 2015) ..........................17

*McDonough v. Toys R' Us, Inc.,*

    80 F.Supp.2d 626 (E.D. Pa. 2015) ...................................................................14

*Mosser v. TD Bank, N.A.,*

    2013 U.S. Dist. LEXIS 187627 (S.D. Fla. Mar. 18, 2013)................................21

*Morris v. Lifescan, Inc.,*

    2003 U.S. App. LEXIS 820 (9th Cir. Jan. 16, 2003)........................................21

*Najarian v. Charlotte Russe, Inc.,*

    2007 U.S. Dist. LEXIS 95606 (C.D. Cal. Aug. 16, 2007) .................................................7

*Nelson v. Mead Johnson & Johnson Co.,*

    484 Fed. Appx. 429 (11th Cir. July 20, 2012) ...................................................14

*North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.,*

    1:13-cv-06897 (N.D. Ill.) .............................................................. 4

*North Suburban Chiropractic Clinic, Ltd v. Zydus Pharmaceuticals (USA) Inc.,*

    1:13-cv-03105 (N.D. Ill.) ............................................................. 4

*Palamara v. Kings Family Restaurants,*

    2008 U.S. Dist. LEXIS 33087 (W.D. Pa. Apr. 22, 2008) ............................... 10

*Perdue v. Kenny A. ex rel. Winn,*

    559 U.S. 542 (2010) .............................................................17, 19

*Pierce v. Visteon Corp.,*

    791 F.3d 782 (7th Cir. 2015)……………………………………………………..16, 17

*Pinto v. Princess Cruise Lines, Ltd.,*

    513 F. Supp. 2d 1334 (S.D. Fla. 2007) .......................................................9

*Poertner v. Gillette Co.,*

    618 F. App'x 624 (11th Cir. 2015)........................................ 6, 7, 16

*Redman v. Radioshack Corp.,*

    768 F.3d 622 (7th Cir. 2014) ................................................... 1,2

*Seghroughni v. Advantus Rest., Inc.,*

    2015 WL 2255278 (M.D. Fla. May 13, 2015)...................................................5

*Spillman v. RPM Pizza, LLC,*

    No. 10-349, 2013 U.S. Dist. LEXIS 72947 (M.D. La. May 23, 2013) ............................. 4

*Stalcup v. Schlage Lock Co.,*

    505 F. Supp.2d 704 (D. Colo. 2007).......................................................11

*Swedish Hosp. Corp. v. Shalala,*

    1 F.3d 1261, 1269 (D.C. Cir. 1993) ......................................................10

*Todd v. Retail Concepts Inc.,*

    2008 U.S. Dist. LEXIS 117126 (M.D. Tenn. Aug. 22, 2008) ......................... 10

*United States v. Equitable Trust Co.,*

283 U.S. 738 (1931)............................................................................................20

*Waters v. Int'l Precious Metals Corp.*,

190 F.3d 1291 (11th Cir.1999) ........................................................ 5, 6

*Will v. Gen. Dynamics Corp.*,

2010 U.S. Dist. LEXIS 123349 (S.D. Ill. Nov. 22, 2010) .................................17

*Wolff v. Cash 4 Titles*,

No. 03-cv-22778, 2012 WL 5290155 (S.D. Fla. Sept. 26, 2012) ...................... 5

*Wood Dale Chiropractic, Ltd. V. DrFirst.com, Inc.*,

1:12-cv-00780, (N.D. Ill) ........................................................................ 4

*Yates v. Mobile Cnty. Pers. Bd.*,
719 F.2d 1530 (11th Cir. 1983)...........................................................11

**Other Authorities**

*Newberg on Class Actions* (4th Ed. 2008)..............................................6, 18

Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003)................................... 2

## I.      INTRODUCTION

Plaintiff, Dr. David Muransky, individually and as representative of the Class, submits this motion and memorandum in support of the proposed attorneys' fee and expense award that is part of the class action settlement reached with Defendant, Godiva Chocolatier, Inc. ("Godiva"), as to the claims asserted under the Fair and Accurate Credit Transaction Act ("FACTA"). A true and correct copy of the Settlement Agreement and Release ("Agreement") is attached as *Appendix 1.*

The Settlement provides the third largest all cash settlement in the history of FACTA, and equals or exceeds the first and second largest all cash settlements on a per class member basis.[1] Godiva will pay six million, three hundred thousand dollars ($6,300,000.00). Unlike in many class action settlements, none of the Settlement funds here can revert back to Godiva.

Consistent with Eleventh Circuit law, which determines fee awards from a common fund on a percentage-of-the-fund basis, the Settlement allows Class Counsel to request an award of fees equal to one-third of the fund, plus the expenses counsel incurred in the case. *Appendix 1*, p 45. Accordingly, Class Counsel hereby move for a fee award of one-third of the fund, or $2,100,000, plus $5,547.70 in expenses. As explained below, this motion should be granted.

## II.     SUMMARY OF THE LITIGATION, MEDIATION, SETTLEMENT & THE CLASS'S REACTION TO IT.

FACTA "is aimed at protecting consumers from identity theft." *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1306 (11th Cir. 2009). Congress determined a credit or debit card number is the "single most crucial piece of information a criminal would need to perpetrate account fraud." Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) (Rep. Mahoney). Congress also determined the inclusion of excess account information on a transaction receipt enables anyone who sees the receipt to use it to discover more information about the consumer. *See Redman v. Radioshack Corp.*, 768 F.3d 622, 626 and 639 (7th Cir. 2014) ("the less information the receipt contains the less likely is an identity thief who happens to come upon the receipt to be able to figure out the cardholder's full account information"). In signing FACTA

---

[1] At the time this settlement was negotiated, the largest all cash FACTA settlement that was approved was *Lumas v. Sw. Airlines Co.*, No. 3:13-cv-01429-CRB (S.D. Cal. 2013). In that case, Southwest estimated that the class total was between 880,000 and 2,200,000 transactions and the entire settlement was for $1.8 million. The largest all cash settlement was for $11,000,000. *Legg v. Lab. Corp. of America*, 14-cv-61543-RLR, Dkt. 227 (S.D. Fla. Feb. 18, 2016). ("*Lab*"). The second largest all cash settlement was for $7,500,000. *Legg v. Spirit Airlines*, 14-cv-61978-JIC, Dkt. 151 (S.D. Fla.  Aug. 2, 2016) ("*Spirit*"). The difference among the settlements in *Lab*, *Spirit* and *Godiva* mostly stems from the fact that *Lab* and *Spirit* had larger classes. Regardless all three settlements are terrific results.

into law, President Bush likewise remarked that "[s]lips of paper that most people throw away should not hold the key to their savings and financial secrets." *Creative Hosp. Ventures, Inc. v. U.S. Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1333 (S.D. Fla. 2009), *rev'd on other grounds*, 444 F. App'x 370 (11th Cir. 2011), citing Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003).

To help address this problem, Congress decided to "require the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information," and "limit the number of opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166 at pp. 3 and 13 (2003). Accordingly, Congress created FACTA. *See Redman*, 768 F.3d at 639 ("identity theft is a serious problem, and FACTA is a serious congressional effort to combat it.").

To encourage private litigants to enforce FACTA, Congress incorporated FACTA into the Fair Credit Reporting Act, 15 U.S.C. §1681, *et seq.*, which entitles a successful plaintiff to statutory damages, costs and attorneys' fees for any "willful" violation of the law. *See Harris*, 564 F.3d at 1306-7, *citing* 15 U.S.C. §1681n(a). Consistent with this intent, Plaintiff brought this action to resolve Godiva's alleged systematic violation of FACTA's prohibition against printing more than the last five digits of credit and debit cards on transaction receipts. On June 9, 2015, Plaintiff filed a first amended complaint. [ECF 16]. On June 23, 2015, Godiva filed a motion to dismiss. [ECF 21]. The motion was fully briefed and, on September 2, 2015, the Court denied the motion. [ECF 26]. Godiva filed its answer and affirmative defenses on September 16, 2015. [ECF 29].

Thereafter, Plaintiff served extensive discovery. In response, Godiva produced details about the scope of the putative class as well as information about the nature and cause of the alleged FACTA violations at issue. Because the FACTA claims at issue require Plaintiff and the class to prove that Godiva "willfully" violated the law, this information was critical to understanding the value of the case and the chance of success on the merits.

The Southern District of Florida encourages early mediation. *See* Local Rule 16.2. Accordingly, after the denial of Godiva's motion to dismiss and after the production and analysis of facts concerning the class and how Godiva's alleged violation of FACTA occurred, the parties attended a full-day mediation in Miami before a third-party mediator, Rodney Max, who is "probably one of the top mediators in the country." *Lee v. Ocwen Loan Serv., LLC*, 2015 U.S. Dist. LEXIS 121998 at *33 (S.D. Fla. Sept. 14, 2015). The case did not settle at the mediation.

However, the parties spent the next several weeks in additional negotiations to try come to a framework of a settlement, and eventually succeeded. Even after agreeing to the framework, the parties spent the next two months negotiating the terms of the settlement agreement. A copy of the settlement agreement is attached as *Appendix 1*.

The Court preliminarily approved the settlement and directed that notice of it be sent. Because Godiva only had transaction information for the class members, *i.e.*, no name or contact information for the purchasers in the transactions, Class Counsel had to embark on an extensive campaign to identify and locate the class members. This required more than thirty subpoenas to a variety of companies, including American Express, Discover, the credit card processor that processed the transactions for class members who used Visa and MasterCard cards, and finally the numerous banks that issued those cards. *Appendix 3* (Hilicki Decl.) at ¶ 9. The campaign also required extensive analysis, communications and negotiations with the subpoenaed entities and their counsel, many of whom initially resisted complying or professed to have difficulty complying, as well as motion practice to protect the confidentiality of the credit and debit card transaction data, facilitate compliance with the subpoenas, and extend time to issue the class notice to accommodate the subpoenaed parties. [ECF 41, 45, 47, 48, 52, 54, 56]. As a result of counsel working through the numerous obstacles to identify the class, 318,453 notices were mailed. *Appendix 2* (Declaration of Claims Administrator), at ¶14.

Consistent with Eleventh Circuit law and Federal Rule 23(h), the notice advised class members of the Settlement's terms, the proposed fee award, as well as the class members' right to file a claim, request exclusion and/or object to the Settlement and proposed fee award. The notice expressly told class members that Class Counsel would ask the Court to award a percentage of the fund equal to one-third of the $6,300,000 fund amount, or $2,100,000, plus their out-of-pocket expenses. *Appendix 2* at p. 10. The notice also directed class members to a settlement website that repeated this information and provided Class Counsel's toll-free telephone number for questions.

In response to the notice, at least 47,445 class members filed claims, and the total class member claims filed could reach as high as 64,551. *See Appendix 2* at ¶20.[2] That is

---

[2] The Claims Administrator is still evaluating the claims to eliminate claims made by non-class members and/or deficient claims, with 17,106 claims remaining to be evaluated. *Id.* However, even if all of these claims were excluded (which is unlikely), the resulting claim rate would be about 15%, and thus still exceptional. See fn. 3, below.

3

approximately 15%-20% of the people sent direct mail notice of the settlement, a much higher percentage than the rate in many other consumer statutory damage cases that have been granted final approval,[3] and thus a strong endorsement by the Class. Moreover, although Class Counsel received numerous calls from class members about the Settlement, none called to ask about or question the proposed fee and expense award.

Likewise, out of the approximately 318,000 class members to whom the notice was mailed, only four filed objections, or only .00125% of the Class. Furthermore, only two of the objectors challenge the proposed fee award, and they were filed by professional objectors, *i.e.*, lawyers who routinely object to class action settlements to try to extract a payoff. [ECF 59, 61].

Finally, no governmental entity objected to the proposed fee award after receiving the required CAFA notice of the Settlement and its terms. [ECF 43]. In short, given the class size, there is almost no opposition to the proposed fee award. Such an extraordinarily "low percentage of objections points to the reasonableness of a proposed settlement and supports its approval." *Lipuma v. American Express Co.*, 406 F.Supp.2d 1298, 1324 (S.D. Fla. 2005). As further explained below, the proposed fee and expense award should be approved.

## III.   THE PROPOSED FEE AND EXPENSE AWARD IS REASONABLE

In the Eleventh Circuit, "it is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Acct. Overdraft Litig.*, 830 F. Supp.2d 1330, 1358 (S.D. Fla. 2011), citing *Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) and *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Like the relief to the Class, the parties' subsequent agreement on the attorneys' fee and expense award is the product of their prior mediation. While it is within the Court's discretion to decide the reasonableness of the award, it must be noted that negotiated fee awards in class action settlements are strongly encouraged. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *see also Cohn v. Nelson*, 375 F.Supp.2d 844, 861 (E.D. Mo. 2005) ("where, as here, the parties have agreed on the amount of

---

[3] *See, e.g.*, *Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12-cv-780, (N.D. Ill) (1.97 % of the class made claims); *North Suburban Chiropractic Clinic, Ltd v. Zydus Pharma. (USA) Inc.*, 13-cv-3105 (N.D. Ill.) (.13% of the class made claims); *North Suburban Chiropractic Clinic Ltd. v. Rx Security, Inc.*, 13-cv-6897 (N.D. Ill.) (.53% of the class made claims); *Agne v. Papa John's Int'l, Inc.*, 10-cv-1139 (D. Wash.) (1.52% of the class made claims); *Spillman v. RPM Pizza, LLC*, 10-cv-349 (M.D. La.) (.07% of the class made claims).

attorneys' fees and expenses, courts give the parties' agreement substantial deference.")

Here, the reasonableness of the fee award is confirmed by examining it as a percentage of the settlement, as well as under the various factors established for evaluating fee requests in the Eleventh Circuit (the *Johnson*/*Camden I* factors). *Camden I Condo. Ass'n*, 946 F.2d at 774-775.

### A.   The Fee Amount Is Reasonable as a Percentage of the Total Settlement

As disclosed in the notice sent to the class members, the Settlement provides for payment of Class Counsel's fee award from the settlement fund on a percentage-of-the-fund basis. This is an appropriate basis for determining the award because "[i]n the Eleventh Circuit, 'attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class.'" *Hamilton v. SunTrust Mortg., Inc.*, 2014 U.S. Dist. LEXIS 154762 at *20-*21 (S.D. Fla. Oct. 24, 2014), quoting *Camden I Condo*, 946 F.2d at 774; *see also Encarnacion v. J.W. Lee, Inc.*, 15-CIV-61173-DIMITROULEAS, 2015 U.S. Dist. LEXIS 144858 at *14 (S.D. Fla. Oct. 22, 2015) ("using the 'percentage of recovery' method [to determine the attorneys' fee award] … is consistent with the dictates of the Eleventh Circuit."), citing *Camden I Condo*, 946 F.2d at 771 (bracketed text added).

In addition, the negotiated fee award percentage of one-third of the fund easily falls within the range of reasonableness. *Wolff v. Cash 4 Titles, Inc.*, 2012 WL 5290155 at *4 (S.D. Fla. Sept. 26, 2016) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Seghroughni v. Advantus Rest., Inc.*, 2015 WL 2255278 at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee... which is one-third of the settlement fund... is fair and reasonable…"); *In re Terazosin Hydrochloride Anitrust Litig.*, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of the settlement fund in part because they prosecuted the action on a wholly contingent basis); *see also Camden I*, 946 F.2d at 774-775 ("an upper limit is 50%"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295–96 (11th Cir.1999) (affirmed award of 33.3%); *Encarnacion*, 15-CIV-61173-DIMITROULEAS, 2015 U.S. Dist. LEXIS 144858 at *15 (a fee award in excess of 25% "is also consistent with the trend in this Circuit."); and *e.g. Gevaerts* 2015 U.S. Dist. LEXIS 150354 at *29 (discussing the range of reasonableness for fee requests).[4]

---

[4] *See Checking Account Overdraft Litig.* 830 F. Supp.2d at 1365 ("Numerous recent decisions within this Circuit have awarded attorneys' fees up to (and at times in excess of) 30 percent. See *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3 % of $1.06 billion); *In re: Terazosin Hydrochloride Antitrust Litigation*, 99-1317-MDL-Seitz, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. April 19, 2005) (awarding fees of

The reasonableness of the percentage sought is further demonstrated by the non-monetary benefits this case conferred upon the class. *See Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-1244 (11th Cir. 2011) (fee and cost award reasonable in part because "the $1.5 million payment is designed to compensate the class counsel for the non-monetary benefits they achieved for the class."). Specifically, in direct response to these lawsuits, Godiva reprogrammed its system nationwide to stop printing more than the last five digits of credit and debit card account numbers on transaction receipts.

Indeed, the Eleventh Circuit affirmed the approval of a $5.68 million attorneys' fee award when the class only claimed $344,850 of available funds and there was nonmonetary relief. *Poertner v. Gillette Co.*, 618 Fed. Appx. 624, 631 (11th Cir. 2015) (unpub.). The Eleventh Circuit looked at the amount made available, the value of all of the factors and held:

> While no published opinion of ours extends Camden I's percentage-of-recovery rule to claims-made settlements, no principled reason counsels against doing so. For, as one learned treatise aptly illustrates, properly understood "[a] claims-made settlement is . . . the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant"; indeed, the two types of settlements are "fully synonymous." 4 Rubenstein, *Newberg on Class Actions* § 13:7.

*Id.* at 628 fn. 2. The Eleventh's Circuit's decision in *Poertner* is in accord with *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In *Boeing*, the Supreme Court rejected the notion that the fee award should be limited to the amount of funds claimed by the class members.[5] Instead, the Supreme Court held that fees should be based on the amount made available:

> Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery Since the benefits of the class recovery have been "traced with some accuracy" and the costs of recovery have been "shifted with some exactitude to those

---

33 1/3 % of settlement of over $30 million); *In re: Managed Care Litig. v. Aetna*, MDL No. 1334, 2003 U.S. Dist. LEXIS 27228, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, 95-2152-Civ-Gold, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (awarding fees of 33 1/3 % of settlement of $77.5 million); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million)

[5] "Boeing appealed only one provision of the judgment. It claimed that attorney's fees could not be awarded from the unclaimed portion of the judgment fund for at least two reasons. First, the equitable doctrine that allows the assessment of attorney's fees against a common fund created by the lawyers' efforts was inapposite because the money in the judgment fund would not benefit those class members who failed to claim it." *Id* at 480.

benefiting."

*Id.* at 480-81. This District has echoed this principle. *Hamilton*, No. 13-60749-CIV-COHN, 2014 U.S. Dist. LEXIS 154762 at *19 ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims.").

Unlike in *Poertner*, not a penny of this settlement goes back to Godiva. In other words, the entire net fund will be distributed to class members who make claims, and so regardless of the number of claims (which in this case, were quite high), counsel's fees are a percentage of the true amount being paid out. As such, Plaintiff's fee request as a percentage is reasonable, especially in light of the fact that Plaintiff is not also seeking a percentage of the value nonmonetary relief, even though the Eleventh Circuit would allow it.

Finally, it must be noted that out of the more than 318,000 class members to which the notice disclosing the fee award and percentage sought was sent, the only persons who objected to the percentage sought are two "professional" objectors and, as explained below, their objections are meritless. Accordingly, as a percentage of the settlement, the fee request is reasonable.[6]

**B.      The Proposed Fee Award Is Also Reasonable Under *Johnson/Camden I***

In cases in which the fees sought exceed 25% of the fund, the Eleventh Circuit endorses using the factors articulated *Johnson v. Georgia Highway Expr., Inc.*, 488 F.2d 714 (5th Cir. 1974), to confirm the reasonableness of the award. *See Camden I Condo. Ass'n*, 946 F.2d at 775. The *Johnson/Camden I* factors are (1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is contingent; (7) the time limitations imposed; (8) the amount involved and results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Camden I*, 946 F.2d at 772, n.3. These factors confirm the reasonableness of the proposed fee award here.

**1.   The Case Involved Difficult Issues; the Risk of Nonpayment and Not Prevailing on the Claims Was High.**

The second, sixth, and tenth *Johnson/Camden I* factors—the novelty and difficulty of the issues, whether the fee is contingent, and the "undesirability" of the case, respectively—are

---

[6] The settlement also provides for payment of Class Counsel's out-of-pocket expenses which, here, total $5,547.70. The expenses largely consist of mediation, filing and related fees. *See Appendix 3* Hilicki Decl. at ¶17 and *Appendix 4* Owens Decl. at ¶34. None are for overhead-type items such as copying, research, telephone, meals, etc. Thus, they too are reasonable and should be approved.

interrelated and support the proposed award.

This case is novel and difficult on several levels. First, it is an open issue as to what evidence it takes to prove that Godiva "willfully" violated FACTA. Although Godiva's motion to dismiss was denied, it cited ample case law where the opposite conclusion was reached. [ECF 21].

Second, although Plaintiff escaped dismissal at the pleading stage, other cases alleging willful FACTA violations based on facts similar to this case ended in summary judgment for the defense. *See Keller v. Macon County Greyhound Park, Inc.,* 2011 U.S. Dist. LEXIS 45608, *13 (M.D. Ala. Apr. 25, 2011), *aff'd,* 464 F. App'x 824 (11th Cir. 2011) (summary judgment for merchant even though its system printed receipts violating FACTA because violation caused by vendor who fixed the software after system crash); *Najarian v. Charlotte Russe, Inc.,* 2007 U.S. Dist. LEXIS 95606, at *5-6 (C.D. Cal. Aug. 16, 2007) ("while the evidence may, at best, show that Defendant was careless in failing to ensure that the correct POS modification was implemented, it fails to show that Defendant knew about FACTA's expiration provision and consciously chose to ignore it.") As in *Keller* and *Najarian,* here a third party hired to install point-of-sale system software at Godiva stores is the one that caused them to start printing point-of-sale receipts that included information prohibited by FACTA. Plaintiff is not aware of any case in which a plaintiff won summary judgment or at trial on similar facts.

Third, assuming Plaintiff prevailed and proved a "willful" violation, the resulting damage award itself presents a novel issue. Some courts view awards of aggregate, statutory damages with skepticism and consider reducing such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons - Algonquin, Inc.,,* 2011 U.S. Dist. LEXIS 48323 at *13 (N.D. Ill. May 5, 2011) ("Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature.")

Fourth, beyond the risks imposed by FACTA itself, Plaintiff faced the uncertainties caused by the Supreme Court's then-anticipated decision in *Spokeo, Inc. v. Robins.* Since the granting of *certiorari* in that case in 2015, industry had touted *Spokeo* as the potential end of consumer class action cases because industry aimed to use that case to convince the Supreme Court that there was no standing to be in federal court without actual damages. Had *Spokeo* reached that conclusion, this case would have been dismissed. The Settlement reflects this concern. *Appendix 1* at §VII(W).

In addition to these myriad challenges, the ability to recover fees and expenses here has

always been contingent on a successful outcome. Class Counsel had to advance the fees and expenses, and risked receiving nothing in return. This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F.Supp.2d at 1364, *quoting In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1335; *see also*, *e.g.*, *Encarnacion*, 2015 U.S. Dist. LEXIS 144858 at *16 ("The attorneys' fees requested were entirely contingent upon success in this litigation."). This risk was magnified by the fact that Class Counsel were up against a well-heeled defendant who could afford to employ sophisticated defense counsel, and the difficulty of proving willfulness. Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007), *citing Pinto,* 513 F. Supp.2d at 1339.

The case's novelty, difficulty and contingent nature also demonstrate its undesirability. Prior FACTA class actions required substantial litigation activity to reach settlements comparable to this one. *See Legg v. Lab. Corp. of America*, 14-cv-61543, ECF 218, pp. 4-5 (S.D. Fla. Feb. 18, 2016) (18 depositions, including experts, two mediations and no settlement until after hearing on summary judgment, class certification and dueling *Daubert* motions); *Legg v. Spirit Airlines*, 14-cv-61978, ECF 146. pp. 4-6 (S.D. Fla.  July 11, 2016) (175,000 pages of documents, depositions (including one out of country) and class certification granted over the defendant's objection). Few lawyers will take a case that consumes significant attorney time, involves uncertain questions, and requires them to potentially advance substantial amounts of attorney time and out-of-pocket expenses and risk getting nothing, especially given the track record for losing on summary judgment, the inherent possibility of failing to certify the class, and the fact that prior class settlements under FACTA (at the start of this case) provided little incentive to take these cases.

Finally, although Class Counsel achieved an excellent result, that was anything but certain when they took the case. Thus, these factors all weigh in favor of approving the proposed fee award. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1364 ("'Undesirability'

and relevant risks must be evaluated from the standpoint of Plaintiff's counsel as of the time they commenced the suit, not retroactively, with the benefit of hindsight"), citing *Lindy Bros. Bldrs. v. Am. Radiator & Standard Sanitary Corp.* 540 F.2d 102, 112 (3d Cir. 1976).

### 2. Class Counsel Achieved an Excellent Result for the Settlement Class.

The eighth *Johnson/Camden I* factor looks to the amount involved in the litigation with particular emphasis on the "monetary results achieved" in the case by class counsel. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp.2d 1185, 1202 (S.D. Fla. 2006); *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases "the monetary amount of the victory is often the true measure of [counsel's] success").

Here, the parties' mediated agreement provides a Settlement Fund of $6,300,000, the third largest all cash FACTA settlement in history, and arguably the largest on a per-person basis. This is far greater than the recoveries in many FACTA settlements that were granted final approval.[7] While most FACTA settlements involve coupons or gift cards (*Id.*), this settlement provides cash. Accordingly, this factor thus weighs strongly in favor of the proposed fee award.

### 3. The Time and Labor Required, Preclusion from Other Employment and the Time Limits Imposed Justify the Cost and Fee Amount.

The first, fourth, and seventh *Johnson/Camden I* factors – the time and labor, preclusion of other employment, and time limitations imposed, respectively – are also interrelated inquires and each support the reasonableness of the request. Class Counsel engaged in litigation against a well-heeled defendant and sophisticated defense counsel. The work needed included counsel's pre-suit investigation, preparing an original and amended complaint, defeating Defendant's motion to dismiss, preparing for and attending a full-day mediation (including the mediation memorandum required by L.R. 16.2(d)(1)(C)), and conducting additional extensive negotiations beyond the mediation to reach the actual settlement.

---

[7] *See*, *e.g.*, *Katz v. ABP Corp.*, 2014 U.S. Dist. LEXIS 141223 at *2 (E.D.N.Y. Oct. 3, 2014) (FACTA gives class members a choice to make a claim for $9.60 in cash or a coupon for $15 off of future purchases from defendant); *Hanlon v. Palace Entm't Holdings*, LLC, 2012 U.S. Dist. LEXIS 364 at *14-*15 (W.D. Pa. Jan. 3, 2012) (FACTA settlement that provides the class with admission tickets to defendant's amusement park); *Todd v. Retail Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126 at *16 (M.D. Tenn. Aug. 22, 2008) (FACTA settlement providing a $15 credit on class members' next purchase of $125 or more); *Palamara v. Kings Family Restaurants*, 2008 U.S. Dist. LEXIS 33087 at *9-*10 (W.D. Pa. Apr. 22, 2008) (FACTA settlement providing vouchers worth an average of $4.38 each to get appetizers, soup, desserts and other small menu items when visiting the defendant's restaurants in future); *Long v. Joseph-Beth Grp., Inc.*, No. 07-cv-00443 (W.D. Pa. May 5, 2007) (class of 400,000 members could claim a $5 voucher.)

After that, Class Counsel had to design and execute an extensive a third-party subpoena campaign to identify and locate the more than 300,000 members of the class. This required essentially a second litigation of subpoenaing class member transaction, identifying and contact information from more than 30 banks and credit card issuing and processing companies, who were at best reluctant to turn over any information, and at worst uncooperative. *See Appendix 3* at ¶¶9-11. The result of these efforts are seen in the exceptional claim rate.

In addition, in response to the subpoenas sent American Express and TCF Bank, these entities sent letters to affected customers regarding the subpoena, which resulted in Class Counsel's office being inundated with calls by potential class members before the actual class notice was even sent. *Id.* at ¶11. All of the work necessitated by this case diverted the time and resources from other matters. *See Yates v. Mobile Cnty. Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (The expenditure of time necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work, and this factor should raise the amount of the award.); *see also Stalcup v. Schlage Lock Co.*, 505 F. Supp.2d 704, 708 (D. Colo. 2007) (noting that "the *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium.")

Finally, although Class Counsel was able to reach this Settlement more efficiently than in some other cases, this reflects Class Counsel's experience in handling large FACTA cases. Class Counsel knew the work that achieving a comparable outcome would take based on their success in the *Lab* and *Spirit* cases referenced above, what that work would yield, the issues they faced at every stage, the potential recovery to be had, and the chance of achieving it. This experience enabled Class Counsel to convince Godiva not only that Class Counsel were adequate to the task and willing to do what it took to achieve an excellent result, but that they genuinely understood what the case was worth given the law, facts and risks (for both sides).

### 4. The Requested Fee is Consistent with Other Consumer Class Settlements.

The fifth and twelfth *Johnson*/*Camden I* factors, the customary fee and awards in similar cases supports approval. Plenty of consumer class actions – including two recent FACTA cases in this District – awarded a one-third percentage of the fund for fees. *See Legg v. Spirit Airlines*, 14-cv-61978-JIC, ECF. 151, ¶15 (S.D. Fla.  Aug. 2, 2016) (FACTA case awarding one-third of gross recovery for fees, plus expenses); *Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, ECF 227, p.7 (S.D. Fla. Feb. 18, 2016) (same); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-md-01317-PAS, ECF 1557 at 8–10 (S.D. Fla. Apr. 19, 2005) (awarding "33 1/3%

11

of the gross Settlement Fund (plus interest thereon), arising out of the Settlement, before deduction of any costs, expenses, or incentive awards, as their fee award."); *Gutter,* No. 95-cv-02152-ASG, ECF 626 at 7 (approving fees of one-third of gross amount of the settlement fund, plus $1.2 million in expenses); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747 at *6 (M.D. Fla. Dec. 29, 2011) (approving fee award of one-third of gross amount of the common fund); *Guarisma v. ADCAHB Medical Coverages, Inc., et al.*, 13-cv-21016, ECF 95 (S.D. Fla. June 24, 2015) (awarding one third of the fund, plus costs). Most of these cases were more desirable than this case because the plaintiff did not have to prove willfulness. Accordingly, this factor also favors the proposed fee and expense award.

### 5.  This Case Required a High Level of Skill.

The remaining *Johnson/Camden I* factor – the skill required to perform the legal services properly, and the experience, reputation, and ability of the attorneys, all confirm that the fees and expenses sought are reasonable.  As shown, Class Counsel achieved a settlement that confers substantial monetary and non-monetary benefits on class despite litigating against a sophisticated and well-financed defendant represented by top-tier counsel. *See In re Sunbeam Sec. Litig.,* 176 F.Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the Plaintiffs' attorneys faced.")

This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope and complexity. Class Counsel were able to steer this case to outcome on par with the largest all-cash FACTA settlements ever achieved, while avoiding exposing the Class's recovery to the risks (such as contested class certification and summary judgment proceedings) faced in those cases. Class Counsel regularly engage in complex litigation involving consumer issues, and they have been appointed class counsel in numerous cases. *See Appendix 3* Hilicki Decl. at ¶3; *Appendix 4* Owens Decl. at ¶¶18-26; *Appendix* 5 Lusskin Decl. at ¶11. Thus, the *Johnson/Camden I* factors confirm the mediated attorneys' fee and expense award is reasonable. Pursuant to Fed. R. Civ. P. 23(h), 52(a) and 54(d)(2), it should be approved.

## IV.  THE OBJECTIONS TO THE PROPOSED AWARD SHOULD BE REJECTED

As noted, only two of the four objections specifically object to the proposed fee award, and both were filed by "professional" objectors. One was filed W. Allen McDonald on behalf of his "client" and objector co-counsel in other cases James H. Price. The other was filed by John W. Davis on behalf of his "client" and objector co-counsel in other cases, Eric A. Isaacson, who

were recently joined in this matter by fellow professional objector C. Benjamin Nutley.

Professional or "serial" objectors file meritless objections just to try to extract payments for themselves by threatening years of delay and expense on appeal:

> Repeat objectors to class action settlements can make a living simply by filing frivolous appeals and thereby slowing down the execution of settlements. The larger the settlement, the more cost-effective it is to pay the objectors rather than suffer the delay of waiting for an appeal to be resolved (even an expedited appeal). Because of these economic realities, professional objectors can levy what is effectively a tax on class action settlements, a tax that has no benefit to anyone other than to the objectors. Literally nothing is gained from the cost: Settlements are not restructured and the class, on whose behalf the appeal is purportedly raised, gains nothing.

*Barnes v. FleetBoston Fin. Corp*., No. 01-10395-NG, 2006 U.S. Dist. LEXIS 71072, *3-4 (D. Mass. Aug. 22, 2006).

The respected authors of Newberg on Class Actions observe that filing objections to class settlements has become a "big business." ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS 11:55 (4th Ed. 2008); *see also* § 15:37 (entitled Abusive Conduct by Counsel Objecting to Class Action Settlements). UCLA law professor William Rubenstein has written that "[t]his part of the profession has arguably attracted lawyers more interested in coercing a fee than in correcting a wrong." WILLIAM B. RUBENSTEIN, THE FAIRNESS HEARING: ADVERSARIAL AND REGULATORY APPROACHES, 53 UCLA L.REV. 1435, 1459 (2006) (citations omitted). Professor Ed Brunet bluntly characterizes professional objectors as "warts on the class action process" and "bottom feeders." EDWARD BRUNET, CLASS ACTION OBJECTORS: EXTORTIONIST FREE RIDERS OR FAIRNESS GUARANTORS, 2003 U. CHI. LEGAL F. 403, 409 (2003). After detailing the extortionist practices of some professional objectors, Professor Brunet observed that they "are as welcome in the courtroom as is the guest at a wedding ceremony who responds affirmatively to the minister's question, 'Is there anyone here who opposes this marriage?'" *Id.* at 408 n.21.

Accordingly, "when assessing the merits of an objection to a class action settlement, courts consider the background and intent of objectors and their counsel, particularly when indicative of a motive other than putting the interest of the class members first." *Dennis v. Kellogg Co.,* No. 09-cv-1786, 2013 U.S. Dist. LEXIS 163118, at *11 n.2 (S.D. Cal. Nov. 14, 2013); *In re Law Office of Jonathan E. Fortman, LLC*, No. 4:13MC00042, 2013 U.S. Dist.

LEXIS 13903, at *3 (E.D. Mo. Feb. 1, 2013) (same). As explained below, the objectors'
arguments should be rejected.

### A.     The Track Records of James Price, W. Allen McDonald, John W. Davis and Eric A. Isaacson Speak for Themselves.

The submissions of Price and McDonald should be given little or no weight because
neither of them sought leave to appear despite filing an objection, apparently to avoid disclosing
their relationship and track record. This includes the fact that Judge Cohn required them to post a
bond to appeal a class settlement due to their serial objector history. *See In re Enfamil Lipil
Mktg. & Sales Practices Litig.*, No. 11-MD-02222-JIC, 2012 U.S. Dist. LEXIS 49254 at *16
(S.D. Fla. Apr. 9, 2012) ("the representation of three previous objectors by [Price and
McDonald's] firm weighs in favor of requiring an appeal bond in this case."), citing *In re: Pub.
Offering Sec. Litig.*, 727 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("professional objectors
undermine the administration of justice"). In that same case, they took an appeal and tried to
extract a payoff by "offer[ing] to withdraw [the] appeal in exchange for a payment of $150,000."
*Id.* at *15. The Eleventh Circuit expressly noted their misconduct. *Nelson v. Mead Johnson &
Johnson Co.*, 484 Fed. Appx. 429, 433 (11th Cir. July 20, 2012) (unpub) ("Pack's counsel
offered to withdraw her appeal for $150,000.00, suggesting that her 'objections are tied to her
ability to garner a windfall for herself rather than ensuring an adequate settlement for the
class.'") Subsequently, Price and McDonald tried to claim a fee in a case they objected to even
though they could not explain how their objection benefitted the class. *See McDonough v. Toys
R' Us, Inc.*, 80 F.Supp.2d 626, 664 (E.D. Pa. 2015). Finally, Mr. Price was recently sanctioned
for ethics violations. *In re Morton*, 2015 Bankr. LEXIS 3309 at *3 (E.D. Bankr. Tenn. Sept. 30,
2015) ("the Court will require Mr. Price … to self-report their conduct in this case and this
Court's Memorandum Opinion to the Tennessee Board of Professional Responsibility").

Mr. Davis is an even more prolific objector.[8] Similar to Price and McDonald, his conduct
in class cases has been called into question on several occasions. *See, e.g., Davis v. Apple*

---

[8] One court noted that "[b]ased on the Court's ECF review, Mr. Davis appears as an attorney in 12 cases in this
District. In 11 of these cases (including this one), Mr. Davis represented an objector (in one case, himself)."
*Alexander v. FedEx Ground Package Sys.*, 2016 U.S. Dist. LEXIS 49201 at *14, fn.9 (N.D. Cal. Apr. 12, 2016).
Furthermore, class counsel in a different case remarked that they were "able to promptly identify at least twenty-
eight (28) class action lawsuits across the country in which it appears that Mr. Davis has represented an objector to a
class action settlement." Opposition to Davis Motion to Appear *Pro Hac Vice*, Dkt. 128 at p.9, *Chieftan Royalty Co.
v. SM Energy Co.*, 11-cv-177 (W.D. Okla.) (Nov. 3, 2015). In that case Mr. Davis represented the father of his co-
counsel here, Mr. Nutley, who also is a repeat objector. *Id.*

*Computer, Inc.*, 2005 Cal. App. Unpub. LEXIS 7190 at *4, *38 (Cal. App. Aug. 12, 2005) ("The court … found that Helfand and Davis had in the past 'confidentially settled or attempted to confidentially settle putative class actions in return for payment of fees and other consideration directly to them.'"); *Faught v. Am. Home Shield Corp.*, 444 Fed. Appx. 445, 446 (11th Cir. 2011) (unpub) (affirming denial of fees to Mr. Davis and others because "the objectors' claims were based on speculation that is unsupported by the record"); *In re Visa Check/MasterMoney Antitrust Litig.*, No. 96-5238, ECF 1051 at 21-24 (E.D.N.Y. Apr. 27, 2004) (Davis and co-counsel's demand for $193,084.73 found "excessive and unreasonable" where the two attorneys purported to bill 254.2 hours to write a 14-page brief and attend the fairness hearing at which "only Mr. Davis spoke.")). Indeed, in response to contentions that "Messrs. Davis and Nutley are part of a cartel of professional objectors who file vexatious and frivolous objections to stall class settlements in exchange for payoffs," one court took the unusual step of "direct[ing] that all papers submitted by counsel shall be signed by both [local counsel] as well as Messrs. Davis and Nutley." *Chieftain Royalty Co. v. SM Energy Co.*, 2015 U.S. Dist. LEXIS 159218 at *2 (W.D. Okla. Nov. 25, 2015).

Mr. Davis's "client," Mr. Isaacson, himself a class action lawyer since 1989 who just started a solo practice in 2016, is already heavily involved in objecting to class action settlements with Messrs. Davis and Nutley.[9] Consistent with the professional objector *modus operandi* of objecting and then demanding money to go away, Davis, Isaacson, and their co-counsel Mr. Nutley sent Class Counsel a proposed stipulation to govern their hoped-for payoff here. [ECF 72-1 at 29].

Finally, in addition to their motives, the submissions of these professional objectors also lack credibility because, as explained below, their boilerplate objections are counter to Eleventh Circuit law and otherwise substantively meritless.

###### B.    There Is No Need for a Lodestar Analysis.

As noted above, because this is a common fund settlement, Class Counsel are entitled to seek a fee award based on a percentage of the $6,300,000 fund they recovered for the class. *In re*

---

[9] In addition to this case, Mr. Isaacson is objector's counsel in the following recent cases: *In re Bioscrip, Inc. Sec. Litig.*, 13-cv-6922 (S.D.N.Y.), Dkt. 113 (Objection of Class Member Isaacson/Weaver Family Trust to Proposed Attorneys' Fee Award, filed May 23, 2016 by Isaacson); *Chieftain Royalty v. Enervest Energy Inst'l Fund XIII-A LP*, No. 16-6022 (4th Cir.) Doc. 1019627432 (Appellants Opening Brief, filed May 25, 2016 by Isaacson, Davis and Nutley); and *Chambers v. Whirlpool Corp.*, 11-cv-1733 (C.D. Cal) Dkt. 227 (Objection to Proposed Settlement filed May 27, 2016 by Isaacson, Davis and Nutley).

*Checking Acct. Overdraft Litig.*, 830 F.Supp.2d at 1344 ("It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained."), *citing Camden I Condo Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); and *see Boeing Co.*, 444 U.S. at 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). Indeed, Davis and Isaacson concede that "[d]ecisions of the Eleventh Circuit … appear to mandate percentage fee awards in all common-fund cases." [ECF 59 at 7].

Despite this concession, the Professional Objectors claim the fee award should be based on the "lodestar method," which would require the Court to take evidence and determine the reasonable hours billed by Class Counsel and the reasonable hourly rates for their work. *See*, *e.g.*, *EEOC v. West Customer Mgmt. Group, LLC*, 2015 U.S. Dist. LEXIS 76943 at *2-*3 (N.D. Fla. June 15, 2015). Indeed, Davis and Isaacson claim the lodestar method should be the exclusive method for determining the fee award in cases brought under a statute that contains a fee-shifting provision. However, the Eleventh Circuit has not carved out an exception to the percentage-of-the-fund rule for cases settled on a common fund basis that happen to involve a statute with a fee-shifting provision. Just the opposite, as the Eleventh Circuit recently affirmed the approval of a $5.68 million attorneys' fee award when the class only claimed $344,850 and there was nonmonetary relief. *Poertner*, above. *Poertner* was a fee shifting case brought pursuant to Florida Deceptive and Unfair Trade Practices Act. 618 Fed. Appx. at 625.

The main case Davis and Isaacson cite to suggest the lodestar method be used to determine fees in cases involving a statute that has a fee-shifting provision, *Pierce v. Visteon Corp.*, 791 F.3d 782 (7th Cir. 2015), does not help them. The district courts that are required to follow *Pierce* reject that interpretation of it. *See Bickel v. Sheriff of Whitley Cty. (in his official capacity)*, No. 1:08-CV-102-TLS, 2016 WL 29612 at *7 (N.D. Ind. Jan. 4, 2016); *McCue v. MB Fin., Inc.*, No. 15 CV 988, 2015 WL 4522564, at *3 (N.D. Ill. July 23, 2015). Specifically, they hold that *Pierce* does not alter the rule that class counsel are entitled to seek a percentage of a common fund they obtain for the class, even if the underlying law has a fee-shifting provision. *Bickel* at *7 ("common fund principles properly control a case that has been initiated under a statute with a fee-shifting provision, and then settled with the creation of a common fund."); *McCue* at *3 (despite *Pierce*, "Class Counsel should be awarded a portion of the common fund

16

that Class Counsels' work created.")

Instead, *Pierce* only reached the unremarkable conclusion that the attorney in that case was not allowed to receive two fee awards, *i.e.*, one based on lodestar under a fee-shifting statute *plus* an additional award from the settlement fund. *McCue* at *3 ("*Pierce's* holding is limited to cases where an attorney obtains a judgment for the class, the attorney is awarded a fee based on the lodestar method that the court deems reasonable, and the attorney seeks an additional, second recovery.") There is no such issue here because Class Counsel only request a single award based on a percentage of the fund their efforts created. *See Bickel* at *7 ("Here, Class Counsel was not compensated under a fee-shifting statute, but was paid out of the common fund.")[10]

The Professional Objectors go on to argue that even if fees are awarded as a percentage of the fund, the Court should still conduct a lodestar analysis to "cross check" the award. This would be a pointless exercise because again, Class Counsel do not seek fees on a lodestar basis, and courts in the Eleventh Circuit use the percentage method in part to eliminate the need to conduct that analysis. *See Checking Acct. Overdraft Litig.*, 830 F.Supp.2d at 1363 ("Under *Camden I*, courts in this Circuit regularly award fees based on a percentage of the recovery, without discussing lodestar at all."); *see also Will v. Gen. Dynamics Corp.,* 2010 U.S. Dist. LEXIS 123349, at *10 (S.D. Ill. Nov. 22, 2010) ("The use of a lodestar cross-check in a common fund case is unnecessary, arbitrary, and potentially counterproductive.")

Significantly, the Professional Objectors' request that the Court disregard Eleventh Circuit authority and use the lodestar to decide or "cross-check" the award ignores the important policy reasons behind using the percentage-of-the-fund method instead of the lodestar method:

> Unlike the lodestar method which can encourage class counsel to devote unnecessary hours to generate a substantial fee, under the [percentage-of-the-fund] method, the more the attorney succeeds in recovering money for the client, and the fewer legal hours expended to reach that result, the higher dollar amount of fee the lawyer earns.  Thus, one of the primary advantages of the [percentage-of-the-fund] method is that it is thought to equate the interests of class counsel with those of the class members and encourage class counsel to prosecute the case in an efficient manner.

Newberg on Class Actions § 14:6 (4th Ed. 2002); *see also Gaskill v. Gordon*, 942 F. Supp. 382,

---

[10] Isaacson and Davis also cite *Haggert v. Woodley*, 809 F.3d 1336 (Fed. Cir. 2016), but that case relies on *Pierce* which, as shown, does not support their argument. Like *Pierce*, the plaintiff's counsel in *Haggert* negotiated a fee award under the fee-shifting statute and then *also* sought to recover a percentage of the fund. *Id.* at 1355-56 ("According to the Government, because '[f]ederal fee-shifting statutes, including the URA, . . . provide for defendants to pay 'reasonable' fees[,] [a]n *additional* fee *is* by definition unreasonable when a reasonable statutory fee *has already been awarded.' Id.* at 41. Accordingly, the Government contends '[t]here is no basis in equity for awarding common-fund fees *as well as* the URA fees.'" *Id.*

386 (N.D. Ill. 1996), *aff'd* 160 F.3d 361 (7th Cir. 1998) ("the percentage of the fund method provides a more effective way of determining whether the hours expended were reasonable" because "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win"). In other words, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented." *Id.* at 1269; *see also In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F.Supp. 160, 170 (S.D.N.Y. 1989) ("The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers.") This reasoning is also in line with this Court's mediation program, which encourages early settlements to save the courts and parties resources. As noted in Plaintiff's motion for final approval, this settlement is on par with *See Legg v. Lab. Corp. of America*, 14-cv-61543-RLR, ECF 218, pp. 4-5 (S.D. Fla. Feb. 18, 2016) and *Legg v. Spirit Airlines*, 14-cv-61978-JIC, ECF 146. pp. 4-6 (S.D. Fla. Aug. 2, 2016). In *Lab* and *Spirit*, Class Counsel had just secured two large FACTA settlements after substantial litigation of the same issues presented in this case.[11] The fact that Class Counsel achieved the substantially same record result here should be rewarded instead of penalized.

The Professional Objectors raise various policy arguments against the percentage method, but the Eleventh Circuit already confronted and rejected the polices behind the lodestar method arguments in deciding that the percentage approach is the better method. *See Camden I*, 946 F.3d at 771-774. The Professional Objectors also misstate the law. For example, they claim the percentage method enables counsel to obtain a larger fee than if they took the case to judgment, because allegedly the lodestar method "must" be used to determine a post-judgment fee award in a case arising under a statute with a fee-shifting provision. But the case they cite for this argument, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010), says no such thing. It did not address whether the percentage method can be used to award fees from a fund post-judgment because, in that case, *there was no fund*. The plaintiffs only sought injunctive and declaratory relief. *Id.* at 547.[12] In short, the objections asking this Court to disregard Eleventh Circuit law in

---

[11] In *Lab*, Class Counsel took eighteen depositions, including experts, two mediations and did not settle until after hearing on summary judgment, class certification and dueling *Daubert* motions. In *Spirit* there were two mediations, 175,000 pages of documents, depositions (including one out of country) and class certification over the defendant's objection.

[12] Davis and Isaacson also cite *Brytus v. Spang & Co.*, 203 F.3d 238 (3d Cir. 2000) but, in addition to being non-binding, it does not support their argument. Like the inapposite *Pierce* case, discussed above, in *Brytus* the attorney tried to recover two fee awards, one on a lodestar basis pursuant to the fee-shifting provision of ERISA, plus a second award based on a percentage of the fund. *Id.* at 245 ("the Court finds that Counsels' argument [that they were

favor of conflicting out of Circuit cases and inapplicable cases, should be overruled.

**C.**     <u>**The Professional Objectors' Remaining Arguments Are Meritless**</u>

The Professional Objectors suggest the proposed one-third percentage award is excessive for no reason other than that Class Counsel was able to successfully achieve the settlement comparatively early, without taking the case to trial, and thus without exposing the class members' claims to the risk of defeat at the class certification, summary judgment or later. However, this actually supports the proposed award because prompt settlements and minimizing the risk to the class are supposed to be encouraged.

The Professional Objectors' near-exclusive focus on the amount of time spent on the case is just a backdoor way of arguing for the lodestar method, and thus improper. *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1362. ("The lodestar approach should not be imposed through the back door …'"); *In re Sunbeam Sec. Litig.,* 176 F.Supp.2d 1323, 1336 (S.D. Fla. 2001) ("cross-check is not to be used as a backdoor avenue of using the lodestar method instead of the percentage of the fund method."). Not only does this ignore that a one-third percentage is well within the range of reasonableness, but it also ignores that *Johnson*/*Camden I* factors used to evaluate awards in this Circuit already consider the work performed as one of many factors. *Camden I*, 946 F.2d at 772, fn.3.

Davis and Isaacson baselessly claim that the Supreme Court repudiated the *Johnson*/*Camden I* factors in *Perdue*, discussed above, but *Perdue* does not mention *Camden I* or discuss percentage-of-the-fund awards. Again, there was no fund in *Perdue* because the plaintiffs only sought injunctive and declaratory relief. *Perdue*, 559 U.S. at 547. Indeed, *Perdue*'s first sentence makes clear that it only pertains to lodestar-based awards: "This case presents the question whether the calculation of an attorney's fee, under federal fee-shifting statutes, based on the "lodestar," … may be increased due to superior performance and results." *Id.* at 544. There is no such issue here because again, Class Counsel does not seek a lodestar-based award.

Likewise, *Perdue* cannot be read to implicitly overrule *Camden I* because the Eleventh Circuit has made clear that it is the final authority unless it is *directly* overruled. *See Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003) ("While an intervening decision of the Supreme Court can overrule the decision of a prior panel of our court,

---

entitled to recover both statutory and common fund fees] is logically flawed.'") (brackets in original). There is no such issue here because again, Class Counsel only seek a single award based on a percentage of the fund, and do not seek a lodestar-based award.

the Supreme Court decision must be clearly on point.") Accordingly, Davis and Isaacson's further challenge to binding authority should be rejected.

Price and McDonald suggest that the fee award should be no more than 25% because that is a common percentage award. Once again, the Eleventh Circuit uses 25% as a "bench mark," not a ceiling. *Camden I Condo Ass'n*, 946 F.2d at 775. Indeed, as much as 50% is allowable, and 33.33% is common. *See Id.* at 774-775 ("an upper limit is 50%"), and cases above.

Finally, Davis and Isaacson propose a draconian departure from these standards and suggest counsel receive 5%, because that amount was allowed in two Supreme Court cases that do not involve class actions and pre-date the existence of Rule 23.[13] Neither justify that limit, which would serve to deter competent counsel from bringing contingent-fee class action cases.

In this regard, it must be noted that Isaacson's argument is contrary to his own practice as a plaintiff's class action attorney. Despite approximately 25 years of doing plaintiff's class action work, Mr. Isaacson cannot identify a single case he was involved in which he advocated to only receive or keep 5% of a settlement fund. To the contrary, both he and his former firm routinely sought fees at or near 33% of the settlement funds.[14] The objections should be rejected.

## V.     CONCLUSION

Class Counsel's fee request is both a reasonable percentage of the Settlement and satisfies the *Johnson/Camden I* factors, the proposed expense award is also reasonable, and the professional objector's arguments are meritless. Class Counsel should be awarded $2,100,000 in fees as provided by the Settlement, and $5,547.70 in expenses.

---

[13] *Central Railroad Banking Co. v. Pettus*, 113 U.S. 116 (1885) was a form of involuntary bankruptcy/insolvency proceeding pre-dating the Bankruptcy Act of 1898. The reduction of the 10% award to 5% in that case stems from the fact that the appellees *agreed* to receive 5% from some beneficiaries, and the Court decided all beneficiaries should be treated equally. *Id.* at 128. The basis for the original 10% award is not stated. The case of *United States v. Equitable Trust Co.*, 283 U.S. 738 (1931) was a proceeding on behalf of a single incompetent plaintiff incapable of hiring his own counsel, whose attorneys were chosen by his appointed guardian, and who in turn were assisted by the U.S. Attorney General's office to help undo a transaction. *Id.* at 746.

[14] Mr. Isaacson supported a 33% fee award in *Morris v. Lifescan, Inc.*, 2003 U.S. App. LEXIS 820 at *4 (9th Cir. Jan. 16, 2003). Also, at *Robbins Geller Rudman & Dowd, LLP*, a firm in which Mr. Isaacson was a founding partner, the firm routinely supported fee awards on a percentage basis equal to or near a third. *See, e.g., In re Fuqi Int'l, Inc. Sec. Litig.*, 2016 U.S. Dist. 20514 at *14 (S.D.N.Y. Feb. 16, 2016) (33% sought); *In re Hi-Crush Partners, L.P. Sec. Litig.*, 2014 U.S. Dist. LEXIS 177175 at *31 (S.D.N.Y. Dec. 10, 2014) ("Lead Counsel is seeking a fee award of 33 1/3% of the Settlement Amount."); *Mosser v. TD Bank, N.A.*, 2013 U.S. Dist. LEXIS 187627 at *68 (S.D. Fla. Mar. 18, 2013) (30% of $62,000,000 sought); *In re Oppenheimer Rochester Funds Group Secs. Litig.*, 2014 U.S. Dist. LEXIS 142673 at *47 (D. Colo. July 31, 2014) (30% of fund sought); *In re Crocs, Inc. Sec. Litig.*, 2014 U.S. Dist. LEXIS 134396 at *3 (D. Colo. Sept. 18, 2014) (30% of fund sought). Isaacson also supported Robbins Geller's request for 30% of the fund in *Local 703, I.B. of T. Grocery and Food Employees Wel. Fund v. Regions Fin. Corp.*, 2015 U.S. Dist. LEXIS 130542 at *4 (N.D. Ala. Sept. 14, 2015), in which he claimed a rate of $855 per hour for his work. *Local 703, I.B. of T.*, 10-cv-2847, Dkt. 302-1, Ex. A, p.1 (filed Aug. 11, 2015).

Dated: September 12, 2016.

Respectfully Submitted

*/s/ Scott D. Owens*
SCOTT D. OWENS, Esq.
3800 S. Ocean Drive, Ste. 235.
Hollywood, FL 33019
Tel: 954-589-0588
Fax: 954-337-0666
scott@scottdowens.com

Bret Leon Lusskin , Jr.
Bret Lusskin, P.A.
20803 Biscayne Blvd.
Ste. 302
Aventura, FL 33180
954−454−5841
Fax: 954−454−5844
blusskin@lusskinlaw.com

Michael S. Hilicki (*pro hac vice*)
Keogh Law, LTD.
55 W. Monroe St., Ste. 3390
Chicago, Il 60603
312.374.3402 (Direct)
312.726.1092 (Main)
312.726.1093 (Fax)
MHilicki@KeoghLaw.com
www.KeoghLaw.com

21

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that September 12, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this September 12, 2016, in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: */s/ Scott D. Owens*
Scott D. Owens, Esq.