UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

DR. DAVID MURANSKY, individually )
and on behalf of all others similarly )
situated, )
)
              Plaintiff, )
)
v. )  NO. 0:15-cv-60716-WPD
)  (Dimitrouleas/Snow)
GODIVA CHOCOLATIER, INC. )
)
             Defendant. )
_____ )

**RESPONSE OF JAMES H. PRICE TO MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT [Doc. 74]**

**NOW COMES** James H. Price ("Price"), by and through his undersigned counsel, and submits this response to the Plaintiff's Motion for Final Approval of Class Action Settlement [Doc. 74]:

### I. INTRODUCTION

Price timely objected to this proposed class action settlement [Doc. 61], asserting that:

- the Notice disseminated to Class members failed to satisfy the requirements of procedural due process and Rule 23(h) of the Federal Rules of Civil Procedure because it omitted information regarding Class Counsel's request for attorney's fees necessary to permit Class members to sufficiently assess their legal options;

- Class Counsel's fee request is unreasonable and excessive, as demonstrated by the minimal work performed by Class Counsel, and the Court should apply a lodestar analysis to arrive at Class Counsel's attorney's fee;

> ■ as a result of Class Counsel's modest efforts, the Court lacks sufficient information to properly assess and evaluate the proposed settlement; and
>
> ■ due to his limited efforts, the named Plaintiff is not entitled to a $10,000 incentive award.

[Doc. 61, at pp. 10-21].

Plaintiff has now moved the Court to grant final approval of this proposed class action settlement. [Doc. 74].[1] Plaintiff's arguments in support of final approval are simply ineffective to counter Price's concerns about (a) the deficiency of the Notice to Class members; (b) the lack of information to properly assess the proposed settlement; and (c) the outrageously excessive incentive award proposed for the named Plaintiff.

Finally, in his motion, Plaintiff also vilifies Price and his attorney, along with another objector and his attorney, as "professional objectors," implying that regardless of the merits or substance of their various objections raised in this case, the Court should disregard their objections simply because those individuals have objected to class action settlements in the past. [Doc. 74, at pp. 20-22].

---

[1] In a separate motion, Plaintiff has also moved for an award of attorney's fees [Doc. 76]. The Court has referred Plaintiff's motion for attorney's fees to the Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636 and the Local Rules of the Southern District of Florida. [Doc. 77]. The Magistrate Judge entered a Report and Recommendation regarding fees on September 16, 2016. [Doc. 82]. Consequently, this response addresses only issues pertinent to the Plaintiff's motion for final approval, including the issue of the propriety of Notice and the proposed incentive award to the named Plaintiff, *i.e.*, Price does not address the merits of Plaintiff's motion for attorney's fees in this response.

Plaintiff's disparagement of Price and his attorney is, to be sure, nothing more than a smoke-screen intended to obscure the proposed settlement's defects and the objectors' valid criticism of it.

### *II.  NOTICE OF PLAINTIFF'S MOTION FOR ATTORNEY'S FEES WAS DEFICIENT.*

*First,* Plaintiff initially attempts to counter Price's objection that notice was deficient to satisfy the requirements of procedural due process and Rule 23(h) by arguing that notice was "more than sufficient" because Class Counsel listed the dollar amount of fees requested in the notice.  But how can a Class member, forced to base his objection solely on the amount of attorney's fees to be requested, divine the rationale to-be-offered at some point by the Plaintiff for the fee request?  Simply put, he cannot.  *Redman v. RadioShack Corp.*, 768 F.3d 622, 638 (7th Cir. 2014).

Here, Class members lack a meaningful opportunity to examine Plaintiff's fee motion and to inquire into the bases and justification for the request.  This opportunity "is essential for the protection of the rights of class members." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010).

To support his position that notice was "more than sufficient," Plaintiff cites *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 699 (S.D. Fla. 2014) for the proposition that the rule adopted by the Ninth Circuit in *In re Mercury Interactive* "is not universal," and "has been rejected by at least one other Circuit." [Doc. 74, at p. 23].  Of course, while it is indeed true that not every court to have

considered the issue has found fault with the process that occurred here, no fewer than three Circuits have concluded that where plaintiff's counsel was not required to file a motion for attorney's fees until after the deadline for class members to object expired, notice was deficient. *See Redman v. RadioShack Corp.*, 768 F.3d 622, 637-38 (7th Cir. 2014), *cert. denied sub nom. Nicaj v. Shoe Carnival, Inc.*, 135 S. Ct. 1429, 191 L. Ed. 2d 366 (2015) ("Class counsel did not file the attorneys' fee motion until after the deadline set by the court for objections to the settlement had expired. That violated the rule."), *In re Mercury Interactive*, 618 F.3d at 993, and most recently, *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 446 (3d Cir. 2016). And, as Plaintiff himself must concede, the Eleventh Circuit has yet to address the issue. *Saccoccio*, 297 F.R.D. at 699.

Tellingly, Plaintiff does not address these cases and the reasoning expressed by those courts, citing instead to the *Saccoccio* court's reference to the Second Circuit's decision in *Cassese v. Williams*, 503 Fed. Appx. 55, 57 (2d Cir. 2012). But Plaintiff's reliance on *Cassese* is misplaced, as the Second Circuit did not at all reject the rule outright. The court merely concluded:

> We need not decide whether requiring objections to be filed in advance of a fee motion might raise due process concerns in some case. We conclude only that notice of class counsel's fee request was reasonable here under the circumstances and sufficient to satisfy due process.

*Id.*

The *Cassese* court also partly based its decision on the fact that "[n]o objector specifies how access to class counsel's billing records would have affected

-4-

her objections to the fee request." 503 Fed. Appx. at 58. In contrast, Price has specifically argued that the work performed by Class Counsel, at least as demonstrated by the sparse docket, does not merit an award of $2.1 Million. [Doc. 61, at pp. 15-16]. Moreover, as Price demonstrated in his objection, in a case such as this, there is a strong presumption that the lodestar is sufficient to achieve the objective of a "reasonable fee." [Doc. 61, at p. 17] (citing *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010)). Certainly, detailed time records are required in order for the Court to award fees on the basis of the lodestar method or to conduct a lodestar cross-check. [Doc. 61, at p. 16]. This district has approved use of the lodestar method as a cross-check of the percentage-of-the-fund approach. *See Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1336 (S.D. Fla. 2001); *Ressler v. Jacobson*, 149 F.R.D. 651, 653, n. 4 (M.D. Fla. 1992).

### III. THE COURT CAN REPAIR PLAINTIFF'S DEFICIENT NOTICE BY PROVIDING CLASS MEMBERS ADDITIONAL TIME TO OBJECT TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES.

*Second*, having referred the Plaintiff's motion for attorney's fees to the Magistrate Judge for a report and recommendation, the Court has an opportunity to rectify any due process deficiencies in the notice. The claims period has now expired and the Claims Administrator has by now collected the email addresses of all Class members who submitted timely claims for benefits. Therefore, the Court should enter an order (1) directing Class Counsel to post the motion for

attorney's fees on the settlement website; (2) directing the Administrator to email notice of the motion for attorney's fees to claimants, and (3) providing in that email that claimants shall have twenty-one (21) days to object to the motion for attorney's fees.

### IV. *PLAINTIFF AND HIS COUNSEL FAIL TO DEMONSTRATE THEY WERE SUFFICIENTLY INFORMED TO EVALUATE THE PROPOSED SETTLEMENT.*

*Third*, Plaintiff and his counsel offer nothing more than self-serving conclusory declarations in an effort to demonstrate that sufficient information was received to properly evaluate the claims of Class members. These declarations are simply ineffective to demonstrate that Class Counsel possessed the degree of information necessary to enable them to assess the proposed settlement.

To illustrate this glaring deficiency, Class Counsel should have obtained information to substantiate a claim of willfulness – which includes recklessness. For example, it appears that Godiva turned over the keys to FACTA compliance to a third-party vendor, demonstrating complete indifference to the need to protect Class member's personal information. Indeed, the record itself suggests that Class Counsel never even bothered to learn if Godiva had any type of quality control or quality assurance in place to monitor FACTA compliance. Nor, for that matter, does it appear that Godiva undertook any risk assessment or compliance check (Godiva's counsel offers such services – http://www.dykema.com/services-industries-financial-services-regulatory_compliance.html). After all, a simple internet search would have revealed FACTA

safeguards and best practices.[2]  Finally, it also appears that Class Counsel failed to conduct any discovery, formal, informal, or confirmatory, in an attempt to determine insurance coverage or whether Godiva's third-party vendor was indemnifying Godiva in whole or in part.

Instead of doing this, in a single paragraph, Plaintiff declares that he and Class Counsel were "well-informed, had sufficient information to evaluate the strength of the class claims and weigh the benefits of the Agreement against continued litigation." [Doc. 74, at p. 18].  Nothing provided by Plaintiff, however, reveals that Class Counsel sought, much less received, the type of information outlined above to allow them to be sufficiently apprized of information to properly assess the proposed settlement.

### V.  AN INCENTIVE AWARD OF $10,000 TO THE NAMED PLAINTIFF IN THIS CASE IS EXCESSIVE AS NONE OF THE PERTINENT FACTORS SUPPORT HIS REQUEST.

*Fourth*, Plaintiff next argues that an incentive award to the named Plaintiff in this case "is well within the range of reasonableness," citing awards of $5,000 to $100,000 in other cases.  [Doc. 74, at pp. 28-29].  However, Plaintiff's reliance on such cases is misplaced here.  Indeed, it appears that Plaintiff altogether miscomprehends Price's argument against such a large award for Dr. Muransky in this case.

---

[2]http://www.dwt.com/Fear-FACTA-Beware-the-Truncation-Requirement-of-the-Fair-and-Accurate-Credit-Transactions-Act-12-04-2013/

Here, Price's objection to the proposed incentive award is directed not so much toward the amount of the proposed award as it is toward whether the proposed award is actually warranted by the efforts of Dr. Muransky. To be certain, as Plaintiff himself notes, named plaintiffs in class actions routinely earn similar or even higher incentive awards for their efforts representing absent class members. But there is nothing in the record that demonstrates Dr. Muransky undertook such efforts. Rather, it appears that he did little, if anything, to earn such a disproportionally large award.

In support of his proposal that the Court award him $10,000 for his efforts, Plaintiff cites to *Gevaerts v. TD Bank, N.A.*, No. 1:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354 (S.D. Fla. Nov. 5, 2015), where the court did, in fact, approve $10,000 service awards to two named plaintiffs. But *Gevaerts* actually commands rejection of the proposed award in this instance, demonstrating that such awards are not granted willy-nilly by courts. Rather,

> [t]he factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation.

*Id.* at *26 (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

To illustrate further, in *Gevaerts*, the court based its $10,000 awards to the named plaintiffs on the fact that the named plaintiffs in the case had "expended substantial time and effort in representing the settlement class." *Id.* In fact,

-8-

plaintiffs' counsel in that case reported to the court that:

> Plaintiffs provided assistance that enabled Class Counsel to successfully prosecute the lawsuit and reach the Settlement, including (1) submitting to interviews with Class Counsel, (2) locating and forwarding responsive documents and information, (3) participating in conferences with Class Counsel, and (4) overseeing Class Counsel's prosecution of this litigation. In so doing, Plaintiffs were integral to forming the theory of the case. The named Plaintiffs not only devoted time and effort to the litigation, but the end result of their efforts, and those of Class Counsel, was a substantial benefit to the Settlement Class.

[*See Gevaerts*, No. 1:14-cv-20744-RLR, Doc. 99, at p. 25]. No such representations have been made to the Court here by Plaintiff or his counsel. Rather, they argue only that the proposed settlement is a good result, failing to identify what actions, if any, the named Plaintiff took to protect the interests of the class; failing to identify the degree to which the class may have benefitted from such actions; and failing to describe the amount of time and effort the class representatives expended in pursuing the litigation.

According to Dr. Muransky, he purchased Godiva chocolate on March 31, 2015. [Doc. 39-3]. The case was filed on April 6, 2015. [Doc. 1]. Clearly, Dr Muransky was Class Counsel's stalking horse, willing to allow thousands more Class members to suffer an increased risk of identity theft so he and his lawyer-buddies could profit from all of it. Certainly, his efforts on behalf of the Class are not worthy of a $10,000 award.

These fundamental failures require the Court to exercise its discretion and reject the proposed award.[3]

### VI. THE COURT SHOULD CONSIDER THE MERITS AND SUBSTANCE OF EACH OBJECTION MADE AND NOT BE SIDE-TRACKED BY PLAINTIFF'S DIGRESSIVE REMARKS AGAINST OBJECTORS.

*Fifth*, Plaintiff attempt to tar Price and his counsel, Allen McDonald, for having filed objections in other class action settlements. [Doc. 74, at pp. 20-22]. Plaintiff insists that the fact that Price and McDonald have been objectors or represented objectors in the past automatically transforms their objections here into unmerited objections. This assault on Price (and McDonald) demonstrates a fundamental misconception of the importance of objectors, and is also factually misguided.

It cannot be disputed that objectors play an essential role in the judicial review of proposed class action settlements. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 787 (7th Cir. 2014). Significantly, the *Amchem*,[4] *Ortiz*,[5] and *Devlin* Supreme

---

[3]Dr. Muransky also relies upon *Legg v. Laboratory Corp. of America*, No. 14-cv-61543-RLR, Dkt. 227 (S.D. Fla. Feb. 18, 2016) and *Legg v. Spirit Airlines*, No. 14-cv-61978-JIC, Dkt. 151 (S.D. Fla. Aug. 2, 2016) to urge the Court to give him $10,000. However, the *Lab Corp.* litigation lasted much longer than the action at bar (nineteen months), and encompassed significantly more work (including 227 docket entries, compared to 76 docket entries here), as well as contested class certification and summary judgment proceedings. As for *Spirit Airlines*, that case lasted even longer than *Lab Corp.* (two years), and included about twice as many docket entries as this case (151). In other words, neither of the cases supports a $10,000 award for Dr. Muransky here.

[4]*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997).

[5]*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841-845 (1999).

Court decisions, three of the leading class action cases of the last two decades, were all driven by objectors who litigated successfully all the way to the United States Supreme Court. In contrast to Plaintiff's universal condemnation of objectors, well-respected jurists[6] and commentators[7] take a decidedly different view, acknowledging the important role of objectors in the settlement process. Objectors are a tool for ensuring that settlements are fair, reasonable, and adequate. For example, objectors:

- focus the Court's attention on problems in the proposed settlement that neither the plaintiff nor the defense counsel wants to call to the Court's attention because they want the settlement finally approved;

- can force the settling parties to justify weaknesses in the proposed settlement; and

- can either prompt an improvement of the proposed settlement's terms or convince the Court that approval of the proposed settlement is not warranted, making the parties return to litigation.

---

[6] *E.g.*, *Redman v. Radioshack Corp.*, 768 F.3d 622, 629 (7th Cir. Ill. 2014) (7th Cir. Sept. 19, 2014) (Posner, J.) ("When there are objecting class members, the judge's task is eased because he or she has the benefit of an adversary process: objectors versus settlors (that is, versus class counsel and the defendant.")

[7] Wasserman, R., *Dueling Class Actions*, 80 B. U. L. Rev. 461, 483 (April 2000) (concluding that objectors are the only parties with an incentive to uncover flaws in the proposed settlement); Morrison, Alan B., *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79 Geo. Wash. L. Rev. 428 (Feb. 2011) ("objectors make the system work better overall, and perhaps even make it more difficult for class counsel to overreach in a way that harms defendants. Judges . . . increasingly realize that counsel for objectors can help them carry out their responsibilities.")

While Plaintiff encourages the Court to overrule Price's objections merely because Price and McDonald have objected to class action settlements in the past, the Court should instead focus on the substance of the actual objections before it, rather than who made them.  After all, the arguments are either valid or they are not.  As one court observed,

> [i]t is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally. . . . It is impossible for a class to select, retain or monitor its lawyers as an individual client would.

*Great Neck Cap. Appreciation Inv. P'p, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 412 (E.D. Wis. 2002).  "Thus, objectors serve as a highly useful vehicle for class members, for the court and for the public generally."  *Id.*  "From conflicting points of view come clearer thinking."  *Id.* at 412-13.  "Therefore, a lawyer for an objector who raises pertinent questions about the terms or effects, intended or unintended, of a proposed settlement renders an important service."  *Id.* at 413.

Plaintiff also derides Price and McDonald for their involvement in *In re Enfamil Lipil Mktg. & Sales Practices Litig.*, 2012 U.S. Dist. LEXIS 49254, *16 (S.D. Fla. Apr. 9, 2012), mistakenly implying some sort elicit behavior by Price and McDonald by taking what actually occurred in the case out of context.  In fact, McDonald (Exhibit 1) and his local counsel in the *In re Enfamil* litigation, Dale P. DiMaggio (Exhibit 2), filed sworn declarations in that case demonstrating that

nothing sinister or unusual had occurred. Rather, plaintiffs' counsel in the case asked DiMaggio and McDonald to make them an offer of settlement. McDonald subsequently did so, and the plaintiffs counsel miscast the situation to suit their needs by claiming something nefarious had occurred, when it plainly had not.[8] Here, Plaintiff pilfers that same tactic and suggests that this was improper. Under any reasonable view, however, it most certainly was not.[9]

In the final analysis, it really should not matter if someone has never objected to a class action settlement or if they are a prolific objector. What matters, in the end, is the merits and substance of the actual objection, not who made them.

## *VII. CONCLUSION*

For the foregoing reasons, the Court should deny Plaintiff's motion for final approval and reduce the incentive award to the named Plaintiff.

---

[8] In hindsight, it appears most likely that plaintiffs' counsel's solicitation of an offer in *Enfamil* was nothing but a ruse to set up McDonald.

[9] Plaintiff also refers to *In re Morton,* 2015 Bankr. LEXIS 3309 at *3 (E.D. Bankr. Tenn. 2015), a recent bankruptcy proceeding in which Price was sanctioned. [Doc. 74, at p. 22]. Price, while strongly disagreeing with ruling of that court, complied with the Order, and, as shown by the docket, the matter is now closed.

Respectfully submitted, this 17th day of September, 2016.

*/s/ W. Allen McDonald*
W. Allen McDonald, Esq.
249 N. Peters Road, Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800

*Counsel for James H. Price*

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing was submitted electronically through the Court's Electronic Filing System ("ECF"). Notice of this filing will be sent by operation of the Court's ECF to all parties indicated on the electronic filing receipt, including:

> Michael S. Hilicki, Esq.
> KEOGH LAW, LTD.
> 55 West Monroe Street
> Ste. 3390
> Chicago, IL 60603
>
> Brian Melendez
> DYKEMA GOSSETT, PLLC
> 4000 Wells Fargo Center
> 90 South Seventh Street
> Minneapolis, MN 55402-3903

This 17th day of September, 2016.

>                       /s/ W. Allen McDonald
>                       W. Allen McDonald