# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE No. 0:15-cv-60716-WPD

Dr. David S. Muransky, individually and on behalf
of all others similarly situated,

       Plaintiff,

   v.

Godiva Chocolatier, Inc.,

       Defendant.


# CLASS MEMBER ERIC ALAN ISAACSON'S SUPPLEMENTAL BRIEF IN RESPONSE
# TO PLAINTIFF'S MOTION FOR FINAL APPROVAL
# AND MOTION FOR ATTORNEYS' FEES

**Table of Contents**

I.   Introduction ........................................................................................................................ 1

II.   What We Now Know about the Class Representative and the Litigation .......................... 1

III.   The Request for Attorneys' Fees is Excessive and Unsupported ....................................... 3

IV.   On the Current Record, the Proposed Settlement Cannot be approved as Fair, Reasonable, and Adequate ...................................................................................................................... 9

V.   The Class Has Not Been Adequately Represented by the current Class Representative and Class Counsel ................................................................................................................... 12

VI.   Participation of Sophisticated Objectors and Experienced Objectors' Counsel is Desirable in Class Action Settlements ............................................................................................. 16

## Table of Authorities

### Cases

*A Aventura Chiro. Ctr., Inc. v. Med Waste Mgmt., LLC*
    12-cv-21695 (S.D. Fla.)......................................................................................... 3, 16

*Acosta v. Trans Union, LLC*
    243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................ 12

*Aliano v. Joe Caputo & Sons - Algonquin, Inc.*
    2011 U.S. Dist. LEXIS 48323 (N.D. Ill. May 5, 2011) ........................................ 10

*Bailey v. Great Lakes Canning, Inc.*
    908 F.2d 38 (6th Cir. 1990) .................................................................................. 14

*Bennett v. Behring Corp.*
    737 F.2d 982 (11th Cir. 1984).......................................................................... 9, 10

*Camden I Condominium Ass'n v. Dunkle*
    946 F.2d 768 (11th Cir. 1991).................................................................. 1, 4, 7, 8

*Carnegie v. Household Int'l, Inc.*
    371 F.Supp.2d 954 (N.D.Ill.2005) ...................................................................... 12

*Central Railroad & Banking Co. v. Pettus*
    113 U.S. 116 (1885) ............................................................................................. 13

*Chalverus v. Pegasystems, Inc.*
    59 F. Supp. 2d 226 (D. Mass. 1999) ..................................................................... 9

*City of Burlington v. Dague*
    505 U.S. 557 (1992) ............................................................................................... 8

*City of Harper Woods Employees' Retirement System v. Olver*
    589 F.3d 1292 (D.C. Cir. 2009) .......................................................................... 19

*Dura Pharmaceuticals, Inc., v. Broudo*
    544 U.S. 336 (2005) ............................................................................................. 19

*Fener v. Operating Eng. Constr. Ind. and Misc. Pension Fund (Local 66)*
    579 F.3d 401 (5th Cir. 2009).............................................................................. 19

*Fisher v. Procter & Gamble Mfg. Co.*
    613 F.2d 527 (5th Cir. 1980)............................................................................... 17

*Flinn v. FMC Corp.*
    528 F.2d 1169 (4th Cir. 1975)..................................................................... 14

*Goldberger v. Integrated Resources, Inc.*
    209 F.3d 43 (2d Cir. 2000).................................................................... 7, 8

*Gottlieb v. Barry*
    43 F.3d 474 (10th Cir. 1994)..................................................................... 17

*Hadix v. Johnson*
    322 F.3d 895 (6th Cir. 2003)..................................................................... 13

*Hensley v. Eckerhart*
    461 US 424 (1983) ..................................................................................... 8

*Illinois Municipal Retirement Fund v. CitiGroup, Inc.*
    391 F.3d 844 (7th Cir. 2004)..................................................................... 19

*In re Community Bank*
    418 F.3d 277 (3d Cir. 2005)................................................................ 11, 16

*In re Constar International Inc. Securities Litig.*
    585 F.3d 774 (3d Cir. 2009)..................................................................... 19

*In re Continental Illinois Securities Litig.*
    962 F.2d 566 (1992) .................................................................................. 8

*In re Corrugated Container Antitrust Litig.*
    643 F.2d 195 (5th Cir. 1981)..................................................................... 11

*In re Dry Max Pampers Litig.*
    724 F.3d 713 (6th Cir. 2013)..................................................................... 13

*In re Gen. Motors Corp. Engine Interchange Litig.*
    594 F.2d 1106 (7th Cir. 1979)................................................................... 11

*In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.*
    55b F.3d 768 (3d Cir. 1995)..................................................................... 16

*In re GMC Engine*
    594 F.2d 1106 (7th Cir. 1979)................................................................... 12

*In re Marriage Cases*
    183 P.3d 384 (Cal. 2008) ......................................................................... 19

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir.2000)......................................................................... 12

*In re National Football League Players Concussion Injury Litig.*
    No. 15-2206, slip op. (3d Cir. April 18, 2016)......................................... 15

*In re Puerto Rican Cabotage Antitrust Litig.*
    815 F.Supp. 2d 448 (D.P.R. 2011)............................................................. 17

*In re Trans Union Corp. Privacy Litig.*
    629 F.3d 741 (7th Cir. 2011)...................................................................... 17

*In re Vertrue Inc. Marketing and Sales Practices Litig.*
    719 F.3d 474 (6th Cir. 2013)...................................................................... 19

*Johnson v. Georgia Highway Express, Inc.*
    488 F.2d 714 (5th Cir. 1974)......................................................... 3, 5, 6, 7, 8

*Kincade v. General Tire Rubber Co.*
    635 F.2d 501 (5th Cir. 1981)...................................................................... 14

*Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Financial Corp.*, 762
    F.3d 1248 (11th Cir. 2014)......................................................................... 19

*Makaeff v. Trump University, LLC*
    715 F.3d 254 (9th Cir. 2013)...................................................................... 19

*Matrixx Initiatives, Inc. v. Siracusano*
    131 S.Ct. 1309 (2011) ............................................................................... 19

*Mercury Interactive Corp. Sec's Litig.*
    618 F.3d 988 (9th Cir. 2010)...................................................................... 15

*Millan v. Cascade Water Servs., Inc.*
    310 F.R.D. 593 (E.D. Cal. 2015)................................................................ 12

*NAACP v. Button*
    371 U.S. 415 (1963) ..................................................................................... 6

*Officers for Justice v. Civil Service Commission of the City and County of San Francisco*
    688 F.2d 615 (9th Cir.1982)....................................................................... 14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*
    135 S.Ct. 1318 (2015) ............................................................................... 19

iv

*Pearson v. NBTY, Inc.*
    772 F. 3d 778 (7th Cir. 2014)................................................ 16


*Perdue v. Kenny A. Ex rel. Winn*
    130 S. Ct. 1662 (2010) .................................................... 8

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*
    632 F.3d 762 (1st Cir. 2011) ............................................. 19

*Plummer v. Chem. Bank*
    668 F.2d 654 (2d Cir.1982)............................................... 12

*Polar Int'l Brokerage Corp. v. Reeve*
    187 F.R.D. 108 (S.D.N.Y.1999)........................................... 12

*Radcliffe v. Experian Info. Solutions*
    715 F.3d 1157 (9th Cir.2013)............................................ 13

*Redman v. Radioshack Corp.*
    768 F.3d 622 (7th Cir., 2014)....................................... 14, 15

*Reynolds v. Beneficial N.B.*
    288 F.3d 277 (7th Cir. 2002)............................................ 16

*Reynolds v. Beneficial Nat. Bank*
    260 F. Supp.2d 680 (N.D. Ill. 2003) .................................... 11

*Reynolds v. Beneficial Nat'l Bank*
    260 F.Supp.2d 680 (N.D.Ill.2003) ...................................... 12

*Rodriguez v. Disner*
    688 F.3d 645 (9th Cir. 2012)............................................ 18

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948 (9th Cir. 2009)........................................ 13, 18

*Romine v. Acxiom Corp.*
    296 F.3d 701 (8th Cir. 2002)............................................ 19

*Sanders v. Russell*
    401 F.2d 241 (5th Cir. 1968)............................................. 6

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,*
    __ F.3d __,  2016 WL 3163073 (6th Cir. 2016)....................... 6, 7, 13

*Smith v. Swormstedt*
57 U.S. (16 How.) 288 (1853)............................................................... 14

*Staehr v. Hartford Financial Services Group, Inc.*
547 F.3d 406 (2d Cir. 2008)................................................................ 19

*Strauss v. Horton*
207 P.3d 48 (Cal. 2009) ...................................................................... 19

*Trustees v. Greenough*
105 U.S. 527 (1882) ....................................................................... 13, 14

*Vollmer v. Selden*
350 F.3d 656 (7th Cir. 2003)............................................................ 16, 17

*Weinberger v. Great N. Nekoosa Corp.*
925 F.2d 518 (1st Cir.1991) ............................................................... 16

*White v. Auerbach*
500 F.2d 822 (2d Cir. 1974) .............................................................. 17

**Statutes**

28 U.S.C. §2072(b) ................................................................................ 14

**Rules**

Fed. R. Civ. P. 23 ..................................................................... 13, 14, 15, 17

**Other Authorities**

Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure at 215-16, 228-29 (August 2016)........................................... 18

Elaine McArdle, *One lawyer's religious brief for marriage equality,* UU WORLD, June 3, 2013 19

Eric Alan Isaacson, Are Same-Sex Marriages Really a Threat to Religious Liberty?, 8 STANFORD J. CIV. RTS. & CIV. LIBERTIES 123 (2012) ................................................ 19

Eric Alan Isaacson, Free Exercise for Whom? – Could the Religious-Liberty Principle that Catholics Established in Perez v. Sharp Also Protect Same-Sex Couples' Right to Marry?, 92 U. DET. MERCY L. REV. 29 (2015) ...................................................... 19

Eric Alan Isaacson, The Roberts Court and Securities Class Actions: Reaffirming Basic Principles, 48 AKRON L. REV. 923 (2015) ............................................................................ 19

John C. Coffee, *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation* (2000) 100 Colum. L. Rev. 370, 422 ................................................ 11

Report to the Standing Committee, Advisory Committee on Civil Rules ................................... 18

*Federal Judicial Center, Empirical Study of Class Action in Four Federal District Courts* 76 (1996) ......................................................................................................................................... 8

Shelby Meyerhoff, *UUA Recognizes San Diego Lawyer Eric Isaacson for Marriage Equality Work,* June 30, 2009) .................................................................................................................. 19

Theodore Eisenberg & Geoffrey P. Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical and Empirical Issues,* 57 VAND. L. REV. 1529, 1561 (2004) ............. 11

## I.       Introduction

Eric Alan Isaacson filed a timely objection asserting that "[r]equiring objections to be filed before the motions for final settlement approval and attorneys' fees are due violates the notice provisions of Rule 23 and deprives class members of their fundamental right to due process of law."  DE59 at 3.  Now that Dr. Muransky's papers supporting final settlement approval and an award of attorneys' fees have been filed, Isaacson submits this supplemental brief addressing those motions as contemplated by Rule 23 and the Fifth Amendment's due process clause.

## II.      What We Now Know about the Class Representative and the Litigation

With the parties' September 12, 2016, filings we now know that Godiva admits to violating FACTA with at least "342,025 noncompliant receipts," and that "Godiva's potential exposure was over one-third of a billion dollars."  Godiva Mem., DE75 at 14 & n.42.   It faced a potential judgment of $342.025 million, plus liability for Class Counsel's attorneys' fees under FACTA's fee-shifting provision.  Class Counsel have instead arranged for Godiva to settle by paying just $6.3 million – about 1.8% of its potential liability – with Class Counsel proposing to take one third of that as attorneys' fees, leaving the class with 1.2% of what it might have received with a plaintiff's trial judgment.

Although "the time and labor required" is the first consideration in setting a percentage fee award, *see Camden I Condominium Ass'n., Inc. v. Dunkle,* 946 F.2d 768, 772 & n.3 (11th Cir. 1991), Class Counsel refuse to say how many hours they actually devoted to the case.  We now know, however, that Class Counsel did little work to earn the fee that they request.

It now is apparent that Class Counsel agreed to the proposed settlement without conducting substantial discovery.  Corporate defendants insist on entry of protective orders before they will produce documents, but here no protective order was entered until *after* this Court's order, DE40, preliminarily approving the settlement.  That protective order relates only

1

to production by third parties of information relating to class members.  *See* DE42.  Class Counsel's recently filed declarations demonstrate beyond doubt that little or no discovery was conducted.  *See* Hilicki Approval Decl., DE74-3 ¶17; Hilicki Fee Decl. DE76-3 ¶17.  The Keogh Law firm claims a total of $5,102.70 in expenses.  *Id.*  Of this, $3,615.22 relate to mediation expenses.  *See id.*  Mr. Owens's firm expended $490 filing and serving the complaint.  DE74-4, ¶34.  The remaining expenses all were incurred *after* this Court's January 26, 2016, Order, DE40, certifying a settlement class and granting preliminary approval of the settlement.  Of these expenses, $345.02 relate to subpoenas and certified letters seeking contact information for class members from third parties, and $212.99 to booking a flight for the final approval hearing. Hilicki Decls., DE74-3 ¶17 & DE76-3 ¶17.   Remaining discovery-related expenses total $547.81, and relate exclusively to Class Counsel's September 2, 2016, deposition of Objector Isaacson.  *Id.*[1]  These are the only discovery-related expenses claimed.

Thus, we now know that the only deposition that Class Counsel bothered to take in this case was the deposition of an Objector who questioned the settlement and fee application.  *See id.; see also Plaintiff's Response in Opposition to Objector Isaacson's Motion to Compel Discovery*, DE78 at 2 (ECF 3).  Indeed, it appears that no merits discovery was taken at all.  Dr. David S. Muransky, on whose adequacy as Class Representative this Court must pass, was never deposed.  Only Mr. Isaacson sat for a deposition in this case.

We also know that the Class Representative, Dr. David S. Muransky, did little or nothing to earn the $10,000 award requested for services that he supposedly rendered to the class.  He submitted a short declaration seeking appointment as Class Representative.  DE39-3.  But he neither sat for a deposition, nor did he even submit a declaration supporting the proposed settlement's final approval.

---

[1] The expense for "Isaacson Process Server for Subpoena" is puzzling.  Isaacson was not served by a process server.  Mr. Hilicki merely emailed the subpoena to Isaacson's counsel, John W. Davis.

As set forth in Isaacson's Motion for Access to Discovery, DE72, Class Counsel and Defense Counsel refused to answer questions of Isaacson's counsel concerning what discovery was conducted in this case, refusing even to say whether the Class Representative, Dr. David S. Muransky, had been deposed.  When Isaacson sought the Court's assistance to determine whether Dr. Muransky was deposed in this case, and to obtain any transcript of his testimony, Class Counsel's September 13, 2016, opposition revealed that Dr. Muransky was deposed in another case, on April 19, 2013, and testified there about his federal conviction for Medicare fraud.  DE78 at 2 (citing *A Aventura Chiro. Ctr., Inc. v. Med Waste Mgmt., LLC*, 12-cv-21695 (S.D. Fla.) at Dkts. 108-109).  That deposition's transcript shows that as of April 2013 Dr. Muransky expressed no remorse, choosing instead to denounce the federal criminal case against him as "a joke," while chastising the prosecutors who secured his guilty plea because they "disregarded my testimony.  So yes I'm still angry."   Muransky Depo., *A Aventura Chiropractic Center, Inc. v.  Med Waste Management,* LLC, No. 1:12-cv-21695-CMA, DE108-3 at 41-42 (ECF pp.12-13), Declaration of Eric Alan Isaacson ("Isaacson Decl."), Ex. A.

The complete absence of merits discovery – not even a deposition testing Godiva's explanations for its conduct – is disturbing.  Class Counsel's stonewalling, refusing to answer even whether Dr. Muransky was deposed and requiring Isaacson to file a Motion for Access to Discovery, is disturbing.  Add to this the fact that the settlement comes to less than two percent of Godiva's potential liability, that Class Counsel refuse to say how much time and labor they devoted to the case, that Class Counsel request a $10,000 bounty for a Class Representative who was not even deposed, and we have the earmarks of a collusive settlement designed to maximize Class Counsel's attorneys' fees at the expense of the class that they purport to represent.

### III.    The Request for Attorneys' Fees is Excessive and Unsupported

Requesting attorneys' fees of $2.1 million, Class Counsel invoke the "*Johnson* factors," of *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-19 (5th Cir. 1974), which the Eleventh Circuit has adopted for setting percentage fee awards.  *Camden I Condominium Ass'n*

3

*v. Dunkle,* 946 F.2d 768, 775 & n.3 (11th Cir. 1991) ("the *Johnson* factors continue to be appropriately used in evaluating, setting, and reviewing percentage fee awards in common fund cases").  These factors do not support the 33⅓% award of $2.1 million award that Class Counsel seek.

First and foremost, the Court must consider "*The time and labor required.*  Although hours claimed or spent on a case should not be the sole basis for determining a fee, they are a necessary ingredient to be considered.  The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson,* 488 F.2d at 717.  Here, however, Class Counsel refuse to tell the Court how much time they actually spent on the case.  They obviously did very little – apparently taking no discovery before settling.  It appears that the only deposition they took was of an Objector, Mr. Isaacson.  Class Counsel's minimalist effort in this case warrants a minimal fee – far below 33⅓%.  Class Counsel says that their own "[p]rior FACTA class actions required substantial litigation," with Class Counsel taking "18 depositions" in one case, and reviewing "175,000 pages of documents" in another.  DE76 at 9.  But Class Counsel already received payment for their work on those cases.  They ought not be paid for it again in this case, where they did no such work.

Second, a Court should consider "*The novelty and difficulty of the questions.*  Cases of first impression generally require more time and effort on the attorneys' part." *Johnson,* 488 F.2d at 718.  The issues presented by this case were by no means novel, nor did their litigation "require more time and effort on the attorneys' part." *Id.*  Class Counsel brag that they've done lots of similar FACTA cases, *see* DE76-3 ¶¶2-3, even taking discovery in some of them.  DE76 at 9.  Class Counsel say that in this particular case, proving that Godiva's violations were willful would have been difficult.  But Class Counsel did not even try.  They avoided the task by settling without taking discovery or testing Godiva's purported good-faith defense with a single deposition.  Class Counsel add that "assuming Plaintiff prevailed and proved a 'willful' violation, the resulting damage award itself presents a novel issue."  DE76 at 8.  But Class Counsel never

4

tried to develop evidence showing Godiva's willfulness, and thus never had to deal with that or any other "novel" issues.  This factor warrants a minimal fee award.

Third, as for the "*skill required to perform the legal service properly*," *Johnson,* 488 F.2d at 718, it probably would have required some skill to prove Godiva's willfulness.  But Class Counsel made no such effort.  They did not even take the discovery that would have been needed to prove Godiva's willfulness.  This factor warrants a minimal fee.

Fourth, the "*preclusion of other employment by the attorney*," *id.*, was minimal.  Class Counsel put too little time into this case for it to preclude much work on other cases.  This factor accordingly warrants a minimal fee award.

Fifth, with respect to "*The customary fee*," a Court may consider the fact "that various types of legal work command differing scales of compensation," and that when "minimum fee schedules are in existence and are customarily followed by the lawyers in a given community, they should be taken into consideration." *Johnson,* 488 F.2d at 718.  Class Counsel make no showing on this point.  Class Counsel suggest that one-third is customary.  But the cases they cite generally are ones in which the plaintiffs' lawyers put in a real effort, so the fee awards were supported by the substantial expenditure of time and labor – quite unlike this case.

Sixth, the Court must consider whether the fee is contingent.  As Class Counsel points out:  "Class Counsel had to advance the fees and expenses, and risked nothing in return."  DE76 at 9.  Indeed, Class Counsel risked $5,547.70 in expenses, $3,615.22 of which were incurred in mediation prior to settlement.  DE76-3, ¶17.  The risk of losing $5,547.70 in expenses, and perhaps writing off a few hours of attorney time, hardly justifies a $2.1 million attorneys' fee award where minimal time and labor were expended.

Seventh, a Court may consider the "*The time limitations imposed by the client or the circumstances.*  Priority work that delays the lawyer's other legal work is entitled to some premium.  This factor is particularly important when a new counsel is called in to prosecute the appeal or handle other matters at a late stage in the proceedings." *Johnson,* 488 F.2d at 718.  Class Counsel faced no such time limitations.

Eighth, a Court should consider "*The amount involved and the results obtained.*"  *Id.*  As Godiva points out, based on its violation of FACTA with at least 342,025 noncompliant receipts, "Godiva's potential exposure was over one-third of a billion dollars."  DE75 at 14 & n.42.  Class Counsel's proposed settlement recovers less than two percent of that.  In other words, the case settled for nuisance value, which hardly warrants a large attorneys' fee award.

Ninth, a Court should consider "*The experience, reputation and ability of the attorneys.*"  *Johnson,* 488 F.2d at 718-19.  Isaacson does not presently contest Class Counsel's experience, reputation, or ability.   He assumes they are capable lawyers.

Tenth, a Court may consider:

> (10) *The "undesirability" of the case.*  Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant.  *See NAACP v. Button,* 371 U.S. 415, 443 (1963); *Sanders v. Russell,* 401 F.2d 241 (5th Cir. 1968).  Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries.  This can have an economic impact on his practice which can be considered by the Court.

*Johnson,* 488 F.2d at 719.  Class Counsel cannot show that FACTA lawyers face community backlash similar to that suffered by civil-rights lawyers representing racial minorities in hostile communities.  A quick settlement with minimal work demonstrates that this was a very desirable case.

Eleventh, a Court may consider "*The nature and length of the professional relationship with the client.*  A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office.*"  *Johnson,* 488 F.2d at 719.  Class Counsel offer no evidence on this point.  Their client Dr. Muransky was not even deposed to test his adequacy as a class representative.

Twelfth, a Court should consider "*Awards in similar cases.*  The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit.*"  *Johnson,* 488 F.2d at 719.  Class Counsel cite a bevy of unpublished district-court decisions, none of them really similar to this case in which Class Counsel entered a

settlement without conducting discovery or taking a single deposition.  Class Counsel acknowledge, that "[p]rior FACTA class actions required substantial litigation activity," DE76 at 9, in stark contrast with this case.  The fee here should be considerably lower than in those cases.

Class Counsel contend their inability to show that substantial time and labor were devoted to litigating this case should be excused because Eleventh Circuit precedent on common-fund fee awards favors percent-of-fund awards rather than demanding a rigorous lodestar analysis requiring the Court to closely review the attorneys' time reports.  Yet *Camden I* itself emphasizes that the first factor to be considered in setting a percentage is "the time and labor required."  *Camden I,* 946 F.2d at 772 n.3.  Other factors, such as "the preclusion of other employment" necessarily rest upon a showing that substantial time and labor were in fact devoted to a case.  *Id*.  And *Johnson,* in discussing "time and labor required," emphasizes that although the "hours claimed or spent on a case should not be the sole basis for determining a fee, they are a necessary ingredient to be considered."  *Johnson,* 488 F.2d at 717.  Class Counsel have refused to provide necessary information, *see id.,* because they know it undercuts their fee request.

One need not, in setting a percentage based upon the "hours claimed or spent on a case," *see id.*, conduct a rigorous lodestar analysis with a detailed timesheet-by-timesheet evaluation of the attorneys' daily tasks.  The Second Circuit observed in *Goldberger v. Integrated Resources, Inc.,* 209 F.3d 43, 50 (2d Cir. 2000), that "the lodestar remains useful as a baseline even if the percentage method" is used to set a common-fund fee award, since the attorneys' hours in the case bear upon "the reasonableness of the requested percentage."  When so used, "the hours documented by counsel need not be exhaustively scrutinized by the district court. . . . Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)."  *Id.*  But even lawyers seeking a percent-of-fund award must provide some documentation of their time.  *See Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,* __ F.3d __, 2016 WL 3163073, at **7-**8 (6th Cir. 2016).

Considering the time actually devoted to the case is important in order to avoid creating serious conflicts of interest.   Rewarding Class Counsel with large multiples of their hourly rate for settling cases quickly at a fraction of their value – when really working the cases and securing an optimal recovery for the class would require many more hours that would be compensated at much lower rates – can too easily induce lawyers' to abandon the best interests of the class they are appointed to represent.   The worst-case scenario for Class Counsel in a case like this, where the lawyers hope to paid millions of dollars for doing virtually no work, would be winning a trial judgment, for that would take real effort and they would have to apply for a fee award under FACTA's fee-shifting provision – with Godiva benefiting from the Supreme Court's decisions holding that reasonable fees under such fee-shifting statutes generally must be limited  to compensation at the lawyer's reasonable hourly rates.  *See, e.g., Perdue v. Kenny A. Ex rel. Winn,* 130 S. Ct. 1662 (2010); *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992); *Hensley v. Eckerhart,* 461 US 424 (1983).  Thus district courts in considering a proposed settlement's adequacy and the proper compensation for the attorneys' from any common fund recovery really should consider the "time and labor" actually expended, *Camden I,* 946 F.2d at 772 n.3, and should avoid awarding a percentage that gives counsel a windfall fee for selling out cheap. *See id.*; *Johnson,* 488 F.2d at 717.

That only a few class members have objected to the fee application does not support a finding that it is reasonable.  As the Second Circuit observed in *Goldberger,* when class counsel apply for fees,

> the class members—the intended beneficiaries of the suit—rarely object. *See Federal Judicial Center, Empirical Study of Class Action in Four Federal District Courts* 76 (1996). Why should they? They have no real incentive to mount a challenge that would result in only a "minuscule" *pro rata* gain from a fee reduction.

*Goldberger,* 209 F.3d at 53 (quoting *Continental Illinois,* 962 F.2d at 573).  Those who objected are attorneys, attuned to recognizing lawyer overreaching.  Their objections are substantial.

**IV.    On the Current Record, the Proposed Settlement Cannot be approved as Fair,
Reasonable, and Adequate**

Isaacson's timely-filed objection argued that "[i]n approving a settlement, a '[d]istrict
court must find that the settlement is fair, adequate and reasonable and is not the product of
collusion between the parties,'" and that "[t]he burden of proving the fairness of settlement rests
squarely on its proponents." DE59 at 2. The settling parties have not carried that burden.

Class Counsel rest Dr. Muransky's motion for settlement approval on application of the
so-called "*Bennett* factors":

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or
> below the range of possible recovery at which a settlement is fair, adequate and
> reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and
> amount of opposition to the settlement; and (6) the stage of proceedings at which the
> settlement was achieved.

*Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984). Those factors weigh heavily
against approving the proposed settlement.

First, the likelihood of success at trial is reasonably high. Godiva concedes that it
violated FACTA with at least "342,025 noncompliant receipts," and that its "potential exposure
was over one-third of a billion dollars." DE75 at 14 & n.42. Godiva's primary defense
apparently would be its contention that the massive violation was not willful, and entirely the
fault of its vendor Toshiba – a contention Class Counsel did not bother to test by taking
discovery or deposing anyone from Godiva or Toshiba. Godiva apparently contends that its
innocence is demonstrated by the fact that it violated its own internal policy concerning credit-
card number truncation. DE75 at 5. But that is evidence that Godiva knew of its legal
obligations, supporting an inference that its breach of duty was worse than merely
negligent: "Courts have held that violation of a company's own policy supports an inference
of scienter." *Chalverus v. Pegasystems, Inc.,* 59 F. Supp. 2d 226, 235-36 (D. Mass. 1999).
Citing dictum from an unpublished district-court decision, Class Counsel say: "Some courts
view awards of aggregate, statutory damages with skepticism and consider reducing such
awards—even after a plaintiff has prevailed on the merits—on due process grounds." DE76, at 8

9

(citing *Aliano v. Joe Caputo & Sons - Algonquin, Inc.,* 2011 U.S. Dist. LEXIS 48323 at *13 (N.D. Ill. May 5, 2011)).  But they can find no decision that actually does that.  What they cite is not a holding.  It is dictum from an unpublished order denying defendants' motion for summary judgment, which dictum has never been favorably cited or applied by any other court.  The plaintiff class had reasonable prospects of winning at trial, and securing a potentially huge judgment.

Class Counsel note that "[a]nalysis of the second and third *Bennett* factors – the range of possible recovery and the point in that range at which a settlement is fair, adequate and reasonable – are often combined."  DE74 at 7.  Here, of course, the range of possible recovery was up to $342 million, with attorneys' fees to be borne by the defendants.  The $6.3 million settlement achieved is 1.8% of an optimal recovery, to be further reduced by a third for attorneys' fees, to just 1.2% of the best outcome for the class.  Cut the optimal trial judgment in half, and class members get just 2.4% of what they could recover at trial.

The next *Bennett* factor is "the complexity, expense and duration of litigation."  *Bennett,* 737 F.2d at 986.  But here the litigation was by no means protracted or complex – Godiva conceded a massive violation of FACTA.  The only question was Godiva's state of mind, which Class Counsel did not try to prove.

As for "the substance and amount of opposition to the settlement," *Bennett,* 737 F.2d at 986, Isaacson submits that the objections to the settlement are substantial, and that they are advanced by attorneys with the sophistication required to recognize a bad deal.  As lay persons cannot be expected to recognize and object to a bad deal in cases like this, the absence of a large number of objections is not very probative.  Empirical research shows uniformly low opt-out rates, more consistent with ignorance or apathy than with favor of a proposed settlement:  "The overwhelming inaction displayed by class members in the reported cases suggests that a class member's failure to opt out should not readily be equated to an affirmative consent to jurisdiction. Common sense indicates that apathy, not decision, is the basis for inaction."  Theodore Eisenberg & Geoffrey P. Miller, *The Role of Opt-Outs and Objectors in Class Action*

*Litigation: Theoretical and Empirical Issues,* 57 VAND. L. REV. 1529, 1561 (2004).  "Class members appear to be behaving out of apathy or rational ignorance rather than making a considered choice not to opt out or object."[2]

It must, moreover, be noted that Class Members are getting a far worse deal than that described in the Class Notice, which told them that "Class Counsel estimate that a Settlement Class member who submits a valid claim form ('Claim Form') may receive a payment of around $235 subject to pro rata distribution."  *See* Isaacson Decl., Ex. B.  But their final-approval papers tell a very different story, that class members "will receive approximately $60," DE74 at 7, which is $175 less than the Class Notice told them to expect.  The fact that few class members objected to the promise of $235 does not amount to support of the deal they actually are left with.

Finally, *Bennett* asks a court to consider "the stage of proceedings at which the settlement was achieved."  727 F.2d at 986.   Here, the settlement was reached before Class Counsel took any discovery sufficient to give them an informed basis for valuing the case.  *See In re Community Bank*, 418 F.3d 277, 307-308 (3d Cir. 2005) (criticizing reliance on informal discovery and observing that "without adequate exploration of the absent class members' potential claims, it is questionable whether class counsel could have negotiated in their best interests"); *Reynolds v. Beneficial Nat. Bank*, 260 F. Supp.2d 680, 685-689 (N.D. Ill. 2003) (denying settlement approval with extended criticism of plaintiffs' reliance on informal, unsworn discovery and "confirmatory discovery" taken after the settlement was already reached); *see also*

---

[2] *Id.* at 1563.  *See also id.* at 1532, n.8 ("class members overwhelmingly do nothing when provided the option to opt out"); John C. Coffee, *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation* (2000) 100 Colum. L. Rev. 370, 422 ("'rational apathy' rather than meaningful consent may explain low opt-out rates among class members in most settlement class actions involving 'modest claims and no real alternative because their claims are typically too small to litigate on an individual basis'")."; *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1137 (7th Cir. 1979) ("[a]cquiescence to a bad deal is something quite different than affirmative support."); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217- 18 (5th Cir. 1981) ("a low level of vociferous objection is not necessarily synonymous with jubilant support.").

*id*. at 687 n.4 (noting that "The only depositions taken in this case were in response to objections

to the settlement.").

> For Plaintiffs to have brokered a fair settlement, they must have been armed with
> sufficient information about the case to have been able to reasonably assess its strengths
> and value. Similarly, for a court to approve a proposed settlement, "[t]he parties must ...
> have engaged in sufficient investigation of the facts to enable the court to 'intelligently
> make ... an appraisal' of the settlement." *Polar Int'l Brokerage Corp. v. Reeve,* 187 F.R.D.
> 108, 114 (S.D.N.Y.1999) (quoting *Plummer v. Chem. Bank,* 668 F.2d 654, 660 (2d
> Cir.1982)); *see also, e.g., Carnegie v. Household Int'l, Inc.,* 371 F.Supp.2d 954, 957
> (N.D.Ill.2005). In considering a proposed settlement, a court therefore bears an obligation
> to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted
> prior to reaching an agreement. *See In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459
> (9th Cir.2000). "No one can tell whether a compromise found to be 'fair' might not have
> been 'fairer' had the negotiating (attorney) possessed better information or been animated
> by undivided loyalty to the cause of the class." *In re GMC Engine,* 594 F.2d at 1125 n.
> 24; *see also Reynolds v. Beneficial Nat'l Bank,* 260 F.Supp.2d 680, 695 (N.D.Ill.2003)
> ("Without adequate representation by plaintiffs' counsel, it is impossible to evaluate the
> chances of plaintiffs obtaining a greater recovery than under [the proposed]
> settlement....").

*Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (denying approval where

only three depositions, and little written discovery, were taken); *Millan v. Cascade Water Servs.,*

*Inc.,* 310 F.R.D. 593, 611 (E.D. Cal. 2015) (denying approval; class counsel's description of

thorough formal and informal discovery was not reflected in evidence, causing concern "that

counsel has not presented documentation to convince the Court that Plaintiff has considered

sufficient information to make an informed decision about fairness of the settlement.").

V.     **The Class Has Not Been Adequately Represented by the current Class
       Representative and Class Counsel**

The record to date raises serious questions about adequacy of representation.  The Class

Representative, Dr. Davis S. Muransky, is missing in action.  Though he lent his name to the

complaint, and has applied for a special "incentive award" of $10,000 for his supposed service as

Class Representative, Dr. Muransky was not even deposed.  He submitted no declaration

supporting either the proposed settlement or Class Counsel's fee request.  Neither he nor his

lawyers have explained what services he rendered to the class could possibly justify the $10,000 bonus that he now seeks.  *See* DE74 at 19-20.

The disparity between that $10,000 bonus and the relief obtained for the rest of the class casts doubt on Muransky's ability to represent the class's interest.  Here, as in *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,* __ F.3d __,  2016 WL 3163073, at*8 (6th Cir. 2016), "Class counsel argues in conclusory terms" that a $10,000 payment compensates the Class Representative for "time spent on the case."  That is troubling:

> To ensure that these amounts are not in fact a bounty, however, counsel must provide the district court with specific documentation—in the manner of attorney time sheets—of the time actually spent on the case by each recipient of an award.  Otherwise the district court has no basis for knowing whether the awards are in fact "a disincentive for the [named] class members to care about the adequacy of relief afforded unnamed class members[.]"

*Shane Group,* 2016 WL 3163073, at *8 (quoting *In re Dry Max Pampers Litig.,* 724 F.3d 713, 722 (6th Cir. 2013)).  The expected incentive award so far exceeds the average class members' compensation that it wrought "a patent divergence of interests between the named representative[] and the class." *Radcliffe v. Experian Info. Solutions,* 715 F.3d 1157, 1161 (9th Cir.2013); *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 959-60 (9th Cir. 2009); *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003).

That "two comparable FACTA class settlements" also negotiated by Class Counsel have "granted the exact same award requested here," DE74 at19, only heightens concerns about the adequacy of representation.  It appears that Class Counsel has an understanding with the class representatives who front their lawsuits that they will be taken care of with incentive awards, even if the rest of the class receives little compensation.  Sophisticated class-action lawyers that they are, Class Counsel must know that such arrangements are improper. *Rodriguez,* 563 F.3d at 959-60.

Class Counsel object that *Trustees v. Greenough,*105 U.S. 527 (1882), and *Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116 (1885), "predate Rule 23 by more than fifty years."  DE74 at 19.  Class actions predate Rule 23 by even more than that.  *See, e.g.,*

*Smith v. Swormstedt,* 57 U.S. (16 How.) 288, 302-03 (1853).  *Greenough* clearly focuses on a fund created for the benefit of bondholders as a class, both when it allows for an award of attorneys' fees from the common fund, and when prohibits allowing for reimbursement from that fund for the personal services rendered by a named plaintiff who was "suing on behalf of himself and other creditors." *Greenough,* 105 U.S. at 537.

Nor can Class Counsel rely on Rule 23 to create any right to claim a reimbursement barred by the Supreme Court's common-fund doctrine.  The Rules Enabling Act provides that the Federal Rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. §2072(b).  Thus, Rule 23 cannot be construed to create any right to recover a special incentive award.  Rule 23 precedents have, in fact, long held that "special rewards for counsel's individual clients are not permissible when the case is pursued as a class action.  Generally, when a person 'join[s] in bringing [an] action as a class action . . . he has disclaimed any right to a preferred position in the settlement.'" *Officers for Justice v. Civil Service Commission of the City and County of San Francisco,* 688 F.2d 615, 632 (9th Cir.1982); *accord, e.g., Bailey v. Great Lakes Canning, Inc.,* 908 F.2d 38, 42 (6th Cir. 1990); *Kincade v. General Tire Rubber Co.,* 635 F.2d 501, 506 (5th Cir. 1981); *Flinn v. FMC Corp.,* 528 F.2d 1169, 1175 (4th Cir. 1975).

Class Counsel also knew that a schedule making objections due before the filing of their own papers seeking final approval of the settlement and an award of attorneys' fees violates Rule 23, depriving class members of due process rights.  Muransky's Complaint, DE1 ¶43, and First Amended Complaint, DE16 ¶51 both quote (and thus incorporate by reference) a Seventh Circuit's decision overturning the settlement of a FACTA class action:

> To paraphrase the words of Judge Richard Posner in *Redman v. RadioShack Corp.*, --- F.3d ----, 2014 WL 4654477 (7th Cir. Sept. 19, 2014), Defendant has been engaged "in conduct that creates an unjustifiably high risk of harm that is either known or so obvious that it should be known..." Id. at *2.

DE1 ¶43; DE16 ¶51.  *Redman* of course holds:

> Rule 23(h) of the civil rules requires that a claim for attorneys' fees in a class action be made by motion, and "notice of the motion must be served on all parties and, for motions

14

by class counsel, directed to class members in a reasonable manner."  Class counsel did not file the attorneys' fee motion until after the deadline set by the court for objections to the settlement had expired.  That violated the rule.

*Redman,* 768 F.3d at 638-39.  "There was no excuse for permitting so irregular, indeed unlawful, a procedure."  *Id.*; *accord  Mercury Interactive Corp. Sec's Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re National Football League Players Concussion Injury Litig.,* No. 15-2206, slip op. at 66 (3d Cir. April 18, 2016) ("We have little trouble agreeing that Rule 23(h) is violated in those circumstances.") (dictum); Fed. R. Civ. P. 23, Advisory Committee Note to 2003 Amendments ("In setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion.").

Class Counsel suggest that class members with questions about the settlement and fee award were free to contact them.  But Class Counsel refused to answer Isaacson's counsel's questions concerning whether Dr. Muransky been deposed, and asking for a copy of any deposition transcript.  *See* Isaacson Motion to Compel, DE72.  Class Counsel refused to answer questions about what discovery had been taken.  *Id.* Defense counsel also refused to say whether Dr. Muransky had been deposed, invoking a protective order that was entered only after this Court's order preliminarily approving the settlement in this case, and that applied only to discovery from third parties concerning contact information for class members.  *Id.*

When Isaacson filed a Motion for Access to Discovery, DE 72, Class Counsel responded that there was no need for Dr. Muransky to be deposed in this case, because he was deposed in 2013 in some other class action, in which he served as class representative.  *See* DE78 at 2.

When asked in that case about his federal criminal conviction for fraud, for which he was barred from the Medicare and Medicaid programs for five years, Dr. Muransky expressed no remorse.  He instead expressed anger at the prosecutors who secured his guilty plea:  "I mean the whole thing was a joke.  The other offices were changing dates and doing wrong things.  I didn't do anything wrong except they saw on the patient intake sheet it said elbow and that's what I went on.  They disregarded my testimony.  So yes I'm still angry."  Muransky Depo., *A*

*Aventura Chiropractic Center, Inc. v.  Med Waste Management, LLC,* No. 1:12-cv-21695-CMA, DE108-3 at 41-42 (ECF pp.12-13).

But it is Class Counsel's conduct that raises the greatest concern, settling a substantial case without taking discovery on the most critical issue.  More than one court has noted that "class counsel 'might urge a class settlement at a low figure or on a less-than-optimal basis in exchange for red-carpet treatment on fees.'"  *In re Community Bank,* 418 F.3d 277, 308 (3d Cir. 2005) (quoting *Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 524 (1st Cir.1991)).  This appears to be such a case.

## VI.   Participation of Sophisticated Objectors and Experienced Objectors' Counsel is Desirable in Class Action Settlements

Although Class Counsel rant against "Professional Objectors," the precedents recognize that "objectors play an essential role in judicial review of proposed settlements of class actions." *Pearson v. NBTY, Inc.,* 772 F. 3d 778, 787 (7th Cir. 2014).  Reversing sanctions imposed on so-called "professional objectors," the Seventh Circuit observed that "'[w]here there is an absence of objectors, courts lack the independently-derived information about the merits to oppose proposed settlements.'"  *Vollmer v. Selden,* 350 F.3d 656, 660 (7th Cir. 2003) (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Litig.,* 55b F.3d 768, 803 (3d Cir. 1995)). Objectors "have the potential to play this important role even in the numerous valid class actions where each plaintiff is seeking to be compensated only by a few dollars."  *Vollmer,* 350 F.3d at 660.  "The slightness of individual recovery does not make the counsel's purpose invalid nor his role as objector less vital."  *Id.*

"It is desirable to have as broad a range of participants in the fairness hearing as possible because of the risk of collusion over attorneys' fees and the terms of settlement generally.  This participation is encouraged by permitting lawyers who contribute materially to the proceeding to obtain a fee." *Reynolds v. Beneficial N.B.,* 288 F.3d 277, 288 (7th Cir. 2002).  It is thus wholly proper "to file a non-frivolous objection with the purposes of increasing the value of the

16

settlement and thereby deriving a fee." *Vollmer,* 350 F.3d at 660. "Indeed, class lawyers may try to fend off interlopers who oppose a proposed settlement as insufficiently generous to the class; and given the role of such interlopers in preventing cozy deals that favor class lawyers and defendants at the expense of class members, their requests for fees must not be slighted."[3]

Thus, if Isaacson's objections confer a benefit on the class, his counsel will be entitled to apply for an award of fees – as Isaacson testified at his deposition. Deposition of Eric Alan Isaacson in *Muransky v. Godiva Chocolatier,* at 49(24)-50(13). *See* Isaacson Decl., Ex. C.

Of course, counsel for objectors occasionally run into a serious problem: Unscrupulous plaintiffs' counsel who will pay the objector to drop an objection that could cause problems for class counsel. When a class member whose individual claim in a class action might be worth a couple hundred dollars is offered many times that amount to drop her objection, she may be tempted to do so. Her counsel can advise against it – but the decision whether to press the objection or withdraw it is the client's, not the lawyer's. *See* ABA Model Rule of Professional Conduct 1.2(a) ("A lawyer shall abide by a client's decision whether to settle a matter."). If the client accepts the payment, class counsel who made it can be expected to revile the objector's counsel, who was powerless to stop the transaction, accusing him of filing the objection in order to extort the payment.

Rule 23 was amended in 2003 to deal with such problems, by requiring district court approval before an objection may be withdrawn. Fed. R. Civ. P. 23(e)(5). This made it much harder for unscrupulous class counsel to pay off objectors. Unfortunately, it did not cover appeals. So unscrupulous class counsel now offer objectors money to withdraw appeals. This

---

[3] *In re Trans Union Corp. Privacy Litig.,* 629 F.3d 741, 743 (7th Cir. 2011); *see* Fed. R. Civ. P. 23(h), Advisory Committee Note to 2003 Amendment (noting that in class actions "there may be a basis for making an award to other counsel whose work produced a beneficial result for the class, such as . . . attorneys who represented objectors to a proposed settlement under Rule 23(e)."); *In re Puerto Rican Cabotage Antitrust Litig.,* 815 F.Supp. 2d 448, 466-68 (D.P.R. 2011) (awarding objectors' counsel 10% of reduction in class counsel's attorneys' fees); *see also e.g.,* *Gottlieb v. Barry,* 43 F.3d 474, 490-91 & n.16 (10th Cir. 1994); *Fisher v. Procter & Gamble Mfg. Co.,* 613 F.2d 527, 547 (5th Cir. 1980); *White v. Auerbach,* 500 F.2d 822, 828-29 (2d Cir. 1974)).

practice has produced a further proposed amendment to Rule 23, currently subject to public comment, slated to take effect in 2018.  The Amended Rule 23(e)(5) will require district-court approval before any payment may be made to induce an objector to withdraw an appeal.[4]  Some district judges are not waiting for the amendment to take effect, but are issuing orders requiring court approval before class counsel may pay objectors to withdraw an appeal.[5]

In this case, Isaacson has assured his lawyers that he will not accept any payoff from Class Counsel in exchange for withdrawing an objection or dismissing an appeal.  At his direction, his lawyers drafted a proposed joint stipulation prohibiting payments in exchange for objectors' withdrawal of an objection or dismissal of an appeal without prior approval of the district court.  But Class Counsel refused to enter such a stipulation – as Isaacson testified at his deposition.  Isaacson Depo. at 54(15)-56(12). *See* Isaacson Decl., Ex. C.  It appears that Mr. Hilicki wants to keep his options open.

Mr. Isaacson, however, has no intention of accepting any payment from Mr. Hilicki. Neither do his lawyers, who have distinguished themselves by representing objectors seeking to confer class-wide benefits and by pursuing appeals to judgment.  *See, e.g., Rodriguez v. Disner,* 688 F.3d 645, 648 (9th Cir. 2012); *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 954 (9th Cir. 2009).

---

[4] *See* Report to the Standing Committee, Advisory Committee on Civil Rules, at pp. 3-4 (May 12, 2016) (online: https://law.duke.edu/sites/default/files/report_accr_to_src_5-16.pdf); *see also* Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure at 215-16, 228-29 (August 2016) (online: http://www.uscourts.gov/file/20163/download).

[5] *See, e.g., In re Automotive Parts Antitrust Litig.,* No. 2:12-cv-00103-MOB-MKM, Order Prohibiting Payment of Any Sums in Addition to Sums Awarded to Class Members without Special Approval of the Court, DE479, at 2 (E.D. Mich. May 11, 2016) ("Accordingly, pursuant to Rule 23(e)(5), court approval is required before an objection to a proposed settlement may be withdrawn. Further, court approval will be required before any payment may be made by Class Counsel in exchange for the withdrawal of an objection to or appeal of a settlement.").

And though Class Counsel derides Isaacson as a would-be extortionist, the truth is that Mr. Isaacson has had a distinguished career as a plaintiffs' class-action lawyer.  He has briefed and argued dozens of appeals, personally arguing before ten of the thirteen federal circuit courts.[6] He has represented respondents on the briefs before the United States Supreme Court.[7]  His publications include articles on securities class actions[8] and on civil rights.[9]  He has devoted thousands of hours to pro bono work, filing numerous briefs on behalf of religious organizations supporting equal rights for all.[10]

---

[6] *See, e.g., Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762 (1st Cir. 2011); *Staehr v. Hartford Financial Services Group, Inc.,* 547 F.3d 406 (2d Cir. 2008); *In re Constar International Inc. Securities Litig.*, 585 F.3d 774 (3d Cir. 2009); *Fener v. Operating Eng. Constr. Ind. and Misc. Pension Fund (Local 66)*, 579 F.3d 401 (5th Cir. 2009); *In re Vertrue Inc. Marketing and Sales Practices Litig.*, 719 F.3d 474 (6th Cir. 2013); *Illinois Municipal Retirement Fund v. CitiGroup, Inc.*, 391 F.3d 844 (7th Cir. 2004); *Romine v. Acxiom Corp.*, 296 F.3d 701 (8th Cir. 2002); *Makaeff v. Trump University, LLC*, 715 F.3d 254 (9th Cir. 2013); *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Financial Corp.*, 762 F.3d 1248 (11th Cir. 2014); *City of Harper Woods Employees' Retirement System v. Olve*r, 589 F.3d 1292 (D.C. Cir. 2009).

[7] *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,* 135 S.Ct. 1318 (2015) (Counsel of Record); *Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309 (2011); *Dura Pharmaceuticals, Inc., v. Broudo*, 544 U.S. 336 (2005).

[8] *See, e.g.*, Eric Alan Isaacson, The Roberts Court and Securities Class Actions: Reaffirming Basic Principles, 48 AKRON L. REV. 923 (2015).

[9] Eric Alan Isaacson, Free Exercise for Whom? – Could the Religious-Liberty Principle that Catholics Established in Perez v. Sharp Also Protect Same-Sex Couples' Right to Marry?, 92 U. DET. MERCY L. REV. 29 (2015); Eric Alan Isaacson, Are Same-Sex Marriages Really a Threat to Religious Liberty?, 8 STANFORD J. CIV. RTS. & CIV. LIBERTIES 123 (2012).

[10]  *See* Elaine McArdle, *One lawyer's religious brief for marriage equality,* UU WORLD, June 3, 2013 (http://www.uuworld.org/articles/religious-brief-marriage-equality); Shelby Meyerhoff, *UUA Recognizes San Diego Lawyer Eric Isaacson for Marriage Equality Work,* June 30, 2009) (http://www.uua.org/pressroom/press-releases/uua-recognizes-san-diego-lawyer-eric-isaacson-marriage-equality-work).  *See, e.g.,* Brief of Amici Curiae California Council of Churches, et al., *Obergefell v. Hodges,* 135 S. Ct. 2584, 2604 (2015); Brief of Amici Curiae California Council of Churches, et al., *Hollingsworth v. Perry,* 133 S.Ct. 2652 (2013); Brief of Amici Curiae California Council of Churches, et al., *Strauss v. Horton,* 207 P.3d 48 (Cal. 2009); Brief of Amici Curiae Unitarian Universalist Association of Congregations, et al., *In re Marriage Cases,* 183 P.3d 384 (Cal. 2008).

Based on his professional experience and commitments, Mr. Isaacson believes he is particularly well qualified to identify, and object to, inadequate class-action settlements and overreaching attorneys' fee applications.  Class Counsel's charges that Isaacson seeks to extort a fee for advancing a frivolous objection are wholly groundless.

Date:  September 20, 2016                           Respectfully submitted,


                                                    s/ John W. Davis
                                    _____
                                    John W. Davis (FL Bar No. 193763)
                                    john@johnwdavis.com
                                    Law Office of John W. Davis
                                    501 W. Broadway, Suite 800
                                    San Diego, CA  92101
                                    Telephone:  (619) 400-4870
                                    Facsimile:  (619) 342-7170

                                    *Attorney for class member Eric Alan Isaacson*

**CERTIFICATE OF SERVICE**

**CASE NO. 0:15-CV-60716-WPD**

I hereby certify that on September 20, 2016, I filed the foregoing document with the

Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this

day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of

record entitled to receive service.

Date:  September 20, 2016

_s/ John W. Davis_____
John W. Davis