# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 0:15-CV-60716-DIMITROULEAS/SNOW

Dr. David S. Muransky, individually and on behalf
of all others similarly situated,

                            Plaintiff,

      v.

Godiva Chocolatier, Inc.,

                            Defendant.

## OBJECTION TO MAGISTRATE'S REPORT AND RECOMMENDATION

## ON ATTORNEYS' FEES

**Table of Contents**

I. INTRODUCTION .................................................................................................... 1

II. OBJECTIONS ...................................................................................................... 2

    A.   Rule 23 and Due Process Require the Deadline for Objections to be Placed after, not before, Class Counsel File Final Settlement Approval and Attorneys' Fee Papers ................... 2

    B.   The Magistrate's Report and Recommendation Cannot Be Squared with the Requirements of *Camden I* and *Johnson* ........................................................................... 5

    C.   Disparate Treatment of Isaacson and his Counsel on the Conclusory Assertion that they are "Professional Objectors" is an Unjustified Denial of Due Process ................................... 11

III. CONCLUSION ................................................................................................... 20

# I.  INTRODUCTION

Class Member Eric Alan Isaacson respectfully objects, pursuant to Federal Rule of Civil Procedure 72, to the Magistrate's September 16, 2016, Report and Recommendation ("R&R") on Class Counsel's motion asserting a claim for common-fund attorneys' fees.  Docket Entry No. 82 ("DE82").

Under the schedule proposed by Class Counsel, DE39 at ECF21-22, and adopted by this Court, DE40, objections to Class Counsel's motion seeking attorneys' fees had to be filed by August 23, 2016.  DE40 at 10 ¶13.  Isaacson's objection, filed on August 21, 2016, pointed out that the schedule violated Rule 23(h) and deprived class members of their due process right to adequate notice concerning the basis for the proposed fee award.  DE59 at 3-5 (citing Fed.R.Civ.P. 23(h) and *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988 (9th Cir. 2010)).  Class Counsel filed their motion asserting a claim for attorneys' fees and supporting papers on Monday September 12, 2016, DE76, which motion was "referred to United States Magistrate Judge Lurana S. Snow for a report and recommendation."  DE77.  Magistrate Judge Snow filed the R&R on Friday September 17, 2016, DE82, shortly before Isaacson filed a motion for leave to file a supplemental brief, DE83, responding to Class Counsel's fee-application papers and the settlement-approval papers filed just four days before.  On September 19, 2016, this Court granted Isaacson leave to file that supplemental brief, DE86, which he did.  DE88.  On September 21, 2016, this Court held a fairness hearing, at which it directed any objections to the Magistrate Judge's R&R be filed by Monday September 26, 2016.

While a Magistrate Judge's Order on a nondispositive motion may be reviewed deferentially and set aside if clearly erroneous or contrary to law, here the Court requested a report and recommendation concerning a motion dispositive of Class Counsel's claim for common fund attorneys' fees.  A report and recommendation advising the Court is subject to de novo review:  "A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and

"may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge."  28 U.S.C. §1638(b)(1)C); *see* Fed.R.Civ.P. 72(b).

## II. OBJECTIONS

**A.     Rule 23 and Due Process Require the Deadline for Objections to be Placed after, not before, Class Counsel File Final Settlement Approval and Attorneys' Fee Papers**

The R&R fails to discuss Isaacson's objection, DE59 at 3-5, that Rule 23's notice requirements were violated by scheduling the deadline for objections to fall before Class Counsel filed papers seeking final approval of the settlement and an award of attorneys' fees.  It rejects Isaacson's contention "notice and an opportunity to be heard [are] fundamental constitutional guarantee of procedural due process," *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 174-75 (1974), on the basis that Isaacson's counsel did not seek leave to appear.  Isaacson submits that the R&R is both contrary to law and clearly erroneous on these points.

*Mercury Interactive* holds "a schedule that requires objections to be filed before the fee motion itself is filed denies the class the full and fair opportunity to examine and oppose the motion that Rule 23(h) contemplates."  *Mercury Interactive,* 618 F.3d at 995.  In *Mercury Interactive,* as here, the class notice specified that class counsel would seek attorneys' fees as a percentage of a common fund.  *Id.* at 990-91.  A class member "timely objected to 'counsel's proposed fee request for 25% of the $117.5 million settlement fund,' noted that the 'case was settled early, at the motion to dismiss stage,' and made generalized arguments that any fee awarded by the court should be no higher than 18 percent of the settlement fund."  *Id.* at 991.  Two weeks after the deadline for objections had passed, class counsel filed their moving papers seeking an award of attorneys' fees, stating "that lead counsel and other law firms worked a total of 17,001.06 hours on the case, valued at $8,396,593.20."  *Id.* at 991.

The Ninth Circuit held that Rule 23(h) "requires a district court to set the deadline for objections to counsel's fee request on a date *after* the motion and documents supporting it have been filed."  *Id.* at 993.

2

> The Advisory Committee Notes to the 2003 amendments to Rule 23(h) . . . elaborate that "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." Fed.R.Civ.P. 23, 2003 Advisory Committee Notes, ¶ 68. The Advisory Committee Notes further contemplate that, in appropriate cases, the court will permit an "objector discovery relevant to the objections." *Id.* ¶ 69. Clearly, the rule's drafters envisioned a process much more thorough than what occurred in this case.

*Mercury Interactive,* 618 F.3d at 994.

The Complaint and First Amended Complaint in this case both cite *Redman v. RadioShack Corp.,* 768 F.3d 622 (7th Cir. 2014), on the ease with which willfulness of FACTA violations may be shown.   DE1 ¶43; DE16 ¶51.  That decision also holds:

> Rule 23(h) of the civil rules requires that a claim for attorneys' fees in a class action be made by motion, and "notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Class counsel did not file the attorneys' fee motion until after the deadline set by the court for objections to the settlement had expired. That violated the rule.

*Redman,* 768 F.3d at 638-39.  "There was no excuse for permitting so irregular, indeed unlawful, a procedure." *Id.*; *accord Mercury Interactive.*, 618 F.3d at 994; *In re National Football League Players Concussion Injury Litig.,* No. 15-2206, slip op. at 66 (3d Cir. April 18, 2016) (dictum: "We have little trouble agreeing that Rule 23(h) is violated in those circumstances.").

 The R&R does not even discuss this violation of Rule 23(h).  The closest it comes is an assertion that "because the fee percentage sought by counsel for the Plaintiff was known to both, their ability to pose their objections was not hindered."  DE82 at 5.  For this the R&R cites an unpublished decision saying that "because the fee percentage sought by counsel for the Plaintiff was known to both [objectors], their ability to pose their objections was not hindered." *Nelson v. Mead Johnson & Johnson,* 484 Fed.Appx. 429, 435 (11th Cir. 2012).  But *Nelson* does not itself directly address the *Mercury Interactive* problem that requiring objections to be filed before Class Counsel's motion for attorneys' fees is available violates Rule 23(h) notice requirements.

Before those papers were filed here Class members would expect a motion for attorneys' fees "shall . . . (5) provide: (A) the identity, experience, and qualifications for each timekeeper for whom fees are sought; (B) the number of hours reasonably expended by each such timekeeper; (C) a description of the tasks done during those hours; and (D) the hourly rate(s)claimed for each timekeeper . . . ." S.D. Fl. Local Rule 7.3(a)(5). Class members were entitled to assume that Class Counsel would provide such information, particularly in light of the *Johnson* factors' requirement that any court determining an award of attorneys' fees must start by considering:

> (1) *The time and labor required.* Although hours claimed or spent on a case should not be the sole basis for determining a fee . . . they are a necessary ingredient to be considered. The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities.

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir. 1974) (court's emphasis).

Nor could Class Members have known from the Class Notice that Class Counsel entered the settlement taking no formal discovery, and without a single deposition. That became apparent when Class Counsel filed declarations showing that the ***only*** deposition they took in the case was of an objector, Mr. Isaacson. In a case where Godiva's willfulness was the central issue, with Godiva blaming third-party vendor Toshiba for its massive legal violations, class members were entitled to assume that competent counsel would at least test Godiva's good-faith defense with a few depositions of key persons at Godiva and Toshiba.

Isaacson objects moreover to the R&R's assertion that "as to the due process argument, it is important to note that neither of the lawyers representing the objectors has sought leave of court to appear in this case." DE82 at 5. The finding that Isaacson's due-process arguments may be ignored because his lawyers failed to seek "leave of court to appear in this case," DE82 at 5, is clearly erroneous and contrary to law. The Class Notice informed Isaacson that class

members "are welcome to . . . have your own lawyer appear."   DE76-2 at ECF p.19.   Isaacson

accordingly chose to appear through his counsel John W. Davis who is a member in good

standing of the bar of the Southern District of Florida.  On August 31, 2016, Mr. Davis filed a

motion asking leave for C. Benjamin Nutley, a member in good standing of the California bar, to

appear pro hac vice as co-counsel representing Isaacson.  DE62.  This Court granted that motion

on September 2, 2016.  DE63.

**B.     The Magistrate's Report and Recommendation Cannot Be Squared with the Requirements of *Camden I* and *Johnson***

The R&R acknowledges that under *Camden I Condominium Ass'n v. Dunkle,* 946 F.2d

768, 774 & n.3, a district court awarding fees as a percentage of a common fund "should weigh

the factors enumerated in *Johnson v. Georgia Highway Express Co.,* 488 F.2d 714, 717-19

(1974):  (1) the time and labor required . . . ."  DE82 at 2.  Yet Class Counsel's submissions

made it impossible to weigh those factors, for they submitted no evidence at all concerning their

"hours claimed or spent on a case," which "are a necessary ingredient to be considered."

*Johnson,* 488 F.2d at 717.  A court determining fees as a percentage of a fund must know the

lawyers' time in order to make an informed judgment under *Camden I* and *Johnson* concerning

the appropriate percentage to award.  The fact that lawyers seek fees as a percentage of the fund

does not relieve them of providing reasonable documentation of the time they actually expended.

*Shane Group, Inc. v. Blue Cross Blue Shield, 825* F.3d 299, 310 (6th Cir. 2016).

The R&R states that "[t]his court must reject the objectors' request to utilize the lodestar

method, since *Camden I* clearly dictates that the district judge must base the award on a

reasonable percentage of the common fund." DE82 at 5. The R&R thus rejected Isaacson's

contention that when claims are covered by a fee-shifting statute, a "reasonable fee" must be

interpreted in light of, and subject to, what the Supreme Court's intervening decisions have said

it means.  *See, e.g., Perdue v. Kenny A.,* 130 S.Ct. 1662 (2010).  Isaacson respectfully objects to

that ruling as contrary to law, on a point that he believes the Eleventh Circuit should consider.[1]

But even if *Camden I* continues to dictate that fees be awarded as a percentage of the

common fund, the fact that Class Counsel would only have received a lodestar award had they

won a plaintiffs' verdict at trial is directly relevant to the controlling *Camden I*/*Johnson* factors,

such as "the customary fee" and "[a]wards in similar cases."  *Johnson,* 488 F.2d at 718-19

(factors 5 & 12).  The Eleventh Circuit specifically held in *Waters v. Internat'l Precious Metals*

*Corp.,* 190 F.3d 1291, 1298 (11th Cir. 1999), that "while we have decided in this circuit that a

lodestar calculation is not proper" as the single determinant for attorneys' fees "in common fund

cases, we may refer to that figure for comparison." Under the Supreme Court's decisions on

reasonable fee awards when counsel actually ***wins*** claims covered by similar fee-shifting

statutes, the customary award, in similar cases, is the attorneys' lodestar.  *See Perdue,* 130 S. Ct.

at 1669, 1672-73, 1675-76; *City of Burlington v. Dague,* 505 U.S. 557, 562 (1992). Thus, the

*Johnson* factors themselves require the District Court at least to consider the attorneys' hours and

rates – i.e., their "lodestar" – in setting a percentage to be awarded from a common fund.

Accepting *Camden I* for present purposes the R&R thus is both clearly erroneous and

contrary to law.  For *Camden I* clearly requires district courts to employ the *Johnson* factors in

---

[1] "In *Perdue,* the Supreme Court 'relegated the *Johnson* approach to the sidelines in fee analysis.'" *E.I. Dupont de Nemours & Co. v. Kolon Industries, Inc.,* 911 F.Supp. 2d 340, 355 (E.D. Va. 2012) (quoting *McAfee v. Boczar,* 906 F.Supp. 2d 484, 491 (E.D. Va. 2012)).  The Supreme Court explained that the *Johnson* approach, with its subjective balancing of overlapping factors in effect "placed unlimited discretion in trial judges and produced disparate results," and that "unlike the *Johnson* approach, the lodestar calculation is 'objective,' . . .  and thus cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results."  *Perdue,* 130 S.Ct. at 1672 (citation omitted).  While it is true that *Perdue* involved a fee-shifting statute and no common fund, the reasons it gives for repudiating the *Johnson* approach apply as fully in common-fund cases as in fee-shifting cases.  Isaacson submits that *Johnson* has been "undermined to the point of abrogation by the Supreme Court," *United States v. Archer,* 531 F.3d 1347, 1352 (11th Cir. 2008), and so no longer is binding. *See Chambers v. Thompson,* 150 F.3d 1324, 1326 (11th Cir. 1998) ("'To the extent of any inconsistency between our [prior opinions'] pronouncements and the Supreme Court's supervening ones, of course, we are required to heed those of the Supreme Court.'") (citations omitted).

determining an appropriate percentage. *See Waters,* 190 F.3d at 1294 & n. 5.  For reasons set

forth herein, and in Isaacson's Supplemental Brief, DE88, the *Johnson* factors do not support the

R&R's recommended 33⅓% fee award.  *See* DE88 at 3-7.

> The very first thing that the Court must consider under *Camden I* and *Johnson* is:
>
> (1) *The time and labor required.*  Although hours claimed or spent on a case
> should not be the sole basis for determining a fee . . . they are a necessary
> ingredient to be considered.  The trial judge should weigh the hours claimed
> against his own knowledge, experience, and expertise of the time required to
> complete similar activities.

*Johnson,* 488 F.2d at 717.  But it was not possible for the R&R to consider the "time and labor

required," let alone to evaluate the "hours claimed or spent" and "weigh the hours claimed," *id.,*

as required by *Camden I* and *Johnson* when Class Counsel have refused to supply that

information.   Class Counsel who refuse to provide critical information required by Local Rule

7.3, *Camden I,* and *Johnson,* should be awarded no fee until they provide that information –

which they have refused to do because they know that they have not done the kind of work that

would justify a $2.1 million, 33⅓% fee.

> The R&R "finds, for the reasons advanced by Plaintiff and summarized above" in the

R&R's description of Class Counsel's arguments, that the 33⅓% fee award is warranted by:

> (1) the novelty and difficulty of the issues; (2) the high level of skill required; (3)
> preclusion of other employment owing to counsel's acceptance of the case; (4) the
> prevalence of 33 1/3% as a contingency fee in this District; (5) the results
> obtained; (6) the experience, reputation, and ability of the attorneys; (7) the
> 'undesirability' of the case; (8) awards of 1/3 of the fund in similar cases in this
> District, and (9) the value of the non-monetary relief obtained.

DE82 at 6.  Notably missing is "*The time and labor required,*" which *Johnson* holds are a

"necessary ingredient to be considered" in determining any fee award.  *Johnson,* 488 F.2d at 717.

> As for the "novelty and difficulty of the issues," *Johnson* explains that "[c]ases of first

impression generally require more time and effort on the attorneys' part." *Johnson,* 488 F.2d at

718.  But Class Counsel litigated no issues of first impression here.  FACTA cases are hardly

novel; Class Counsel have litigated many such cases, *see* DE76-3 ¶¶2-3, even taking discovery in some of them.  DE76 at 9.   If proving Godiva's willfulness might conceivably have posed a challenge even under FACTA's relaxed standard, *see Redman,* 768 F.3d at 627, 633, 638, it was a challenge that Class Counsel chose to avoid.  They took not a single deposition to test Godiva's argument that its massive violation was not willful, and that a third-party vendor, Toshiba really was to blame.  Class Counsel took no deposition of anyone at either Godiva or Toshiba.  They did not litigate any novel or difficult issues.  It may have required a "high level of skill," DE82 at 6, to really litigate the case, but Class Counsel chose not to do so.

The R&R cites "(3) preclusion of other employment owing to counsel's acceptance of the case," DE82 at 6, but a case to which Class Counsel devoted so little time that they refuse to state their hours cannot have precluded much work on other cases.

The R&R cites "(4) the prevalence of 33 1/3% as a contingency fee in this District," and "(8) awards of 1/3 of the fund in similar cases in this District."  DE82 at 6.  This obedience to a 33⅓% standard in the District calls to mind Judge Learned Hand's opinion on common-fund fee awards in *Barnett v. Equitable Trust Co.,* 34 F.2d 916, 919 (2d Cir. 1929):

> If there be a rule in the District Court that in such cases allowances shall be made upon a basis of one-third of the amount involved, we do not know it and we disapprove it; it certainly has never had our sanction. We do not mean, of course, that a percentage basis is in itself improper; but it cannot be fixed at the same rate for all cases regardless of the amount. The allowance is a payment for legal services, not a speculative interest in a lawsuit.

*Id.* at 919.  The Second Circuit rejected the 33⅓% figure, cutting the fee award to $100,000, *id.,* which the Supreme Court then reviewed and reversed because it was still too much.  *See United States v. Equitable Trust Co.,* 283 U.S. 738 (1931). The Supreme Court halved the fee award from $100,000 to just $50,000, apparently representing less than 10% of the equitable fund. *Compare Equitable Trust,* 283 U.S. at 746-47, *with Barnett,* 34 F.2d at 919.  This Court should not commit the same mistake that the district court did in *Equitable Trust.*  In *Waters,* the Eleventh Circuit held that an "upward adjustment" to 33⅓% was warranted on the specific facts

of that case – in order to account "for the time taken to reach settlement through seven years of litigation and five months of trial," where "[f]orty-eight witnesses testified at the trial alone," and where the 33⅓% award amounted to "only a modest lodestar multiplier of 1.05%." *Waters,* 190 F.3d at 1295, 1298.  No such upward adjustment can be justified here, where Class Counsel settled without litigating the case, and refuse even to state their time and labor expended.

In considering the fifth and twelfth *Johnson* factors, "the customary fee" and "awards in similar cases," the Court must take note that in successful cases covered by statutory fee-shifting provisions, the customary and reasonable fee award is the attorneys' lodestar.  *See Perdue,* 130 S. Ct. at 1669, 1672-73, 1675-76; *Dague,* 505 U.S. at 562.  Attorneys who would get their reasonable hourly rate for winning the case ought not be awarded many times their reasonable hourly rate for settling it for less than two percent of potential damages.

With respect to the R&R's point "(5) the results obtained," DE82 at 6, a nuisance-value settlement simply does not warrant a high-end fee ward when recovery of a far larger judgment was reasonably likely given Godiva's concession that it knew of its duty to truncate yet violated its own internal policy to the tune of "342,025 noncompliant receipts," so that "Godiva's potential exposure was over one-third of a billion dollars."  Godiva Mem., DE75 at 14 & n.42.  The R&R errs in deeply discounting the odds that Godiva's massive violation could be shown to be willful:  "To act 'willfully' is, for purposes of civil law, to engage in conduct that creates 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Redman,* 768 F.3d at 627.  Under FACTA's relaxed willfulness requirement "'it is enough that the risk, besides being serious and eminently avoidable, is obvious; it need not be known to the defendant.'"  *Id.* (citation omitted).

Godiva's internal policy requiring FACTA truncation shows that the risk clearly was both known and ignored.  Here, as in *Redman,* "[k]nowing the risk and failing to take any precaution against it – though a completely adequate precaution would have cost nothing – were indicative of willful violation."  *Id.* at 638.  Fully aware of FACTA's truncation policy, Godiva committed a massive violation:  Godiva's September 12, 2016, memorandum on settlement approval ***admits***

9

to violating FACTA with at least "342,025 noncompliant receipts," and concedes that "Godiva's potential exposure was over one-third of a billion dollars."  Godiva Mem., DE75 at 14 & n.42. It faced massive liability if a jury found that it ignored such an obvious risk, *see Redman,* 768 F.3d at 627, *plus* potential punitive damages, *plus* liability for Class Counsel's attorneys' fees under FACTA's fee-shifting provision.  15 U.S.C. §1681n(1)-(3).  Class Counsel have instead arranged for Godiva to settle by paying just $6.3 million – about 1.8% of its potential liability excluding potential punitive damages – with Class Counsel proposing to take one third of that as attorneys' fees, leaving the class with 1.2% of what it might have received with a plaintiff's trial judgment. The R&R itself seems to recognize that this is a nuisance-value settlement:

> Indeed, the Defendant states, in its Memorandum in Support of Final Approval (ECF No. 75), that the case was settled to minimize expenses after this Court declined to dismiss the Amended Complaint. The Memorandum goes on to explain in detail the reasons why it was unlikely that the Plaintiff could have proved that the Defendant willfully violated FACTA.

DE82 at 5.  Given the ease of meeting FACTA's relaxed willfulness standard, *see Redman,* 768 F.3d at 627, the R&R clearly errs by finding it "unlikely that the Plaintiff could have proved that the Defendant willfully violated FACTA."  DE82 at 5.  A nuisance-value settlement, for less than two percent of Godiva's potential liability, is a poor result warranting a reduced fee award.

The R&R cites "the experience, reputation, and ability of the attorneys," DE82 at 6. Isaacson will assume that they are capable lawyers.

The R&R asserts a large fee is warranted by "the 'undesirability' of the case."  DE82 at 6.  Specifically:  "Based on the unsettled issues and the fact that other FACTA class actions have required substantial litigation before achieving settlements similar to the one reached in this case, the case was not a desirable one."  DE82 at 3.  But that is not what *Camden I* and *Johnson* mean by the term.  This is what they mean:

> (10) *The "undesirability" of the case*.  Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant.  *See NAACP v. Button,* 371 U.S. 415, 443 (1963); *Sanders v. Russell,* 401 F.2d 241 (5th Cir. 1968). Oftentimes his decision to help eradicate discrimination is not

pleasantly received by the community or his contemporaries.  This can have an economic impact on his practice which can be considered by the Court.

*Johnson,* 488 F.2d at 719; *see Durrett v. Jenkins Brickyard, Inc.,* 678 F.2d 911, 917 & n.6 (11th Cir. 1982).  Class Counsel cannot show that FACTA lawyers face social ostracism like that suffered by civil-rights lawyers representing racial minorities in hostile communities.  A quick settlement with minimal work shows that this was a very desirable case.

"Regarding the fact that a relatively small amount of work was performed because a settlement was reached early in the proceedings," the R&R states "that the considerable savings of time and money achieved by a settlement promotes judicial economy, and counsel should not be penalized for achieving this benefit."  DE82 at 5.  But it does not "penalize" counsel to be fairly compensated for the time and labor actually devoted to the case.   And the fact that doing less work could be construed to justify a higher fee, rather than a lower one, only underscores the concerns about the *Johnson* approach expressed in *Perdue*.  *See supra* at 5-6 & n.1.

**C.     Disparate Treatment of Isaacson and his Counsel on the Conclusory Assertion that they are "Professional Objectors" is an Unjustified Denial of Due Process**

The R&R finds that Isaacson's objections may be discounted because "Plaintiff aptly characterizes . . . Mr. Isaacson and Mr. Davis as 'professional objectors' who threaten to delay resolution of class action cases unless they receive extra compensation."  DE82 at 5.  "Regarding Mr. Davis and Mr. Isaacson, the Plaintiff listed numerous instances in which each man has represented objectors in federal class actions."  DE82 at 5 (citing DE76 at 14-15).  Actually, Class Counsel managed to list only three instances in which Mr. Isaacson has ever represented an objector.  *See* DE76 at 15 n.9.  But characterizing either Isaacson or Davis as a "professional objector" with improper motives is grossly unfair.  And discounting Isaacson's arguments on this basis is a denial of fundamental due process.

The R&R is clearly erroneous and contrary to law.  In *Vollmer v. Selden,* 350 F.3d 656 (7th Cir. 2003), the Seventh Circuit overturned a district court's conclusion that an objector and his lawyers, Selden and Rosenthal, sought "'solely to extort a fee for themselves'" based on "its

finding that '[t]hese attorneys have seemingly made intervening in nationwide class actions a routine practice.'" *Vollmer,* 350 F.3d at 662.   The Seventh Circuit reversed, explaining:

> Even assuming that Selden and Rosenthal have routinely engaged in a practice of intervening [to object to class-action settlements], this finding teaches us little about the propriety of their motives for intervening in this case. Each of these past interventions may have been made out of concern for the class members or at least with the intention of increasing the value of the settlement.  In fact, with the exception of the case at bar, none of Selden and Rosenthal's interventions have ever been found to be frivolous or motivated by an improper purpose.[2]

Neither Isaacson's nor his counsel's representation of objectors in other cases may be used to impugn his – or their – motives in this case.  As in *Vollmer,* the record does not show that Mr. Isaacson or his counsel, Mr. Davis and Mr. Nutley, were ever sanctioned, reprimanded or disciplined.  None of them has been.  Deposition of Eric Alan Isaacson, attached as Exhibit 2 to the Declaration of Eric Isaacson submitted herewith, 6:4-15;  Nutley Decl., ¶9; Davis Decl., ¶5.  Nor may Isaacson's objections fairly be characterized as frivolous.

Though he has represented objectors but three times, the R&R labels Isaacson a "professional objector" on the authority of Class Counsel who purportedly "listed numerous instances in which Isaacson has represented objectors in federal class actions." DE82 at 5 (citing DE76 at 14-15).   In fact, Class counsel could point to exactly three cases in which Isaacson has represented objectors, *see* DE74 at 15 n.9, none of them cases in which Isaacson demanded or accepted any payment in return for withdrawing an objection – as Class Counsel know from Mr. Isaacson's deposition in this case – and in none of which was Isaacson sanctioned, censured or otherwise admonished.  Isaacson Decl., at 6:4-15.

---

[2] *Vollmer,* 350 F.3d at 662; *see also In re Bayer Corp. Combination Aspirin Prod. Mktg. and Sales Practices Litig.*, 2013 WL 4735641, *2 (E.D. N.Y. 2013) (A history of objecting to class action settlements "alone is not indicia of bad faith or vexatious conduct."); *cf. In re Lawnmower Engine Horsepower Mktg. & Sales Practices Litig.*, No. MDL 08-1999, 2010 WL 4630846, at *1 (E.D. Wis. Nov. 2, 2010) (finding no evidence of improper purpose in objectors' appeals, and refusing to base bond on findings of bad faith against objectors' counsel by "other judges in other cases.").

In reality, Mr. Isaacson is an experienced appellate attorney who for twenty-six years worked with leading plaintiffs' class-action firms, briefing and arguing scores of appeals before the federal circuit courts.[3]  He has published articles relating to federal securities class actions.[4] He also has published extensively on civil rights, religious liberty, and church-state issues.[5]  He

---

[3] See Isaacson Decl., Decl. Ex. 1 (Isaacson curriculum vitae); *see, e.g.*, *Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Financial Corp.*, 762 F.3d 1248 (11th Cir. 2014); *Indiana State District Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498 (6th Cir. 2013), vacated sub nom. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, No. 13-435*, 2015 U.S. LEXIS 2120 (U.S., Mar. 24, 2015); *In re Vertrue Inc. Marketing and Sales Practices Litig.*, 719 F.3d 474 (6th Cir. 2013); *Makaeff v. Trump University, LLC*, 715 F.3d 254 (9th Cir. 2013); *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011), overruled by *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund, No. 13-435*, 2015 U.S. LEXIS 2120 (U.S., Mar. 24, 2015); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762 (1st Cir. 2011); *In re Trans Union Corp. Privacy Litig.* (Appeal of Dawn Adams Wheelahan), 629 F.3d 741 (7th Cir. 2011); *City of Harper Woods Employees' Retirement System v. Olver*, 589 F.3d 1292 (D.C. Cir. 2009); *In re Constar International Inc. Securities Litigation*, 585 F.3d 774 (3d Cir. 2009).

[4] Eric Alan Isaacson, *The Roberts Court and Securities Class Actions:  Reaffirming Basic Principles,* 48 AKRON L. REV. 923 (2015); Patrick J. Coughlin, Eric Alan Isaacson & Joseph D. Daley, *What's Brewing in* Dura v. Broudo*?  The Plaintiffs' Attorneys Review the Supreme Court's Opinion and its Import for Securities-Fraud Litigation,* 37 LOYOLA U. CHICAGO L. J. 1 (2005); William S. Lerach & Eric Alan Isaacson, *Pleading Scienter Under Section 21D(b)(2) of the Securities Exchange Act of 1934:  Motive, Opportunity, Recklessness and the Private Securities Litigation Reform Act of 1995,* 33 SAN DIEGO L. REV. 893 (1996); Patrick J. Coughlin & Eric Alan Isaacson, *Securities Class Actions in the United States,* in LITIGATION ISSUES IN THE DISTRIBUTION OF SECURITIES:  AN INTERNATIONAL PERSPECTIVE (William G. Horton & Gerhard Wegen, eds., Kluwer International/International Bar Association, 1997).

[5] *See, e.g.,* Eric Alan Isaacson*, Free Exercise for Whom? -- Could the Religious-Liberty Principle that Catholics Established in* Perez v. Sharp *Also Protect Same-Sex Couples' Right to Marry?,* 92 U. DET. MERCY L. REV. 29 (2015); Eric Alan Isaacson, Goodridge *Lights A Nation's Way to Civic Equality,* BOSTON BAR JOURNAL, Nov. 15, 2013; Eric Alan Isaacson, *Are Same-Sex Marriages Really a Threat to Religious Liberty?,* 8 STANFORD J. CIV. RTS. & CIV. LIBERTIES 123 (2012); Eric Alan Isaacson, *Assaulting America's Mainstream Values:  Hans Zeiger's* Get Off My Honor:  The Assault on the Boy Scouts of America, 5 PIERCE L. REV. 433 (2007) (review essay); Eric Alan Isaacson, *Traditional Values, or a New Tradition of Prejudice?  The Boy Scouts of America vs. the Unitarian Universalist Association of Congregations,* 17 GEO. MASON U. CIV. RTS. L. J. 1 (2006); Eric Alan Isaacson, *The Flag Burning Issue:  A Legal Analysis and Comment,* 23 LOYOLA L.A. L. REV. 535 (1990).

has represented respondents on the briefs in three cases before the United States Supreme Court.[6]

He has filed numerous amicus curiae briefs in the Supreme Court, and in state and federal

appellate and trial courts.[7]   Representing objectors in just three cases is no basis for impugning

Mr. Isaacson as a "professional objector" whose legal contentions may be discounted or ignored.

Neither may the Court penalize Isaacson on account of his lawyers.  Like Mr. Isaacson,

Mr. Nutley is an experienced class-action litigator.  *See* Nutley Decl. ¶¶4-7.    Mr. Davis, too,

has previously been appointed to serve among class counsel.  Davis Decl., ¶3.   Although each

has represented objectors in a variety of proceedings, never in those proceedings has any court

found that either of them acted improperly.  Quite the contrary, Isaacson chose his counsel

precisely because they have a track record of successfully pressing meritorious objections.  They

have many times persuaded trial courts to deny final approval of settlements. See Davis Decl.,

¶10; Nutley Decl., ¶12 [8]  They have induced trial courts to reduce excessive attorneys' fees.

---

[6] Brief for Respondent, *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,*
135 S.Ct. 1318 (2015) (U.S. 2015)
(http://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/BriefsV4/13
-435_resp.authcheckdam.pdf);

[7] *See, e.g.,* Amicus Curiae Brief of NECA-IBEW Welfare Trust Fund, *Campbell-Ewald Corp. v.
Gomez,* No. 14-857 (U.S. January 20, 2016)
(http://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/briefs_2015
_2016/14-857_amicus_resp_NECA-IBEWWelfareTrustFund.authcheckdam.pdf); Amicus
Curiae Brief of California Council of Churches, et al., *Obergefell v. Hodges,* Nos. 14-556, 14-
562, 14-571, 14-574 (U.S. June 26, 2015)
(http://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/BriefsV5/14
-556_amicus_pet_CouncilofChurches.authcheckdam.pdf); Amicus Curiae brief of Securities and
Civil Procedure Law Professors *Amgen Inc. v. Connecticut Retirement Plans & Tr. Funds,* __
U.S. __, 133 S. Ct. 1184 (2013)
(http://www.americanbar.org/content/dam/aba/publications/supreme_court_preview/briefs/11-
1085_resp_amcu_cpslp.authcheckdam.pdf).

[8] *Aperture Owners Association vs. Citymark Union Street LLC, et al.,* San Diego County
Superior Court No. 37-2012-96396-CU-CD-CTL [Nutley and Davis] see Davis Decl. Ex. 5;
*Schlesinger v. Ticketmaster,* Los Angeles Sup. Ct. No. BC304565 (Sept. 26, 2012) [Davis];
*Edelson v. American Home Shield of California, Inc.,* San Diego Sup. Ct. No. 37-2007-00071725
[Davis and Nutley]; *Wilson v. Direct Buy,* D. Conn. No. 3:09-cv-00590 [Davis]; *Consumer
Cause, Inc. v. Whole Foods Markets, et al.*  (Los Angeles Sup. Ct. No. BC251579) (final
approval denied, class decertified, case dismissed); *MacBeth, et al. v. Barneys New* York (San
Diego Sup. Ct. No. GIN 022990) [Nutley].

Davis Decl., ¶6 and Ex. 3.[9]  In numerous cases, they have prevailed in motion practice and

negotiation with settling parties, producing improvements to class and fee procedures. Nutley

Decl., ¶14; Davis Decl., ¶6.[10]  They have also prevailed in important appeals.[11]  Take, for

example, *Radcliffe v. Experian Information Solutions Inc.,* 715 F. 3d 1157, 1159 (9th Cir. 2013),

---

[9] *Davis v. Cole Haan* , N.D. Cal. No. 11-01826, Doc. 90 [Davis and  Nutley] (attorneys' fees to
be calculated under CAFA rather than terms of settlement agreement, resulting in 90% reduction
of fee); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 524 (E.D.N.Y.
2003) [Davis] (objectors reduced class counsel's requested fees by $380 million thereby
increasing the value of the common fund); *Lees v. Anthem*, USDC, E.D.M.O., Case No. 4:13-
CV-01411, Doc. 68 at 32:3-9 [Davis] (per objection, trial court reduced class counsel's fee by
$458,333.00 thereby increasing class members' recovery and approved an award of fees to Mr.
Davis).

[10] *Foos v. Ann Taylor*, S.D. Cal. No. 11-cv-2794, Doc. 71 [Davis and  Nutley] (successful *ex
parte* motion for disclosure of claims rate); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 49 (Cal.
Ct. App. 2008) [Nutley] (initial objections resulted in revisions to the settlement, new notice, and
increased class benefits); *In re TV Writers Cases* (Los Angeles County Sup. Ct. No. BC 268836)
[Nutley] (Mr. Nutley assisted in creating Implementation Order No. 1, by which the trial court
approved and ordered specific rules implementing the which non-profit aid foundation created by
the settlement); *Nguyen, et al. v. First USA Bank, NA, et al.* (Los Angeles Sup. Ct. No.
BC222846) [Nutley] (per objection, trial court conditioned approval on settlement amendment so
that fluid recovery fund would be used for the benefit of Californians); *Flannery v. McCormick
& Schmick's Seafood Rests.*, No. B257450, 2015 Cal. App. Unpub. LEXIS 2975, at *14-15, 17-
18 (Cal. Ct. App. April 29, 2015) [Mr. Davis and Mr. Nutley] (objectors successfully obtained a
narrowing of the class definition and release before the trial court); *Christopher Coburn v.
Stamps.com, Inc.* (Los Angeles Sup. Ct. No. BC 353721) [Davis; Nutley retained on appeal]
(appeal settled by obtaining agreement of the settling parties to make a second distribution of
transferrable credits); *Berry, et al. v. Brookstone Co., Inc.*  (Los Angeles Sup. Ct. No.
BC268875) [Nutley] (objection settled on appeal by reducing incentive awards, increasing class
recovery by more than $100 per class member, and agreement by class counsel to employ best
practices in keeping lodestar information); *Mayemura, et al. v. Chase Manhattan Bank, NA. et al.*
(U.S.D.C. Central Dist. CA No. CV-00-753 LGB) [Nutley] (successful motion to unseal
evidence filed under seal in support of settlement approval); *Rueda, et al. v. Schlumberger Resc.
Mgmt. Svcs., Inc.* (Los Angeles Sup. Ct. No. BC235471) [Nutley] (stipulated amendments to
settlement that: (1) restricted the use of fluid recovery funds (2) specifically excluded personal
injury claims from the release, and (3) resolved an ambiguity so that the defendant could not
later eliminate its obligations under the settlement).

[11] *See also, e.g., In re Cendant Corp. Litig.,* 264 F.3d 201 (3d Cir. 2001) [Nutley]; *Johns, et. al.
v. Visa U.S.A.*, No. CGC-03-004335 (San Francisco Sup. Ct.), decided on appeal *sub. nom. In re
Credit/Debit Tying Cases v. Visa U.S.A. Inc.* (Cal.App. 2012) [Davis] (reversing and remanding
on ground that the scope of the class-wide release was too broad*.);  In Credit/Debit Card Tying
Cases*, 2012 WL41995 (Judicial Council Coordination Proceeding No. 4335) [Mr. Davis].

where Mr. Nutley, Mr. Davis, and David Boies, a lawyer of great renown, each represented objectors. Their victory in that case was based on the precedent that Nutley and Davis established in *Rodriguez, et al. v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), in which they exposed a disabling conflict among lead counsel and their class representative clients occasioned by an *ex ante* incentive agreement. Furthermore, as a consequence of Mr. Nutley's arguments about the effect of the conflict on lead counsel's fee, the district court on remand ordered lead counsel's fee forfeited for the conflict, a result upheld on appeal. *Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012). By and large, their work in objections has been well received by courts. Davis Decl. ¶4, Ex. 1-5; Nutley Decl. ¶11-13, Ex. 2, 4, 5.

Class Counsel have sought to tar Isaacson and his lawyers by quoting from an article by Professor William Rubenstein, editor of NEWBERG ON CLASS ACTIONS, in which Professor Rubenstein observed that some objectors' counsel are "more interested in coercing a fee than in correcting a wrong." DE76 at 14. The same Professor Rubenstein submitted a declaration in the *Rodriguez v. West* case opining that Mr. Nutley and his firm:

> obtained unique results in this case because their actions in objecting to the settlement appear to have contributed to two significant outcomes: explication of a major principle of law (a new Ninth Circuit precedent concerning the conflict of interest in *ex ante* incentive agreement contracts) and a major change in fact (the return of about $9 million to this class's settlement fund). These are impressive results for objectors, well beyond the types of changes successful objectors are typically able to achieve.

Nutley Decl., Ex. 1 (Rubenstein Declaration) at 1-2 (footnotes omitted). Professor Rubenstein further opined these results were "accomplishments at the very high end of objector practice" and that they "outstrip the types of accomplishments objectors normally make in class suits." *Id.*, at 21 ¶¶33-34.

Class Counsel suggest that Mr. Davis was criticized for appearing as an objector in *Davis v. Apple Computer, Inc.*, 2005 Cal. App. Unpub. LEXIS 7190 at *4, *38 (Cal. App. Aug. 12, 2005). DE76 at 14-15. That is misleading. Mr. Davis was a representative plaintiff in that case,

16

an action against Apple Computer concerning a warranty issue; he was not acting as class counsel or representing an objector.  Class Counsel's quote is taken from a portion of the appellate opinion concerning a potential conflict of interest that Mr. Davis cured by retaining new counsel.  The issue on appeal was whether Mr. Davis could then serve as the plaintiff in the representative case; both the trial court and the reviewing court found that he could.  *Id*. at *12-13.

   Class Counsel have also implied that a district court in the Western District of Oklahoma found that Messrs. Davis and Nutley were part of a "cartel" of professional objectors who file "vexatious and frivolous objections."  DE76 at 15.  That is false.  In fact, U.S. District Court Judge DeGiusti ***expressly rejected*** that premise and overruled the objections to their admission *pro hac vice*, saying:

> The Settling Parties oppose the motions and allege Messrs. Davis and Nutley are part of a cartel of professional objectors who file vexatious and frivolous objections to stall class settlements in exchange for payoffs [Doc. Nos. 128-129]. ***The Court has reviewed the parties' submissions and finds the asserted grounds are insufficient to deny pro hac vice admission at this time***. If the Court becomes convinced counsel are filing frivolous papers or are attempting to otherwise disrupt these proceedings, their pro hac vice status will be revoked.

Order Granting Admission Pro Hac Vice, attached to Nutley Decl., Ex. 3. (emphasis added). Judge DeGiusti found no reason to question the work or comportment of Messrs. Davis or Nutley in the ensuing proceedings.

   Class Counsel have also asserted that Professor Edward Brunet "bluntly characterizes professional objectors as 'warts on the class action process' and 'bottom feeders.'" DE76 at 13. Those are not Professor Brunet's words; they are the opinions of others that he recounts to illustrate the hostility that objectors encounter.  This is what Professor Brunet actually wrote:

> I concede that objectors may be the least popular litigation participants in the history of civil procedure. In my research ***I have spoken with counsel who described objectors*** as "warts on the class action process," and ***I also found references to objectors*** as "pond scum" and "bottom feeders."

Edward Brunet, Class Action Objectors: Extortionist Free Riders or Fairness Guarantors, 2003 U. Chi. Legal F. 403, 411 (citations omitted)(emphasis added); quoted in NEWBERG ON CLASS ACTIONS § 13:20 n.10 (5th ed.).  The defamatory characterizations came from plaintiffs' attorneys, not from Professor Brunet, who by no means endorsed them.

This is not a "generic" or "canned" objection, prepared without regard to the merits and interposed to leverage a secret payoff, which courts are warned to scrutinize.  *See, e.g.*, Barbara J. Rothstein and Thomas E. Willging, FEDERAL JUDICIAL CENTER, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES 17 (3d ed. 2010).  Isaacson's objections are hardly "generic" boilerplate, and he has sought no side agreement to buy him off.  To the contrary, he has offered to stipulate that no objection or appeal may be withdrawn without express approval of this Court.  Isaacson Decl., Ex. 2 (Isaacson Deposition) at 6:4-15.

Isaacson has pressed decidedly case-specific objections.  First and foremost, he objected that requiring objections to be filed before Class Counsel submitted final settlement-approval and fee-application papers violated Rule 23. *See Mercury Interactive,* 618 F.3d at 993-95.  That is a case-specific objection designed to bring this Court's practice into line with Rule 23 as construed by appellate authority.  Isaacson has also offered a non-frivolous argument that the Supreme Court's criticism of the *Johnson* factors in *Perdue* may offer an opportunity to reconcile widely varying understandings of what constitute a "reasonable fee."  He called the Court's attention to the fact that Class Counsel failed to disclose the Class Representative's criminal conviction for fraud, while underscoring the district court's broad discretion in dealing with the issue.  Following the filing of final settlement-approval papers and fee-award papers, Isaacson has endeavored to show that even under the *Johnson* factors Class Counsel have not made the showing required to justify a 33⅓% fee in this case.  His arguments in this regard are carefully targeted and supported by authority.  Were he to prevail, the class would benefit from a reduction of the fee award.

Nor is there any basis for ruling that Mr. Isaacson and his counsel "threaten to delay resolution of class action cases unless they receive extra compensation." DE82 at 5.  On the

18

contrary, Isaacson testified that he expects his lawyers will be paid only upon the Court's finding

that their work conferred a benefit on the class.  Isaacson Decl., Ex. 2 at 49-50.  Mr. Isaacson

proposed, moreover, the parties stipulate to an order objectors and class counsel to disclose to,

and obtain the approval of, this Court before withdrawing an objection or appeal for money.

DE83-2 at ECF 18-20; *see also* Isaacson Decl., Ex. 2 at 54-56.   Class Counsel refused to

stipulate, and then implied that Isaacsons proposal was itself improper, saying:

> Consistent with the professional objector *modus operandi* of objecting and then
> demanding money to go away, Davis, Isaacson, and their co-counsel Mr. Nutley
> sent Class Counsel a proposed stipulation to govern their hoped-for payoff here.
> [ECF 72-1 at 29].

DE76 at 15.  That is absurd.  The overt purpose of the proposed stipulation was to ***prevent***

improper payoffs by judicial review.  Such approval is a central requirement of proposed

amendments to Rule 23, which may become effective as early as 2018.[12]  Some district judges

are not waiting for the amendment to take effect, but are issuing orders requiring court approval

before class counsel may pay objectors to withdraw an appeal.[13]  After taking Mr. Isaacson's

deposition and rejecting his proposed stipulation to prevent payoffs, Class Counsel know very

well there is no evidentiary support for their assertions about Mr. Isaacson's motivations in this

case.  *See generally* Isaacson Decl., Ex. 2 (Isaacson Deposition excerpts).  Their charges were

---

[12] *See* Report to the Standing Committee, Advisory Committee on Civil Rules, at pp. 3-4 (May 12, 2016) (online: https://law.duke.edu/sites/default/files/report_accr_to_src_5-16.pdf ); *see also* Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure at 215-16, 228-29 (August 2016) (online: http://www.uscourts.gov/file/20163/download ).

[13] *See, e.g., In re Automotive Parts Antitrust Litig.,* No. 2:12-cv-00103-MOB-MKM, Order Prohibiting Payment of Any Sums in Addition to Sums Awarded to Class Members without Special Approval of the Court, DE479, at 2 (E.D. Mich. May 11, 2016) ("Accordingly, pursuant to Rule 23(e)(5), court approval is required before an objection to a proposed settlement may be withdrawn. Further, court approval will be required before any payment may be made by Class Counsel in exchange for the withdrawal of an objection to or appeal of a settlement."); attached to Nutley Decl. as Ex. 5.

unwarranted and unsupported by evidence when first made, particularly given Mr. Isaacson's obvious prominence in the field.  Those charges are even more unwarranted now.[14]

To penalize Mr. Isaacson for representing objectors in three matters, or for employing competent counsel of his choice in this case, violates fundamental due process.  Rule 23(c)(2)(B)(iv) requires the court to include within the notice directed to class members in a Rule 23(b)(3) class action that a class member "may enter an appearance through an attorney if the member so desires."  This right is rooted in Isaacson's due-process right, as a class member, to be heard.  *See Eisen,* 417 U.S. at174-75 ("notice and an opportunity to be heard [are] fundamental requisites of the constitutional guarantee of procedural due process"); *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 617 (N.D. Cal. 1979) (any objector "raising a substantial objection has a right to be heard, to be represented by an attorney, and to have a reasoned response by the court on the record.").

### III.  CONCLUSION

The R&R on attorneys' fees should not be adopted.  The Court should require Class Counsel to submit the time records sufficient for the Court to perform the analysis required by *Camden I* and *Johnson.*  To the extent the Court does adopt the R&R, Mr. Isaacson respectfully requests that all references to him or his counsel as "Professional Objectors" be stricken.

Date:  September 26, 2016                              Respectfully submitted,


                                                        /s/ John W. Davis

                                                       John W. Davis (FL Bar No. 193763)
                                                       john@johnwdavis.com
                                                       Law Office of John W. Davis

---

[14] *Cf. Corpac v. Rubin & Rothman*, LLC, 920 F. Supp. 2d 345, 356 (E.D.N.Y. 2013) (class counsel's assertion that objector's counsel was running a "kickback scheme" prompts court to observe that "lawyers should not make unfair or derogatory comments with regard to opposing counsel. Offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system."); *Tunnel v. Powell*, 219 F.Supp.2d 230, 243 (N.D. Cal. 2002) (advising that "[c]ounsel should ensure, prior to engaging in such *ad hominem* attacks, that the evidence supports her assertions.").

501 W. Broadway, Suite 800
San Diego, CA  92101
Telephone:  (619) 400-4870
Facsimile:  (619) 342-7170

C. Benjamin Nutley (*pro hac vice*)
nutley@zenlaw.com
1055 E. Colorado Blvd., 5th Floor
Pasadena, California  91106
Telephone:  (626) 204-4060
Facsimile:  (626) 204-4061

**CERTIFICATE OF SERVICE**

**CASE NO. 0:15-CV-60716-WPD**

I hereby certify that on September 26, 2016, I filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

Date:  September 26, 2016

_____s/ John W. Davis_____
John W. Davis