**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| DR. DAVID S. MURANSKY, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | **CASE NO. 0:15-cv-60716-WPD** |
| | ) | |
| v. | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| GODIVA CHOCOLATIER, INC., a New Jersey corporation, | ) ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO REQUIRE POSTING OF APPEAL BOND BY**
**JAMES H. PRICE AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff and Class Counsel hereby request entry of an order requiring Objector James H. Price [ECF No. 61] to post an appeal bond under Federal Rules of Appellate Procedure 7 and 8. For the reasons expressed hereunder, a substantial appeal bond should be imposed on this professional Objector-Appellant as a prerequisite for pursuing his appeal.

**I.     Introduction**

On September 12, 2016, Plaintiff and Class Counsel filed their Motion for Final Approval of Class Action Settlement, along with their Petition to Award Fees, Costs and Incentive Awards.  [ECF Nos. 74 and 76].  Out of approximately 318,000 Settlement Class Members, over 15% of whom filed valid claim forms, only 5 timely objections were filed.[1]

The Court carefully reviewed all of the filings related to the Settlement, including the Objection of James H. Price and the responses thereto.  On September 21, 2016, the Court held a Final Approval Hearing, to which all Parties and objectors were given the opportunity to appear. The Court then provided the objectors an additional opportunity to set forth their objections to the Magistrate's Report and Recommendation.  Price subsequently filed an additional objection

---

[1] These were the objections of Cindy L. Hager [ECF No. 58], Eric Allen Isaacson [ECF Nos. 59, 83, 89, 92], Jonathan Feldman [ECF No. 60], James H. Price [ECF Nos. 61, 84, 93], and an unknown sender in St. Louis, MO [ECF No. 64].

as to fees that spanned twenty pages.  [ECF No. 93].  After full consideration of the filings, the Parties' presentations at the Final Approval Hearing and the additional objections, the Court concluded that the settlement was fair, reasonable, and adequate, and on September 28, 2016, entered its Order of Final Approval and Judgment. [ECF No. 99].

The Order of Final Approval and Final Judgment should have put an end to this litigation, allowing the Parties to expeditiously distribute the benefits of the Settlement to the more than 47,000 class members who submitted valid claim forms. The delivery of those benefits, however, has now been delayed by the Objector-Appellant. Objector-Appellant is represented by a professional "serial objection" lawyer, W. Allen McDonald, whom Judge James I. Cohn has found to be a "serial objector" and as such has required that his client post a bond similar to that requested here prior to appealing a class action settlement.[2] Similarly, Price and McDonald's motivations have nothing to do with this litigation, and everything to do with their own financial well-being. If the Objector-Appellant wishes to pursue their objections beyond this point, in the face of this Court's ruling, and in light of their dubious and self-serving motivation, they should be required to protect the Settlement Class Members from the delay that their actions will cause.

Good cause exists for the Court to require Objector-Appellant to post an appeal bond. Given the high likelihood the Order will be affirmed, the Court should require the Objector-Appellant to post a substantial bond. Such a bond will provide the protections typically afforded appellees during the pendency of an appeal – particularly an appeal of questionable merit – and will also discourage Objector-Appellant and his counsel from viewing this settlement as a moneymaking opportunity. That is, if Objector-Appellant truly believes that his objection is well founded, and they are motivated by genuine concern for the Settlement Class, he will post the required bond and proceed. On the other hand, if their appeal is what it appears to be, then the bond will bend the Objector-Appellant's cost-benefit analyses such that their appeal will not be the easy money they hoped for, and they will cease their efforts to block the Class from receiving its just compensation.

Rule 7 of the Federal Rules of Appellate Procedure permits courts to impose appeal bonds to cover the costs of appeal.  *In re Checking Account Overdraft Litig.*, Case No. 1.09–MD–02036–JLK, 2012 WL 456691 at *2 (S.D. Fla. Feb. 14, 2012) (King, J.).  Rule 8 provides

_____

[2] *In re Enfamil Lipil Mktg. & Sales Practice Litigation*, Case No. 11-md-02222-JIC [ECF No. 122 at 9].

2

for a *supersedeas* bond to cover sums related to the merits of the underlying judgment.  *Id.*  The amount of such a bond should include (i) security for expected appellate costs, (ii) interest on the funds to be distributed to the Settlement Class Members that will be delayed as a result of Objector-Appellant's appeal, and (iii) excess costs of the class administrator due to the delay occasioned by the appeal. As discussed below, Plaintiff urges the Court to order the Objector-Appellant to post an appeal bond under Federal Rules of Appellate Procedure 7 and 8 totaling $115,934.00. This amount is appropriate in this case, and is reasonable when compared to bonds imposed in other class actions, particularly in light of the meritless and attorney-interested nature of Objector-Appellant's appeal.

## II.        The Court Can and Should Impose an Appeal Bond.

Federal Rule of Appellate Procedure 7 provides that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal."  The Eleventh Circuit has held that under Rule 7, this Court has discretion to require appellants to post a bond to secure payment of appeal costs. *See Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1333 (11th Cir. 2002).   In particular, a Rule 7 bond should be imposed where necessary to protect class members "from the burdens that stem from being forced to defend frivolous lawsuits." *Id.* at 1333.  As noted by the Eleventh Circuit, "an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond . . . prior to filing the appeal." *Id.* Rule 7 authorizes the Court to forecast the outcome of the appeal. *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir. 1998); *Sckolnick*, 820 F .2d at 15.  The nature and amount of an appeal bond is left to the sound discretion of the district court. *In re Overdraft Checking Litig.*, 2012 WL 456691 at *2.

Similarly, Rule 8 of the Federal Rules of Appellate Procedure provides for *supersedeas* bonds to cover sums related to the merits of the underlying judgment. *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir.1998).  While Objector–Appellants will undoubtedly argue that Rule 8 does not apply because they have not sought a stay of the underlying judgment, the filing of their appeal prevents distribution of the Settlement proceeds as ordered by this Court's Final Judgment, and consequently is an actual stay of Judgment, and a bond is appropriate.  *See In re Overdraft Checking Litig.*, 2012 WL 456691 at *2 (citing *In re Broadcom Securities Litig.*, SACV 01–275 (C.D.Cal. Dec. 5, 2005) (requiring bond including costs of delay equaling $517,700)).

Courts commonly impose appeal bonds in the class action context.  *In re Overdraft*

*Checking Litig.*, 2012 WL 456691 at *1.  S*ee also In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 816-17 (6th Cir. 2004) (endorsing the trial court's imposition of a $50,000 appeal bond); *Barnes v. FleetBoston Fin. Corp.*, No. 1:0 l-cv-1039, slip op. at 2 (D. Mass. Aug. 22, 2006) (ordering imposition of $645,111 appeal bond); *Conroy v. 3M Corp.*, Case No. 00-cv-2810, (N.D. Cal. Aug. 10, 2006) (ordering class action objectors to post an appeal bond of $431,167); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *3 (D. Me. Oct. 7, 2003) (granting a motion requiring an objector/appellant to post an appeal bond of $35,000); *In re Uponor, Inc.*, No. 11-MD-2247ADM/JJK, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012).

When determining if an appeal bond is appropriate, courts consider: (i) the appellant's financial ability to post a bond; (ii) the merits of the appeal; (iii) whether the appellant has shown any bad faith or vexatious conduct; (iv) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful; and (v) the appellant's attorney's prior actions. *In re Overdraft Checking Litig.*, 2012 WL 456691 at *1.  Consideration of these factors supports imposing a sizeable appeal bond here.

Here, Objector-Appellants continue to press pretextual objections, unnecessarily holding up a Settlement that Settlement Class Members overwhelmingly support.  Their motivations are transparent: they are looking to extract money from Class Counsel by delaying the resolution of this case.  Accordingly, the Court should exercise its discretion under Rule 7 to require the Objector-Appellant to post a sizable bond on appeal. *See Sckolnick v. Harlow*, 820 F.2d 13 (1st Cir. 1987) (upholding imposition of appeal bond under Rule 7 based on plaintiff's history of litigiousness and implication that appeal was frivolous); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 WL 22417252 (D. Me. 2003) (*accord*); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D.N.Y. 1999) (citing *Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998) (in setting the amount of the Rule 7 bond, "it is appropriate to consider 'the merits of the appeal itself'")).

A.  The Objector-Appellant is Presumed to Have the Financial Ability to Post a Bond.

Courts presume that appellants are financially able to post appeal bonds unless they demonstrate otherwise. *See In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 201, 213 (S.D.N.Y. 2010) (citations omitted).  In this case, Objector-Appellant is represented by an attorney notorious for lodging frivolous objections, and the appeal bond requirement should be

an expected expense. Accordingly, this factor favors the imposition of an appeal bond.

B. The Appeal is Without Merit.

The Price Appeal is without merit.  Objector-Appellant will only be able to make arguments on appeal that were raised before the Court.  *Kensington Rock Island Ltd. P'ship v. Am. Eagle Partners*, 921 F.2d 122, 124-25 (7th Cir. 1990).  To prevail on appeal, Objector-Appellant will have to show that this Court abused its discretion.  *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) ("Determining the fairness of the settlement is left to the sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of that discretion."). The Settlement was approved after lengthy and careful review, and none of the expected issues appealed have any reasonable expectation of altering the Order based on fact or law. The appeals serve only to delay the Settlement Class Members' receipt of the benefits of the Settlement.

C. The Motives and Conduct of Objector-Appellant and his Attorney Warrant Imposition of a Substantial Appeal Bond.

The attorney for Price, W. Allen McDonald, makes a living improperly objecting to class settlements. Neither Price nor McDonald sought leave to appear in this action despite filing an objection, apparently to avoid disclosing their relationship and track record. This includes the fact that they are part of the same firm.

Such so-called "serial objectors" typically lose in the district courts, appeal and then offer to voluntarily dismiss the appeal in an attempt to leverage a payout.  Mr. McDonald has made a career out of this practice.  In *In re Enfamil Lipil Mktg. & Sales Practice Litigation*, Mr. McDonald offered to withdraw his client's appeal in exchange for a payment of $150,000. *In re Enfamil Marketing and Sales Practices Litigation MDL 2222*, No. 11-MD-02222-COHN/SELTZER (S.D. Fla. Apr. 9, 2012).

More recently, in *McDonough v. Toys″R″ Us, Inc.,* McDonald sought payment for more than 115 hours allegedly spent on the appeal, despite no evidence that he had "substantially participate[d]" in the objection and appeal. *McDonough v. Toys″R″ Us, Inc.,* 80 F. Supp. 3d 626 (E.D. Pa. 2015). In *In re Pre-Filled Propane Tank Marketing and Sales Prac. Litig.*, McDonald, on acting on behalf of the so-called "Tennessee Objectors," dismissed his appeal after his clients were ordered to pay a $25,000 appeal bond. *In re Pre-Filled Propane Tank Marketing and Sales Prac. Litig.*, Case 4:09-md-02086-GAF (W.D. Mo. Nov. 20, 2012. *In Pecover v. Electronic Arts,*

*Inc.*, Judge Claudia Wilkin found McDonald's arguments "unavailing," and that nothing in his client's objection "warrants denial of final approval of the Settlement Agreement ..." *Pecover v. Electronic Arts, Inc.*, No. 4:08-cv-02820-CW (N.D. Cal. May 30, 2013. Finally, Mr. Price was recently sanctioned for ethics violations. *In re Morton*, 2015 Bankr. LEXIS 3309 at *3 (E.D. Bankr. Tenn. 2015) ("the Court will require Mr. Price … to self-report their conduct in this case and this Court's Memorandum Opinion to the Tennessee Board of Professional Responsibility").

The respected authors of Newberg on Class Actions observe that filing objections to proposed class settlements has become a "big business." ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS 11:55 (4th Ed. 2008); *see also* § 15:37 (entitled Abusive Conduct by Counsel Objecting to Class Action Settlements). UCLA law professor William Rubenstein has written that "[t]his part of the profession has arguably attracted lawyers more interested in coercing a fee than in correcting a wrong." WILLIAM B. RUBENSTEIN, THE FAIRNESS HEARING: ADVERSARIAL AND REGULATORY APPROACHES, 53 UCLA L.REV. 1435, 1459 (2006) (citations omitted). Professor Ed Brunet bluntly characterizes professional objectors as "warts on the class action process," "pond scum," and "bottom feeders." EDWARD BRUNET, CLASS ACTION OBJECTORS: EXTORTIONIST FREE RIDERS OR FAIRNESS GUARANTORS, 2003 U. CHI. LEGAL F. 403, 409 (2003). After detailing the extortionist practices of some professional objectors, Professor Brunet observed that they "are as welcome in the courtroom as is the guest at a wedding ceremony who responds affirmatively to the minister's question, 'Is there anyone here who opposes this marriage?'" *Id.* at 408 n.21.

The attorney-driven nature of the Objector-Appellant's appeals is transparent. Baseless rote allegations (such as those raised in the Price Objection) that class counsel deliberately undervalued the claims, and boilerplate objections (again, like the Price Objection) to fees, notice, or the settlement release, provide strong evidence that objections stem from professional objectors' counsel. Such lawyers – who employ objections, and subsequent meritless appeals, as leverage to extort settlements – interfere with the system and "often delay and unnecessarily complicate class proceedings." NEWBERG ON CLASS ACTIONS § 15:37. The Federal Judicial Center therefore advises courts to "[w]atch out . . . for canned objections from professional objectors who seek out class actions to extract a fee by lodging generic, unhelpful protests." Federal Judicial Center, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES, at 15 (2d ed. 2009).

Federal courts "are increasingly weary of professional objectors," who "are a pariah to the functionality of class action lawsuits, as they maraud proposed settlements – not to assess their merits on some principled basis – but in order to extort the parties, and particularly the settling defendants, into ransoming a settlement that could otherwise be undermined by a time consuming appeals process." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003); *Snell v. Allianz Life Ins. Co. of N. Am.*, 2000 WL 1336640, at *9 (D. Minn. Sept. 8, 2000); *see also Shaw v. Toshiba Am. Info. Sys., Inc.*, 91 F. Supp. 2d 942, 975 (E.D. Tex. 2000).

The actions of attorneys like Mr. McDonald have real costs, as settlement Class Member payments will be delayed until the appeals have been resolved:

> Yet class actions also attract those in the legal profession who subsist primarily off of the skill and labor of, to say nothing of the risk borne by, more capable attorneys. These are the opportunistic objectors. Although they contribute nothing to the class, they object to the settlement, thereby obstructing payment to lead counsel or the class in the hope that lead plaintiff will pay them to go away. Unfortunately, the class-action kingdom has seen a Malthusian explosion of these opportunistic objectors ....

*In re Cardinal Health, Inc. Sec. Litig.*, 550 F. Supp. 2d 751, 754 (S.D. Ohio 2008). Accordingly, the Court should impose an appeal bond on Objector-Appellant to protect the Settlement Class. Objectors-Appellants' attorney is fairly characterized as a professional objector, and should be forced to internalize the costs that his fee-seeking conduct imposes on the Class.

## III.    The Amount Requested is Reasonable.

While the precise amount of the bond is left to the sound discretion of the Court, the practical reality is that "[r]equiring too small a bond, or no bond at all, may encourage frivolous, time-consuming, harassing appeals." *Page v. AH Robins Co.*, 85 F.R.D. 139, 139-40 (ED. Va. 1980). The requested appeal bond amount is reasonable when viewed against the facts of the appeal. *See, e.g., In re Checking Account Overdraft Litig.*, 2012 WL 456691 at *3 (ordering class action objectors to post an appellate bond of $616,338); *Barnes v. FleetBoston Fin. Corp.*, 2006 WL 6916834 at *2 (D. Mass. Aug. 22, 2006) (ordering imposition of $645,111 appeal bond); *see also In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 1253741, at *3 (finding $16,000 too low for an appellate bond and ordering the posting of a $50,000 bond); *Capizzi v. States Res. Corp.*, CIV.A.02-12319-DPW, 2005 WL 958400, at *1 (D. Mass. Apr. 26, 2005) (endorsing

appeal bond of $25,000 for a brief that would merely require the "use of cut-and past[e] functions for word processing.").

> A.     The Court Should Impose a Substantial Cost Bond Under Rule 7 of the Federal Rules of Appellate Procedure.

The costs that can be included in a Rule 7 bond are not limited to costs defined by Rule 39. *Pedraza*, 313 F.3d at 1323. The district court has substantial discretion to determine the amount of a bond necessary to ensure the payment of costs on appeal. *Id.* at 1327; *Sckolnick v. Harlow*, 820 F.2d 12, 15 (1st Cir. 1987).  Plaintiff requests that the amount of the cost bond in this instance include $10,000.00, representing the expected appellate costs to be incurred during the appeal, along with $31,594.00, representing the estimated additional costs of class administration caused by the appeal, as described by Jay Geraci, Project Manager of KCC Class Actions Services, LLC, the class administrator.  (Geraci Decl., attached hereto as Exhibit A).

The first category of costs are those available under Rule 39, and these are routinely included in appeal bonds. Rule 39(e) costs alone have amounted to the $10,000-$50,000 range. *See In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 295 (concluding $25,000 to be appropriate amount to cover Rule 39(e) costs); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 845 2011 WL 3352460 at *10 (N.D. Cal. Aug. 2, 2011) (imposing $20,000 appeal bond on class action objector); *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*, 2011 WL 3648508 at *1-2 (N.D. Cal. Aug. 18, 2011) (imposing $15,000 appeal bond on objector, a fixed-income retiree who had sought to appear in forma pauperis*); In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 2033811 at *1 (S.D.N.Y. May 21, 2010) (noting $50,000 appeal bond was warranted for Rule 39(e) costs). Here, the Class believes that Rule 39(e) costs could add up to $10,000.00.

In addition to this, in class action matters, federal courts frequently include a second category of costs: the excess costs of class administrators due to delays occasioned by the appeal. *Miletak*, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012) (including $50,000 in "administrative costs," incurred in order "to continue to service and respond to class members' needs pending the appeal"); *Uponor, Inc.*, 2012 WL 3984542    (D. Minn. Sept. 11, 2012) (including $20,000 in additional claims administrator costs as part of appeal bond, because such costs are "reasonable and necessary" and "should be shouldered by the objectors, particularly given the tenuous nature of their arguments"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274,

279 (D. Mass. 2007) (including in Rule 7 bond $61,000 in "administrative costs attributable to delay in [settlement] distribution"). Consistent with the reasoning in the decisions cited above, the instant Class, which is already shouldering the cost of administration, should not bear the additional costs associated with this frivolous appeal.

The damages that an appellee class incurs when confronted with a frivolous appeal from a judgment entered pursuant to a class action settlement include those additional administrative costs that are associated with the delay in distribution of a settlement fund. Those costs decrease the amount of the settlement funds available for distribution to the class and represent a quantifiable amount of damages. As one district judge has observed, professional objectors to class action settlement may extort payments from a class simply by filing frivolous appeals. *In re General Elec. Co. Securities Litigation*, 998 F. Supp. 2d 145, 151-152 (S.D.N.Y. 2014). Here, the class administrators have estimated the additional administration costs to be up to $31,594.00. (Geraci Decl., attached hereto as Exhibit A). The requested amount for additional settlement administration caused by the appeal is consistent with what other courts have required.[3]

In sum, pursuant to Rule 7, Plaintiff requests that the Court include in its appeal bond order a sum of $41,594.00, reflecting: (i) $10,000.00 in estimated costs taxable under Rule 39(e), and (ii) $31,594.00 in excess administrative costs attributable to the delay in settlement.

B.    The Court Should Impose a Substantial *Supersedeas* Bond Under Rule 8 of the Federal Rules of Appellate Procedure.

This Court also has discretion to require a *supersedeas* bond under Rule 8. *See In re Checking Account Overdraft Litig.*, 2012 WL 456691 at *2, n. 4 (collecting citations). While Federal Rule of Appellate Procedure 7 permits courts to impose appeal bonds to cover the costs of appeal, Rule 8 independently provides for *supersedeas* bonds to cover sums related to the merits of the underlying judgment. *Adsani v. Miller*, 139 F.3d 67, 79 (2d Cir.1998).

Under Rule 8, federal courts routinely include in the appeal bond an amount to preserve the status quo of the class. Objector-Appellant's appeal effectively stays the payment of settlement proceeds to the rest of the class. As the appeal is likely to persist for a period of years,

---

[3] *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D.N.Y.1999) (including $50,000 in cost bond for additional settlement administration costs); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252 (D.Me. Oct. 7, 2003) (awarding $35,000 bond for additional settlement administration costs).

the Settlement Class Members' lost use of these funds must be accounted for.  Consequently, it is appropriate to require Objector-Appellant to post an additional sum accounting for the time these funds will be unavailable.

In this instance, the total settlement is $6.3 million.  Plaintiff urges the Court to include the amount of $74,340.00[4] in the appeal bond, representing the estimated loss of use of the settlement fund proceeds during the pendency of this appeal. This amount is based on the applicable Treasury Bill interest rate, which is exceedingly conservative and represents the minimum that the Class could earn if its money were invested in these safe and secure investments.

Objector-Appellant is clearly adverse to the 99.99% of the Settlement Class Members who have accepted the Settlement by not objecting to it.   Accordingly, Objector-Appellant should be required to post a *supersedeas* bond as a condition to pursuing their appeals of this Court's Order and Final Judgment. *Id.*  Plaintiff submits that Rule 8 supports their request that Objector-Appellants be required to post an additional sum of $74,340.00, representing the lost use of the settlement funds by the Settlement Class.

## IV.   Conclusion

For the foregoing reasons, the Court should enter an order requiring James H. Price to post a significant appeal bond.  Plaintiff respectfully requests that the Court enter an order under Rules 7 and 8 of the Federal Rules of Appellate Procedure requiring the Objector-Appellant to post an appeal bond totaling $115,934.00 broken down as (i) $10,000.00 in estimated Rule 39 appeal costs under Rule 7; (ii) $31,594.00 in estimated additional administration costs under Rule 7; and (iii) $74,340.00 in interest on the funds to be distributed that will be delayed as a result of Objector-Appellant's appeal.

Dated: October 17, 2016                    Respectfully submitted,

                                           BRET L. LUSSKIN, Esq.
                                           *Attorney for Plaintiff*
                                           20803 Biscayne Blvd., Ste 302
                                           Aventura, Florida 33180
                                           Telephone: (954) 454-5841
                                           Facsimile: (954) 454-5844
                                           blusskin@lusskinlaw.com

---

[4] This amount represents two years' compounded interest at the applicable federal post-judgment interest rate (0.59%) on $6,300,000, which is the amount of the Settlement.

By: /s/ Bret L. Lusskin, Esq.
        Bret L. Lusskin, Esq.
        Florida Bar No. 28069

**REQUEST FOR HEARING**

Plaintiff requests a hearing on this motion. Plaintiff submits that oral argument would be helpful to the Court in understanding the various categories of costs to be included in any bond ordered by the Court, as well as the legal reasons that a bond should be ordered.

By: /s/ Bret L. Lusskin, Esq.
        Bret L. Lusskin, Esq.
        Florida Bar No. 28069

**CERTIFICATE OF GOOD FAITH**

The undersigned attorney certifies that this motion is filed in compliance with S.D. Local Rule 7.1 (a)(3), in that Counsel for Plaintiff has conferred with counsel for Objector-Appellant on this matter, and Objector-Appellant has related that they will oppose the instant motion.

By: /s/ Bret L. Lusskin, Esq.
        Bret L. Lusskin, Esq.
        Florida Bar No. 28069

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on October 17th, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: /s/ Bret L. Lusskin, Esq.
        Bret L. Lusskin, Esq.
        Florida Bar No. 28069