# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

| | | |
|---|---|---|
| DR. DAVID MURANSKY, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 0:15-cv-60716-WPD (Dimitrouleas/Snow) |
| GODIVA CHOCOLATIER, INC. | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

## RESPONSE OF JAMES H. PRICE TO MOTION TO REQUIRE POSTING OF APPEAL BOND [Doc. 102]

**NOW COMES** James H. Price ("Price"), an objecting Class member, by and through his undersigned counsel, and responds to the Plaintiff's Motion tp Require Posting of Appeal Bond [Doc. 102] as follows:

W. Allen McDonald, Esq.
LACY, PRICE, & WAGNER, P.C.
249 N. Peters Road, Suite 101
Knoxville, TN 379234917
Tel: (865) 246-0800

*Counsel for James H. Price*

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   LEGAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

       A.    Price Does Not Oppose Imposition of a Reasonable Appeal Bond, Limited
             to Costs on Appeal, as Prescribed by Rule 39. . . . . . . . . . . . . . . . . . . . . . . . . . 5

       B.    An Appeal Bond in an Amount Not Exceeding $1,500 Would Sufficiently
             Secure Costs on Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

       C.    The Court Should Reject Plaintiff's Request to Include Estimated Future
             Administrative Costs as a Component of the Appeal Bond. . . . . . . . . . . . . . . . 12

       D.    Imposition of a Supersedeas Bond is Inappropriate in This Case. . . . . . . . . . . 17

IV.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## I.    PRELIMINARY STATEMENT

Following entry of the Final Judgment approving the class action settlement in this case [Docs. 99], James H. Price ("Price"), who timely objected to the settlement, filed a Notice of Appeal. [Doc. 100].  Feigning surprise that any Class member would seek appellate review of a $6.3 Million class action settlement, Plaintiff now asks the Court to require Price to post a "significant appeal bond."  [Doc. 102, at Page 10].  Specifically, Plaintiff seeks to impose a $115,934.00 appeal bond on Price, purportedly under Federal Rules of Appellate Procedure 7 and 8 [Doc. 102, at p. 3], consisting of (1) $10,000 in taxable costs pursuant to Federal Rule of Appellate Procedure 39 and 28 U.S.C. § 1920; (2) $31,594.00, representing "estimated additional costs of class administration" purportedly caused by the appeal, and (3) $74,340.004, representing the "estimated loss of use of the settlement fund proceeds" during the appeal  [Doc. 102, at pp. 9-10].[1]

Of course, the Court has discretion to impose an appeal bond, and Price does not contest that discretion.  Nor does Price contest the propriety in this case of an appeal bond securing certain costs on appeal, as enumerated in Federal Rule of Appellate Procedure 39, not exceeding $1,500.  But contrary to Plaintiff's suggestion, the Court's discretion is not unbounded, and here, Plaintiff's request that the Court require a bond securing printing, copying, and binding costs in the amount of $10,000 is unreasonable, without merit, and against the great weight of authority in this Circuit and elsewhere.  Moreover, under Eleventh Circuit law – and the law according to the majority of Circuits – absent an applicable cost-shifting rule or statute, only those "costs" enumerated in Rule 39 are

---

[1]Plaintiff suggests that if Price "truly believes that his objection is well founded, and they are motivated by genuine concern for the Settlement Class, he will post the required bond and proceed."  [Doc. 102, at Page 2].  Expecting any Class member to post an appeal bond in an amount *more than 493 times* the amount of his anticipated benefit is unrealistic and absurd.

appropriately included in a Rule 7 appeal bond. Because Plaintiff has not identified such a rule or statute here, any estimated costs associated with the administration or maintenance of the settlement fund may not properly be included in the appeal bond. Finally, because Price has not sought a stay of the judgment, a supersedeas bond cannot be imposed in this case. Indeed, the parties' Settlement Agreement expressly provided that their settlement would not become effective until all appeals challenging the settlement are resolved. [Doc. 39-1, Settlement Agreement, Art. II (I), at pp. 7-8].

At its core, Plaintiff's bond request is a tissue of machinations, the singular purpose of which is to pressure Price to dismiss his appeal. Significantly, Plaintiff's motion is premised largely on mere speculation, base conjecture, and guess-work, rather than reliable evidence. In the final analysis, it appears that the real purpose of Plaintiff's motion is to do nothing more than compel Price and his counsel to abandon his appeal by increasing their costs and to manufacture unreasonable procedural obstacles to an otherwise meritorious appeal. Plaintiff seeks to accomplish this result by (1) artificially-inflating printing, copying, and binding costs grossly above the average amount of such costs; (2) tacking on estimated future administrative costs, notwithstanding the absence of a cost-shifting rule or statutory mechanism to do so, as required by this and other Circuits; and (3) masquerading the majority of the appeal bond he seeks as a "supersedeas bond" under Rule 8, despite the fact that the settlement terms Plaintiff agreed to makes such a bond unavailable to him in this case. In the end, the only "costs" properly included in an appeal bond in this case are those minimal costs associated with printing, copying, and binding appellate briefs.

*First*, Price does not oppose imposition of an appeal bond to secure those costs specifically enumerated by Rule 39, and would not oppose a bond in the amount of $1,500. Plaintiff, however, estimates this amount as $10,000. [Doc. 102, at p. 8]. Significantly, however, Plaintiff has

presented no evidence that his costs under Rule 39 could conceivably approach the sum of $10,000. The only costs recoverable under Rule 39, and thus allowed in a Rule 7 appeal bond, are the "necessary copies of a brief or appendix," "preparation and transmission of the record" (which is the responsibility of Price under Rule 30), and "the reporter's transcript" (also Price's responsibility). Accordingly, Plaintiff's costs will consist of copies and binding for a single brief.  Surely, such costs will not  exceed $1,500.  What is more, reliable data from the Federal Judicial Center, including average costs in the Eleventh Circuit, and a litany of cases convincingly demonstrate that the sum of $1,500 is more than sufficient to secure the potential costs in this case.

*Second*, while Plaintiff also asks the Court to include an additional $31,594 as estimated administrative costs, there is no basis for inclusion of such costs in a bond in this case.  Not only is the Plaintiff unable to cite to an Eleventh Circuit precedent to support the notion estimated future administrative costs may be included in the bond amount in this case, but he altogether disregards the Eleventh Circuit's holding that damages resulting from delay or disruption of settlement administration caused by allegedly frivolous appeals are appropriate only where a relevant underlying statute provides for such costs.  Here, it is undisputed that no such provision is applicable.

Indeed, most circuit courts that have addressed the issue have "linked that phrase to costs that a successful appellate litigant can recover pursuant to a specific rule or statute." *Tennille v. W. Union Co.*, 774 F.3d 1249, 1254-55 (10th Cir. 2014) (citing cases from the D.C., First, Second, Sixth, Ninth, and Eleventh Circuits).  To be sure, there is no binding precedent in this Circuit authorizing inclusion of administrative costs in an appeal bond, especially absent an underlying rule or statute permitting such a recovery.  For the Court to impose an appeal bond that includes class administrative costs, Plaintiff must point to some rule or statute authorizing the recovery.  But

Plaintiff has not cited, and Price cannot find, any rule or statute that would allow Plaintiff to recover funds spent administering or maintaining the settlement pending that appeal as "costs on appeal."

And while Plaintiff cites cases in California, Massachusetts, and Minnesota that have concluded that Rule 7 allows a court to require an appellant to post a bond in an amount sufficient to cover extra administrative costs that a party otherwise would not have incurred, those decisions do not explain how a rule that expressly allows requiring a bond only to secure payment of recoverable costs (which, under some statutes, includes recoverable attorney's fees) can be read to authorize posting a bond to secure payment of expenses that are not recoverable costs.

*Third*, while Plaintiff asks the Court to impose a supersedeas bond in the amount of $74,340, purportedly "representing the estimated loss of use of the settlement fund proceeds during the pendency of this appeal" [Doc. 102, at pp. 9-10], this request is ill-founded and has no merit. The cases relied upon by Plaintiff for support are wrongly decided as well as easily distinguished. The execution of the settlement is on-hold, after all, pursuant to the parties' own Settlement Agreement, not through a stay sought by Price, *i.e.*, Plaintiff and Godiva expressly provided that their settlement would not become effective until all appeals challenging the settlement are resolved. [Doc. 39-1, Settlement Agreement, Art. II (I), at pp. 7-8]. By its terms, a supersedeas bond is appropriate only when the appellant asks the court to impose a stay, which Price has not sought.

For all of this, this Court should limit the amount of the appeal bond to $1,500, securing only those costs explicitly enumerated in Rule 39(e).

## II.    STANDARD OF REVIEW

Federal Appellate Rule 7 states that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure

-4-

payment of costs on appeal." Under this Rule, "the decision[s] as to the need for a bond and the amount thereof are left to the discretion of the district court." *In re Munn*, 891 F.2d 291, at *1 (6th Cir. 1989); *see also In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004). A Rule 7 appeal bond is similar to, but distinguishable from, a supersedeas bond, which a court can require to preserve a money judgment when staying execution of that judgment pending appeal, Fed. R. Civ. P. 62(d); Fed. R. App. P. 8(a)(2)(E). *See* 16A Wright, et al., *Federal Practice & Procedure* § 3953 (noting a Rule 7 appeal bond "should not be confused with a supersedeas bond").

Plaintiff has the "burden of justifying the amount of [his] request or providing a reasonable estimate of the actual costs [he] may incur on appeal." *Chiaverini, Inc. v. Frenchie's Fine Jewelry, Coins & Stamps, Inc.*, 2008 U.S. Dist. LEXIS 45726, at *2 (E.D. Mich. June 12, 2008) (citing *Lundy v. Union Carbide Corp.*, 598 F. Supp. 451, 452 (D. Or. 1984)). He has failed to meet that burden.

The Court must be mindful that imposing too great a burden on an objector's right to appeal may improperly discourage meritorious appeals or tend to insulate a district court's judgment in approving a class settlement from appellate review. *See Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 300 (5th Cir. 2007); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine Prods. Liab. Litig.)*, No. MDL-1203, 2000 U.S. Dist. LEXIS 16085, at *5 (E.D. Pa. Nov. 6, 2000).

## III.    LEGAL ARGUMENT

### A.    Price Does Not Oppose Imposition of a Reasonable Appeal Bond, Limited to Costs on Appeal, as Prescribed by Rule 39.

At the outset, Price disputes the inclusion of any item of cost in an appeal bond other than those enumerated in Rule 39. He does not dispute the Court's general discretion to require an appeal bond and stands ready to tender a reasonable appeal bond, not exceeding a total sum of $1,500 – to

secure Plaintiff's costs on appeal.  Those costs are the taxable costs of copying and printing permitted under Rule 39 and Eleventh Circuit Local Appellate Rule 39.1 and 31-3.

Plaintiff urges the Court to consider various factors in "determining if an appeal bond is appropriate," including (1) the appellant's financial ability to post a bond; (2) the merits of the appeal; (3) whether the appellant has shown any bad faith or vexatious conduct; (4) the risk that the appellant would not pay appellee's costs if the appeal is unsuccessful; and (5) the appellant's attorney's prior actions.  [Doc. 102, at p. 4].  Rather than engaging in a meaningful analysis of the factors, however, Plaintiff manipulates his analysis to disparage Price and his attorney.  Because Price does not dispute the propriety of an appeal bond here, Plaintiff's analysis is mostly unhelpful and unnecessary.  Nevertheless, a fair analysis of the factors demonstrates that an appeal bond in the amount of $115,934 is not only grossly excessive, but punitive, toward Price.

For the first factor, Plaintiff argues that objectors are presumed to have the financial ability to post a bond unless they demonstrate otherwise.  [Doc. 102, at p. 4].  Obviously, while an objecting class member should rightly expect imposition of a reasonable appeal bond, some common sense and logic must necessarily apply here.  There is, to be sure, no evidence concerning Price's ability to pay a $115,934 appeal bond.  Such an amount would naturally be beyond the means of most ordinary consumers and would effectively discourage a meritorious appeal.  Here, Plaintiff's motion has no plausible motive other than to compel Price to altogether abandon his appeal.[2]  *See Lindsey v. Normet*, 405 U.S. 56, 77-79 (1972) (a district court may not impose a bond in an amount beyond

---

[2]As the court in *Vaughn v. Am. Honda Motor Co.*, 507 F.3d 295, 299 (5th Cir. 2007) observed, imposing too great a burden on an objector's right to appeal may discourage meritorious appeals or tend to insulate a district court's judgment in approving a class settlement from appellate review.  507 F.3d at 300.

what is necessary to ensure adequate security if to do so would effectively preclude pursuit of an appeal).[3]  The appeal bond sought here, totaling $115,934.00, would have the logical effect of compelling any ordinary consumer, including Price, to abandon his appeal, a result plainly not intended by Rule 7.  Accordingly, this factor favors Price.

The second factor, the merits of the appeal, also weighs in favor of Price.  Plaintiff argues that Price's appeal has no merit.  [Doc. 102, at Page 5].  But it is not the province of district courts to assess the strength of an appellant's appeal.  Rather, "the Court of Appeals is the best forum to litigate the merits of the appeal and to account for any frivolity that harms the plaintiffs." *In re Am. Invs. Life Ins. Co. Annuity Mktg. and Sales Practices Litig.*, 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010); *Rossi v. Proctor & Gamble Co.*, No. 11-7238, 2014 U.S. Dist. LEXIS 34180, at *2 (D.N.J. March 17, 2014) ("Plaintiff cites no binding legal authority suggesting that a district court may step into the shoes of an appellate court to decide whether an appeal is frivolous . . . .").  Indeed, the Fifth Circuit recently rejected this very notion head-on:

> There is no provision in the rules of procedure for a district court to predict that an appellate court will find an appeal frivolous and to set a bond for costs on appeal based on an estimate of what "just damages" and costs the appellate court might award. . . . . We have held that "the appellate court is generally better qualified to determine whether an appeal lacks merit."

*Vaughn,* 507 F.3d at 299 (emphasis added).

Besides, while the Court may have overruled his arguments against the settlement, Price's objection [Doc. 61] sufficiently demonstrated that his appeal nonetheless has merit.  For instance, among other issues, he has raised issues which appear of first impression not heretofore decided by

---

[3] *In re Countrywide*, 2010 U.S. Dist. LEXIS 131775 (W.D. Ky. Dec. 13, 2010) ("purpose of the appeals process is to permit objectors to challenge such rulings").

the Eleventh Circuit, *i.e.*, whether Class members were provided sufficient information to object to

Class Counsel's fee request under Rule 23(h) [Doc. 61, at pp. 10-14], and whether *Perdue v. Kenny*

*A.*, 559 U.S. 542, 552 (2010), requiring the Court strongly presume Class Counsel's fee should be

limited to their lodestar applies. [Doc. 61, at pp. 17-18].

As to the third factor, Plaintiff makes a concentrated effort to disparage Price and his

undersigned counsel, generally depicting them in a bad light for their involvement in past class

action settlements.  [Doc. 102, at pp. 5-7].  The fact that Price or the undersigned may have

represented other class action settlement objectors in the past, however, is not indicia of bad faith

or vexatious conduct.  *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*,

2013 U.S. Dist. LEXIS 125555 (E.D. N.Y. Sept. 3, 2013).[4]  Notably,

> there is a recognition that objectors make the system work better
> overall, and perhaps even make it more difficult for class counsel to
> overreach in a way that harms defendants.  Judges are more cognizant
> of their responsibilities under Rule 23(e), and they increasingly
> realize that counsel for objectors can help them carry out their
> responsibilities.[5]

Nevertheless, Plaintiff cites several articles by legal commentators criticizing objectors.

[Doc. 102, at Pages 5-6].  And while he predictably imputes some sort of improper motive to Price

and the undersigned, his charges demonstrate a fundamental misconception of the role played by

---

[4]Indeed, in its decision to grant final approval and award fees, the Court made clear that it had not even considered whether or not objecting Class members had objected in other class actions.   [Doc. 99, at p. 6] (stating that it had ignored the Magistrate Judge's comments regarding "professional objectors").

[5]Morrison, Alan B., *Improving the Class Action Settlement Process: Little Things Mean a Lot*, 79 Geo. Wash. L. Rev. 428 (Feb. 2011).

objecting class members in the settlement process. After all, well-respected jurists[6] take a decidedly

different view, acknowledging the importance of objecting class members in the final approval

determination. Indeed, three of the leading class action cases of the last two decades – *Amchem,*

*Ortiz,* and *Devlin*[7] – resulted when objectors litigated successfully all the way to the Supreme Court.

Significantly, despite his rant against Price and the undersigned, the fact is that Plaintiff neither

alleges nor does he identify, any specific actions by Price or his counsel that would equate to "bad

faith or vexatious conduct" in this case to warrant a $115,934 appeal bond.[8]

As to the fourth factor, *i.e.*, Plaintiff's purported fear of non-payment, this factor is a red-

herring, not a legitimate basis for an appeal bond of the magnitude requested. There is no evidence

that Price would not pay such costs, so it should not be assumed that he would not be able to pay.

The fifth and final factor, the undersigned's prior actions, also weighs against requiring a

bond. The undersigned is in good standing with the Tennessee and Florida Bars and has never been

disciplined. In this case, he has diligently represented his client's interests to the best of his ability.[9]

---

[6]*Redman v. Radioshack Corp.*, 768 F.3d 622, 629 (7th Cir. Ill. 2014).

[7]*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997), *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 841-845 (1999), and *Devlin v. Scardelletti*, 536 U.S. 1 (2002).

[8]And despite Plaintiff's suggestion to the contrary, the undersigned has not offered "to voluntarily dismiss" Price's appeal in return for anything.

[9]To the extent Plaintiff argues that the status of a lawyer or individual as a purported "professional" or "serial" objector warrants an appeal bond, Price himself has never objected to a class action settlement, as Plaintiff is undoubtedly aware. While the undersigned, has represented other objectors to class action settlements, this point has no merit:

> the fact that the objectors are represented by counsel who specialize
> in objecting to class-action settlements is not a reason to think that
> they will shirk their liability for costs on appeal.

**B.**     **An Appeal Bond in an Amount Not Exceeding $1,500 Would Sufficiently Secure Costs on Appeal.**

If the Court decides to require a bond, it then must decide the amount of the bond.  A bond set at "costs on appeal" would perfectly "ensure payment" of all anticipated costs, and a bond set at any greater amount would be unnecessary and unauthorized.  *See id*.  Conversely, a bond of a lesser amount may be all that is necessary to "ensure payment of costs on appeal."  *Id*.

Plaintiff first asks the Court to include those costs available under Rule 39.  According to Plaintiff, "the Class believes that Rule 39(e) costs could add up to $10,000.00."  [Doc. 102, at p. 8]. But Plaintiff has failed to justify the need for the appeal bond to cover an estimated $10,000 for printing, copying, and record preparation.  Rather, he asserts only that a bond for such expenses is routine.  While an appeal bond request by necessity must be based on an estimate of the costs that a litigant may incur in defending against an appeal, Plaintiff here has made no effort to justify a $10,000 estimate.  *See Swenson v. Bushman Inv. Props. Ltd.*, No. 1:10-CV-00175-EJL, 2013 U.S. Dist. LEXIS 175589, at *4 (D. Idaho Dec. 9, 2013) (reducing bond from $50,000 to $25,000 because appellees "have not offered any indication of how they arrived at the requested $50,000 bond amount, and have not detailed the precise costs they expect to incur on appeal"); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-MD-2023, 2013 U.S. Dist. LEXIS 125555, at *3 (E.D. N.Y. Sept. 3, 2013) (reducing $25,000 bond which appellees "failed to justify," to $5,000 for printing and copying record).  And while Plaintiff points to cases in which courts imposed a bond between $10,000-$50,000 for copying costs, he has not explained how the costs at issue in those cases are similar to the costs he expects to incur here.  *Bayer Corp.*, at *3.

---

*In re Lawnmower Engine Horsepower Marketing & Sales Prac. Litig.*, 2010 U.S. Dist. LEXIS 123761, at *18 (E.D. Wisc. Nov. 2, 2010) (footnote omitted).

Nor can Plaintiff explain how filing a response brief in the Court of Appeals could conceivably cause him to incur a $10,000 cost bill when the only costs recoverable in this particular case and allowed via a Rule 7 appeal bond are those under Rule 39, *i.e.*, the actual re-production costs of his response brief.  *See* Eleventh Cir. R. 39.1.[10]  These costs rarely exceed a few hundred dollars when taxed against an appellant.  *In re Magsafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 563 (9th Cir. 2014).[11]  Moreover, a recent cost study by the Federal Judicial Center[12] indicates that in the Eleventh Circuit, average costs awarded under Fed. R. App. P. 39(a)(2), where a judgment was affirmed, were just ***$63.98***.  Imposition of a bond *more than one-hundred and fifty-six times that amount* is, to say the least, inflated.

The excessiveness of the requested bond is plainly illustrated by *Cobell v. Salazar*, 816 F. Supp. 2d 10, 16 (D. D.C. 2011), a class action involving two separate classes, a multi-billion dollar settlement of dozens of different claims, fifteen years of litigation, thousands of docket entries with countless exhibits under seal, and over twenty reported opinions.  There, the district court "agree[d] with [the objector appellant] that the plaintiff's actual taxable costs pursuant to Fed. R. App. P. 39

---

[10]Under Fed. R. App. 30, appellants alone are responsible for the cost of the Appendix. Also, "the reporter's transcript" is Appellants' responsibility, if one is used.

[11]The Eleventh Circuit allows $.15 per page for "in-house" copying and $.25 per page for commercial copies.

[12]The Federal Judicial Center's Study: *The Comparative Study of the Taxation of Costs in the Circuit Courts of Appeals Under Rule 39 of the Federal Rules of Appellate Procedure* (April 2011), provides statistics as to average cost awards.  *See* Table 3 of the FJC Study (addressing costs awarded over a two-year period (2009-10) in the federal circuits). The study is available at: http://www. uscourts.gov/file/frap39reppdf.

w[ould] be closer to $200 than the $34,000 or so asserted by the plaintiffs."[13] A litany of cases are of similar effect.  *See, e.g.*, *Hill v. State St. Corp.*, 2015 U.S. Dist. LEXIS 50161 (D. Mass. Apr. 16, 2015) (including the sum of "$300 for taxable costs under Rule 39."); *Azizian v. Fed. Dep't Stores, Inc.*, 499 F.3d 950, 962 (9th Cir. 2007) (vacating $40,000 of $42,000 initial bond order); *Vaughn v. American Honda Motor Co.*, 507 F.3d 295, 299-300 (5th Cir. 2007) (Fifth Circuit reduced bond for brief production costs from $150,000 to $1,000); *Tennille v. West Union Co.*, 774 F.3d 1249, 1257 (10th Cir. 2014) (Tenth Circuit reduced $25,000 bond to $5,000 bond to cover printing, copying, and record preparation costs); *In re Enfamil Lipil Mktg. and Sales Pracs. Litig,*. 2012 U.S. Dist. LEXIS 49254 (S.D. Fla. Apr. 9, 2012) ($1,000 bond for costs); *In re Bayer*, 2013 U.S. Dist. LEXIS 125555, at *3 (E.D. N.Y.) (reducing $25,000 bond, which appellees "failed to justify," to $5,000 for printing and copying record); *Curtis & Associates, P.C. v. Law Offices of David M. Bushman, Esq.*, 2011 U.S. Dist. LEXIS 23905, at *4-5 (E.D. N.Y. March 9, 2011) ($25,000 "plainly exceeds any reasonable expectation" of Rule 39 costs; $5,000 would be sufficient).

Notwithstanding all of this, Price does not oppose an appeal bond in the amount of $1,500, an amount more than *twenty-three times* the amount of the average cost award in this Circuit and would reasonably secure Plaintiff for all costs which might be associated with this appeal.

### C.   The Court Should Reject Plaintiff's Request to Include Estimated Future Administrative Costs as a Component of the Appeal Bond.

Next, Plaintiff argues that the costs that can be included in a Rule 7 bond are not limited to those costs defined by Rule 39, suggesting that "federal courts frequently include a second category of costs: the excess costs of class administrators due to delays occasioned by the appeal." [Doc. 102,

---

[13]The eventual cost award in that case was $765.  *See* Bill of Costs Order, No 11-5205 (D.C. Cir.), filed July 23, 2012].

at Page 8] (citing *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1323 (11th Cir. 2002)).  In addition to the $10,000 purportedly representing the expected appellate costs to be incurred during the appeal, Plaintiff also asks the Court to include an additional $31,594.00, representing the estimated additional costs of class administration pending resolution of the appeal.  [Doc. 102, at Page 8].  To support inclusion of increased administrative costs in the bond, Plaintiff submits the declaration of Mr. Jay Geraci, a Senior Project Manager of the court-appointed Settlement Administrator, Kurtzman Carson Consultants LLC ("Kurtzman")[Doc. 102-1] ("Geraci Decl.").  Mr. Geraci estimates increased administrative costs of $31,594 during the appeal process, covering a variety of administrative tasks.  [Geraci Decl., at p. 4].

To be sure, the anticipated increased costs listed by Mr. Geraci lack specificity and are speculative, at best.  Indeed, there are blanks for all the categories of costs and only a lump sum total under each category.  Furthermore, no basis is provided for the assumption that 2% of the Class will have forwarding address and 5% will have returned checks.  Nor, for that matter, is there any indication that Kurtzman is unable to significantly reduce these costs by minimal effort, *i.e.*, including on recorded message that Class members should advise Kurtzman of any address change or sending an email to that effect to Class members.

Plaintiff's motion to include an additional $31,594.00 in "increased administrative costs" in an appeal bond hinges on its misguided reliance on cases that have permitted the inclusion of additional administrative costs in appeal bonds.  "[C]ircuit courts addressing the meaning of 'costs on appeal' have consistently linked that phrase to costs that a successful appellate litigant can recover pursuant to a specific rule or statute." *Tennille,* at 1254 (citing cases).  This is true even though the circuits disagree as to precisely what costs a Rule 7 appeal bond can cover.  *Id.* at 1255.    The Court

may not include in an appeal bond any expenses beyond those referenced in Fed. R. App. P. 39 unless such expenses may be shifted pursuant to another statute." *In re Magsafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 563 (9th Cir. 2014) (citing *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 955-960 (9th Cir. 2007).

*Pedraza v. United Guar. Corp.*, 313 F.3d 1323, 1328 (11th Cir. 2002), for example, was a case arising under 12 U.S.C. § 2607(a) of the Real Estate Settlement Procedures Act, and the applicable fee-shifting provision stated that "the court may award to the prevailing party the court costs of the action together with reasonable attorneys fees." 12 U.S.C. § 2607(d)(5) (emphasis added). The Court explained that the words "together with" meant that attorney's fees were recoverable in addition to costs, not as part of costs. *Pedraza*, at 1333-34. Thus, the Court concluded that in a RESPA case the district court could not order appellants to post a Rule 7 bond that included anticipated appellate attorney's fees. *Id*. at 1334-35. It could not, because the fee-shifting statute applicable to the underlying RESPA lawsuit, 12 U.S.C. § 2607(d)(5), did not include attorney's fees in its definition of "costs," *id*. at 1334-35, and Rule 7 does not authorize courts to require a bond in an amount larger than "costs" as defined in the applicable fee-shifting statute. *See also Young v. New Process Steel, LP*, 419 F.3d 1201, 1204 (11th Cir. 2005). Accordingly, *Pedraza* made clear that the meaning of "costs," as used in Rule 7, is derived from the definition of costs contained in the statutory fee-shifting provision that attends the plaintiff's underlying claim. *Pedraza*, at 1333. Thus, attorney's fees could be included in the bond, but only where the relevant statute provides for the award of such fees to the "prevailing party." *Id*. at 1329.

"Circuit courts, in any event, consistently define 'costs on appeal' for Rule 7 purposes as appellate costs expressly provided for by a rule or statute." *Tennille*, at 1254. Significantly, the

-14-

Plaintiff has not identified, nor has Price located, any rule or statute that permits Plaintiff, should he succeed in defending Price's merits appeal, to recover the costs of notifying Class members of the appeals or maintaining or administering the settlement fund pending this appeal.  Requiring Price to post an appeal bond covering such costs would be an abuse of discretion and clear error.

It appears Plaintiff is arguing for a broader definition of "costs on appeal," pointing to the fact that the imposition of an appeal bond is left to the Court's discretion.  Although the Court is vested with discretion to determine whether to impose an appeal bond and, if so, in what amount, *see* Fed. R. App. P. 7 Advisory Committee Notes (leaving "the question of the need for a bond and its amount in the discretion of the district court"), Rule 7 expressly limits that bond to covering "costs on appeal."  *Tennille*, at 1256.  As explained above, circuit courts have unanimously limited that phrase to include only costs authorized by rule or statute.  And so, this Court must reject the argument that it – or any court – has discretion to include in an appeal bond any cost an appellee might incur in defending an appeal.  *See id*. (citing *In re Am. President Lines, Inc.*, 779 F.2d at 716-17 (D.C. Cir.) (rejecting argument that district court's inherent discretion supported imposing a Rule 7 appeal bond that covered appeal costs other than those set forth in Rule 39).

Undeterred, Plaintiff also advocates for a broader interpretation of "costs on appeal" because this is a class action.  There is no merit to this, however, as the federal appellate rules do not provide distinct procedures for appeals from class actions.  *See Tennille*, at 1256 (citing John E. Lopatka & D. Brooks Smith, *"Class Action Professional Objectors: What to Do About Them?"* 39 Fla. St. U. L. Rev. 865, 928-29 (2012) (arguing for revisions to Fed. R. App. P. 7 and 39 to permit appeal bonds to cover increased administrative costs in order to deter professional objectors from taking baseless appeals in order to delay implementation of class settlements).  It is not the purpose of a Rule 7

appeal bond to secure damages due to the delay an appeal might cause.  *Id*.

In *Tennille*, the Tenth Circuit explicitly rejected the notion that district courts can impose appeal bonds to secure such "administrative costs."  *Id*. at 1256 ("What Plaintiffs really appear to be seeking is an appeal bond that includes damages due to the delay Objectors' merits appeals might cause.  But that is not the purpose of a Rule 7 bond.").  The Tenth Circuit noted that the plaintiffs in *Tennille* could not identify, and the Court could not locate, any rule or statute that permits them to recover "delay damages" should they succeed in defending the merits appeal.  *Id*. at 1255.  In the end, the Court in *Tennille* rejected the reasoning of cases which included administrative costs in appeal bonds as unpersuasive, particularly "in light of the unanimous circuit authority restricting an appeal bond to costs expressly permitted by rule or statute."  *Id*. at 1256.  Here as well, Plaintiff fails to identify any rule or statute that would conceivably allow him to recover, as costs on appeal, administrative funds spent maintaining the settlement pending this appeal.

While Plaintiff claims he is seeking inclusion of anticipated administrative expenses in an appeal bond, what he is really seeking is a supersedeas bond under Fed. R. App. Proc. 8, which is a bond for delay expenses.  A supersedeas bond can cover damages for delay, but a Rule 7 bond like the one at issue here cannot.  *See Tennille*, at 1255 (citing *Vaughn*, at 298-99) (reducing Rule 7 appeal bond because such a bond cannot be used as a "surrogate for a supersedeas bond" by securing "the benefits that would inure to the class members under the settlement agreement"); *In re Am. Investors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010) (refusing to include delay costs in Rule 7 bond, noting doing so "is not widely adopted"); *see also In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 297 (S.D. N.Y. 2010); and 11 Wright et al., *Federal Practice & Procedure* § 2905.

-16-

For the foregoing reasons, the Court should limit the amount of the bond to secure those costs which are explicitly enumerated in Rule 39(e), not including increased administration costs.

### D.      Imposition of a Supersedeas Bond is Inappropriate in This Case.

Next, Plaintiff asks the Court to impose a supersedeas bond under Rule 8 for $74,340.00, purportedly "representing the estimated loss of use of the settlement fund proceeds during the pendency of this appeal." [Doc. 102, at pp. 9-10].  Forecasting the issue raised by such a request, Plaintiff argues that while Price has not sought a stay of the Final Judgment, "the filing of their appeal . . .  is an actual stay of Judgment." [Doc. 102, at p. 3].  This argument is unpersuasive.

Federal Rule of Civil Procedure 62, which concerns supersedeas bonds, does not authorize the relief that Plaintiff requests.  Rather, Rule 62(d) states that "[i]f an appeal is taken, the appellant may obtain a stay by supersedeas bond . . . ." Fed. R. Civ. P. 62(d).  Thus, by its own terms, this rule applies *only when the appellant asks the court to impose a stay.  See, e.g., In re Navistar Diesel Engine Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 113111, at *11 (N.D. Ill. Aug. 12, 2013); *In re Diet Drugs Products Liab. Litig.*,  2000 U.S. Dist. LEXIS 16085, 2000 WL 1665134, at *2-3 (E.D. Pa. Nov. 6, 2000).  Obviously, Price has not sought a stay in this case.  Instead, execution of the settlement is on-hold pursuant to terms in the parties' own negotiated settlement agreement.[14]  Accordingly, a supersedeas bond is inappropriate in this instance.

A supersedeas bond provides a means by which the appellant acquires, "as a matter of right," a stay of the district court judgment pending appeal.  11 Charles Alan Wright, Arthur R. Miller, &

---

[14]Specifically, the Settlement Agreement provides that "'Effective Date' means the date on which the Order of Final Approval becomes final" [Doc. 39-1, Settlement Agreement, Art. II (I), at p. 7] and  "'Final, Finally Approved, or Final Approval' of this Agreement means that the time has run for any appeals from a final approval order of the Court, or any such appeals have been resolved in favor of this agreement." [Doc. 39-1, Settlement Agreement, Art. II (I), at p. 8].

Mary Kaye Kane, *Federal Practice & Procedure* § 2905 (3d ed.); *see also* Fed. R. Civ .P. 62(d) (setting forth the function of a supersedeas bond); Fed. R. App. P. 8 (describing the procedure for moving for a supersedeas bond).  If an appellant does not post the supersedeas bond, or otherwise obtain a stay in the enforcement of the judgment, the party who has obtained a judgment may immediately commence enforcement action to collect on the judgment.  *See* 11 Charles Alan Wright, Arthur R. Miller, & Mary Kaye Kane, *Federal Practice & Procedure* § 2905 (3d ed.) ("In the absence of a stay obtained in accordance with Rule 62(d), the pendency of an appeal does not prevent the judgment creditor from acting to enforce the judgment."); *see, e.g., In re GE Co. Secs. Litig.*, 998 F. Supp. 2d 145, 153 (S.D. N.Y. 2014); *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 116 (2d Cir. 2007).

As one court correctly noted, in this situation, there was nothing to prevent Plaintiff and Godiva from entering into a settlement agreement that would have not required a stay in the event of an appeal. "This would have left it to any appellant to ask for a stay if it wanted one, which in turn would have triggered the requirement for a supersedeas bond under Rule 62(d)."  *In re Navistar Diesel Engine Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 113111, *11-12 (N.D. Ill. Aug. 12, 2013).

Furthermore, there is yet a second reason why a supersedeas bond is not the appropriate vehicle to protect Plaintiff against damages incurred from what he describes as a frivolous appeal. A district court cannot force an appellant to post a supersedeas bond.  *In re GE Co. Secs. Litig.*, 998 F. Supp. 2d at 153.  Under the plain language of Rule 62(d), Fed. R. Civ. P., and Rule 8, Fed. R. App. P., a district court merely "approves" a party's motion for a supersedeas bond.  *See In re GE Co. Secs. Litig.*, at 153.

-18-

Plaintiff cites Judge King's decision in *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 18384 (S.D. Fla. Feb. 14, 2012), as the primary basis for his request for a supersedeas bond. [Doc. 102, at pp. 9-10]. Judge King's decision does not help Plaintiff here. First of all, the decision is devoid of any analysis of the interplay between Rule 7, Rule 8, and Federal Rule of Civil Procedure 62, as described above. What is more, the decision appears to conflict with purposes and mechanics of Rule 8 as well as the great weight of authority interpreting the propriety of supersedeas bonds. Such a bond, after all, is retrospective, covering sums related to the merits of the underlying judgment (and stay of its execution). Here, Price did not seek a stay of the judgment. In fact, the only hold-up to execution of the judgment is the parties explicit agreement not to distribute settlement proceeds before al appeals are resolved.

To be sure, the facts here are easily distinguished from those before Judge King. For instance, Judge King did not analyze whether the parties had entered into an agreement whereby the judgment would not be executed until all appeals were final, as did Plaintiff and Godiva. Moreover, Judge King's decision was largely based upon his finding "that most if not all of the Objections are motivated by things other than a concern for the welfare of the Settlement Class. Instead, they have been brought by professional objectors and others whose sole purpose is to obtain a fee by objecting to whatever aspects of the Settlement they can latch onto." *Id*. at *45. In contrast, in its Final Order, this Court observed that "meaningful objections" were filed and disregarded Plaintiff's charges that Price, the undersigned, and other objectors "had objected in other class actions," notably remarking that such allegations had "not affected the Court's analysis" and that the Court had ignored the Magistrate Judge's "comments regarding 'professional objectors.'" [Doc. 99, at p. 6]. Furthermore, Judge King also relies upon *In re BroadcomSec. Litig.*, 2005 U.S. Dist. LEXIS 45656 (C.D. Cal.

Dec. 5, 2005) as support for a supersedeas bond. *Checking Account Overdraft Litig.*, at *45. However, the court in *Broadcom* did not impose a supersedeas bond, but justified inclusion of delay costs in the Rule 7 appeal bond on the ground that the "Objector's appeal is tantamount to a stay of the judgment approving class settlement. . . . Because there is no supersedeas bond to protect the Class from these risks, this Court finds it proper to impose a[n Appellate] Rule 7 bond to serve the same purpose." *Broadcom*, at *7. Other court have been reluctant to follow the line of reasoning in *Broadcom* because of the distinction between Rule 7 or 8 bonds. *See, e.g., In re AOL Time Warner, Inc.*, 2007 U.S. Dist. LEXIS 69510, at *15 (S.D. N.Y. Sept. 19, 2007). What is more, costs accrued pending appeal are prospectively incurred new damages and may not be recovered through a supersedeas bond. *Adsani*, 139 F.3d at 70 n.2. Here, Plaintiff seeks to include in a bond an amount representing the "estimated loss of use of the settlement fund proceeds" pending the appeal.

Simply put, the Court cannot impose a supersedeas bond here because there is no judgment to be stayed pending Price's merits appeal. That is because Plaintiff and Godiva expressly provided that their settlement would not become effective until all appeals challenging the settlement are resolved. *See Tennille*, at 1256; *Vaughn*, at 299 (5th Cir.); *In re Am. Investors Life Ins. Co.*, at 166.

## IV.   CONCLUSION

For all of this, if the Court is inclined to impose an appeal bond, it should impose an appeal bond in an amount not exceeding $1,500.

Respectfully submitted, this 3rd day of November, 2016.


/s/ W. Allen McDonald
W. Allen McDonald, Esq.
LACY, PRICE, & WAGNER, P.C.
249 N. Peters Road, Suite 101
Knoxville, TN 379234917
Tel: 865 246 0800

*Counsel for James H. Price*

**CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the foregoing was submitted electronically through the

Court's Electronic Filing System ("ECF").  Notice of this filing will be sent by operation of the

Court's ECF to all parties indicated on the electronic filing receipt, including;

Michael S. Hilicki, Esq.
KEOGH LAW, LTD.
55 West Monroe Street
Ste. 3390
Chicago, IL 60603

Brian Melendez
DYKEMA GOSSETT, PLLC
4000 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3903

This 3rd day of November, 2016.

*/s/ W. Allen McDonald*
W. Allen McDonald