**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:15-CV-60716-WPD**

Dr. David S. Muransky, individually and on behalf
of all others similarly situated,

Plaintiff,

v.

Godiva Chocolatier, Inc.,

Defendant.

---

**CLASS MEMBER ERIC ALAN ISAACSON'S OPPOSITION TO
AMENDED MOTION FOR APPEAL BOND**

## I.    INTRODUCTION

This is a case prosecuted under FACTA, under which class members would be entitled, upon proof of wilfull violations, to recover individual damages of from $100 to $1000 apiece, for a potential aggregate recovery of over $300 million.  Dr. Muransky settled the case for less than two percent of that sum, with a third of the settlement to be paid to attorneys who refused to say how much time they devoted to the case.   Isaacson timely objected to the settlement and fee award, as authorized by subsections (e)(5) and (h)(2) of Rule 23 of the Federal Rules of Civil Procedure.  When his objections were overruled, he filed a notice of appeal as authorized by the Supreme Court's decision in *Devlin v. Scardelletti,* 536 U.S. 1, 8 (2002), as did Objector Price.

Dr. Muransky now seeks to quash Isaacson's appeal by requiring objectors Price and Isaacson – whose individual stakes as class members are necessarily limited by the $1000 cap on statutory liquidated damages – "to post an appeal bond totaling $115,934.00" comprising:

1.    $10,000.00 in estimated Rule 39 appeal costs under Fed. R. Appellate Proc. 7;

2.    $31,594.00 in estimated additional administration costs under FRAP 7; and

1

3.      $74,340.00 in interest on the funds to be distributed, as a supersedeas bond under FRAP 8.  DE107 at 10-11.

The motion is plainly designed to block appellate review of this Court's rulings and should be rejected for that reason.  District courts should not act as gatekeepers blocking appellate review of their own decisions – particularly not where class members raise objections as contemplated by Rule 23 itself. This Court is not entitled to require a large bond in order to quash Isaacson's appeal merely because it may believe that the Eleventh Circuit is likely to affirm.  *See infra* at 7-8.

Even assuming Dr. Muransky wins the appeal, the costs he seeks to have bonded are exorbitant and unwarranted.  Dr. Muransky's Rule 39 costs (for photocopying his briefs and perhaps a supplemental appendix) are highly unlikely to reach even one thousand dollars – far below the $10,000 figure that Dr. Muransky pulls out of the air.  *See infra* at 9-11.  Absent authorization by statute or rule, moreover, costs on appeal do not include additional expenses, such as attorneys' fees, administrative expenses, or interest.  *See Pedraza v. United Guar. Corp.,* 313 F.3d 1323, 1333 (11th Cir. 2002); *Tennille v. Western Union Co.,* 774 F.3d 1249, 1255-56 (10th Cir. 2014).  And Dr. Muransky cites no statute or rule permitting such expenses to be taxed as costs.  His request for a bond covering $31,594.00 in estimated administrative expenses must therefore be denied.  *See infra* at 11-13.

Neither is Dr. Muransky entitled to demand that Isaacson post a supersedeas bond covering interest on the settlement fund.  Federal Rule of Civil Procedure 62(d) provides that if an appeal is taken by an appellant who desires a stay of judgment, "the appellant may obtain a stay by supersedeas bond."  Fed.R.Civ.P. 62(d).  Isaacson, however, neither seeks nor desires any stay of judgment.  Where, as here, the parties themselves agreed that "their settlement would not become effective until all appeals challenging the settlement are resolved," there is no need for anyone to seek a stay of judgment and no basis for a supersedeas bond. *Tennille v. Western Union Co.,* 774 F.3d 1249, 1256 & n.5 (10th Cir. 2014); *accord Vaughn v. American Honda Motor,* 507 F.3d 295, 298-99 & n.6 (5th Cir. 2007). *See infra* at 13-15.

Finally, although Dr. Muransky laces his motion with rhetoric about "frivolous" arguments and "meritless" appeals, he offers no argument directed at the actual merits of Isaacson's appeal, and no discussion of the issues Isaacson raised before this Court.  Instead, Dr. Muransky's circular argument is that the motivation for the appeal is improper, so it is

2

necessarily meritless, and that the Court should therefore impose a bond high enough to prevent the appeal.  But each of these premises is false:  Dr. Muransky's argument relies on falsehoods about Isaacson and his counsel that have already been exposed as false. *See infra* at 16-19. Meanwhile, the appeal has considerable merit, raising serious issues of federal jurisdiction and class-action procedure, including questions of first impression for the Eleventh Circuit. *See infra* at 7-8.

## II.    STATEMENT OF FACTS

This is a case prosecuted under FACTA, under which class members would be entitled, upon proof of willful violations, to recover individual damages of from $100 to $1000 apiece, for a potential aggregate recovery of over $300 million.  Plaintiff Dr. David S. Muransky settled the case for less than two percent of that sum.  Appellant Isaacson timely objected to the settlement and fee award, as authorized by subsections (e)(5) and (h)(2) of Rule 23 of the Federal Rules of Civil Procedure.  His counsel appeared at the final approval hearing and argued.

Upon the filing of Isaacson's objection, Plaintiff's counsel immediately issued a subpoena and demanded that Mr. Isaacson sit for a deposition to testify about his history of objecting and relationship to his counsel.  He was deposed on September 2, 2016. Isaacson testified that he expects his lawyers will be paid only upon the Court's finding that their work conferred a benefit on the class. *See* Deposition of Eric Alan Isaacson, attached as Exhibit 2 to Isaacson Declaration (DE92-1) at 49-50. Mr. Isaacson also proposed that the parties stipulate to an order requiring objectors and class counsel to disclose to, and obtain the approval of, this Court before withdrawing any objection or appeal for any payment of money. DE83-2 at ECF 18-20; *see also* Isaacson Decl., DE92-1 Ex. 2 at 54-56.

Meanwhile, Class Counsel ignored all of Isaacson's counsel's requests for information about the discovery that had occurred in the case, including refusing to even disclose whether Dr. Muransky had been deposed.  Ultimately, when it became clear Dr. Muransky had not been deposed and was, in fact, substantially absent from the case, Isaacson moved for access to the discovery taken and for a deposition of Dr. Muransky.  DE72.

Class Counsel's response to Isaacson's objection and discovery request was hostile, *ad hominem*, and thoroughly false.  Their papers were rife with factual errors about Mr. Isaacson and his counsel, which then appeared in a Report & Recommendation issued before he could

3

respond. The Report stated that "the Plaintiff aptly characterizes . . . Mr. Isaacson and Mr. Davis as 'professional objectors' who threaten to delay resolution of class action cases unless they receive extra compensation." Report and Recommendation, DE82 at 5-6. In support of this conclusion, the Report noted that "the Plaintiff listed numerous instances in which each man has represented objectors in federal class actions." *Id.* at 6. This required considerable effort on the part of his counsel to correct. *See* Objection to Report and Recommendation on Attorneys' Fees, DE92 at 11-20 and the Declarations of Eric A. Isaacson, C. Benjamin Nutley, and John W. Davis filed therewith.

Isaacson established that, far from being a "professional objector" of the sort Dr. Muransky describes, he is a 26-year class-action lawyer with considerable experience in federal appeals, who has only rarely represented objectors. *See* DE92 at 13-14 and nn. 3-7; *see also* Isaacson Declaration, DE92-1. His counsel, too, provided extensive information about their professional histories establishing that they are lawyers with long experience in class and multi-district complex commercial litigation, including securities, consumer, antitrust, and mass-tort cases. Davis Declaration, DE92-2; Nutley Declaration, DE92-3. They also bring that experience to bear by prosecuting objections, and they provided citations to numerous objection cases in which their work was praised by courts or they were successful by establishing important precedents on appeal,[1] by preventing final approval,[2] by lowering attorneys' fees or incentive awards,[3] or by obtaining changes to settlements.[4] *See* DE92 at 14-16 & nn. 8-11; DE92-1 (Davis Decl.) and DE 92-3 (Nutley Decl.).

---

[1] *See* DE92 at n.11; *see also Rodriguez, et al. v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009). *See also* Nutley Decl., 92-3 and Ex. 1 thereto (declaration of William B. Rubenstein ("Rubenstein Declaration"), (opining that the results in the case were "impressive results for objectors, well beyond the types of changes successful objectors are typically able to achieve" and that the results were "accomplishments at the very high end of objector practice" that "outstrip the types of accomplishments objectors normally make in class suits." *Id.* at 21 ¶¶33-34; *Radcliffe v. Experian Information Solutions Inc.*, 715 F. 3d 1157, 1159 (9th Cir. 2013); *In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001).

[2] *See* DE92 at 14, n.8; Davis Decl.,DE92-2, ¶10; Nutley Decl., DE92-3 ¶12 *Consumer Cause v. Mrs. Gooch's Natural Food Markets, Inc.*, 127 Cal.App.4th 387 (2005) (noting that in that case "focused and persuasive" objections by "experienced class counsel" Kendrick & Nutley convinced trial court to deny final approval of the settlement).

[3] DE92 at 15, n.10, DE92-2 at ¶6 & Ex. 3; *see also Rodriguez, et al. v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009); *see also* Davis Decl., 92-2, Ex. 4 (order awarding fees to Mssrs. Davis and Nutley); Davis Decl., 92-2 at ¶6 describing *Lees, et al. v. Anthem Insurance Co's, Inc.*

Isaacson also established that neither he nor his counsel have ever been sanctioned or censured for their work in objections, or any other field of law.  See Isaacson Deposition DE92-1, Exhibit 2 at 6:4-15; Nutley Decl., DE92-34 at ¶9; Davis Decl., DE92-2 at ¶5.  In light of that submission, this Court in its final order noted that the Court had ignored "comments regarding 'professional objectors'" and that the charges "had not affected the Court's analysis."  See DE99 at 6.

Opposing Isaacson's proposed discovery, Class Counsel claimed that there was nothing to see: Dr. Muransky had established his adequacy, and was "already deposed on the matter" of his criminal conviction in 2013, in another class action filed in the name of his business, A Aventura Chiropractic Center.  Opposition to Motion for Discovery, DE78 at 2, citing *A Aventura Chiro. Ctr., Inc. v. Med Waste Mgmt.*, LLC, 12-cv-21695 (S.D. Fla.).  This Court ultimately agreed and refused Isaacson's request to take discovery because the 2013 deposition provided sufficient information about his litigation history.  DE85 at 3. Class counsel did not, however, disclose that Dr. Muransky or A Aventura Chiropractic had ever been found to be an inadequate class representative.

After Isaacson's objections and discovery motion were overruled, he filed a notice of appeal as authorized by the Supreme Court's decision in *Devlin v. Scardelletti*, 536 U.S. 1, 8 (2002).

Thereafter, Isaacson's counsel learned that Dr. Muransky's testimony in two other class action cases (in which his earlier business A Aventura Chiropractic was a plaintiff) had resulted in two separate findings in 2015 that Dr. Muransky and A Aventura Chiropractic were inadequate class representatives.  In *A Aventura Chiropractic Care Center, Inc. v. BB*

---

(U.S.D.C. ED MO No. 4:13-cv-01411-SNLJ) (increased value of fund available to the class by $458,333.33) and *Davis v. Cole Haan, Inc.* (U.S.D.C. Northern Dist. Cal. No. 11-01826) (Davis and Nutley successfully moved for an order requiring class counsel's attorneys' fees to be calculated under the contingent "coupon" fee provisions of the Class Action Fairness Act, resulting in a fee some 90% lower than the fee defendant had originally agreed to pay under the settlement).

[4] *See, e.g., Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 49 (Cal. Ct. App. 2008) (noting initial objections resulted in revisions to the settlement, new notice, and increased class benefits); Nutley Decl. at , and Ex. 2 thereto (describing *Conner v. J.P.Morgan Chase Bank*, (U.S.D.C. Southern Dist. Cal. No. 10-cv-1284), in which the objection resulted in the identification of over 1.4 million class members who had not been notified of the settlement, and an increase in the settlement amount by approximately $3.9 million to compensate newly-discovered claimants;

*Franchising LLC*, 2015 WL 11051056, No.: 1:15-cv-20137-UU (SD Fla., August 26, 2015) a judge of this Court concluded that Dr. Muransky's testimony demonstrated that his chiropractic company – the putative class representative – was not an adequate class representative "because it has virtually abdicated to its attorneys the conduct of the case, it is unaware of its responsibilities as a class representative, and it is certainly not capable of controlling or prosecuting this action." Id. at *4.

That court found its conclusion "bolstered by the recent Florida state court decision finding . . . that Plaintiff was an inadequate class representative in another TCPA case because . . . [Dr.] Muransky "was unable to credibly testify as to basic facts" about the conduct of the case. *Id.*, quoting *A Aventura Chiropractic Care Center, Inc. v. Phil McCullem.com LLC*, Case No. 50 2009 CA 023494 (Fla. Cir. Ct. Aug. 19, 2015).

As with Dr. Muransky's prior criminal-fraud conviction, these rulings were not disclosed by Class Counsel to this Court, though they would have been revealed by Isaacson's proposed discovery and though they were unquestionably relevant to the issue of Dr. Muransky's adequacy. Consequently, the Court was not aware of them when it denied discovery to Isaacson, nor when determined that Dr. Muransky was an adequate class representative.[5]

Dr. Muransky now seeks to quash Isaacson's appeal by requiring objectors Price and Isaacson – whose individual stakes as class members are necessarily limited by the $1000 cap on statutory liquidated damages – "to post an appeal bond totaling $115,934.00" comprising:

1.    $10,000.00 in estimated Rule 39 appeal costs under Fed. R. Appellate Proc. 7;

2.    $31,594.00 in estimated additional administration costs under FRAP 7; and

3.    $74,340.00 in interest on the funds to be distributed, as a supersedeas bond under FRAP 8.

DE107 at 10-11.

_____

[5] Isaacson notes that A Aventura Chiropractic appears to have developed a practice of filing class actions that it voluntarily dismisses without seeking class certification, thus avoiding Rule 23(e)'s requirement that the court review payments made to it in return for dropping the actions. *See, e.g., A Aventura Chiropractic Care Center, Inc. v. Orthopedic Pharmaceuticals, Inc. et al.,* 1:15-cv-21576-DPG (S.D. Fla.) (class action filed 04/27/2015; dismissed 05/13/2015); *A Aventura Chiropractic Care Center, Inc. v. BB Franchising LLC et al.,* 1:15-cv-20137-UU (S.D. Fla.) (class action filed 01/14/2015; dismissed "without prejudice" 11/12/2015; dismissed "with prejudice" 09/13/2016); *A Aventura Chiropractic Care Center, Inc. v. David Lerner Advisors LLC et al.,* 1:15-cv-21817-RNS (S.D. Fla.) (class action filed 05/14/2015; dismissed 01/12/2016).

### III.    ARGUMENT

#### A.    This Court Should Not Seek to Foreclose Appellate Review of Its Work by Imposing an Exorbitant Bond that Includes Unsupportable Costs

Dr. Muransky's motion seems to be based on the premise that this Court should impose a large bond in order to block appellate review of its judgment and orders.  That would be a gross misuse of Rule 7.   Dr. Muransky suggests that "Rule 7 authorizes the Court to forecast the outcome of the appeal," Amended Motion at 3-4and to require a very large bond if it believes an appeal is "meritless."  Amended Motion at 5.

In fact, district courts generally should not act as gatekeepers blocking appellate review of their own decisions.  *Vaughn v. American Honda Motor Company*, 507 F.3d 295, 299 (5th Cir.2007) (warning against excessive bonds because "imposing too great a burden on an objector's right to appeal may discourage meritorious appeals or tend to insulate a district court judgment in approving a class settlement from appellate review"); *accord, e.g., Dewey v. Volkswagen of Am.*, No. 07-2249, 2013 WL 3285105, at *2 (D.N.J. Mar. 18, 2013) (following *Vaughn*); *Rougvie v. Ascena Retail Grp., Inc.*, No. CV 15-724, 2016 WL 6069968, at *4 (E.D. Pa. Oct. 14, 2016) (observing that a joint and several bond for $120,000 "may likely preclude pursuit of an appeal," a result that "appears to be the Class goal" but determining that approach to be "contrary to the right of any disappointed objector to file a notice of appeal").  District courts are not entitled to impose large bonds merely because they believe an appeal might lack merit.  *In re Certainteed Fiber Cement Siding Litig.*, No. 2270, 2014 WL 2194513, at *1 n.2  (E.D. Pa. May 27, 2014) (discussing extant authority and finding that a "motion seeking to impose a Rule 7 cost bond is not the appropriate mechanism" to raise "concerns regarding the merits of and motivations behind the . . . objectors' appeal");  *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010) (denying cost bond to the extent it was based on the alleged frivolousness of the appeal: "the Court of Appeals is the best forum to litigate the merits of the appeal and to account for any frivolity that harms the plaintiffs").

The point is moot, however.  Though Dr. Muransky overtly hopes that requiring a six-figure bond would discourage the pending appeal, and though he loads his memorandum with innuendo about discouraging "frivolous" proceedings, he does not and cannot demonstrate that Isaacson's appeal is frivolous.  It surely is not.  The Supreme Court held in *Spokeo Inc. v. Robins*, 136 S. Ct. 1540, 1549-50 (2016), that in statutory damages cases such as this a district court is

required by Article III to make findings concerning whether the plaintiff suffered a sufficiently concrete injury to support its exercise of jurisdiction – findings this Court failed to make. Additionally, two other circuits have held that Rule 23(h) bars requiring class members to file objections before class counsel has filed its final motions seeking settlement approval and attorneys' fees. *See Redman v. RadioShack Corp.,* 768 F.3d 622, 637-38 (7th Cir. 2014); *In re Mercury Interactive Corp. Securities Litigation,* 618 F.3d 988, 993-95 (9th Cir.2010).

Isaacson's objection to Dr. Muransky's incentive award also presents important issues that are by no means frivolous. *See, e.g., Shane Group v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 310-11 (6th Cir. 2016). Whether incentive awards are permissible appears to be a question of first impression in the Eleventh Circuit, and it remains an open question in several other circuits. *See, e.g., Bais Yaakov of Spring Valley v. Act, Inc.,* 798 F.3d 46, 50 (1st Cir. 2015) ("this circuit has never ruled on when, if ever, such awards are valid"). Their status is dubious, to say the least, given the Supreme Court's holding that a named plaintiff cannot claim compensation for personal services from a common-fund recovery, *see Trustees v. Greenough,* 105 U.S. 527, 537-38 (1882), a decision that is binding until overruled by the Supreme Court itself or by act of Congress: "'Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.'" *Bosse v. Oklahoma,* No. 15-9173, slip op. at 2 (U.S. Oct. 11, 2016) (quoting *Hohn v. United States*, 524 U.S. 236, 252-53 (1998)).

Neither can Isaacson's arguments concerning attorneys' fees be deemed frivolous, given the conflict among the circuits on reasonable fee awards in common-fund cases, and the fact that even Eleventh Circuit common-fund precedents require counsel to consider the time that attorneys actually devoted to the matter.

Nor is it likely that a genuinely frivolous appeal would cause much expense or delay. For, as the Eleventh Circuit observed in *Pedraza,* "appellate courts may on motion dismiss frivolous claims at the outset (that is, before substantial fees are incurred)." *Pedraza,* 313 F.3d at 1333 n.14 (citing *In re Am. President Lines, Inc.,* 779 F.2d 714, 717 (D.C. Cir. 1985) ("The traditional countermeasure for an appeal thought to be frivolous is a motion in the appellate court to dismiss, which is available at the outset of the appeal and before expenses thereon begin to mount."). If Dr. Muransky really believes Isaacson's appeal is frivolous, he should seek relief from the Eleventh Circuit.

**B.      Dr. Muransky's Rule 39 Costs on Appeal are Unlikely to Reach $1,000**

Federal Rule of Appellate Procedure 7 provides in pertinent part: "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary *to ensure payment of costs on appeal.*" Fed. R.App. P. 7 (emphasis added). In most cases, the primary element covered by the term "costs on appeal" is the expense, under Rule 39, of copying the appellate briefs and appendix, as is reflected in the Eleventh Circuit "Bill of Costs" form, which includes lines for these items.[6]  By its own Rule 39-1, the Eleventh Circuit permits the Clerk to set the going rate for these costs.  See 11th Cir. R. 39-1 "Costs."[7] The Eleventh Circuit "Bill of Costs" form thus allows a prevailing party to seek fifteen cents a page for in-house copies, and up to twenty-five cents a page for commercially printed briefs. FRAP 39(e) further provides that certain costs incurred by the appellant are taxable in the district court, but there is no reason to require a bond for any of them as they are not costs incurred by the appellees.[8]

---

[6] The Eleventh Circuit "Bill of Costs" form, Exhibit A hereto, is available online at: http://www.ca11.uscourts.gov/sites/default/files/courtdocs/clk/FormBillofCosts_APR16.pdf

[7] FRAP 39(c) provides: "Each court of appeals must, by local rule, fix the maximum rate for taxing the cost of producing necessary copies of a brief or appendix, or copies of records authorized by Rule 30."  The local rule provides: 11th Cir. R. 39-1 *Costs.*   In taxing costs for printing or reproduction and binding pursuant to FRAP 39(c) the clerk shall tax such costs at rates not higher than those determined by the clerk from time to time by reference to the rates generally charged for the most economical methods of printing or reproduction and binding in the principal cities of the circuit, or at actual cost, whichever is less. Unless advance approval for additional copies is secured from the clerk, costs will be taxed only for the number of copies of the brief and appendix required by the rules to be filed and served, plus two copies for each party signing the brief. All costs shall be paid and mailed directly to the party to whom costs have been awarded. Costs should not be mailed to the clerk of the court.

[8] FRAP 39(e) provides:

    The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:
    (1)  the preparation and transmission of the record;
    (2)  the reporter's transcript, if needed to determine the appeal;
    (3)  premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and
    (4)  the fee for filing the notice of appeal.

That means a prevailing appellee who filed a one-hundred page brief could seek $25 for each copy of its brief.  Here, there would be a total of 14 compensable briefs produced for filing (seven), service (five), and personal use (two).  At $25 per copy, each appellee's costs for its brief might come to as much as $350.  An appellee who files a supplemental appendix might incur a few hundred dollars more.  A 2011 Federal Judicial Center report on costs taxed on appeal confirms that appellees' costs typically do not exceed a few hundred dollars:  "Leaving out the larger awards that were identified as outliers in several circuits, the data show that across all circuits average costs awarded to appellees under subsection 39(a)(1) ranged from $84.15 to $198.08 ($153.68 median average award); under subsection 39(a)(2) average costs awarded to appellees ranged from $18.20 to $345.04 ($219.06 median average costs) . . . ."  MARY LEARY, THE COMPARATIVE STUDY OF THE TAXATION OF COSTS IN THE CIRCUIT COURTS OF APPEALS UNDER RULE 39 OF THE FEDERAL RULES OF APPELLATE PROCEDURE 3-4 (Federal Judicial Center, April 2011) (available online at: www.uscourts.gov/file/frap39reppdf).

It is therefore quite unlikely that Dr. Muranksy's Rule 39 costs will reach even a thousand dollars.  Dr. Muransky's "estimate" of $10,000 for Rule 39 costs is simply preposterous.  *See, e.g.*, *In re MagSafe Apple Power Adapter Litig.*, 571 Fed. Appx. 560, 563 (9th Cir. Apr. 24, 2014) (unpublished) (in appeal of class settlement, vacating bond of $15,000 because appeal costs "rarely exceed more than a few hundred dollars when taxed against an appellant"); *Vaughn v. American Honda Motor Co.,* 507 F.3d 295, 299-300 (5th Cir. 2007) (bond for Rule 39 brief-production costs reduced from $150,000 to $1,000); *Lundy v. Union Carbide Corp.*, 598 F.Supp. 451, 452 (D. Or. 1984) (rejecting appellees' request for a $2,500 bond and holding that "a bond in the amount of $500 would be appropriate").

It is, moreover, wholly appropriate to deny an appeal bond where the applicant neither adequately justifies the amount sought, nor shows that the appellant cannot be trusted to pay the small amounts taxable under Rule 39.  *Pan American Grain Mfg. Co. v. Puerto Rico Ports Authority*, 193 F.R.D. 26, 43 (D. P.R. 2000); *see also Vaughn*, 507 F.3d at 299-300 (staying Rule 7 bond of $150,000 imposed upon appealing objector and reducing it to $1000 where the bond

---

It is the appellant's responsibility to prepare and transmit the record, pay for the reporter's transcript, and pay the fee for filing the notice of appeal and, if it seeks a stay of judgment, to arrange for a supersedeas bond under FRAP 8 or Fed. R. Civ. P. 62(d).

imposed was "not supported by any findings or reference to evidence in the record"). It is insufficient simply to throw out a range of costs taken from other cases, as Dr. Muransky has done here. *Tennille v. W. Union Co.*, 774 F.3d 1249, 1257 (10th Cir. 2014) (rejecting cost estimates where plaintiffs made "no effort to justify their $25,000 estimate" and instead relied on amounts awarded in other cases, because "Plaintiffs have not explained how the costs at issue in those cases are similar to the costs Plaintiffs expect to incur here.")

As set forth below, the requested bond for administrative expenses and interest on the class fund is completely without legal support, and overtly interposed for the improper purpose of preventing the appeal. Consequently, the only bondable expenses are likely to be the standard, enumerated Rule 39(e) costs. As such, the Court should question whether the effort of bonding potential expenses of a few hundred dollars – in the absence of any indication that Isaacson would refuse to pay them if Class Counsel bothered to demand them – is worth the candle.

### C.    Dr. Muransky is not Entitled to a Rule 7 Bond for Estimated "Administrative Expenses" or Interest

Beyond the basic Rule 39 costs, additional "costs" sometimes may be specifically authorized by statute or rule, and thus bondable. *See Pedraza v. United Guar. Corp.,* 313 F.3d 1323, 1333 (11th Cir. 2002); *Tennille v. Western Union Co.,* 774 F.3d 1249, 1255-56 (10th Cir. 2014). Though they differ on some other points, all "circuit courts addressing the meaning of 'costs on appeal' have consistently linked that phrase to costs that a successful appellate litigant can recover pursuant to a specific rule or statute." *Tennille,* 774 F.3d at 1254. Costs that are not statutorily recoverable are not properly subject to a bond. See the extended discussion of this point in the Price Opposition, DE109, at 12-15.

Thus, Dr. Muransky has not sought any bond to cover anticipated attorneys' fees, because FACTA patently does not include potential attorneys' fee awards as part of costs. Rather, FACTA's fee-shifting provision provides that a successful plaintiff may recover from an adjudicated willful violator "the costs of the action together with reasonable attorney's fees." 15 U.S.C. §1681n(a)(3). That is just like the RESPA statute in *Pedraza,* which did not include attorneys' fees as costs, thereby excluding them as a category of expenses that may be included in an appellate cost bond. *Pedraza,* 313 F.3d at 1334.

Dr. Muransky's bid for "increased administrative costs" resulting from the appeal suffers the same fate. A statute like FACTA, permitting recovery of costs from an adjudicated willful

violator does not, of course, allow for an award of costs from a member of the class – such as Isaacson – in the first place.[9]  Even if it did, FACTA includes neither administrative expenses nor interest within the "costs" that can be recovered, even against a willful violator.  Dr. Muransky identifies no other statute or rule that includes administrative expenses or interest within the "costs" that may be recovered or taxed on appeal in a FACTA case.  That is fatal to Dr. Muransky's motion to bond those expenses.  As the Tenth Circuit explained in *Tennille*:

> Circuit courts, in any event, consistently define "costs on appeal" for Rule 7 purposes as appellate costs expressly provided for by a rule or statute. But Plaintiffs have not identified, nor could we find, any rule or statute that permits them, should they succeed in defending Objectors' merits appeals . . .  to recover the cost of maintaining the class settlement fund pending the merits appeals. Therefore, the district court erred in requiring Objectors to post an appeal bond covering these costs.

*Tennille,* 774 F.3d at 1255.  "What Plaintiffs really appear to be seeking is an appeal bond that includes damages due to the delay Objectors' merits appeals might cause.  But that is not the purpose of a Rule 7 bond."  *Id.* at 1256.  "Although Plaintiffs can point to several unreported district court cases imposing appeal bonds that cover delay damages or increased administrative costs to maintain a class settlement pending appeal, we do not find the reasoning of those cases persuasive in light of the unanimous circuit authority restricting an appeal bond to costs expressly permitted by rule or statute."  *Id.* at 1256.  *See also Eastwood Enters., LLC v. Farha*, No. 8:07–cv–1940–T–33EAJ, 2011 WL 2681915, at *1 (M.D.Fla. July 11, 2011) (questioning bond for prospective damages in *Allapattah Servs.*, 91–0986–CIV, 2006 WL 1132371, at *18 (S.D.Fla. Apr.7, 2006), because the Eleventh Circuit's decision in *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323 (11th Cir.2002), "did not address or approve including potential damages to a class in an appeal bond."); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10ML02151 JVS FMOX, 2013 WL 5775118, at *3 (C.D. Cal. Oct. 21, 2013) (concluding that absence of statutory authorization "precludes inclusion of

---

[9]  *See Young v. New Process Steel, LP,* 419 F.3d 1201, 1205 (11th Cir. 2005) (court must honor statute imposing different standards on plaintiffs and defendants for the award of costs and fees); *Azizian v. Federated Dept. Stores,* 499 F.3d 950, 959-60 (9th Cir. 2007) (because Clayton Act section 4, which permits a prevailing plaintiff to recover "the cost of suit, including a reasonable attorney's fee," "a district court can order only a losing defendant – the party that has violated the antitrust laws – to pay attorney's fees under section 4," and thus cannot require an objecting class member to post a bond for attorneys' fees on appeal).

increased settlement administration costs in the amount of a bond imposed on appeal"); *In re Navistar Diesel Engine Prod. Liab. Litig.*, No. 11 C 2496, 2013 WL 4052673, at *2 (N.D. Ill. Aug. 12, 2013) (concluding Rule 7 does not permit a court to require an appeal bond for extra administrative costs that otherwise would not be incurred, and finding unpersuasive the contrary results in cases such as *Heekin v. Anthem, Inc.*, No. 1:05–cv–01908–TWP, 2013 WL 752637, at *1–2 (S.D.Ind. Feb. 27, 2013) and *In re Uponor, Inc. F1807 Plumbing Fittings Products Liab. Litig.*, No. 11–MD–2247 ADM/JJK, 2012 WL 3984542, at *2 (D.Minn. Sept. 11, 2012); *see also In re Navistar*, 2013 WL 4052673, at *3 n.1 (noting that "plaintiffs could have negotiated for a fee and expense award that expressly covered any additional administrative costs resulting from an appeal" but failed to).

### D.  Isaacson Cannot be Required to Post a Supersedeas Bond to Cover Interest on the Gross Class Fund

Dr. Muransky urges this Court to require a supersedeas bond for interest on the gross settlement fund for the pendency of the appeal.  Dr. Muransky seeks this item under Rule 8, evidently aware that the majority of courts expressly do not permit interest on the fund to be bonded as a compensable Rule 7 cost.  *See, e.g.*, *Eastwood Enterprises, LLC v. Farha*, No. 8:07-CV-1940-T-33EAJ, 2011 WL 2681915, at *2 (M.D. Fla. July 11, 2011) (observing that the "clear majority" of Second Circuit cases "hold that damages for delay cannot be included in Rule 7 bonds where no underlying statute provides for the inclusion of such costs" and rejecting district court cases holding otherwise, such as *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *1 (D.Me. Oct.7, 2003) and *In re NASDAQ Market–Makers Antitrust Litig.*, 187 F.R.D. 124, 128 (S.D.N.Y.1999)); *MercExchange, L.L.C. v. eBay, Inc.*, 660 F. Supp. 2d 653, 660 & n.8 (E.D. Va. 2007) (given *Pedraza's* requirement of justifying a bond for attorneys' fees under a statute or other exception to the American Rule, "to justify requiring  . . . a bond covering the judgment itself—and not simply attorneys' fees—would require a set of exceptional facts not found in this case.").

Dr. Muransky thus instead asks for a supersedeas bond under FRAP 8.[10]  *See, e.g.*, *In re Enfamil LIPIL Mktg. & Sales Practices Litig.* MDL 2222, No. 11-MD-02222, 2012 WL 1189763,

---

[10] FRAP 8 specifies that a party seeking "a stay of the judgment or order of a district court pending appeal" ordinarily should seek relief first in the district court.  FRAP 8(a)(1)(A).

at *2-3 (S.D. Fla. Apr. 9, 2012) (refusing interest bond under Rule 7 "where no underlying statute provides for the inclusion of such costs" and distinguishing the interest bond in *Checking Overdraft* as one sought under Rule 8). But a supersedeas bond under Rule 8 cannot be issued in the way, or for the purpose, Dr. Muransky proposes. As Price points out, no appellant is seeking a stay of the judgment pending appeal, and appellees cannot seek a stay of judgment, much less demand that it be bonded by an appellant who desires no stay. Price Opposition, DE109 at 17.

Nor is it accurate to say that the appeal somehow amounts to a de facto stay of the judgment. First, the parties to the settlement here agreed that their settlement would not become effective until all appeals are resolved. *See* discussion, Price Opposition, DE109 at 17 & n.14. In such a case, there is no need for a stay of execution, and thus no basis for requiring any supersedeas bond. *See id.*; *see also Tennille v. Western Union Co.,* 774 F.3d 1249, 1256 & n.5 (10th Cir. 2014) (explaining that a supersedeas bond did not lie when "there is no judgment yet to be stayed pending Objectors' merits appeals" because the settling parties "expressly provided that their settlement would not become effective until all appeals challenging the settlement are resolved").

As to the distribution of funds, the judgment is self-staying. There is no reason for Appellants to seek a stay of execution, and nothing in the text of Civil Procedure Rule 62(d) or FRAP 8(a) permits Dr. Muransky to demand, or this Court to require, that any appealing objector seek a stay. *U.S. for Use of Terry Inv. Co. v. United Funding & Inv'rs, Inc.*, 800 F. Supp. 879, 880–81 (E.D. Cal. 1992) (rejecting argument that plaintiff's inability to enforce judgment was a *de facto* stay permitting court to impose a supersedeas bond on the motion of appellee); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prod. Liab. Litig.*, No. CIV.A. 99-20593, 2000 WL 1665134, at *3 (E.D. Pa. Nov. 6, 2000) ("Although the consequences of an appeal from approval of a class action settlement may be similar to a stay, the court nevertheless concludes that it has no authority to impose a supersedeas bond in the absence of an appellant's motion for a formal stay of execution.").

Even more fundamentally, and regardless of any statutory entitlement, under the settlement's provisions interest is not an item of "damages" that Appellants would owe to the class on any theory, even if they lose the appeal. This case is the same as *Vaughn v. American*

---

Federal Rule of Civil Procedure 62(d) specifies that "the appellant may obtain a stay by supersedeas bond."

*Honda Motor,* 507 F.3d 295, 298-99 & n.6, (5th Cir. 2007), in which the Fifth Circuit explained that:

> The settlement agreement makes no provision for the payment of pre-judgment interest on the benefits Honda has agreed to pay, and the settlement does not become effective, by its terms, until any appeals are concluded. The parties to the settlement thus agreed that the financial time-value of the benefits to be paid under the settlement is not to be awarded to the plaintiffs.

*Vaughn,* 507 F.2d at 299.  *See also In re Enfamil LIPIL Mktg. & Sales Practices Litig. MDL 2222,* No. 11-MD-02222, 2012 WL 1189763, at *3 & n.2 (S.D. Fla. Apr. 9, 2012) (distinguishing *Allpattah Services, Inc. v. Exxon Corp.*, No. 91–0986–CIV, 2006 WL 113271, at *18 (S.D.Fla. Apr. 7, 2006) and holding that "'[i]f claims are not being paid while appeals are pending, it is solely because the Appellees agreed to that limitation in their settlement instead of insisting that class members be entitled to interest during a pending appeal'"); *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 166 (E.D. Pa. 2010) (refusing to bond delay costs because "the settlement agreement already contemplates the harm to the class upon an appeal because it allows the defendants to wait to implement the settlement until all appeals are complete. . . . It appears, then, that the benefits to the class under the settlement already capture the costs of delay incident to an appeal").[11]

Isaacson has not sought to keep Dr. Muransky and Godiva from distributing the settlement fund while he pursues an appeal.  Rather, Dr. Muransky and Godiva agreed between themselves that the settlement should not take effect until after all appeals have been completed. Those are the terms agreed to by the parties, and approved by this Court.   Those terms make a stay unnecessary, and preclude a supersedeas bond.

---

[11] Muransky's suggestion that the lost interest should be measured by Treasury bills is telling.  If lost interest had been a concern, the parties simply could have agreed to put the fund into those instruments upon preliminary approval, earning interest until the date of distribution.  Instead, Plaintiff and his counsel agreed that the Class would not be entitled to interest pending any appeal.  Class Counsel can hardly demand money from an unsuccessful appellant to compensate interest they themselves bargained away in the settlement.

### E.   Dr. Muransky's Attacks on Isaacson's Counsel are Groundless and Should be Stricken

Dr. Muransky candidly admits that the six-figure scale of the bond request is designed to discourage the appeals now pending.  Bond Motion at 3 (expressing hope that a bond requirement will "bend the Objector-Appellants' cost-benefit analysis" so that they drop the appeals).  He justifies that position by asserting that the appeals are patently meritless and driven by attorneys bent on extracting a secret payoff from Class Counsel.  *See* Amended Motion at 3 (justifying six-figure bond request as reasonable "particularly in light of the meritless and attorney-interested nature of Objector-Appellants' appeal here.").  Dr. Muransky declares that Isaacson and his counsel's "motivations are transparent: they are looking to extract money from Class Counsel by delaying the resolution of this case." Bond Motion, DE107 at 4.

But despite relying heavily on innuendo suggesting that the objection was frivolous, Dr. Muransky never identifies a single argument Isaacson made that was not directed to issues in the case and supported by citation to relevant facts and law, or a single filing that was frivolous or boilerplate.  And, despite having taken Isaacson's deposition, Dr. Muransky does not cite any of his testimony to support a negative inference about his motivation in this case.

Instead, Dr. Muransky's primary evidence of motivation is that "Messrs. Davis and Isaacson sent Class Counsel a proposed stipulation to govern their hoped-for payoff in this case." Amended Bond Motion, DE107 at 6.  In fact – as Class Counsel are well aware – that stipulation would have ***prevented*** any secret payoff by conditioning any payment to objectors or their counsel on the approval of this Court.  *See* DE83-2 at 18-20; *see also* Isaacson Decl., DE92-2 at 54-56; Objection to Report and Recommendation on Attorneys' Fees, DE92 at 19.  The proposal tracked proposed Rule 23 amendments that have not yet taken effect. *See* Report to the Standing Committee, Advisory Committee on Civil Rules, at pp. 3-4 (May 12, 2016) (online: https://law.duke.edu/sites/default/files/report_accr_to_src_5-16.pdf ); *see also* Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, Preliminary Draft of Proposed Amendments to the Federal Rules of Appellate, Bankruptcy, Civil, and Criminal Procedure at 215-16, 228-29 (August 2016) (online: http://www.uscourts.gov/file/20163/download ); *see* Isaacson's Supplemental Brief, DE88 at 18-19 & nn4-5.  At least one other district court has adopted a similar order.  *See* Ex. 6 to DE92-3 (*In re Automotive Parts Antitrust Litig.*,No. 2:12-cv-00103-MOB-MKM (E.D. Mich.)).

Dr. Muransky next attacks one of Isaacson's lawyers, John Davis, alleging that he "make[s] a living improperly objecting to class settlements" (DE107 at 5), that his "class action conduct has been called into question multiple times" (DE107 at 2), and that he is among a group of "serial objectors" who "typically lose in the district courts, appeal and then offer to voluntarily dismiss the appeal in an attempt to leverage a payout." DE107 at 6.

None of these statements has any support. Dr. Muransky raises an unpublished state-court opinion in a class action in which Mr. Davis was a plaintiff, over ten years ago, which did not involve objections at all. DE107 at 2 n.4. Citation to the opinion is improper to begin with, given California's prohibition on citation of unpublished trial-court orders.[12] Regardless, the case does not support any inference about Mr. Davis's past or current practices in the representation of objectors, as Isaacson has already explained. *See* DE92 at 16-17. The evidence is quite to the contrary, and Class Counsel are aware of that. *See* Davis Declaration, DE92-2. The same is true for the other cases Dr. Muransky cites (DE107, n.4). That Mr. Davis unsuccessfully applied for fees in two cases does not suggest that he loses objections and then seeks to hold-up the lawyers on appeal for a secret payoff, as Dr. Muransky claims. It suggests the opposite: that he openly seeks a fee from the court when he believes he is entitled to do so.

Dr. Muransky also charges that John Davis did not seek admission to practice before this Court. DE82 at 5 ("Neither Mr. Davis nor Mr. McDonald sought leave to appear in this action despite filing objections."). This error originally occurred in the Report and Recommendation on Attorneys' Fees.[13] In response, Isaacson explained that Mr. Davis is a Florida lawyer, in good standing with and admitted to practice in this very Court. Objection to Report and

---

[12] California's rules are explicit that unpublished state court orders are not to be cited (outside of narrow circumstances not present here), and it is misconduct to do so. *Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, & n.8 (9th Cir. 1995) (party "inappropriately" cited to unpublished state court opinion, when "Under California's court rules ...unpublished opinions may not be cited as authority."); *In re Ryan*, 310 Fed.Appx. 980, 983 n.2 (9th Cir. 2009) (criticizing party for reliance on unpublished portion of published California Court of Appeal opinion in violation Cal. Rule of Court 8.1115(a)).

[13] Class Counsel originally asserted that Mssrs. Price and McDonald – and not Mr. Davis – had failed to seek leave. *See* DE74 at 12. But the Report and Recommendation said that "as to the due process argument, it is important to note that neither of the lawyers representing the objectors has sought leave of court to appear in this case." DE82 at 5.

Recommendation on Attorneys' Fees, DE92 at 4-5; Davis Declaration, DE92-2 at 1.  It is mind-boggling that Class Counsel have repeated this mistake after being corrected on the record.

Not a single argument, verifiable fact, or case that Dr. Muransky cites supports the accusations that Dr. Muransky has asserted about Mr. Davis and his professional record. Stripped of the above false and irrelevant accusations, Dr. Muransky's argument boils down – yet again – to saying that Mr. Davis has represented objectors previously.  Amended Bond Motion, DE107 at 6. That does not support imputing an inference of wrongful intent, either as to him or to his client.  On the contrary, where that long record is unmarred by any sanctions or reprimand, the opposite inference is compelled.

To punish Isaacson because his lawyers have represented objectors before is both illogical and a violation of due process, as Isaacson has already explained.  *See* discussion, DE92 at 11-19.  In *Vollmer v. Selden*, 350 F.3d 656 (7th Cir. 2003), the Seventh Circuit overturned a district court's conclusion that an objector and his lawyers, Selden and Rosenthal, sought "'solely to extort a fee for themselves'" based on "its finding that '[t]hese attorneys have seemingly made intervening in nationwide class actions a routine practice.'" *Id.* at 662. The Seventh Circuit reversed, explaining:

> Even assuming that Selden and Rosenthal have routinely engaged in a practice of intervening [to object to class-action settlements], this finding teaches us little about the propriety of their motives for intervening in this case. Each of these past interventions may have been made out of concern for the class members or at least with the intention of increasing the value of the settlement. In fact, with the exception of the case at bar, none of Selden and Rosenthal's interventions have ever been found to be frivolous or motivated by an improper purpose.

*Vollmer*, 350 F.3d at 662; *see also In re Bayer Corp. Combination Aspirin Prod. Mktg. and Sales Practices Litig.*, 2013 WL 4735641, *2 (E.D. N.Y. 2013) (A history of objecting to class action settlements "alone is not indicia of bad faith or vexatious conduct.").

Class Counsel's continuing practice of making false and irrelevant *ad hominem* attacks in this case – even after being corrected – is inexplicable, not the least because it is so blatant. Making serious and false allegations, repeatedly, Class Counsel obviously composed their bond motion by hastily cutting an earlier boilerplate rant about professional objectors and pasting it into their brief, without regard to truth or falsity.   That cut-and-paste job retains the same factual and legal errors that the earlier filing contained.  Class Counsel are engaged in precisely the sort

of lawyering they profess to stand against: the boilerplate assertion of vague and conclusory charges, unsupported by fact.

None of the academic or judicial criticism of "professional objectors" is directed at, or properly applied to, Isaacson or his counsel.  Yet Class Counsel's original carelessness and misstatements led to serious errors about the professional record of Mr. Isaacson and his counsel, requiring them considerable effort to rectify.  *See* Objection to Report and Recommendation on Attorneys' Fees, DE92 at 11-20 and the Declarations of Eric A. Isaacson, C. Benjamin Nutley, and John W. Davis filed therewith.  In the end, ruling on the approval of the settlement and attorneys' fees, this Court ignored the tawdry dispute as irrelevant.  *See* discussion in Price Opposition, DE109 at 19, citing Order DE99 at 6.   Undeterred, Dr. Muransky now repeats the same false allegations again for the avowed purpose of stopping the appeals.

If there has been any misconduct in this case, it is that of Plaintiff and his counsel.  They have not only been dishonest in their *ad hominem* attacks on Isaacson and his counsel, they have misled this Court about Dr. Muransky's adequacy to serve as a representative.  They failed to disclose not only his prior criminal-fraud conviction, but also the fact that courts twice in 2015 found him and his then-business to be inadequate class representatives.  *See supra* at 5-6.  The bad faith, vexatious tactics here are those of Dr. Muransky and his counsel.

## III.    CONCLUSION

Dr. Muransky's amended motion for an appellate bond under Rules 7 and 8 is without legal merit, and devoid of the most basic factual support necessary to justify an appellate bond., Isaacson submits that this Court should reject the motion altogether.  At most, this Court might exercise its discretion to impose bonds of a few hundred dollars – in line with the costs typically taxed on appeal.  Even that would be purely discretionary, for Rule 7 does not require the Court to impose a bond.  The rule says a district court "may" require a bond for costs on appeal, not that it "shall" do so.

However, if the Court intends to impose a large bond, exceeding the ordinary Rule 39 costs typical in an Eleventh Circuit appeal, or encompassing delay damages or interest on the common fund, Isaacson would request that the Court also stay the order requiring a bond, pending appeal of the bond order itself.   Isaacson will seek immediate review of such an order so that the Eleventh Circuit can resolve the issue whether administrative expenses or interest are

permitted to be included.  However, to move for a stay of the bond order pending review, Isaacson must first seek a stay in this Court. See Fed. R. App. P. 8(a)(1) and (2). Thus, if this Court will either (1) stay the bond pending appeal, or (2) explicitly deny a stay, doing so would eliminate any delay attending the requirement to seek that relief from this Court in the first instance.

Finally, if the Court decides to impose a bond, Isaacson requests that the Court apportion the bond amount between appellants, rather than introducing the complexity and potential unfairness of a joint-and-several bond among unrelated appellants, such that the compliance or noncompliance of one appellant affects the appeal of the other.  *See Rougvie v. Ascena Retail Grp., Inc.*, No. CV 15-724, 2016 WL 6069968, at *3 (E.D. Pa. Oct. 14, 2016) (refusing request for joint and several bond for $121,200 and imposing individual bonds of $1,235.52 for "each continuing appeal"); *cf. In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10ML02151 JVS FMOX, 2013 WL 5775118, at *2 (C.D. Cal. Oct. 21, 2013) (observing, in the course of denying bonds altogether, that imposing full bond on each of the four appellants would impermissibly result in bonds for four times the potential recoverable costs).

Date:  November 21, 2016                              Respectfully submitted,


                                            s/ John W. Davis
                                            _____
                                            John W. Davis (FL Bar No. 193763)
                                            john@johnwdavis.com
                                            Law Office of John W. Davis
                                            501 W. Broadway, Suite 800
                                            San Diego, CA  92101
                                            Telephone:  (619) 400-4870
                                            Facsimile:  (619) 342-7170

                                            *Attorney for class member Eric Alan Isaacson*

**CERTIFICATE OF SERVICE**
**CASE NO. 0:15-CV-60716-WPD**

I hereby certify that on November 21, 2016, I filed the foregoing document with the

Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this

day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of

record entitled to receive service.


Date:  November 21, 2016


                                   s/ John W. Davis
                                   John W. Davis