UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

| | |
|---|---|
| DR. DAVID S. MURANSKY, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) **CASE NO. 0:15-cv-60716-WPD** |
| v. | ) ) |
| GODIVA CHOCOLATIER, INC., a New Jersey corporation, | ) ) ) |
| Defendant. | ) |

**REPLY MEMORANDUM IN SUPPORT OF
AMENDED MOTION TO REQUIRE POSTING OF APPEAL BOND**

A substantial bond must be imposed not only to secure the costs that this appeal will impose on the Class, but also because the professional Objector-Appellants' sole motivation in pressing their meritless objections is to extract a payoff to go away. This is demonstrated most glaringly by Objector Isaacson's new argument that the Court lacked subject matter jurisdiction under *Robins v. Spokeo, Inc*. The argument is baseless,[1] but his willingness to assert it – and thereby threaten to irretrievably destroy the possibility of any settlement, not just for the 99.99% of class members who did not object but also for himself – demonstrates that Mr. Isaacson's appeal has nothing to do with the settlement's merits. In pressing this and their other groundless objections, it is undisputed that the Objector-Appellants will cause the class to incur substantial

---

[1] Every motion to dismiss based on *Spokeo* decided in a FACTA case in this Circuit has been denied. *Wood v. J. Choo USA, Inc.*, 2016 U.S. Dist. LEXIS 106029 (S.D. Fla. Aug. 10,, 2016); *Altman v. White House Black Mkt. Inc.*, 2016 U.S. Dist. LEXIS 92761 (N.D. Ga. July 13, 2016); *Guarisma v. Microsoft Corp.*, 2016 U.S. Dist. LEXIS 97229 (S.D. Fla. July 26, 2016); *Flaum v. Doctors Assocs., Inc.*, No. 0:16-cv-61198, (S.D. Fla. Aug. 29, 2016) [ECF No. 27]. These decisions are supported by *Church v. Accretive Health, Inc.*, 2016 U.S. App. LEXIS 12414 at *11, fn.2 (11th Cir. July 6, 2016) (unpub.). Furthermore, Objector-Appellants have no right to assert a lack of jurisdiction because they never intervened as parties, and motions to dismiss for lack of jurisdiction may only be raised by the parties. Fed. R. Civ. P. 12(b).

costs that reduce their recoveries. Accordingly, the requested bond should be granted to secure the Class's ability to recover these costs.

The Objector-Appellants do not dispute that the Court may impose a bond, and Objector Price does not oppose the imposition of a bond. Objector-Appellants also present no evidence to contest the amount of the administrative and loss-of-use-of-funds costs the appeal will impose on the Class. Instead, they simply argue they should be given a "pass" on securing the Class's ability to recover these costs. However, Objector-Appellants' arguments do not justify their position.

First, the Objector Appellants do not substantiate their claim that the proposed bond amount would "block appellate review." Defendants are both experienced class action attorneys, and the law presumes they can afford the proposed bond. They present no evidence to show they cannot afford it. They simply don't want to pay.

Second, the Objector-Appellants do not substantiate their request for a drastically reduced bond. They admit that Rule 7 allows the imposition of a bond for costs on appeal, but they do not address the case law showing that such bonds are commonly set at tens of thousands of dollars, and here the Class proposes that the cost component of the bond be set at the low end of this range, which is supported by Eleventh Circuit Rule 30-1.

Objector-Appellants claim that a bond may not incorporate the administrative costs their appeal will cost the Class, or a *supersedeas* component to account for the substantial loss of use of funds. However, Objector-Appellants do not confront the cases Plaintiff cites, and themselves rely on cases that are distinguishable.

Finally, Objector-Appellants' attempt to re-litigate their history as professional objectors and the merits of their objections is of no moment. Their track records speak for themselves and, given their new tactic of threatening to destroy the settlement to induce a payoff, the "merit" and true motivation of their appeals becomes perfectly transparent, and should be considered.

In short, the Objector-Appellants' arguments do not change the fact that the proposed bond of $115,934.00 – which is less than 2% of the settlement sum that the appeal delays and endangers – is appropriate, and should be entered.

I.    The Proposed Bond Will Not "Block" Appellate Review.

Objector-Appellants claim that the proposed bond amount is too high because it would block appellate review. However, they do not and cannot support that position. It is undisputed

that courts presume that appellants are financially able to post appeal bonds unless they demonstrate otherwise. *See In re Initial Pub. Offering Secs. Litig.*, 721 F. Supp. 2d 210, 213 (S.D.N.Y. 2010) (citations omitted). Furthermore, Objector-Appellants offer no facts or evidence to refute that presumption. Mr. Price attempts to flip his burden by arguing that there is no evidence showing he *can* pay the bond, but there is no evidence to the contrary either, and again it is his burden to refute the presumption that he can pay it. Likewise, Mr. Isaacson does not present any basis to conclude he is unable to pay the bond.

No doubt, this is because they are both perfectly capable of paying the proposed bond, as they are both experienced class action attorneys represented by experienced objectors counsel. Appeal bonds are routine events for them. Indeed, after coyly stating that there is "no evidence concerning Price's ability to pay" the proposed bond (Resp. of James H. Price to Mot. to Require Posting of Appeal Bond, ECF No. 109 at 6), Mr. Price admits that "it should not be assumed that he would not be able to pay." *Id.* at 9. In short, Objector-Appellants' wherewithal presents no impediment to the proposed bond.

**II.     The Proposed Bond Is Proper Under Federal Rules of Appellate Procedure 7 and 8.**

Objector-Appellants do not dispute that the Court has discretion to set an appeal bond, nor that such bonds are common, and Mr. Price does not object to the imposition of a bond. Instead, they only oppose the proposed bond amount, claiming it is too high. This argument is misplaced, as Rules 7 and 8 authorize the proposed bond, and the proposed bond is supported by ample facts. *See In re Checking Account Overdraft Litig.*, Case No. 1.09–MD–02036–JLK, 2012 WL 456691 at *2 (S.D. Fla. Feb. 14, 2012) (King, J.).

**A.   The Rule 39 Component of the Bond Is Proper.**

Objector-Appellants do not refute the cases Plaintiff cites to show that bonds for Rule 39(e) costs alone can range from $10,000 to $50,000.[2] They also do not dispute that the $10,000 amount proposed for the cost component of the bond here is at the low end of that range.

---

[2] ECF 102 at 8 citing *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) (concluding $25,000 appropriate amount to cover Rule 39(e) costs; *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460 at *10 (N.D. Cal. Aug. 2, 2011) (imposing $20,000 appeal bond on class action objector); *In re Wachovia Corp. "Pick-A-Payment" Mortg. Mktg. & Sales Practices Litig.*, 2011 WL 3648508 at *1-2 (N.D. Cal. Aug. 18, 2011) (imposing $15,000 appeal bond on objector, a fixed-income retiree who had sought to appear in forma pauperis*); In re Currency Conversion Fee Antitrust Litig.*, 2010 WL 2033811 at *1 (S.D.N.Y. May 21, 2010) (noting $50,000 appeal bond was warranted for Rule 39(e) costs)).

Nevertheless, Objector-Appellants claim this amount it is too high. However, they offer no good ground for this argument.

First, Mr. Price incorrectly assumes that the only costs Plaintiff may incur under Rule 39(e) are those associated with preparing "a single brief." This omits the costs associated with preparing any supplemental appendix needed if Objector-Appellants' appendix does not include all needed matters. (11th Cir. R. 30-1(b)). This cost could be substantial, as the record relating to the settlement proceedings is substantial (as the consideration of the settlement goes to the entire case). The rule requires inclusion of all "relevant docket entries," and this includes "parts of the record to which the parties wish to direct the court's attention." *Id.* at ¶ (a), (a)(15). Plainly, the Objector-Appellants disagree with Plaintiff on what is "relevant," and to what matter the Court's attention should be directed, and thus Plaintiff and the Class will be forced to bear the cost of preparing a substantial supplemental appendix. On top of that, the Rule requires Plaintiff to file as many as five copies of it. *Id.* at ¶ (d). Accordingly, the comparatively low $10,000 cost estimate is reasonable. *See, e.g.*, *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d at 295 ($25,000 bond for costs appropriate where "[t]he appendix would necessarily include the several thousand pages…").

Second, Objector-Appellants claim that that a study of "average" cost awards for appeals militates a lower cost component for the bond. However, the time period for the study is brief, and the "average" across all cases, including *pro se* and prisoner appeals, says nothing about the potential costs in this class action. Regardless, the study had little data for the Eleventh Circuit because its docket was not searchable for much of the study period. *See* Advisory Comm. on Appellate Rules of the Judicial Conference of the U.S., Comparative Study of the Taxation of Costs 81 n.131 (Apr. 2011) ("Because the Eleventh Circuit has been live on CM/ECF only since January 4, 2010, and they are not converting their pending cases from their old system to CM/ECF, our targeted search for dispositions awarding costs during calendar years 2009-2010 did not yield many costs awards …").

Third, the cases Objector-Appellants cite are distinguishable or support Plaintiff. For example, the courts imposed $25,000 cost bonds in *In re Am. Inventors Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, 695 F. Supp. 2d 157, 164 (E.D. Pa. 2010) and *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 297(S.D.N.Y. 2010). In *Hill v. State St. Corp.*, the court only imposed a $300 bond for Rule 39 costs because that was the amount *requested*, plus

4

the total bond in that case was $75,300. *Hill v. State St. Corp.,* 2015 U.S. Dist. LEXIS 50161, *13 (D. Mass Apr. 16, 2015). *Azizian v. Federated Dep't Stores, Inc.* is distinguishable because the court did not analyze the propriety of the amount of the Rule 39 portion of the bond. 499 F.3d 950, 961-962 (9th Cir. Cal. 2007). In *Vaughn v. Am. Honda Motor Co.*, the appellees did not object to the reduced bond amount. 507 F.3d 295, 300 (5th Cir. 2007). The remaining cases are likewise distinguishable.[3] In short, a $10,000 bond for Rule 39 costs remains appropriate.

### B. The Administrative and Loss-of-Use Costs Are Properly Included in the Bond.

The costs that can be included in a Rule 7 bond are not limited to costs defined by Rule 39. *Checking Account Overdraft Litig.*, 2012 WL 456691 at *2 (citing *Pedraza v. United Guaranty Corp.*, 313 F.3d 1323, 1323 (11th Cir. 2002)). This Court has substantial discretion to determine the amount of a bond necessary to ensure the payment of costs on appeal. *Id.* Also, Federal Rule of Appellate Procedure 8 expressly permits imposition of a *supersedeas* bond to cover sums related to the merits of the underlying judgment. *Adsani v. Miller*, 139 F.3d 67, 70 29 (2d Cir. 1998).

As demonstrated in Plaintiff's opening brief, this meritless appeal will cause the class to incur $31,594.00 in administrative costs and an estimated $74,340.00 for the lost use of the settlement funds during the appeal. Objector-Appellants assert that Plaintiff has the "burden of justifying the amount of [his] request or providing a reasonable estimate of the actual costs [he] may incur on appeal" [ECF No. 109 at 5], and Plaintiff has done so. In fact, the declaration of the claims administrator, Mr. Geraci, details the administrative costs and Plaintiff's motion details the basis for the loss-of-use calculation. (Mot. To Require Posting of Appeal Bond by James H. Price, ECF 102 at 10 n.4; Decl. of Jay Geraci, ECF No. 102-1). Objector-Appellants question

---

[3] *Lundy v. Union Carbide Corp.* is more than thirty-years old, and the appellees only asked for a $2,500 bond. 598 F.Supp.451, 452 (D. Or. 1984). *In re MagSafe Apple Power Adapter Litig.* remanded the cost bond issue for further consideration, setting no bond amount. 571 Fed. Appx. 560, 563 (9th Cir. 2014). Mr. Price acknowledges that the cost bond should be higher here than the $1,000 cost bond allowed in *In re Enfamil Lipil Mktg. & Sales Practices. Litig.*, 2012 U.S. Dist. LEXIS 49254, *18 (S.D. Fla. 2012). The remaining cases do not support Mr. Price's argument that $1,500 is appropriate for the cost component of the bond, because they set the cost portion at $5,000. *See Tennille v. West Union Co.*, 774 F.3d 1249, 1258714 (10th Cir. 2014); *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 125555, *16 (E.D.N.Y. Sept. 3, 2013); *Curtis & Assocs., P.C. v. Bushman,.*, 2011 U.S. Dist. LEXIS 23905, *14-15, 2011 WL 917519 (E.D.N.Y. Mar. 9, 2011). Appellant Isaacson also cites *Pan Am. Grain Mfg. Co. v. Puerto Rico Ports Auth.*, 193 F.R.D. 26 (D. P.R. 2000), but it was not a class action and hence is not comparable to the present case.

Mr. Geraci's declaration, but present no evidence to contradict it. Likewise, Objector-Appellants present no evidence to question the reasonableness of the loss-of-use calculation.

Instead, they claim the bond should not account for these costs. First, they argue Rule 7 does not allow inclusion of the administrative costs of the appeal in the bond. However, they do not discuss Plaintiff's citations that show otherwise.[4] Instead, they rely heavily on *Tennille v. Western Union Co.*, a case that is factually and legally distinguishable. The issue in that case was whether the bond could include unnecessary costs to notify class members of the appeal, and the costs of maintaining the settlement. *See Tennille*, 774 F.3d 1249, 1254 (10th Cir. 2014). Here, by contrast, the administrative cost portion of the bond only includes costs directly caused by the appeal, as verified by Mr. Geraci's uncontradicted declaration. Objector-Appellants also cite several cases holding that "attorney fees" and "damages" may not be included in the bond, but Plaintiff does not seek a bond for attorney fees or damages.[5] The $31,594.00 in administrative costs is properly included in the bond.

---

[4] [ECF No. 102 at 8] (citing *Miletak v. Allstate Ins. Co.*, 2012 U.S. Dist. LEXIS 125426 (N.D. Cal. 2012) (including $50,000 in "administrative costs," incurred in order "to continue to service and respond to class members' needs pending the appeal"); *In re Uponor, Inc.*, No.11-MD-2247, 2012 WL 3984542, at *2 (D. Minn. Sept. 11, 2012) (including $20,000 in additional claims administrator costs as part of appeal bond, because such costs are "reasonable and necessary" and "should be shouldered by the objectors, particularly given the tenuous nature of their arguments"); *In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 279 (D. Mass. 2007) (including in Rule 7 bond $61,000 in "administrative costs attributable to delay in [settlement] distribution")). The closest they come to addressing Plaintiff's cases is to cite an unpublished decision that declined to follow one of them. Class Member Eric Alan Isaacson's Opp'n to Am. Mot for Appeal Bond, ECF 114 at 13 (citing *In re Navistar Diesel Engine Prod. Liab. Litig.*, No. 11 C 2496, 2013 WL 4052673, at *2 (N.D. Ill. Aug. 12, 2013) (declining to follow *Uponor*)); *see Dennings v. Clearwire Corp.*, 928 F.Supp.2d 1270, 1272 (W.D. Wash. 2013) (imposing bond amount including $39,150 associated with additional settlement administration costs); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. MDL 1361, 2003 WL 22417252, at *3 (D. Me. Oct. 7, 2003) (imposing $35,000 cost bond on objector under Fed. R. App. P. 7).

[5] In addition to *Tennille*, Mr. Isaacson cites *Pedraza*, *supra* (excluding attorney fees from costs); *Young v. New Process Steel, LP*, 419 F.3d 1201, 1208 (11th Cir. 2005) (excluding attorney fees from the bond, unless the appeal is unreasonable); *Eastwood Enters., LLC v. Farha*, No. 8:07–cv–1940–T–33EAJ, 2011 WL 2681915, at *1 (M.D.Fla. July 11, 2011) (questioning bond for prospective damages); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 156986, *105-*106 (C.D. Cal. Oct. 21, 2013) (acknowledging many courts include administrative costs in appeal bonds, but declining to do so based on Ninth Circuit authority that prohibited including attorney fees in the bond); *In re*

Objector-Appellants also argue Rule 8 does not allow a *supersedeas* component to cover the cost of the substantial delay the appeal will cause because they did not move for a stay of the underlying judgment. This argument attempts to elevate form over substance. Objector-Appellants knew the filing of their appeal would prevent distribution of the Settlement proceeds ordered by this Court's judgment. In other words, they knew their appeal would stay the judgment, thus making a bond for costs associated with the resultant delay appropriate. *See In re Overdraft Checking Litig.*, 2012 WL 456691, *2 (citing *In re Broadcom Securities Litig.*, SACV 01–275 (C.D.Cal. Dec. 5, 2005) (requiring bond including costs of delay equaling $517,700); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 816-17 (6th Cir. 2004) (endorsing $174,429.00 appeal bond); *Barnes v. FleetBoston Fin. Corp.*, No. 1:0 l-cv-1039, slip op. at 2 (D. Mass. Aug. 22, 2006) ($645,111 appeal bond); *Conroy v. 3M Corp.*, Case No. 00-cv-2810 (N.D. Cal. Aug. 10, 2006) (ordering objectors to post $431,167 bond); *In re Uponor, Inc.*, 2012 WL 3984542, at *2 ("Appeal bonds are often required on appeals of class action settlements . . . because the appeal effectively stays the entry of final judgment, the claims, process, and payment to all class members."). With the exception of *In re Overdraft Checking Litig.* and *In re Broadcom Securities Litig.*, which Mr. Price "disagrees" with but does not meaningfully distinguish, Objector-Appellants do not squarely address the above cases.

Instead, Mr. Price claims this Court "cannot" impose a *supersedeas* bond, citing *In re Gen. Elec. Co. Secs. Litig.*, 998 F.Supp.2d 145 (S.D.N.Y. 2014). The cases above show otherwise but regardless, *In re Gen. Elec. Co. Secs Litig.*. only ruled that the "court may not *sua sponte* order the appellant to post such a bond," *i.e.*, the court can only approve a motion for such a bond. *Id.* at 153. Obviously, that requirement is met here.

The cases Mr. Isaacson cites are also easily distinguishable. *See Eastwood Enters., LLC v. Farha*, 2011 WL 2681915, at *2 (M.D. Fla. July 11, 2011); *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2003 WL 22417252, at *1 (D. Me. Oct. 7, 2003); *In re NASDAQ Mkt–Makers Antitrust Litig.,* 187 F.R.D. 124, 128 (S.D.N.Y.1999); *In re Enfamil*, 2012 U.S. Dist. LEXIS 49254, *3; *Vaughn*, 507 F.3d at 298-99. No *supersedeas* bond was allowed in those cases because, similar to *In re Gen. Elec. Co. Secs. Litig.*, the appellees never moved for a bond under Federal Rule of Appellate Procedure 8. However, it should be noted that both

---

*AOL Time Warner, Inc.*, 2007 U.S. Dist. LEXIS 69510, *19-*20 (S.D.N.Y. Sept. 20, 2007) (excluding attorney fees from bond).

*Eastwood Enters., LLC* and *In re Compact Disc* imposed cost bonds under Rule 7 of $25,000 and $35,000 respectively, and the total bond imposed in *In re NASDAQ Mkt.-Makers* was $101,500. Mr. Isaacson also cites *In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig.*, but that case is unique because the stay was imposed as the election of the defendant, not the objector. *See* 695 F. Supp. 2d at 162.[6]

Mr. Price claims Federal Rule 62 requires Objector-Appellants to *request* a stay of this Court's judgment as a condition for obtaining a *supersedeas* bond. But the rule does not say that. It simply gives an appellant the right to obtain a stay by posting a *supersedeas* bond. Fed. R. Civ. P. 62(d) ("If an appeal is taken, the appellant may obtain a stay by supersedeas bond …"). Nothing in the rule bars imposition of the bond in the event the appellants' action causes a stay that, again, is effectively the same thing as obtaining a stay by request.

Objector-Appellants also claim the parties "could have" prevented the stay by negotiating a settlement that did not prohibit payment of the settlement benefits pending appeal, but they know that is unrealistic. No defendant in any class action would ever agree to allow the benefits of the settlement to be distributed to the tens of thousands of class members, making the funds unrecoverable, while the possibility remained that the settlement could be overturned on appeal. Not surprisingly, neither of the Objector-Appellants or their counsel cite a single class action settlement, from their extensive class action experience or otherwise, that allowed payment of benefits before the settlement was final.

Finally, as Mr. Price admits, the purpose of a *supersedeas* bond is to "preserve a money judgment." [ECF No. 109 at 5]. Here, it is undisputed that the stay caused by the appeal will substantially erode the value of the money judgment. Thus, the *supersedeas* component of the bond is entirely consistent with Federal Rule 62 and Federal Rule of Appellate Procedure 8. Accordingly, the $74,340.00 loss-of-use costs imposed by the appeal is properly included.

**III.    The Objector-Appellants' Attempted Relitigation of their Misconduct and the Groundlessness of their Objections Does Not Excuse the Need for a Substantial Bond.**

Objector-Appellants claim that this Court should not consider the purpose or merits of their appeal in determining the bond amount, and that instead those issues should be raised in a

---

[6] Mr. Isaacson also cites *MercExchange, L.L.C. v. eBay*, but that case only decided if a bond should be imposed in connection with a four-year-old judgment. 660 F. Supp. 2d 653, 661 (E.D. Va. 2007). It was a patent case, not a class action. It has nothing to do with the issues before this Court.

motion to the Eleventh Circuit (under Federal Rule of Appellate Procedure 38). The Eleventh Circuit disagrees, stating that the elements of the bond may turn in part on whether a court finds the proposed appeal "is likely to be frivolous, unreasonable, or without foundation." *Young v. New Process Steel, LP*, 419 F.3d 1201, 1208 (11th Cir. 2005) ("Rule 38 [is a] toothless tiger in most instances."); *see also Pedraza*, 313 F.3d at 1333 ("an appellant is less likely to bring a frivolous appeal if he is required to post a sizable bond . . .").

There is no legitimate question that the instant appeal is unreasonable. Mr. Isaacson announced his greenmail intentions at the outset by sending Plaintiff's counsel a proposed agreement to govern his hoped for payoff. [ECF No. 72-1 at 29]. Now he has upped the stakes by threatening to advocate for the elimination of *any* settlement by asserting on appeal that this Court lacked jurisdiction to enter any judgment [ECF No. 114 at 7-8], thus destroying a deal 99.99% of class members supported that provides substantial cash relief.

Likewise, the stated "grounds" for appeal remain baseless. For example, the idea that the class notice should have expressly allowed class members to file responses to the fee motion or final approval motion is frivolous because (1) this "issue" is presented on the face of the notice, (2) Price and Isaacson are the only class members who complained about it, and (3) the Court mooted their complaints by allowing additional briefing after the objection deadline and after the fairness hearing. [ECF Nos. 86, 88, 92, 93]. The objection to the $10,000 incentive award is equally pointless because it is less than a penny per class member. Likewise, the argument that the Supreme Court required the fee award to be determined using a lodestar calculation, and the argument that the Eleventh Circuit requires the Court to pore through counsel's time records to decide the fee award in a common fund case, are baseless. Stunningly, Objector-Appellants fail to acknowledge that to get the settlement overturned, their arguments must be sufficient to show Court's approval of the settlement was an abuse of discretion.

Instead of explaining how that is remotely possible, Objector-Appellants (particularly Mr. Isaacson) devote pages to re-litigating their history as professional objectors. Nevertheless, they cannot change the judicial decisions criticizing their conduct, or sugarcoat the fact that Mr. Isaacson sent Plaintiff an agreement to govern his hoped-for payoff in this case. [ECF No. 102 at 5-7]. Likewise, Mr. Isaacson's discussion about his new "discovery" of public records concerning lawsuits involving "A Aventura Chiropractic Care Center," which is not a party or

class member in this case, shows how far afield he is willing to go on appeal to press this shakedown.

Regardless, Objector-Appellants' attempts to distract, dissemble, or run away from history do not change the fact that this Court is authorized to impose the requested bond in the requested amount, and that the unreasonableness of the appeal and motives behind it support that request. *See In re Overdraft Checking Litig.*, 2012 WL 456691 at *1 (factors for imposing a bond include the merits of the appeal, whether the appellant has shown any bad faith or vexatious conduct; and the appellant's attorney's prior actions); *In re Compact Disc*, 2003 WL 22417252, at *2 (upholding bond based on appellant's history of litigiousness and implication that appeal was frivolous); *In re NASDAQ Mkt.-Makers*, 187 F.R.D. at 128 (in setting the bond, "it is appropriate to consider 'the merits of the appeal itself'"). Accordingly, the proposed bond should be approved.

**Conclusion**

For the foregoing reasons, Objectors James H. Price [ECF No. 100] and Eric A. Isaacson [ECF No. 105], under Rules 7 and 8 of the Federal Rules of Appellate Procedure, should be ordered to post an appeal bond totaling $115,934.00 broken down as (i) $10,000.00 in estimated Rule 39 appeal costs under Rule 7; (ii) $31,594.00 in estimated additional administration costs under Rule 7; and (iii) $74,340.00 in interest on the funds to be distributed that will be delayed as a result of Objector-Appellants' appeal under Rule 8.

Respectfully submitted on December 1, 2016

                                                              BRET L. LUSSKIN, Esq.
*Attorney for Plaintiff*
20803 Biscayne Blvd., Ste 302
Aventura, Florida 33180
Telephone: (954) 454-5841
Facsimile: (954) 454-5844
blusskin@lusskinlaw.com

By:   /s/ Bret L. Lusskin, Esq.
       Bret L. Lusskin, Esq.
       Florida Bar No. 28069

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on December 1, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served this date via U.S. mail and/or some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

            By: /s/ Bret L. Lusskin, Esq.
                Bret L. Lusskin, Esq.
                Florida Bar No. 28069