UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:15-CV-60716-DIMITROULEAS/SNOW

Dr. David S. Muransky, individually and on behalf of all others similarly situated,

      Plaintiff,

  v.

Godiva Chocolatier, Inc.,

      Defendant.

## OBJECTION IN PART TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PLAINTIFF'S AMENDED MOTION TO REQUIRE POSTING OF APPEAL BOND

  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72, Class Member and Objector-Appellant Eric Alan Isaacson respectfully objects in part to the Report and Recommendation DE118 ("R&R"), issued December 19, 2016, regarding Plaintiff's Amended Motion to Require Posting of Appeal Bond (DE107).

  Isaacson agrees with the central findings and conclusions in the R&R, which sets forth a thorough and reasoned explication of the litigants' positions, and soundly concludes that an appeal bond in this case cannot include prospective interest or a supersedeas bond. (R&R,

1

DE118 at 5 and 7). Yet the recommendation that Isaacson be jointly-and-severally liable to post a $2,500 bond rests upon findings that

> [T]he Objectors have offered no evidence of an inability to pay a reasonable bond. Further, in light of the deferential review accorded the decision of the district court to approve a class action settlement, their likelihood of success on appeal is not great.

R&R, DE118 at 6-7 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

Isaacson respectfully objects to the proposed finding that "in light of the deferential review accorded the decision of the district court to approve a class action settlement, [Appellants'] likelihood of success on appeal is not great." This finding is critical to the Report's recommendation to impose a Rule 7 bond for expenses. *See* R&R, DE118 at 6-7.

As support for this conclusion, the R&R cites *Bennett v. Behring Corp.,* 737 F.2d 982, 986 (11th Cir. 1984), which holds that orders approving class-action settlements are reviewed for abuse of discretion: "Determining the fairness of the settlement is left to the sound discretion of the trial court and we will not overturn the court's decision absent a clear showing of abuse of that discretion." *Bennett,* 737 F.2d at 986. Without doubt, abuse of discretion is a deferential standard.

But most of the issues Isaacson presents are questions of law, which even when embedded in a discretionary ruling are not given any deference on review, and Isaacson is likely to prevail on at least one of them. The primary issues on appeal are likely to include: (1) Article III jurisdiction under the "concrete injury" requirement of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016); (2) whether the district court may require objectors to file objections before Class Counsel files motions for final settlement approval and attorneys' fees, (3) whether incentive awards for class representatives in common-fund cases are legally permissible, (4) whether attorneys seeking fees in common-fund

2

cases must indicate how many hours they devoted to the case and document their reasonable hourly rates, and (5) whether claims subject to a fee-shifting regime should be limited in light of the Supreme Court's holding, in *Perdue v. Kenny A. ex rel. Winn,* 130 S. Ct. 1662 (2010), that a reasonable fee should be limited to the attorneys' reasonable hourly rate in fee-shifting cases.

These are issues of the correct determination and application of law, which must be reviewed *de novo* even if embedded in a ruling for which the ultimate standard of review is abuse of discretion: "'A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. . . . In making these assessments, we review the district court's factual determinations for clear error, and its purely legal determinations *de novo*.'" *Klay v. Humana, Inc.,* 382 F.3d 1241, 1251 (11th Cir. 2004) (quoting *Klay v. United Healthgroup, Inc.,* 376 F.3d 1092, 1096 (11th Cir. 2004)); *accord Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1264-65 (11th Cir. 2009).

On several points of law that are thus subject to *de novo* review, Isaacson has a rather strong chance of prevailing. The first is the threshold issue of Article III subject-matter jurisdiction. Isaacson is extremely likely to prevail on his contentions that this Court erred by failing to require Dr. Muransky to establish Article III standing under the standards established in *Spokeo,* which holds that "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo,* 136 S. Ct. at 1549. Isaacson's counsel explained this requirement at the final approval hearing. *See* DE115, Transcript of Proceedings (September 21, 2016 Final Approval Hearing) at 30-34.

Dr. Muransky merely alleged violations of the Fair and Accurate Credit Transactions Act amendment (FACTA) to the Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681c(g), which

3

prohibits printing more than the last five digits of a credit card number on a receipt provided to the cardholder. Amended Complaint, DE16 at 1. As the R&R relates, "[t]he Plaintiff sought damages and injunctive relief alleging that Godiva printed credit card receipts containing more than the last five digits of its customer's credit card numbers, exposing them to an elevated risk of identity theft." R&R, DE118 at 1. But Dr. Muransky never explained how being handed a receipt with a few extra digits caused him the kind of concrete injury required by *Spokeo*.

Dr. Muransky made no showing sufficient to establish the "injury in fact" necessary to support subject-matter jurisdiction in this Court. "It is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). A bare allegation that a defendant inaccurately reported consumer information in violation of the Fair Credit Reporting Act was insufficient in *Spokeo* to establish injury-in-fact, as "not all inaccuracies cause harm or present any material risk of harm." *Id*. at 1550. *Spokeo* requires findings that a plaintiff seeking to recover statutory damages under §1681n(a) has demonstrated not only a statutory violation, but also that it actually suffered an injury on account of the statutory violation – an injury that is both "particularized" and "concrete."

As the required showing and findings were not made in this case, reversal is extremely likely. The Eleventh Circuit has applied *Spokeo* to hold that the intangible harm caused by failure to timely record a certificate of discharge on a mortgage is not a concrete injury in fact sufficient to confer standing in federal court. *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1003 (11th Cir. 2016). In so holding, the Court observed that:

> the requirement of concreteness under Article III is not satisfied every time a statute creates a legal obligation and grants a private right of action for its

4

>violation. A plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court.

*Nicklaw* 839 F.3d at 1003 (citing *Spokeo*, 136 S.Ct. at 1550).

Indeed, the Seventh Circuit recently applied *Spokeo* to a case just like this one, in which the plaintiff alleged that FACTA was violated when he received an improperly truncated receipt. *Meyers v. Nicolet Restaurant of De Pere, LLC*, --- F.3d ---- 2016 WL 7217581 (December 13, 2016). The Seventh Circuit dismissed the notion that the bare allegation of an elevated risk of identity theft occasioned by a FACTA violation establishes the "material risk of harm" required for subject-matter jurisdiction under *Spokeo*. Significantly, the panel found its determination to be consonant with a number of other Circuit court decisions, including the Eleventh Circuit's decision in *Nicklaw*, that have found the violation of a statute did not present a "material risk of harm" sufficient to satisfy *Spokeo's* injury-in-fact requirement.

Isaacson respectfully submits that the Eleventh Circuit is highly likely to follow both its own decision in *Nicklaw* and the Seventh Circuit's in *Meyers* when applying the *Spokeo* rule to this case. That will result in remand, either for further findings on federal jurisdiction, or with instructions to dismiss for lack of jurisdiction, as in *Meyers.*

Should the Eleventh Circuit get past the threshold question of Article III jurisdiction, Isaacson stands a very good chance of prevailing on the issue of whether a district court may, consistent with Rule 23 and due process, require objections to a class settlement to be due before class counsel file motions for final settlement approval and attorneys' fees. Of the Circuit courts to consider the issue, two have agreed with Isaacson's position, and another has agreed in dictum. *See Redman v. RadioShack Corp.,* 768 F. 3d 622, 637-38 (7th Cir. 2014); *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 993-95 (9th Cir. 2010); *see also In re Nat'l Football League Players Concussion Litig.,* 821 F. 3d 410, 446 (3d Cir. 2016) (dictum).

5

Isaacson may well prevail in overturning the incentive award granted to Dr. Muranksy for services rendered in this case.  Whether such awards are permissible in the first place under the Supreme Court's seminal common-fund decisions of *Trustees v. Greenough,* 105 U.S. 527, 527-38 (1882) and *Central Railroad & BankingCo. of Ga. v. Pettus,* 113 U.S. 116, 122-23 (1886), presents a question of law.  *Granada Investments, Inc. v. DWG Corp.,* 962 F.2d 1203, 1207-08 (6th Cir. 1992) (applying *Greenough's* distinction between litigation expenses on the one hand, and "personal services and private expenses," on the other); *Crutcher v. Logan,* 102 F.2d 612, 613 (5th Cir. 1939) (under *Greenough* and *Pettus* claimants interested in the fund itself can receive "no compensation for personal services"); *Gortat v. Capala Brothers, Inc.*, 949 F.Supp.2d 374, 379 (E.D.N.Y. 2013) (following *Greenough*).  Assuming such awards are permissible, the showing required also presents a question of law on which Isaacson reasonably expects to prevail.  *See, e.g., Shane Group, Inc. v. Blue Cross Blue Shield of Michigan,* 825 F.3d 299, 311 (6th Cir. 2016).

Isaacson's legal arguments opposing the attorneys' fee award also are viable   The district court awarded attorneys' fees without considering the hours devoted to the case, from a settlement compromising FACTA claims which are subject to a statutory fee-shifting provision.  First, the Eleventh Circuit's common-fund precedents require a district court to consider counsel's time even when setting a fee award as a percentage of the fund.  *See Camden I Condominium Ass'n, Inc. v. Dunkle,* 946 F. 2d 768, 773 n.3 (11th Cir.1991).  In addition, the Supreme Court's decision in *Perdue v. Kenny A. ex rel. Winn,* 130 S. Ct. 1662 (2010), that reasonable attorneys' fees for claims subject to statutory fee-shifting provisions (as FACTA claims are) generally should be capped at the attorneys' reasonable hourly rates, provides a further reason why the district court should have considered counsel's hours.   The concern is

6

that awarding counsel far higher fees for compromising a claim than they could obtain by winning it produces disabling conflicts of interest and deprives a class of adequate representation.

For these reasons, it appears that there is a reasonable likelihood that the appeal will succeed. Isaacson belabors this point only because it is the single substantial justification given for imposing any bond at all. The remaining justifications given for imposing a bond are that the objectors "offered no evidence of an inability to pay" a bond (R&R, DE118 at 6), and the "indisputable" fact "that an appeal will delay the Plaintiffs' receipt of the benefits of the settlement." *Id*. at 7.

As the R&R concludes elsewhere, however, the delay of distribution of the fund is not relevant to calculating a cost bond in the absence of a basis for imposing delay damages as costs. R&R, DE118 at 5-6.

That leaves only the presumption that appellants can afford to pay a bond, which standing alone is not a terribly good reason for imposing one. Notably, there is no finding that it would be difficult for Plaintiff to collect on a costs bill, or that Isaacson would refuse to pay costs. On the contrary, Isaacson has sufficient assets to pay whatever costs may be assessed, and it is clear that he takes his professional responsibilities seriously and would never consider jeopardizing his reputation for the sake of skipping out on an order taxing costs.

For the reasons above, Isaacson requests that this Court reject the Report and Recommendation to the extent that it characterizes Isaacson's appellate chances as being limited by a deferential standard of review, and for that reason to reject the conclusion that Isaacson should be subject to an appellate bond. Isaacson further requests that the Court exercise its discretion by declining to require a bond to secure costs that Isaacson is willing and able to pay,

7

in the event that they are ever assessed against him.  Finally, if the Court decides to impose a bond, Isaacson requests that the Court apportion the bond amount between appellants, rather than introducing the complexity and potential unfairness of a joint-and-several bond among unrelated appellants, such that the compliance or noncompliance of one appellant affects the appeal of the other.

Date:  January 3, 2017                                            Respectfully submitted,


  /s/ John W. Davis

John W. Davis (FL Bar No. 193763)
john@johnwdavis.com
Law Office of John W. Davis
501 W. Broadway, Suite 800
San Diego, CA  92101
Telephone:  (619) 400-4870
Facsimile:  (619) 342-7170

C. Benjamin Nutley (*pro hac vice*)
nutley@zenlaw.com
1055 E. Colorado Blvd., 5th Floor
Pasadena, California  91106
Telephone:  (626) 204-4060
Facsimile:  (626) 204-4061

## CERTIFICATE OF SERVICE

### CASE NO. 0:15-CV-60716-WPD

I hereby certify that on January 3, 2017, I filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day either by Notice of Electronic Filing generated by CM/ECF or by U.S. mail on all counsel of record entitled to receive service.

Date:  January 3, 2017

        s/ John W. Davis
        John W. Davis